| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **KAZI FOODS OF MICHIGAN, INC.,** | ) | Case No. 11-43971 |
| | ) | |
| Debtor. | ) | |
| | ) | Judge Thomas J. Tucker |
| | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| **KAZI FOODS OF FLORIDA, INC.,** | ) | Case No. 11-43974 |
| | ) | |
| Debtor. | ) | |
| | ) | Judge Steven W. Rhodes |
| | ) | |
| | ) | |

**FIRST DAY JOINT MOTION FOR (I) EXPEDITED RELIEF AND (II) INTERIM AND
FINAL ORDERS (A) AUTHORIZING DEBTORS' USE OF UNENCUMBERED CASH
OR, IN THE ALTERNATIVE, CASH COLLATERAL AND
(B) GRANTING ADEQUATE PROTECTION**

NOW COME Kazi Foods of Michigan, Inc. ("KFM") and Kazi Foods of Florida, Inc.

("KFF", and collectively with KFM, the "Debtors"), by and through their legal counsel,

respectfully move the Court for the relief requested below:

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and

1334 and Fed. R. Bankr. P. 5005.  This is a core proceeding.  The petitions commencing the

Debtors' chapter 11 cases were filed on December 4, 2010 (the "Petition Date").  The cases are

now pending before this Court.

2.      This Motion arises under 11 U.S.C. §§ 105, 361, 363(c)(2) and 363(e), and Fed.

R. Bankr. P. 4001(b).  This Motion is filed under Fed. R. Bankr. P. 9014 and Local Rules 9013

and 4001-2.

3.     Out of an abundance of caution, the Debtors request an order authorizing the Debtors to use their unencumbered cash in which General Electric Capital Business Asset Funding Corporation of Connecticut ("GE"), Colonial Pacific Leasing Corporation ("Colonial"), Sovereign Bank ("Sovereign"), GE Capital Franchise Corporation, as servicer ("GECFC"), and Bank of New York ("BNY"and collectively with GE, Colonial, Sovereign and GECFC, the "Secured Creditors"), each may claim an interest. The Debtors are in the fast food restaurant business, providing sit-down meals to their customers. As a result, the cash generated from the operation of the Debtors' businesses represents payment for services, rather than from the purchase of goods or consumption of inventory. Accordingly, under applicable law, the cash generated by the operation of the Debtors' businesses does not constitute cash collateral of the Debtors' Secured Creditors. The Debtors request an interim order authorizing the Debtors to use their cash on an interim basis from the date of the interim hearing through the date of a final hearing, and a final order authorizing it to use their cash.

### RULE 4001 STATEMENT

4.     Pursuant to Fed. R. Bankr. P. 4001(b), the Debtors request an order authorizing continued use of their cash in which the Secured Creditors identified in paragraph 3 above claim or may claim to hold an interest. The Debtors will use the cash to continue their operations and preserve the going-concern value of their assets.

5.     The Debtors request interim authorization to use only the amount of cash that is necessary to avoid immediate and irreparable harm to their bankruptcy estates pending a final hearing, and the amounts indicated on the budget attached hereto as Exhibit B, without material deviation, through a final hearing estimated to be through March 31, 2011.

6.     If the relief is granted, the Debtors would be authorized to make the expenditures provided for in each budget monthly, and if necessary, to exceed the amounts set forth in each

respective budget by as much as 15% of the total budget. Any expenditures in excess of this authorization will require a further order of the Court after appropriate notice. Budget savings for the Debtors in any month would be carried over and used by the Debtors in subsequent months (*i.e.*, to account for changes in the timing of expenditures by the respective Debtors). After the expiration of the term of the budgets, if a final hearing has not been held, the Debtors would be able to obtain use of any alleged cash collateral of the above-listed Secured Creditors by filing and serving an amended budget; if no objection to the terms of such budget is filed within 10 days after the service of such budget, the budget will be deemed to have been approved.

7.     As adequate protection for the use of Lender's cash collateral, the Debtors propose to: (a) grant Lender's replacement liens in each of the respective Debtors' post-petition cash, accounts, equipment, inventory and the proceeds of the foregoing to the extent of the Debtors' utilization thereof; provided, however, that any and all such replacement liens would be of the same nature, character, validity, priority, dignity, extent and effect as the prepetition liens each of the Lenders had, if any, in such collateral prior to the Petition Date and shall be without prejudice to the rights of the Debtors or any other party in interest to challenge the nature, character, validity, priority, dignity, extent and effect of any such liens or commence any proceeding under the Bankruptcy Code seeking a determination with respect thereto or seeking to avoid or set aside any such liens; and further provided that such replacement liens would specifically exclude avoidance actions under chapter 5 of the Bankruptcy Code and the proceeds thereof (collectively, the "Replacement Liens"); and (b) provide Lenders with copies of such financial or operating reports as filed with the Office of the U.S. Trustee. The Debtors would not waive any right to contest the rights of the Secured Creditors to receive adequate protection. In

addition, any liens granted or cash to be paid to the Secured Parties would be limited to actual and demonstrated diminution in the value of such Secured Creditor's collateral.

