UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| In re: | ) Chapter 11 |
|---|---|
| KAZI FOODS OF MICHIGAN, INC., | ) Case No. 11-43971 |
| Debtor. | ) Judge Thomas J. Tucker |
| In re: | ) Chapter 11 |
| KAZI FOODS OF FLORIDA, INC., | ) Case No. 11-43986 |
| Debtor. | ) Judge Steven W. Rhodes |

**MEMORANDUM OF LAW IN SUPPORT OF JOINT FIRST DAY MOTION FOR (I) EXPEDITED RELIEF, AND (II) INTERIM AND FINAL ORDERS (A) AUTHORIZING DEBTORS' USE OF UNENCUMBERED CASH OR, IN THE ALTERNATIVE, CASH COLLATERAL AND (B) GRANTING ADEQUATE PROTECTION**

## INTRODUCTION

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through their undersigned attorneys, submit this Memorandum in support of their Motion.[1] The Debtors request an expedited hearing for an interim Order authorizing the Debtors to use cash in which General Electric Capital Business Asset Funding Corporation of Connecticut ("GE"), Colonial Pacific Leasing Corporation ("Colonial"), Sovereign Bank ("Sovereign"), GE Capital Franchise Corporation, ("GECFC") as servicer, and Bank of New York ("BNY" and collectively with GE, Colonial, Sovereign and GECFC the "Secured Creditors") may claim an

---

[1] Capitalized terms appearing herein that are not otherwise defined shall have the meanings ascribed to such terms in the Motion.

interest, as more specifically set forth in the Motion. The Debtors are in the fast food restaurant business, providing sit-down meals to their customers. As a result, the cash generated by the operation of the Debtors' businesses represents payment for services, rather than the purchase of goods or consumption of inventory. Accordingly, under applicable law, the cash generated by the operation of the Debtors' businesses does not constitute cash collateral of the Debtors' Secured Creditors. The Debtors further assert that there is cause for ordering an expedited hearing on the Motion for the reasons set forth herein and in the Motion. The Debtors will suffer irreparable harm if they cannot utilize their cash on a preliminary basis, pending a final hearing on the Motion.

The Debtors estimate that they will need to use an aggregate of approximately $_____ through March 31, 2011 in order to avoid immediate and irreparable harm to the bankruptcy estates, creditors and other parties in interest.

## FACTUAL BACKGROUND

The factual support for the Debtors' Motion and this Memorandum is set forth in the Motion.

## LEGAL ARGUMENT

I. **THE COURT SHOULD AUTHORIZE DEBTORS' PROPOSED USE OF UNENCUMBERED CASH, OR IN THE ALTERNATIVE, CASH COLLATERAL ON AN INTERIM AND FINAL BASIS SUBSTANTIALLY IN ACCORDANCE WITH THE BUDGET**

A. **The Secured Creditors Do Not Have a Perfected Security Interest in the Debtors' Prepetition Cash Held in Accounts at Third-Party Banks**

All of the Debtors operating accounts and deposit accounts are located and maintained at banks other than Sovereign (Upon informaiton and belief the other Secured Creditors are not depository banks.). After a review of the Secured Creditors' respective loan documents and

contracts, it does not appear that any of the Secured Creditors hold an account control agreement over such accounts. Consequently, none of the Secured Creditors hold a perfected security interest or lien on the Debtors' prepetition cash. See Uniform Commercial Code ("UCC") § 9-312(a) (a security interest in a deposit account may be perfected only by control under Section 9-314); UCC § 9-313(c) (a secured party takes possession of collateral in the possession of a third party when the person in possession authenticates a record acknowledging that it holds possession of the collateral for the secured party's benefit); UCC § 9-315(c) (providing that a security interest in proceeds is a perfected security interest if the security interest in the original collateral was perfected).

