# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| KAZI FOODS OF MICHIGAN, INC., | ) | Case No. 11-43971 |
| | ) | |
| Debtor. | ) | |
| | ) | Judge Thomas J. Tucker |
| | ) | |
| In re | ) | Chapter 11 |
| | ) | |
| KAZI FOODS OF FLORIDA, INC., | ) | Case No. 11-43986 |
| | ) | |
| Debtor. | ) | |
| | ) | Judge Steven W. Rhodes |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF GE CAPITAL COMMERCIAL INC. AND COLONIAL PACIFIC LEASING CORPORATION TO APPOINT CHAPTER 11 TRUSTEE OR EXAMINER**

David A. Lerner
**PLUNKETT COONEY**
38505 Woodward Ave., Suite 2000
Bloomfield Hills, MI 48304
Telephone: (248) 901-4000
Facsimile: (248) 901-4040

-and-

Alexander Terras
**REED SMITH LLP**
10 South Wacker Drive, 40th Floor
Chicago, IL 60606
Telephone: (312) 207-1000
Facsimile: (312) 207-6400

*Attorneys for GE Capital Commercial Inc. and
Colonial Pacific Leasing Corporation*

GE Capital Commercial Inc. ("GE Capital") and Colonial Pacific Leasing Corporation ("Colonial", and together with GE Capital, the "GE Entities")[1], secured creditors of Kazi Foods of Michigan, Inc. ("Kazi Michigan") and Kazi Foods of Florida, Inc. ("Kazi Florida", and together with Kazi Michigan, the "Debtors"), debtors and debtors in possession in the captioned chapter 11 bankruptcy cases (the "Cases"), move for an order: (i) appointing a chapter 11 trustee pursuant to 11 U.S.C. § 1104(a), or (ii) alternatively, appointing an examiner pursuant to 11 U.S.C. § 1104(c) to investigate the Debtors' financial condition, transfers and commingling of money and assets among affiliated entities owned by Zubair Kazi and Khatija Kazi, his wife,[2] and in support thereof state as follows:

## BACKGROUND

### Procedural

On February 17, 2011, the Debtors each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court.

The Debtors remain in possession of their property and continue in the operation and management of their business as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

The Debtors have moved pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedures for the joint administration of these cases before this Court. That motion is pending.

---

[1] Colonial Pacific is the lender under each of the loans. In the case of the loan made to debtor Kazi Foods of Michigan, Inc., GE Capital Commercial Inc. is administrative agent.

[2] The Debtors' filings in these Case indicate that Zubair Kazi holds 100% of the equity interest in the Debtors. Pursuant to Zubair Kazi's testimony in a state court litigation, however, Khatija Kazi is also a shareholder of the Debtors. In addition, Khatija Kazi is an individual borrower under certain loans made by the GE Entities.

No official committee of unsecured creditors has been appointed by the Office of the United States Trustee for the Eastern District of Michigan in these Cases.

On February 17, 2011, the Debtors filed a number of "first day motions" including *First Day Joint Motion for (I) Expedited Relief and (II) Interim and Final Orders (A) Authorizing Debtors' Use of Unencumbered Cash or, In the Alternative, Cash Collateral and (B) Granting Adequate Protection* (the "Cash Collateral Motion") [Dkt. No. 6]. The Cash Collateral Motion is scheduled to be first heard on February 22, 2011 at 11:00 a.m.

## The GE Entities' Interest in the Debtors' Collateral

*Loan to Kazi Florida*

Pursuant to a loan agreement, dated as of August 25, 2004, (the "Florida Loan Agreement") between Citicorp Leasing, Inc. ("Citicorp.") as lender and Kazi Florida as borrower, Citicorp loaned $4,954,000 to Kazi Florida in connection with Kazi Florida's refinancing of existing debt on its KFC restaurants in Florida.

To secure Kazi Florida's obligations under the Florida Loan Agreement, Citicorp was granted a security interest in all of Kazi Florida's assets including, <u>inter alia</u>, all machinery, equipment, inventory and goods and all other tangible property of any kind or character, inventory in all of its forms (including, without limitation, raw materials, work in process, or materials used or consumed or to be used or consumed in Kazi Florida's business), accounts, contracts, property of every kind and description which Kazi Florida may possess or come to possess and proceeds[3] of the foregoing. In addition, Citicorp was granted fee mortgages in

---

[3] "Proceeds" is defined in the security agreement, as well as the security agreement associated with the Michigan Loan Agreement (defined below), in pertinent part as "whatever is receivable or received when collateral or
Continued on following page

certain real properties associated with Kazi Florida's KFC restaurants and leasehold mortgages in connection with other store locations.