## BACKGROUND

8.    On the Petition Date, each of the Debtors filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"). The Debtors have continued in possession of their property and are managing their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9.    As of the Petition Date, the Debtors operate 66 separate Kentucky Fried Chicken ("KFC") franchise locations: 45 in Michigan and 21 in Florida (the "Restaurants").

### A.    *The KFM Loan Agreement and Notes*

10.    On or about December 18, 2006, KFM, as borrower, and Citicorp, as lender, entered into that certain Loan Agreement (as thereafter amended from time to time, the "KFM Loan Agreement" pursuant to which Citicorp agreed, subject to KFM's compliance with the terms of that agreement, to make $29 million available to KFM in order to finance KFM's acquisition of 42 KFC restaurant locations (the "Acquisition Loan").

11.    The Acquisition Loan is evidenced by, *inter alia,* eight promissory notes executed by KFM in favor of Citicorp, including:    (i)    that certain Acquisition Loan Note I, dated December 18, 2006, with an original principal balance of $2,381,669 (the "First Note"); (ii) that certain Acquisition Loan Note II, dated December 18, 2006, with an original principal balance of $5,000,000 (the "Second Note"), (iii) that certain Acquisition Loan Note III, dated December 18, 2006, with an original principal balance of $5,000,000 (the "Third Note"); (iv) that certain Acquisition Loan Note IV, dated December 18, 2006, with an original principal balance of $5,000,000 (the "Fourth Note"); (v) that certain Acquisition Loan Note V, dated December 18, 2006, with an original principal balance of $5,800,000 (the "Fifth Note"); (vi) that certain

Acquisition Loan Note IV, dated December 18, 2006, with an original principal balance of $2,200,000 (the "Sixth Note"); (vii) that certain Acquisition Loan Note VII, dated December 18, 2006, with an original principal balance of $2,618,331 (the "Seventh Note"); and (viii) that certain Acquisition Loan Note VIII, dated December 18, 2006, with an original principal balance of $1,000,000 (the "Eighth Note"). (The First Note, the Second Note, the Third Note, the Fourth Note, the Fifth Note, the Sixth Note, the Seventh Note, and the Eighth Note are collectively, the "KFM Notes".)

### B.    *The KFM Mortgages and Security Agreement*

12.    On or about December 18, 2006, in order to provide security for KFM's obligations under the KFM Loan Agreements and the KFM Notes, KFM executed that certain Mortgage, pursuant to which it, *inter alia,* granted Citicorp a security interest in certain personal and real property (collectively, the "Oakland County Mortgage").

13.    The property of KFM subject to the security interests granted pursuant to the Oakland County Mortgage (the" Oakland County Collateral") is located primarily at the KFM's KFC restaurant locations within Oakland County, Michigan, including:

| | |
|---|---|
| 4790 Dixie Highway, Waterford, Michigan | (Store No. W812088) |
| 606 South Rochester Road, Rochester Hills, Michigan | (Store No. W812123) |
| 1361 North Opdyke Road, Auburn Hills, Michigan | (Store No. Y322051) |

2.    The Genessee County Mortgage and Collateral

14.    On or about December 18, 2006, in order to provide security for KFM's obligations under the Loan Agreements and the Notes, KFM executed that certain Mortgage, pursuant to which it, *inter alia,* granted Citicorp a security interest in certain personal and real

property (collectively, the "Genesee County Collateral") located within Genesee County, Michigan (the "Genesee County Mortgage").

15.     The Genesee County Collateral is located primarily at the KFM's KFC restaurant locations within Genesee County, Michigan including:

| | |
|---|---|
| 3510 Clio Road, Flint Michigan | (Store No. W812096) |
| 6021 Dort Highway, Grand Blanc, Michigan | (Store No. W812133) |
| G-6030 North Saginaw, Mount Morris, Michigan | (Store No. W812148) |
| 1445 West Bristol Road, Flint, Michigan | (Store No. Y322076) |
| 1914 North Dort Highway, Flint, Michigan | (Store No. Y322085) |

### 3.     The Wayne County Mortgage and Collateral

16.     On or about December 18, 2006, in order to provide security for KFM's obligations under the Loan Agreements and the Notes, KFM executed that certain Mortgage (the "Wayne County Mortgage"), pursuant to which it, *inter alia*, granted Citicorp a security interest in certain personal and real property (collectively, the "Wayne County Collateral").