**B.    The Secured Creditors Do Not Have an Interest in Revenues Generated from the Debtors' Postpetition Services**

A restaurant generates revenue from two primary sources, the delivery of goods and the delivery of services. The Secured Creditors may have a lien on certain food products, equipment and/or other assets held by the Debtors as of the Petition Date, and these liens may extend to the "proceeds" of such collateral post-petition. Notwithstanding the foregoing, these liens do not and will not extend to the cash generated from the "services" component of the Debtors' businesses. See 11 U.S.C. § 552(b).[2] The cash generated from the provision of services is "after acquired property" and remains free and clear of the alleged liens of the Secured Creditors in the Debtors' cash. In re Skagit Pacific Corporation, 316 B.R. 330 (9th Cir. BAP 2004)

---

[2] Section 552(b) of the Bankruptcy Code states as follows:

Except as provided in sections 363, 506(c), 522, 544, 544, 547, and 548 of this title, and notwithstanding section 546(b) of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to amounts paid as rents of such property or the fees, charges, accounts or other payments for the use occupancy of rooms and other public facilities in hotels, motels, or other lodging properties, then such security interest extends to such rents and such fees, charges, accounts or other payments acquired by the estate after the commencement of the case to the extent provided in such security agreement, except to the extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

11 U.S.C. § 552(b).

("Furthermore, revenue generated by the operation of a debtor's business, post-petition, is not considered proceeds if such revenue represents compensation for goods and services rendered by the debtor in its everyday business performance). See also In re Texas Tri-Collar, Inc., 29 B.R. 724 (Bankr.W.D.La. 1983) (pursuant to Section 552, a creditor's pre-petition blanket lien does not extend to post-petition receivables).

In addition to the foregoing, cash generated from restaurant operations does not constitute cash collateral. See In re Inman, 95 B.R. 479, 480-81 (Bankr. W.D. Ky. 1988) (court held that revenues generated from the operation of a debtor's fast-food restaurants were not proceeds from the sale of inventory that was subject to a creditor's security interest); In re Cafeteria Operators, L.P., 299 B.R. 400 (Bankr. N.D. Tex. 2003) (court held that revenue generated by debtor's labor, in preparing food for human consumption, was not necessarily subject to a prepetition security interest in raw food inventory); U.S. Trust Nat. Assoc v. Venice MD LLC, 92 Fed. Appx. 948, 953 (4th Cir. 2004) (court held that revenue generated by sale of food in restaurant is not considered proceeds because restaurant establishments are service-oriented businesses); In re Mid-City Hotel Assocs., 114 B.R. 634, 642-43 (Bankr. D. Minn. 1990) (court held that restaurant income is not proceeds of the real property upon which the restaurant is located); In re Zeeway Corp, 71 B.R. 210, 211 (9th Cir. BAP 1987) (court held that income is not proceeds of real property but the result of services provided by the business); Everett Home Town Limited P'ship, 146 B.R. 453, 456 (Bankr. D. Ariz. 1992) (court held that restaurant revenue cannot be considered proceeds because such revenue is the result of services provided by the business); In re GGVXX, Ltd., 130 B.R. 322 (Bankr. D. Colo., 1991); In re McCann, 140 B.R. 926 (Bankr. D. Mass. 1992) (cash obtained from operation of a restaurant are not proceeds from the sale or disposition of inventory (*e.g.*, food products), but rather proceeds from the provision of services);

In re Corner Pockets of the Southwest, Inc., 85 B.R. 559, 563 (Bankr. D. Mont. 1988) (court held that restaurant revenues result form services and are not proceeds of real property upon which restaurant is located).

In the Inman case, the Bankruptcy Court for the Western District of Kentucky noted that the restaurant industry, in general, is a service-oriented industry. In comparison with food wholesalers and retailers who sell food products in their natural or packaged state, restaurants expend a great deal of time and energy preparing individual food orders by transforming these natural or packaged foods into menu items. The Inman court also remarked that, as in any business, the cost of preparing such foods for human consumption is without a doubt passed on to the consumer. Id. The court found that revenues generated by a fast food restaurant did not constitute proceeds from the sale of inventory. Id. at 481. The court held that the secured lender did not have a valid, perfected security interest in the resulting cash deposits and concluded that the debtor's postpetition cash was free of the prepetition interests of the secured lender. The court in Cafeteria Operators reached a similar conclusion, holding that, at most, a portion of the cash received by a restaurant from its patrons constituted proceeds from the sale of inventory; the bulk of the proceeds represented payment for services. Cafeteria Operators, 299 B.R. 409. As a result, the Debtors' position that the Secured Creditors do not have an interest in the Debtors' cash is amply supported by the Bankruptcy Code and relevant case law.