Colonial is the assignee of Citicorp Leasing, Inc. of the Florida Loan Agreement and related Loan Documents (as defined in the Florida Loan Agreement). As of October 26, 2010, the balance due on the Florida Loan Agreement and other Loan Documents was no less than $6,115,165.59.

*Loan to Kazi Michigan*

Pursuant to a loan agreement, dated as of December 18, 2006, (the "Michigan Loan Agreement") between Citicorp as administrative agent for the lenders thereunder and Kazi Michigan as borrower, Citicorp loaned $29,000,000 to Kazi Michigan in order to finance Kazi Michigan's acquisition of 42 KFC restaurant locations in the state of Michigan from Yum! Brands, Inc. (NYSE: YUM), the franchisor.

To secure Kazi Michigan's obligations under the Michigan Loan Agreement, Citicorp was granted a security interest in all of Kazi Michigan's assets including, inter alia, all machinery, equipment, inventory and goods and all other tangible property of any kind or character, inventory in all of its forms (including, without limitation, raw materials, work in process, or materials used or consumed or to be used or consumed in Kazi Michigan's business), accounts, contracts, property of every kind and description which Kazi Michigan may possess or come to possess and proceeds of the foregoing. In addition, Citicorp was granted fee mortgages

---

Continued from previous page
proceeds is sold, collected, exchanged or otherwise disposed of, whether such disposition is voluntary or involuntary."

on 33 of the 42 properties associated with Kazi Michigan's KFC restaurants and leasehold mortgages in connection with other store locations.

On or about August 4, 2008, Citicorp filed a *Certificate of Amendment of Certificate of Incorporation* with the office of the Secretary of State for the State of Delaware stating that Citicorp's Board of Directors gave unanimous written consent to amend the Certificate of Incorporation so as to rename the corporation "GE Capital Commercial Inc." Accordingly, GE Capital is the same entity that is a party to the Michigan Loan Agreement and other Loan Documents (as defined on the Michigan Loan Agreement).

As of September 1, 2010, the outstanding balance due on the Michigan Loan Agreement and other Loan Documents was not less than $30,427,329.17, with interest continuing to accrue at a rate of not less than $3,060.98 per diem.

As creditors of the Debtors, the GE Entities are parties in interest and authorized to move the Court for the appointment of a trustee under 11 U.S.C. § 1104(a) or an examiner under 11 U.S.C. § 1104(c).

## ARGUMENT

Although 11 U.S.C. § 1107 and other provisions of the Bankruptcy Code authorize chapter 11 debtors to remain in possession of estate assets, such status is "premised upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of a trustee." *Wolf v. Weinstein*, 372 U.S. 633, 651 (1963); *see also In re Europark Indus., Inc.*, 424 B.R. 621, 627 (Bankr. E.D.N.Y. 2010) ("To fulfill its duty of loyalty, a debtor-in-possession must avoid self-dealing, conflicts of interest and the appearance of impropriety") (citations omitted); *In re Ford*, 36 B.R. 501 (Bankr. W.D. Ky. 1983) ("Since the debtor-in-possession is a fiduciary of the estate subject to Court order and restraint, a breach of

these fiduciary duties may constitute cause for appointment of a trustee to manage the estate in accordance with Code provisions and Court order."). The ability of a court to appoint a trustee "is a power which is critical . . . in order to preserve the integrity of the bankruptcy process and to insure that the interests of the creditors are served." *In re Nartron Corp.*, 330 B.R. 573, 592 (Bankr. W.D. Mich. 2005).

The appointment of a trustee is governed by Section 1104(a) of the Bankruptcy Code which provides:

> (a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee—
>
> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor;
>
> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
>
> (3) if grounds exist to convert or dismiss the case under section 1112, but the court determines that the appointment of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1104(a).

In these Cases, appointment of a chapter 11 trustee is necessary and required by Sections 1104(a)(1) and (2). The GE Entities will establish the requisite cause due primarily to management's hopelessly conflicted position. The GE Entities can establish that appointment of a trustee is in the interest of the Debtors' creditors, any equity security holders, and other interests of the estate who will benefit most from an impartial third-party operating the Debtors' stores and ensuring that the enterprise value of the Debtors' business is protected and that

payments are made to the Debtors' creditors pursuant to, and in order of, contract and statutory rights. In addition, cause exists because:

- The prepetition conduct of Debtors' management demonstrates at the very least gross mismanagement and incompetence.