17.     The Wayne County Collateral is located primarily at the KFM's KFC restaurant locations within Wayne County, Michigan, including:

| | |
|---|---|
| 17505 East Warren Avenue, Detroit Michigan | (Store No. W812039) |
| 10120 West Warren Avenue, Dearborn, Michigan | (Store No. W812040) |
| 12010 Greenfield Rd., Detroit, Michigan | (Store No. W812042) |
| 9848 Livernois Avenue, Detroit, Michigan | (Store No. W812043) |
| 15340 Wyoming Avenue, Detroit, Michigan | (Store No. W812065) |
| 8939 West 7 Mile Road, Detroit, Michigan | (Store No. W812074) |
| 15700 East 8 Mike Road, Detroit, Michigan | (Store No. W812083) |

| | |
|---|---|
| 2600 East 8 Mile Rd., Detroit, Michigan | (Store No. W812084) |
| 6320 West Fort Street, Detroit, Michigan | (Store No. W812086) |
| 14401 Grand River Avenue, Detroit, Michigan | (Store No. W812103) |
| 13320 East Jefferson Avenue, Detroit, Michigan | (Store No. W812104) |
| 19833 West 7 Mile Road, Detroit, Michigan | (Store No. W812105) |
| 2716 West Grand Boulevard, Detroit, Michigan | (Store No. W812106) |
| 1850 East McNichols Road, Detroit, Michigan | (Store No. W812110) |
| 9654 Gratiot Avenue, Detroit, Michigan | (Store No. W812111) |
| 17750 Fenkell Street, Detroit, Michigan | (Store No. W812115) |
| 3785 Gratiot Street, Detroit, Michigan | (Store No. W812117) |
| 9041 Chalmers, Detroit, Michigan | (Store No. W812122) |
| 13546 West McNichols Road, Detroit, Michigan | (Store No. W812125) |
| 20990 Harper Avenue, Harper Woods, Michigan | (Store No. W812126) |
| 13253 Woodward Avenue, Highland Park, Michigan | (Store No. W812128) |
| 2339 South Wayne Road, Westland, Michigan | (Store No. W812139) |
| 41670 Ford Road, Canton Michigan | (Store No. W812139) |
| 22345 Grand River, Detroit, Michigan | (Store No. Y322025) |
| 2601 West Davison Avenue, Detroit, Michigan | (Store No. Y322063) |

*4.    The Security Agreement*

18.     In addition to the security interests granted pursuant to the Oakland County Mortgage, the Genesee County Mortgage, and the Wayne County Mortgages (collectively, the "Mortgages"), on December 19, 2006, KFM executed that certain Security Agreement (the "Security Agreement") pursuant to which it granted Citicorp additional security interests in all

the personal property described on Schedule A annexed thereto (collectively, the "Security Agreement Collateral") in order to secure the payment and performance of all indebtedness and obligations of KFM to Citicorp.

### C. Colonial's Right, Title and Interest in the KFM Loan Agreement, KFM Notes, and the other KFM Loan Documents

19. On or about August 4, 2008, Citicorp filed a *Certificate of Amendment of Certificate of Incorporation* with the office of the Secretary of State for the State of Delaware stating that Citicorp's Board of Directors gave unanimous written consent to amend the Certificate of Incorporation so as to rename the corporation "GE Capital Commercial Inc."

20. Upon information and belief, On July 31, 2008, GECCI executed that certain Assignment and Assumption of Loan Contract, pursuant to which GECCI assigned all its rights, title and interests in and to: (i) the KFM Loan Documents, and (ii) the Genesee County Collateral, the Oakland County Collateral, the Wayne County Collateral, and the KFM Security Agreement Collateral (collectively, the "KFM Collateral") to Colonial.

21. On or about November 24, 2009, Colonial Asserted that KFM was in Default under the KFM Loan Documents and on September 2, 2010, colonial filed an action in the Circuit Court for the County of Oakland, Michigan, Case No. 10-113106-cz, seeking to obtain possession of the KMF Collateral, but not a money judgment.

### D. The KFF Loan Agreement and Notes

22. On or about August 25, 2004, KFF, as borrower, and Citicorp, as lender, entered into that certain Loan Agreement (the "KFF Loan Agreement") whereby Citicorp agreed, to make, among other things: (i) a real estate loan in the aggregate principal amount of $4,954,000 to refinance KFF existing debt (the "KFF Real estate Loan"), Iii) a business value loan in the aggregate principal amount of $850,000 to refinance KFF's existing debt (the "Business Value

Loan"); (iii) a business value-prepayment loan in the amount of $3,046,000 (the "KFF Business Value – Future Advance Note"); and (iv) additional loan proceeds in the amount of $450,000 (the "Carol City Loan").

23.     The KFF Real Estate Loan is evidenced by a promissory note in the principal amount of $4,954,000 dated August 25, 2004 (as amended, the "KFF Real Estate Note").

24.     The KFF Business Value Loan is evidenced by a promissory note in the principal amount of $850,000, dated August 25, 2004 (as amended, the "KFF Business Value Note").

25.     The KFF Business Value Prepayment Loan is evidenced by a promissory note in the principal amount of $250,000 dated August 25, 2004 (the "KFF Business Value Prepayment Note").