C. **The Debtors Should Be Authorized to Use Their Cash Pursuant to 11 U.S.C. §§ 361 and 363**

In United Savings v. Timbers of Inwood Forest, 484 U.S. 365, 108 S.Ct. 626 (1988), the United States Supreme Court analyzed and quantified the parameters of the "interest in property," referenced in sections 361, 362(d)(1), and 363, which the Bankruptcy Code undertakes to protect, where required, through adequate protection. This analysis led the

{2611445:2}
11-43971-tjt    Doc 7    Filed 02/17/11    Entered 02/17/11 14:25:57    Page 5 of 10

Supreme Court in Timbers to the conclusion that the "interest in property" referenced in the above sections of the Bankruptcy Code means, and is limited to, the "value of the Collateral." Timbers, 108 S.Ct. at 630. Therefore, under the Timbers analysis, the adequate protection provisions in the Bankruptcy Code protect a secured creditor only from a potential diminution in the value of that creditor's collateral during the post-petition period. Id.

Section 361 of the Bankruptcy Code provides that periodic cash payments, replacement liens, or relief constituting the "indubitable equivalent" of the creditor's interest may provide adequate protection. See 11 U.S.C. § 361. In addition, section 363(c)(2) of the Bankruptcy Code provides that a debtor in possession may engage in transactions, including the use of unencumbered cash, in the ordinary course of its business, and may use cash collateral only with the secured creditor's consent or if the Court, after notice and a hearing, authorizes such use. See 11 U.S.C. § 363(c)(2). Section 363(e) of the Bankruptcy Code provides that the Court must provide the secured creditor with adequate protection of its interest upon request of the creditor. The Eighth Circuit Court of Appeals has reasoned that:

> In any given case, the Bankruptcy Court must necessarily (1) establish the value of the secured creditor's interest, (2) identify the risk to the secured creditor's value resulting from the debtor's request for use of cash collateral, and (3) determine whether the debtor's adequate protection proposal protects values as nearly as possible against risk to that value consistent with the concept of indubitable equivalence.

In re Martin, 761 F.2d 472, 476-77 (8th Cir. 1985).

The "value" oriented adequate protection analysis adopted by the Supreme Court in the Timbers case has been closely adhered to by the courts which have subsequently had occasion to address this issue. See e.g., In re Ledgemere Land Corp., 116 B.R. 338, 343 (Bankr. D. Mass. 1990) (so long as the receivables being collected and used by the debtor are being replaced by sufficient new receivables in which the creditor is granted a security interest, the creditor is

adequately protected); In re Johnson, 90 B.R. 973, 978 (Bankr. D. Minn. 1988) (secured creditor is not impaired and is not entitled to receive adequate protection payments where value of collateral does not decline); In re Century Inv. Fund, VII Ltd. Partnership, 96 B.R. 884, 887 (Bankr. E.D. Wis. 1989) (where value of collateral appears to be stable, secured creditor is not entitled to adequate protection payments); In re Anderson, 86 B.R. 877, 889 (Bankr. N.D. Ind. 1988) (secured creditor was required to show a necessity for adequate protection by demonstrating a decline in asset value from the petition date); In re Kessler, 86 B.R. 134, 136 (Bankr. C.D. Ill. 1988) (under Timbers, movants are not entitled to adequate protection payments, as there was no showing that property was depreciating in value).

Other courts have found that adequate protection is not necessary where the collateral is not depreciating in value. In In re Elmore, 94 B.R. 670, 677 (Bankr. C.D. Cal. 1988), the Honorable Samuel Bufford held that:

> [T]he Court finds that the property is not depreciating in value. In consequence, the Court finds that Lomas [Secured Creditor] is adequately protected by the value of its collateral.... The right to receive payments is a simple contract right, that supports only a claim in the bankruptcy case. There is no other adequate protection to which Lomas is entitled under the Bankruptcy Code.

Elmore, supra, 94 B.R. at 677 (citation omitted). Similarly, in In re McCombs, the Honorable John E. Ryan held that:

> The analysis of the Supreme Court in Timbers is instructive here. The phrase "interest in property" in § 363(e) means the value of the collateral. That is the interest that I am required to protect. If that value is likely to diminish during the time of the use, adequate protection must be provided by the Debtor.