- This gross mismanagement and incompetence continues post-petition as evidenced by the Cash Collateral Motion and the continuing conduct of the same management in managing non-debtor affiliates which are, in fact, all parts of a single enterprise with the Debtors.

- The prepetition conduct of Debtors' management evidences self-dealing and conflicts of interest which continue with respect to the Debtors and non-debtor affiliates relating to transfers and commingling of money and assets and the relationship of the Debtor and non-debtor affiliates to KFC.

- The gross mismanagement and incompetence of Debtors' management in these Cases is evidenced by the fact that both the Debtors and the business enterprise of which they are a part is now, and always has been, capable of generally paying its debts when due, rendering the filing of these Chapter 11 Cases only a further expression of a very long and sordid history of dilatory and frivolous litigation tactics calculated to frustrate the GE Entities' contractual rights and remedies to permit self-dealing to continue.

Accordingly, this Court should appoint a chapter 11 trustee over the estates so that a trustee, as a disinterested third-party, may operate the Debtors' business and objectively assess the options available to the Debtors and follow the course that most benefits the estates. The GE Entities believe that such an unbiased assessment will result in a sale of the Debtors' restaurants

as going concerns, or the continued operation of the Debtors' stores on a sound and business-like basis so as to pay the debts of the enterprise in full, with interest.

Alternatively, the GE Entities request that the Court appoint an examiner with powers to investigate and oversee the finances and operations of the Debtors. In particular, it is imperative that a disinterested party empowered by this Court be enabled to fully investigate the Debtors' financial condition and operations and transfers and commingling of money and assets, between Debtors and non-debtor affiliates (including affiliates that are not borrowers of the GE Entities but also operate large numbers of KFC restaurants).

**A.** **Appointment of a Chapter 11 Trustee is in the Interest of Creditors and the Estate**

Section 1102(a)(2) mandates a flexible approach directing the court to order the appointment of a trustee when it would serve the interests of the estate and its creditors, even absent any finding of fraud, dishonesty, incompetence, or gross mismanagement under Section 1104(a)(1). *See Nartron*, 330 B.R. at 592 ("Subsection (a)(2) creates a flexible standard which allows for appointment of a trustee, even though 'cause' may not exist, when so doing would serve the interests of creditors and the estate. Factors which justify appointment of a trustee under this subsection are highly diverse and in essence reflect the practical reality that a trustee is needed to manage the debtor's affairs."); *In re Bellevue Place Associates*, 171 B.R. 615, 623 (Bankr. N.D. Ill. 1994) ("The Court has particularly wide discretion under subsection (a)(2)."). The standard under subsection (a)(2) is lower than that under subsection (a)(1) and relief may even be granted absent any demonstration of wrongdoing such as fraud, dishonesty, incompetence, or gross mismanagement. *See In re Wings Digital Corp.*, 2005 WL 3789334, *5 (Bankr. S.D.N.Y. May 16, 2005).

Under Section 1104(a)(2), the court should examine such factors as:

(a) the trustworthiness of the debtor;

(b) the prospects for rehabilitation of the debtor under present management;

(c) the creditors' confidence, or lack thereof, in the present management; and

(d) whether a trustee could accomplish the goals of a chapter 11 plan more efficiently and effectively than the debtor-in-possession.

*In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 167-68; *see also In re Madison Management Group, Inc.*, 137 B.R. 275, 282 (Bankr. N.D. Ill. 1992); *In re Colorado-Ute Elec. Assoc., Inc.*, 120 B.R. 164, 176 (Bankr. D. Colo. 1990).

Each of the factors requires the appointment of a trustee in these Cases.

*Trustworthiness*

The Debtors' prepetition conduct, as well as the conduct of their affiliated management company and the principal of all entities, Zubair Kazi, demonstrates that these Debtors cannot be trusted to abide by their fiduciary duties to their creditors, thereby warranting the appointment of a trustee.