26.     The Carol City Loan is evidenced by a promissory note in the principal amount of $450,000, dated August 25, 20014 (as amended, the "Carol City Note" and together with the Real Estate Note, the Business Value Note and the Business Value Prepayment Note, the "KFF Notes").

### E.     The Security Agreement

27.     To secure the obligations due under the KFF Loan Agreement, the KFF Notes, and the other KFF Loan Documents, KFF executed and delivered a Security Agreement dated as of August 25, 2004, (the "KFF Security Agreement"), pursuant to which KFF granted Citicorp a security interest in all tangible personal property, machinery, equipment, computer hardware and software, furniture, furnishings, fixtures and inventory in all of its forms, together with the process thereof, located at KFF's restaurants at the addresses listed on Exhibit D to the KFF Security Agreement (collectively, the "KFF Collateral").

28.     On or about February 24, 2005, Citicorp may have perfected its security interests in the Collateral by filing a financing statement with the Florida Secured Transactions Registry.

### G.     Colonial's Right, Title and Interest in the Notes and Security Agreement

29.     On or about August 4, 2008, Citicorp filed a *Certificate of Incorporation* with the office of Secretary of State for the State of Delaware stating that Citicorp's Board of Directors gave unanimous written consent to amend the Certificate of Incorporation so as to rename the corporation "GE Capital Commercial Inc."

30.     Furthermore, upon information and belief, by separate *Assignment and Assumption of Loan Contracts,* each entered into as of July 31, 2008 (the "Loan Assignments"), GE Capital Commercial Inc. (f/k/a Citicorp Leasing, Inc.) assigned all of its right, title, interest, obligations, liabilities and duties in the Assigned Loan (defined therein) and "the loan documents relating to the Assigned Loan, including the loan agreement and all other agreements, notes, instruments and documents evidencing or securing the Assigned Loan, as the same may have been amended, supplemented, extended, or renewed prior to the date of the Assignment" to Colonial so that Colonial is the holder of all Citicorp's rights, title and interests in and to the KFF Loan Agreement, the KFF Loan Documents, and the KFF Collateral.

31.     On or about October 19, 2010, Colonial filed an action in the Circuit Court for Broward County, Florida, Case No. 10-36068, seeking possession of the KFF Collateral but not a money judgment.  On or about February 16, 2011, colonial obtained and began executing on a Writ of Replevin, which necessitated the immediate filing by Debtors of the case.

### H.     BNY Loan

32.     Upon information and belief, BNY holds mortgages on KFF's restaurants in Key West, Florida and Marathon Key, Florida, and may hold security interests in certain of KFF's personal property located therein.

33.     The Debtors' chapter 11 filing's are driven by macroeconomic factors, regional economic factors, short-term liquidity problems and the failure to resolve a workable payment plan on loans to one of its major lenders.  The Debtors find themselves in a situation in which its growth opportunity is limited by economic reality, they have obligations to perform substantial capital expenditures under their agreements with Kentucky Fried Chicken Corporation ("KFCC") and have large secured debt on Kazi Foods of Michigan, Inc., which greatly exceeds the value of the assets securing same.  The prolonged recession has greatly reduced customer traffic in its stores, especially in Michigan where locations are in inner city areas driving down cash flow.  In short, the Company's year-to-date financials have fallen short of projections.  For the period ended December 31, 2010, sales approximately $51.3 million, which is $2.5 million short of projections.  Kazi Foods of Florida, Inc. has now only begun to flatten out after double digit declines in sales from 2008 to 2009. Kazi Foods of Michigan, Inc. on the other hand has experienced double digit declines from 2007 through 2009 and over 7% decline in sales from the previous year in 2010.  Restaurant margins have come under increased pressure with the impacts of winter weather, value promotions and the lack of consistent advertising by KFCC due to its litigation with the franchisees in 2010.  Towards the end of 2010 and continuing into 2011, commodity prices increases have contributed to a decline in EBITDA (Earnings before Interest, Taxes, Depreciation and Amortization).  Although the Company continues to maintain a high level of operating efficiency, operating margins have not been sufficient to meet the restaurants' required CAPEX.

## USE OF CASH

34.     The Debtors request an expedited hearing for an interim Order authorizing the Debtors to use cash in which the Secured Creditors may claim an interest.  The Debtors assert that none of the Secured Creditors listed above has a perfected security interest in the Debtors' cash or future sale proceeds generated from the provision of services at the Restaurants operated by Debtors.  The Debtors will suffer irreparable harm if they cannot utilize their cash on a preliminary basis, pending a final hearing on this Motion.  This request relates specifically to the current payroll to be distributed on or after February 28, 2011, for KFM and March 4th and 7th, 2011 for KFF and the additional use of cash that is contemplated being utilized substantially in accordance with the Budget (defined below) in the ordinary course as non-cash collateral items.