McCombs, supra, 88 B.R. at 266 (emphasis added).

Under the strict value-oriented analysis adopted by the Supreme Court in Timbers (and adhered to by the cases cited above), the adequate protection inquiry under section 363(e) of the

Bankruptcy Code is limited to determining whether the debtor's use of a secured creditor's collateral will reduce the value of the creditor's collateral base. If the debtor can establish that the proposed use of the collateral will not cause a decline in the value of the collateral, then court authorization of such use is appropriate. Not infrequently, a secured creditor will contend that it somehow has a right to be paid adequate protection payments, post-petition, even where no decline in the value of the collateral is either occurring or anticipated. The Supreme Court in Timbers expressly rejected this very contention stating:

> It is obvious (since §§ 361 and 362(d) (1) do not entitle the secured creditor to immediate payment of the principal of his collateral) that this "realization" is to "result" not at once, but only upon completion of the reorganization. It is then that he must be assured "realization ... of the indubitable equivalent" of his collateral.

Timbers, 108 S.Ct. at 633.

Here, as set forth above, the Debtors assert that neither the cash currently in the possession of any of the Debtors nor any cash generated from post-Petition Date sales at the Restaurants constitute cash collateral but, rather, represents unencumbered cash proceeds available for use by the Debtors. Although the Debtors believe that the Secured Creditors do not have an interest in the Debtors' cash, the Debtors are prepared to provide adequate protection to Colonial, which does claim a security interest in the proceeds from the sale of inventory. Such adequate protection would cover the Debtors' use of those assets in which Colonial is claiming an interest — including machinery, equipment, and inventory — as well as the Debtors' use of cash to the extent such cash is determined to be Colonial's cash collateral.

Under the Debtors' adequate protection proposal, as set forth in paragraph ___ of the Motion, the respective secured creditor's interests in any of its collateral will be adequately protected from a diminution in value through the Replacement Liens granted to the secured creditors, through the receipt of timely financial information, and through the maintenance and

{2611445:2}
11-43971-tjt   Doc 7   Filed 02/17/11   Entered 02/17/11 14:25:57   Page 8 of 10

preservation of the Debtors' businesses and going concern value. Any Replacement Lien would exclude any causes of action under chapter 5 of the Bankruptcy Code or the proceeds thereof, and would be enforceable in an amount equal to the aggregate post-Petition Date diminution in the value of each secured creditor's interest in its collateral.

In summary, the adequate protection proposed by the Debtors — a combination of the Replacement Liens, regular reporting, and preservation of the Debtors' going concern value — when taken together adequately protect the Secured Creditors for the use of their collateral. Even if the Court were to determine that certain of the secured creditors do have an interest in the Debtors' cash, permitting the Debtors to utilize cash would be justified in light of the proposed adequate protection, particularly when coupled with the benefits to the Debtors' restructuring efforts as a result of such use. Thus, the adequate protection proposal offered by the Debtors provides reasonable and adequate protection for the claimed interests of the Secured Creditors. See Martin, 761 F.2d at 476-77.

## CONCLUSION

For all of the foregoing reasons, this Court should enter an order authorizing the Debtors to use cash collateral on a preliminary basis, and thereafter authorizing the use of cash collateral through and including March 30, 2011, in a manner consistent with the Motion and Budget attached to the Motion. In addition, the Court should grant such further and additional relief as requested in the Motion.

MCDONALD HOPKINS PLC

Dated: February 17, 2011            */s/Stephen M. Gross*
                                    Stephen M. Gross (P35410)
                                    Jeffrey S. Grasl (P62550)
                                    Jayson B. Ruff (P69893)
                                    39533 Woodward Ave., Ste. 318
                                    Bloomfield Hills, MI 48304
                                    Phone: 248.220.1339
                                    Fax: 248.646.5075
                                    Email: sgross@mcdonaldhopkins.com
                                           jgrasl@mcdonaldhopkins.com
                                           jruff@mcdonaldhopkins.com

                                    PROPOSED COUNSEL FOR DEBTORS
                                    AND DEBTORS IN POSSESSION