It is critical to note that the Debtors are but two pieces in a very large and profitable enterprise owned and/or controlled by Zubair Kazi, the second largest KFC franchisee in the country. At the top of this enterprise is a management company also owned by Zubair Kazi and based in the U.S. Virgin Islands where it enjoys exceptionally favorable tax treatment due to its status as an Economic Development Company.[4] The management company extracts a

---

[4] Significantly, but not altogether surprising to the GE Entities which have extensive experience with the Debtors, their affiliates and Zubair Kazi, the Debtors' filings are devoid of any mention of this affiliated management company despite the fact that at least $312,105.45 (calculated as precisely 5% of projected gross sales during the same period) is proposed to be paid to such entity during the interim period. See Cash Collateral Motion, Ex. B (line entry identified as "MGT. FEES").

"management fee" from all aspects of the enterprise in the amount of approximately 5% of gross sales resulting in millions of dollars annually being transferred to the U.S.V.I. for the benefit of Zubair Kazi. This relationship between the Debtors, the management company and Zubair Kazi gives rise to the GE Entities' distrust of the Debtors inasmuch as the senior secured debt due the GE Entities has remained completely unpaid for 14 months while the enterprise generated at least $8.5 million, and possibly $9.8 million, of EBITDA, or cash flow available for debt service.

In connection with the loans evidenced by the Florida Loan Agreement and the Michigan Loan Agreement, the respective borrowers entered into a subordination agreements with their affiliate Kazi Management VI, LLC ("KMVI"), in favor of the lender, whereby it was agreed that following the occurrence of an event of default under the respective loan agreement, any payment to the KMVI shall cease. The subordination agreements further provide that monies transferred in contravention of the subordination agreement, are to be held in trust for the GE Entities by KMVI.[5] As the Debtors' acknowledge in their bankruptcy filings, they have defaulted under the respective loan agreements. In fact, these defaults occurred no later than November 24, 2009 at which time the Debtors' were each advised of the default in writing. Subsequently, by letters dated June 11, 2010, The GE Entities demanded that subordinated payments to KMVI cease and be paid forthwith to the lender. These letters went without response and, as evidenced by the budgets attached to the Cash Collateral Motion, the Debtors continue to make payments to their affiliate notwithstanding the clear proscription against such transfers in the subordination agreements.

---

[5] Reference is made in this Motion to KMVI but, in fact, further corporate manipulations by Debtors' management is evidenced by the formation of Kazi Management St. Croix, LLC which is purported to have taken over management responsibilities of the Debtors and their non-debtor affiliates. These purported corporate shenanigans were never reported to the GE Entities, but ultimately disclosed in the course of state court litigation discovery. In any event, neither entity is named in Debtors' filings in this case.

The Debtors' own financial statements (FYE 12/31/2010), extracted by the GE Entities only after protracted state court litigation, show a reported EBITDA for the enterprise of at least $8.5 million and as much as $9.8 million if system-wide standards for KFC restaurants are applied. This cash flow available for debt service was, and is, more than sufficient to service the $60 million+ debt due the GE Entities, and at least $5 million of this 2010 revenue remains unaccounted for.

The Debtors have also failed to comply with one of the most basic requirements under the loan agreements – to provide their secured lenders with up-to-date and complete financial information and audit rights as expressly required by those agreements. Despite the GE Entities' demands for compliance with these basic obligations, it was not until months after litigation was commenced in New York, with respect to a New York affiliate, that meaningful documents were provided, and even these were provided only pursuant to state court order. The production was incomplete, is now outdated, and in any event largely unusable. Even today, financial information consisting of thousands, if not millions, of printed pages, has been provided only in hard copy or PDF format rendering it essentially unusable in circumstances where such records are maintained in the ordinary course on common accounting software which provides easy access to critical information. Therefore, it remains impossible for the GE Entities, their auditors or any third-party to verify or access the general ledgers and other accounting software-generated reports which might demonstrate the validity of bare bones financial statements and permit the tracing of monies by the Debtors and their non-debtor affiliates. "Dumping" reams upon reams of unusable financial data on a lender, under duress of a court order, is a far cry indeed from compliance with obligations to report financial conditions and make records available and strong evidence of impropriety and self-dealing.

Additionally, the backup documents that would be necessary to confirm the data presented, namely bank account records and third party invoices, were purportedly unavailable in electronic form of any kind and the lenders were "invited" to come to look at the documents in Kazi's offices. Unfortunately, some documents are in Hershey, Pennsylvania, others in Studio City California, and still others in either the U.S.V.I., St. Thomas or U.S.V.I., St. Croix. The fact that a single business enterprise with annual revenues approaching $200 million reports that its accounting records exist in geographically diverse locations is further evidence of likely fraud and self-dealing, but certainly gross mismanagement and incompetence.