35.     Reasonable notice of the request for an expedited hearing was given by telephonic, facsimile or e-mail notice to each of the Secured Creditors, the U.S. Trustee, and the Debtors' 20 largest unsecured creditors.  The interests of a creditor wishing to object to the use of cash collateral are protected and preserved by the opportunity to object and be heard.

36.     The Debtors need the immediate use of cash to meet the on-going expenses of operating their businesses, including making the next payroll for employees which will occur on or after February 28, 2011 in the approximate amount set forth in the Budget (the "Pending Payroll Obligations") and paying payroll taxes and related employee expenses, as well as payments to trade vendors for post-petition purchases, payment of rent, utility deposits, telephone, insurance, payments to other parties that supply goods and services to the Debtors post-petition and other necessary expenses associated with the administration of the bankruptcy estates.  Further, the Debtors pay approximately $973,326.00 per week for royalties to KFC, food, supplies, insurance, and other expenses and require immediate use of cash to replenish

inventory and continue ordinary course business operations. These expenses are more specifically set forth in the Debtors' cash flow projections and budget for the business attached hereto as Exhibit B (the "Budget"). The Debtors have an immediate need to use approximately $5,839,961.00 between the Petition Date and March 31, 2011, in accordance with the attached Budget. Payment of all of these amounts are necessary to avoid immediate and irreparable harm to the Debtors' bankruptcy estates pending a hearing on the Motion and, to the extent that the Court characterizes the Debtors' cash and post-Petition Date sale receipts as cash collateral for some reason, the Debtors by this Motion also seek interim and final authority herein to utilize these proceeds for the benefit of the businesses, the bankruptcy estates and all constituents.

37.    The Debtors utilize the services of a nationally recognized payroll processing service, ADP, to facilitate payroll obligations to its employees. ADP requires good and available funds and, prior to the commencement of the bankruptcy cases, the Debtors transferred funds sufficient to cover the Pending Payroll Obligations. The Debtors seek authorization to pay prepetition portions of the Pending Payroll Obligations under a separate motion filed contemporaneously with this Motion.

38.    The Debtors anticipate the entry of a final order authorizing the use of cash collateral during the week beginning March 21, 2011. If the Debtors are unable to timely fund the Pending Payroll Obligations, the Debtors are likely to lose their employees and be unable to hire new employees. In addition, the Debtors must have use of their cash to pay certain critical vendors for goods and services necessary to operate the Restaurants. Without the interim use of cash as proposed in the Budget, the Debtors will not be able to continue operations and pursue their strategies for maximizing value, and the interests of creditors and other parties in interest in

these cases will be irreparably harmed. Therefore, cause exists to reduce notice of the hearing with respect to an interim order authorizing the use of the Debtors' cash.

39.     The Debtors have cash on hand and will generate cash from continuing sales at the Restaurants. As set forth in the Budget, the Debtors project that such cash will be sufficient to fund their chapter 11 administrative expenses, including post-petition operating expenses.

40.     As set forth in paragraph 7 above, the Debtors propose to grant secured creditors the Replacement Liens and will also prepare and provide to secured creditors copies of financial or operating reports filed with the Office of the U.S. Trustee. The Debtors' proposed use of unencumbered cash and offer of adequate protection provides adequate protection against the risk of the Debtors' use of cash collateral and furthers the interests of all stakeholders in these bankruptcy cases.

41.     Prior to the hearing on the Motion for a final order authorizing use of cash, and in settlement of any and all matters raised in this Motion, the Debtors may enter into a stipulation or agreed order with parties claiming a security interest in cash collateral assets of the Debtors concerning the use of cash collateral, adequate protection and other related matters. In the event that the Debtors enter into any such stipulation, they will seek approval of the stipulation without further notice or hearing pursuant to Rule 4001(d)(4) of the Federal Rules of Bankruptcy Procedure, and **DEBTORS HEREBY GIVE NOTICE OF THEIR INTENTION TO SEEK APPROVAL OF ANY SUCH STIPULATION.**

42.     Pursuant to Local Rule 4001-2(d)(3), this Motion is accompanied by a proposed order as Exhibit A.

43.     Pursuant to Local Rule 4001-1(c)(6) and 4001(d) the Affidavit of Steve Poludniak is attached hereto.

WHEREFORE, the Debtors move the Court for an order granting:

A.     An expedited hearing;

B.     The motion for an order authorizing the Debtors, on an interim basis, to use of unencumbered cash, or in the alternative, cash collateral through and including March 31, 2011, substantially consistent with the Budget attached to the Motion;