No conclusion can be drawn from the actions and conduct of Debtors' management other than that these actions have been taken to delay their creditors from obtaining the benefit of their bargain and obfuscate the facts surrounding both their financial condition and the movement of funds between and among affiliated entities. All of this has been done so as to advance the interests of Zubair Kazi and does not warrant the trust of this Court, the GE Entities or any other constituency.

*Prospects for Rehabilitation of the Debtors Under Present Management*

For over 1 1/2 years, the Debtors and their affiliates have failed to engage in business-like exchanges of information and negotiations with the GE Entities to address their purported financial difficulties. With the same "captain at the helm" it is not foreseeable that the Debtors will be able to change course and come to any agreement with the GE Entities. Absent cooperation, the likelihood of reorganization under present management is very remote.

Additionally, the Debtors remain married to the KFC brand and completely inflexible to explore alternatives that might better serve their constituencies. This is not expected to change, however, as Zubair Kazi's substantial fortune is tied to his hundreds of KFC restaurants

throughout the United States. He, and therefore the Debtors, are not inclined to objectively assess whether the KFC flag should be removed from the Debtors' stores.

Accordingly, because of the Debtors' unwillingness to negotiate and inability to countenance a world without KFC, reorganization while the Debtors remain in possession is highly unlikely.

*Lack of confidence of the business community and of creditors in the present management*

It goes without saying that the GE Entities have absolutely no confidence in the Debtors' present management, but with good reason:

- Despite the Kazi enterprise having more than sufficient EBITDA to service its debt to the GE Entities, Kazi has not made a loan payment in nearly 14 months on any of the loans made by the GE Entities or their affiliates.

- Despite this nonpayment, the Debtors have continued to transfer millions of dollars to their affiliated management company in the U.S.V.I. in clear contravention of subordination agreements proscribing such transfers.

- The Debtors and their affiliates have not abided by their obligation to provide regular financial reporting to their lenders, creating a situation whereby the true financial condition of these Debtors cannot be ascertained. Indeed, it is believed that the 2009 audit of the Debtors and their affiliates is still not complete despite the retention of auditors almost a year ago.

- The CFO is a former attorney that does not have an accounting degree, much less is he a certified public accountant. This lack of qualification is demonstrated by the primitive budgets already submitted in these Cases which provide no transparency and are rife with unfamiliar terms under GAAP and rudimentary

> misspellings. Much, much more is required of the chief financial officer of an enterprise with well over $100 million of revenue and thousands of employees.
>
> - Monies transferred by the Debtors to their affiliated management company are comingled with monies of the management company and other affiliated entities, barring tracing and recovery of those monies that, in any event, should not be transferred to the management company post-default on the loans.

However, the GE Entities are apparently not the only major creditor that has lost confidence in the Debtors' management. KFC (f/k/a Kentucky Fried Chicken), in 2009, terminated a number of franchise agreements with the Kazi enterprise, affecting 45 restaurants in Michigan (all belonging to Kazi Michigan) and 7 other restaurants in Maryland and Pennsylvania belonging to affiliated entities. Instead of a license agreement which provides the licensee with greater rights, KFC has allowed these stores to remain open pursuant to a temporary agreement that is short in duration and likely not subject to assumption and assignment in bankruptcy. KFC's conduct speaks louder than any words could and serves as a clear pronouncement of even KFC's lack of confidence in management.

***Benefits Derived by the Appointment of a Trustee Balanced Against the Cost of the Appointment***

The appointment of a trustee will benefit parties in interest in three primary ways. Free of the conflicts now dominating the Debtors' management, a trustee will be able to (i) preserve enterprise value and devote EBITDA to its proper purpose -- the payment of debt in the contractual order of priority which includes, firstly, its secured lenders and, lastly, equity; (ii) objectively assess available business options, whether through sale of assets or by other means; and (iii) pursue litigation, especially as against the principal and affiliates, should the same be necessary or desirable. Such litigation may provide great benefit to the Debtors' constituencies,

but current management, as possible defendants, cannot be trusted to carry out their fiduciary duties to the estates and pursue any such claims. *See In re Euro-Am. Lodging Corp.*, 365 B.R. 421, 428 (Bankr. S.D.N.Y. 2007) (trustee should be appointed under Section 1104(a)(2) to protect creditors when a debtor-in-possession has a material conflict of interest).