C.     The request for a final order authorizing the Debtors, on a final basis, to use cash collateral; and

D.     Such other and further relief as the Court deems just and equitable.

> Respectfully submitted,
>
> MCDONALD HOPKINS PLC
>
> /s/  Stephen M. Gross
> Stephen M. Gross (P35410)
> Jeffrey S. Grasl (P62550)
> Jayson B. Ruff (P69893)
> Counsel to the Debtors
> 39533 Woodward Ave., Ste. 318
> Bloomfield Hills, MI  48304
> Phone:  248-646-5070
> Email:  sgross@mcdonaldhopkins.com
>           jgrasl@mcdonaldhopkins.com
>           jruff@mcdonaldhopkins.com

February 17, 2011

# EXHIBIT A

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| **KAZI FOODS OF MICHIGAN, INC.,** | ) Case No. 11-43971 |
| | ) |
| Debtor. | ) |
| | ) Judge Thomas J. Tucker |
| | ) |
| | ) |
| In re: | ) Chapter 11 |
| | ) |
| **KAZI FOODS OF FLORIDA, INC.,** | ) Case No. 11-43986 |
| | ) |
| Debtor. | ) |
| | ) Judge Steven W. Rhodes |
| | ) |
| | ) |

## INTERIM ORDER GRANTING EXPEDITED RELIEF AND (A) AUTHORIZING USE OF UNENCUMBERED CASH OR, IN THE ALTERNATIVE, CASH COLLATERAL AND (B) GRANTING ADEQUATE PROTECTION

This case came before the court on the Debtors' Motion for (I) Expedited Relief, and (II) Interim and Final Orders (A) Authorizing Debtors' Use of Unencumbered Cash or, in the Alternative, Cash Collateral and (B) Granting Adequate Protection (the "Motion"). Capitalized terms used, but not otherwise defined herein, have the meanings given to them in the Motion. Appearances are noted on the record.

Based on the arguments of counsel and the documents of records herein, the Court being fully advised in the premises, and after due deliberation and consideration and sufficient cause appearing therefor,

**THE COURT FINDS AND CONCLUDES THAT:**

A.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and reference from the District Court for the District of Minnesota pursuant to 28 U.S.C. § 157. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     Notice of the Motion and the Interim Hearing was sufficient under the circumstances and constitutes due and sufficient notice thereof.

C.     Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors have retained possession of their assets and are authorized to continue the operations and management of their businesses as debtors in possession.

D.     No official committee of unsecured creditors has been appointed in the chapter 11 cases and no request has been made for appointment of a trustee or examiner.

E.     The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.

F.     The Debtors' use of cash and other assets is necessary to the continued viability of the Debtors' businesses.

G.     The Debtors assert that General Electric Capital Business Asset Funding Corporation, Colonial Pacific Leasing Corporation, Sovereign Bank, Bank of New York, and/or GE Capital Franchise Corporation (collectively, the "Secured Creditors") may have a lien on or security interests in certain non-cash assets of the Debtors, but have no interest in, or lien on, the Debtors' cash. Secured creditors assert that the Debtors' cash may be Cash Collateral, the use of which requires its consent or an order of the Court. The Court makes no finding on the issue for purposes of this Interim Order. Rather, to the extent the Debtors' cash is Cash Collateral, the Debtors' use of such cash is, as set forth below, authorized and approved on an interim basis.

H.    The Debtors have proposed to provide adequate protection to secured creditors for the use of (i) those assets of the Debtors that are collateral of secured creditors, and (ii) cash, but only if, and to the extent, the Court later determines that the Debtors' cash is cash collateral of a secured creditor.  The Court makes no determination as to the priority, validity or extent of any lien asserted by the Secured Creditors, or the right of the Secured Creditors to adequate protection.

I.    The evidence presented at the hearing substantiates the Debtors' request for use of cash and other assets.

**IT IS HEREBY ORDERED THAT:**

1.    The Debtors' Motion for expedited hearing is granted.

2.    Subject to the terms of this Interim Order, the Debtors shall be, and hereby are, authorized to use the cash generated by the operation of their businesses to continue to operate their businesses in the ordinary course of business through March 31, 2011, consistent with the Budget attached to the Motion as <u>Exhibit B</u>.  Such authorization shall include, but not be limited to, authorization (a) to pay the Debtors' normal and customary operating expenses, approved chapter 11 expenses, and approved prepetition and postpetition administrative claims; (b) to pay the fees of the United States Trustee pursuant to 28 U.S.C. § 1930; (c) to pay the fees and costs of the professionals retained pursuant to Court order; and (d) to make those payments they are authorized to make pursuant to orders of the Court.  The Debtors are authorized to make the expenditures provided for in the Budget monthly, and if necessary, to exceed the amounts set forth in each respective Budget by as much as 15% of the total Budget.