While some additional costs will be incurred to compensate a trustee and his/her counsel, the elimination of the flat 5% management fee which the Debtors have the continued temerity to propose to pay will counterbalance this expense.

**B.     Alternatively, Cause Exists for the Appointment of a Chapter 11 Trustee**

Section 1104(a)(1) provides a non-exclusive list of situations in which a chapter 11 trustee must be appointed for cause. That list includes fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management… or similar cause." 11 U.S.C. 1104(a)(1); *In re Nartron Corp.*, 330 B.R. 573, 592 (Bankr. W.D. Mich. 2005) (citations omitted) ("The inquiry into whether 'cause' exists is not limited to the enumerated list of fraud, dishonesty, incompetence or gross mismanagement, but extends to 'similar cause.'"). The Nartron court conducted a review of appellate decisions and distilled the following list of "commonalities" for cause to appoint a trustee under Section 1104(a)(1):

(a) materiality of misconduct;

(b) even handedness or lack thereof in dealings with insiders and affiliated entities in relation to other creditors or customers;

(c) the existence of pre-petition voidable preferences or fraudulent transfers;

(d) unwillingness or inability of management to pursue estate causes of action;

(e) conflicts of interest on the part of management interfering with its ability to fulfill fiduciary duties to the debtor; and

(f) self dealing or waste or squandering of corporate assets.

*Id.*; *see also In re Veblen West Dairy LLP*, 434 B.R. 550 (Bankr. D. S.D. 2010) (applying the *Nartron* court's "factors" and finding cause for appointment of a trustee).

The facts and circumstances described above under the "interest of creditors" test are equality applicable to a showing of the requisite "cause" to appoint a trustee under Section 1104(a)(1) and therefore are incorporated here. Addressing the factors articulated in Nartron, however, gives added support for such an appointment.

*Materiality*

The conduct described above demonstrates that the Debtors and their management are incapable of meeting their fiduciary duties as debtors-in-possession. This is the most important aspect of being a debtor-in-possession and therefore the managerial infirmities discussed are material to the issue of whether this Court should find cause to appoint a trustee. *See Bellevue Place Assocs.*, 171 B.R. at 623 ("Chief among [the duties vested in a debtor-in-possession] is a *fiduciary* [duty] to all of its creditors and equity security holders.").

*Lack of Evenhandedness in Dealings with Insiders and Affiliated Entities in Relation to Other Creditors or Customers*

The Debtors, as well as the non-Debtor affiliates that comprise the Kazi business enterprise, have acted solely for the benefit of their common principal, Zubair Kazi, and to the detriment of their secured lenders and others. Amazingly, the borrowers have failed in the last 14 months to make a single payment on the very loans that enabled Zubair Kazi to create a significant portion of his KFC empire, while continuing to transfer money to Zubair Kazi through his wholly-owned management company in the U.S.V.I., in clear contravention of subordination agreements executed by Zubair Kazi on behalf of both the borrowers and his

- 16 -
11-43971-tjt    Doc 34-2    Filed 02/21/11    Entered 02/21/11 17:20:01    Page 16 of 20

management company. Despite a demand to cease such transfers and, in the case of the New York affiliate, a state court order directing the cessation of such activity, it is apparent from their own filings in these Cases that the Debtors not only continue to breach the terms of the subordination agreements but now are asking this Court to bless such conduct. There is no likelihood that these Debtors will not continue to favor their affiliates and principal to the detriment of their creditors, and indeed, the non-debtor affiliates which are borrowers from the GE Entities continue to do so.

***The Existence of Pre-petition Voidable Preferences or Fraudulent Transfers and Unwillingness or Inability of Management to Pursue Estate Causes of Action***

That substantial transfers have been made by these Debtors to affiliates, including Zubair Kazi's management company, is undeniable. Equally undeniable, however, is the fact that this Court and the Debtors' constituencies should not expect that these transfers will be investigated and prosecuted, as needed, by present management. Similarly, in *Veblen West Dairy*, the court noted that, even though insufficient evidence of continued postpetition dealings between the debtor-in-possession and its affiliated entities existed, the debtor's failure to adequately explain suspicious prepetition dealings and the existence of possible preference and fraudulent transfer claims against these affiliated entities would necessitate a thorough evaluation by an independent entity. Accordingly, that court found that sufficient "cause" existed for the appointment of trustee. *Veblen West Dairy LLP*, 434 B.R at 555. These factors warrant the installation of a disinterested third party to investigate all transfers and pursue appropriate litigation for the benefit of the estates, as necessary.