3.    Subject to sections 361 and 363 of the Bankruptcy Code, as adequate protection for the Debtors' use of secured creditors' collateral, secured creditors are hereby granted the

following: (a) replacement liens, pursuant to 11 U.S.C. § 552, in the Debtors' postpetition assets of the same type and nature as those assets, subject to the prepetition liens of secured creditor (collectively, the "Replacement Liens"); provided, however, that any and all such Replacement Liens will be of the same nature, character, validity, priority, dignity, extent and effect as each secured creditor had, if any, in such collateral prior to the Petition Date and shall be without prejudice to the rights of the Debtors or any other party in interest to challenge the nature, character, validity, priority, dignity, extent and effect of any such liens or commence any proceeding under the Bankruptcy Code seeking a determination with respect thereto or seeking to avoid or set aside any such liens; and provided further that such Replacement Liens shall specifically exclude all actions under chapter 5 of the Bankruptcy Code and the proceeds thereof; and (b) the right to receive copies of regular financial or operating reports, including those filed with the Office of the U.S. Trustee.

4.      Nothing in this Interim Order shall operate to waive any of the Debtors' rights to contest the rights of the Secured Creditors to receive adequate protection.

5.      Any Replacement Liens granted or cash to be paid to each of the secured creditors shall be limited to actual and demonstrated diminution in the value of their respective collateral.

6.      Subject to the other provisions of this Interim Order, the Replacement Liens granted herein shall be valid and fully perfected without any further action by the Debtors or secured creditors and without the execution or the recordation of any financing statements, security agreements, mortgages or other documents. Notwithstanding the foregoing, each secured creditor is hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, account control agreements, notices of lien or

similar instruments in any jurisdiction or take any other action in order to validate and perfect the Replacement Liens granted to them hereunder.

7. For purposes of this Interim Order only, the Replacement Liens granted hereunder shall be subject to the allowed postpetition fees and expenses of professionals retained in the Debtors' chapter 11 cases and the fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930.

8. The provisions of this Interim Order, as well as the Replacement Liens and security interests granted herein, shall continue in this and any subsequent case under the Bankruptcy Code. The Replacement Liens and security interests shall maintain their priority as provided in this Interim Order, until the indebtedness of the Debtors to each secured creditor has been completely paid and satisfied, unless otherwise ordered by the Court.

9. This Interim Order is without prejudice to the rights of the parties to seek any further or different relief, or modification of this Interim Order, including, but not limited to, relief from the automatic stay.

10. Except as expressly provided herein, the rights, claims, and interests of the Debtors, Secured Creditors, and all other parties in interest are hereby reserved.

11. The Final Hearing is scheduled for _____, 2011 at _____ .m. before this Court.

The Debtors shall within 24 hours of its entry serve a copy of this Order and the Motion on all parties entitled to notice under F.R. Bankr. P. 4001(d) and to any other party that has filed a request for notices with this Court and to any Statutory Committee after the same has been appointed, or such Statutory Committee's counsel, if the same shall have been appointed. Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written

objections, which objections shall be served upon (a) McDonald Hopkins PLC, attorneys for the Debtors; 39533 Woodward Ave., Suite 318, Bloomfield Hills, Michigan 48304, Attention: Stephen M. Gross (sgross@mcdonaldhopkins.com) (facsimile: 248-646-5075) and (b) the Office of the United States Trustee for the Eastern District of Michigan, and shall be filed with the Clerk of the United States Bankruptcy Court for the Eastern District of Michigan, in each case to allow actual receipt by the foregoing no later than fourteen (14) days from the date hereof, except that an Official Committee may file objections within 14 days after it is served with this Order.

12.    The Court has and will retain jurisdiction to enforce this Order according to its terms.

13.    If no objection is timely filed, this Order may become a final Order, with the deletion that the use of cash be limited to the expenses in the Budget and that the Debtors' use of cash may continue after March 31, 2011.