- 17 -
11-43971-tjt    Doc 34-2    Filed 02/21/11    Entered 02/21/11 17:20:01    Page 17 of 20

***Conflicts of Interest On the Part of Management Interfering with its Ability to Fulfill Fiduciary Duties to the Debtors***

First, management, such as it is, is through an affiliated entity that has historically engaged in questionable conduct including the wrongful transfer of funds from the Debtors and their non-Debtor affiliates to itself. It is completely unrealistic to believe that this same management will act in the best interests of the Debtors and their estates when such action will be contrary to the interests of management. Similarly, it is highly unlikely that Zubair Kazi will permit these Debtors to explore alternatives to the KFC brand or engage in arms-length negotiations with KFC since the remainder of his empire is under KFC's control. It is a matter of industry knowledge that the KFC brand is flagging and, as reflected in Debtors' filings, their obligations to KFC are proving more onerous than the brand is worth. Nonetheless, with present management in place, there will be no consideration of alternative use of these assets for the simple reason that Zubair Kazi owes a great deal of his considerable wealth to his KFC empire which includes over two hundred KFC restaurants. This inability to satisfy fiduciary duties to the Debtors requires that management be removed and a trustee appointed.

***Self Dealing or Waste or Squandering of Corporate Assets***

The Debtors' continued relationship with its affiliated management company evidences self dealing as Zubair Kazi is essentially causing money to go from one pocket to another under the guise of (impermissible) management fees. Court-ordered discovery, and an audit of the books and records of the GE Entities' borrowers will reveal the extent of self-dealing, commingling and waste which these Debtors and their affiliates have successfully concealed for more than a year.

**C. In the Alternative, if a Trustee is not Appointed, a Chapter 11 Examiner Should be Appointed**

Should the Court determine that appointment of a trustee is not warranted at this juncture, the GE Entities request that the Court appoint an examiner with expanded powers to investigate and oversee the finances of the Debtors and to investigate fully inter-company transfers made within the Kazi business enterprise.

Section 1104(c) allows the court to appoint an examiner in cases in which it is determined that a trustee would not be in the interests of creditors and the estate:

> "If the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, if—
>
> (1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; or
>
> (2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

11 U.S.C. § 1104(c)[6].

Section 1104(c)(1) provides that a court *shall* order the appointment of an examiner "if such appointment is in the interest of creditors, any equity security holders, and other interests of the estate." Although the language of Section 1104(c)(1) is identical to that of Section 1104(a)(2) regarding the appointment of a trustee, because the Bankruptcy Code favors allowing a debtor to remain in possession, the requirements for an examiner, as applied, are somewhat

---

[6] The Debtors have not provided sufficient information through their filings with the Court for the GE Entities to ascertain whether the criteria for Section 1104(c)(2) is satisfied. To the extent such criteria is later found to have been met, the GE Entities reserve all rights to seek relief under this subsection.

more relaxed than the requirements for a trustee. *See* COLLIER ON BANKRUPTCY ¶ 1104.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

The conduct of the Debtors, their management and principal described above in support of the GE Entities' request for a chapter 11 trustee demonstrates that it is "in the interests of creditors, any equity security holders, and other interests of the estate." There are significant questions to be answered with respect to why the Debtors have neglected to pay certain creditors while favoring others, particularly insiders, and, absent the appointment of a trustee, an examiner should be appointed to conduct a comprehensive investigation of the Debtors' affairs.

## CONCLUSION

For the foregoing reasons, the GE Entities' motion should be granted.

Dated: February 21, 2011
Detroit, Michigan

**PLUNKETT COONEY**

By: /s/ David A. Lerner
David A. Lerner
38505 Woodward Ave., Suite 2000
Bloomfield Hills, MI 48304
Telephone: (248) 901-4000
Facsimile: (248) 901-4040
dlerner@plunkettcooney.com

-and-

**REED SMITH LLP**

Alexander Terras
10 South Wacker Drive, 40th Floor
Chicago, IL 60606
Telephone: (312) 207-1000
Facsimile: (312) 207-6400
aterras@reedsmith.com