# EXHIBIT B

## Kazi Foods of Michigan, Inc. Budget for Cash Needs

| | Feb 17-28, 2011 | March 2011 | Total |
|---|---|---|---|
| SALES | $ 1,027,861.63 | $ 2,933,051.00 | $ 3,960,912.63 |
| C.O.S. | $ 341,752.01 | $ 973,283.00 | $ 1,315,035.01 |
| SALARY MGT. | $ 56,726.80 | $ 144,343.00 | $ 201,069.80 |
| HOURLY | $ 182,254.54 | $ 510,950.00 | $ 693,204.54 |
| DIRECT LABOR | $ 238,981.34 | $ 655,293.00 | $ 894,274.34 |
| BENEFITS | $ 40,297.04 | $ 102,537.00 | $ 142,834.04 |
| TOTAL LABOR | $ 279,278.38 | $ 757,830.00 | $ 1,037,108.38 |
| GROSS PROFIT | $ 406,831.24 | $ 1,201,938.00 | $ 1,608,769.24 |
| R&M | $ 19,107.66 | $ 48,620.00 | $ 67,727.66 |
| UTILITIES | $ 72,101.75 | $ 183,465.00 | $ 255,566.75 |
| CONTROLLABLES | $ 19,427.56 | $ 49,434.00 | $ 68,861.56 |
| R.C.P. | $ 296,194.28 | $ 920,419.00 | $ 1,216,613.28 |
| | | | |
| NATIONAL ADV | $ 30,835.96 | $ 87,992.00 | $ 118,827.96 |
| REGIONAL ADV | $ 30,835.96 | $ 87,992.00 | $ 118,827.96 |
| LOCAL ADV | $ - | $ - | $ - |
| P.O.P. | $ 1,943.39 | $ 4,945.00 | $ 6,888.39 |
| B.K. MERCHANDISING | $ - | $ - | $ - |
| TOTAL MARKETING | $ 63,614.91 | $ 180,928.00 | $ 244,542.91 |
| ROYALTIES | $ 41,114.48 | $ 117,322.00 | $ 158,436.48 |
| NON-CONTROLLABLES | $ 14,921.03 | $ 37,967.00 | $ 52,888.03 |
| DEPRECEATION | $ 61,661.70 | $ 156,900.00 | $ 218,561.70 |
| AMORTIZATION | $ 1,798.37 | $ 4,576.00 | $ 6,374.37 |
| MGT. FEES | $ 51,393.00 | $ 146,653.00 | $ 198,046.00 |
| OCCUPANCY | $ 65,692.70 | $ 167,184.00 | $ 232,876.70 |
| INTEREST | $ 22,265.81 | $ 56,656.00 | $ 78,921.81 |
| CORP OVERHEAD | $ 32,068.01 | $ 81,598.00 | $ 113,666.01 |
| | | | |
| NET INCOME | $ (58,335.74) | $ (29,364.00) | $ (87,699.74) |
| | | | |
| EBITDA | $ 27,390.14 | $ 188,768.00 | $ 216,158.14 |
| | | | |
| ADJ. EBITDA | $ 78,783.14 | $ 335,420.00 | $ 414,203.14 |

# Kazi Foods of Flordia, Inc. Budget for Cash Needs

| | Feb 17-28, 2011 | March 2011 | Total |
|---|---|---|---|
| SALES | $ 618,189.00 | $ 1,663,000.00 | $ 2,281,189.00 |
| C.O.S. | $ 196,122.72 | $ 526,385.00 | $ 722,507.72 |
| SALARY MGT. | $ 29,872.72 | $ 76,012.00 | $ 105,884.72 |
| HOURLY | $ 110,786.70 | $ 296,050.00 | $ 406,836.70 |
| DIRECT LABOR | $ 140,659.42 | $ 372,062.00 | $ 512,721.42 |
| BENEFITS | $ 22,777.10 | $ 57,747.00 | $ 80,524.10 |
| TOTAL LABOR | $ 163,295.04 | $ 429,809.00 | $ 593,104.04 |
| GROSS PROFIT | $ 258,771.24 | $ 706,806.00 | $ 965,577.24 |
| R&M | $ 11,292.86 | $ 29,835.00 | $ 41,127.86 |
| UTILITIES | $ 32,601.32 | $ 82,915.00 | $ 115,516.32 |
| CONTROLLABLES | $ 12,907.30 | $ 37,067.00 | $ 49,974.30 |
| R.C.P. | $ 201,969.77 | $ 556,989.00 | $ 758,958.77 |
| | | | |
| NATIONAL ADV | $ 15,454.73 | $ 41,575.00 | $ 57,029.73 |
| REGIONAL ADV | $ 12,363.78 | $ 33,260.00 | $ 45,623.78 |
| LOCAL ADV | $ 6,181.89 | $ 16,630.00 | $ 22,811.89 |
| P.O.P. | $ 1,375.50 | $ 3,500.00 | $ 4,875.50 |
| B.K. MERCHANDISING | $ - | $ - | $ - |
| TOTAL MARKETING | $ 35,375.90 | $ 94,965.00 | $ 130,340.90 |
| ROYALTIES | $ 24,727.56 | $ 66,520.00 | $ 91,247.56 |
| NON-CONTROLLABLES | $ 10,778.03 | $ 28,072.00 | $ 38,850.03 |
| DEPRECEATION | $ 13,998.66 | $ 35,620.00 | $ 49,618.66 |
| AMORTIZATION | $ 394.97 | $ 1,005.00 | $ 1,399.97 |
| MGT. FEES | $ 30,909.45 | $ 83,150.00 | $ 114,059.45 |
| OCCUPANCY | $ 33,964.24 | $ 86,423.00 | $ 120,387.24 |
| INTEREST | $ 8,370.90 | $ 21,300.00 | $ 29,670.90 |
| CORP OVERHEAD | $ 22,028.83 | $ 56,053.00 | $ 78,081.83 |
| | | | |
| NET INCOME | $ 21,421.25 | $ 83,881.00 | $ 105,302.25 |
| | | | |
| EBITDA | $ 44,185.78 | $ 141,806.00 | $ 185,991.78 |
| | | | |
| ADJ. EBITDA | $ 75,095.23 | $ 224,956.00 | $ 300,051.23 |