UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| KAZI FOODS OF MICHIGAN, INC. *et al.*[1] | ) | Case No. 11-43971 |
| | ) | *(jointly administered)* |
| Debtors. | ) | |
| | ) | Judge Thomas J. Tucker |
| | ) | |

## DEBTORS' RESPONSE TO MOTION OF GE CAPITAL COMMERCIAL, INC. AND COLONIAL PACIFIC LEASING CORPORATION TO APPOINT CHAPTER 11 TRUSTEE OR EXAMINER

NOW COME the above-captioned debtors and debtors in possession (collectively, the "Debtors") by and through their counsel, McDonald Hopkins PLC, and file their response to *Motion of GE Capital Commercial, Inc. and Colonial Pacific Leasing Corporation to Appoint Chapter 11 Trustee or Examiner* ("Motion to Appoint Trustee"). Based upon Debtors' brief in response to Motion to Appoint Trustee (attached as Exhibit A), Debtors respectfully request that this honorable Court deny the Motion to Appoint Trustee.

WHEREFORE Debtors respectfully request that this honorable Court deny the GE Entities Motion to Appoint Trustee.

**[Space Intentionally Blank]**

---

[1] Debtors include Kazi Foods of Michigan, Inc. Case No. 11-43971 and Kazi Foods of Florida, Inc. Case No. 11-43986.

{2622620:4}

Respectfully submitted,

MCDONALD HOPKINS PLC


/s/ Jayson B. Ruff
Stephen M. Gross (P35410)
Jayson B. Ruff (P69893)
Jason L. Weiner (P74120)
McDONALD HOPKINS PLC
39533 Woodward Avenue
Suite 318
Bloomfield Hills, MI 48304
Telephone: (248) 646-5070
Facsimile: (248) 646-5075
E-mail: sgross@mcdonaldhopkins.com
jruff@mcdonaldhopkins.com
jweiner@mcdonaldhopkins.com

Dated: March 7, 2011

PROPOSED COUNSEL FOR THE DEBTORS
AND DEBTORS-IN-POSSESSION

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| KAZI FOODS OF MICHIGAN, INC. *et al.*[1] ) | Case No. 11-43971 |
| ) | *(jointly administered)* |
| Debtors. ) | |
| ) | Judge Thomas J. Tucker |
| ) | |

**BRIEF IN SUPPORT OF DEBTORS' RESPONSE
TO MOTION OF GE CAPITAL COMMERCIAL, INC. AND
COLONIAL PACIFIC LEASING CORPORATION TO APPOINT
CHAPTER 11 TRUSTEE OR EXAMINER**

## BACKRGROUND

On February 17, 2011 (the "Petition Date"), the above captioned debtors and debtors in possession (collectively, "Debtors") each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court. On February 21, 2011, GE Capital Commercial, Inc. ("GE Capital") and Colonial Pacific Leasing Corporation ("Colonial," and together with GE Capital, the "GE Entities") filed their *Motion of GE Capital Commercial, Inc. and Colonial Pacific Leasing Corporation to Appoint Chapter 11 Trustee or Examiner* ("Motion to Appoint Trustee") (Docket No. 34). On February 22, 2011, at the date and time set for the First Day Motions of the Debtors, this honorable Court granted an *Order Authorizing the Joint Administration of the Debtors' Chapter 11 Cases* (Docket No. 38).

On February 22, 2011, this honorable Court also granted the *Order Authorizing Continued Use of Prepetition Cash Management Systems, Bank Accounts and Business Forms* ("Cash Management Order") (Docket No. 40). In the Cash Management Order, this Court authorized Laura A. Marcero ("Ms. Marcero") of Huron Consulting Services ("Huron"), as Chief

---

[1] Debtors include Kazi Foods of Michigan, Inc. Case No. 11-43971 and Kazi Foods of Florida, Inc. Case No. 11-43986.

{2622620:4}

Restructuring Officer ("CRO") of the Debtors, and as authorized signatory of all Bank Accounts of the Debtors, effective immediately. The Cash Management Order also required the immediate removal of prior management, Zubair Kazi and Shambhu Acharya, as authorized signatories on the Bank Accounts and prohibited them from having individual access to those Bank Accounts. In addition, the Cash Management Order prohibited the making of any payments or other disbursements from the Bank Accounts to affiliated entities of the Debtors absent the consent of GE and/or Colonial Pacific Leasing Corporation, or as otherwise authorized by order of this Court.

Furthermore on February 22, 2011, both counsel for the Debtors and the GE Entities drafted, and this honorable Court entered, the *Interim Order Granting Expedited Relief and (A) Authorizing Use of Unencumbered Cash or, in the Alternative, Cash Collateral and (B) Granting Adequate Protection* ("Cash Use Order") (Docket No. 41). This Cash Use Order is empowered largely by the Cash Management Order, which requires the consent by the CRO, GE and/or Colonial Pacific Leasing Corporation (or otherwise Court order) prior to making any payment or disbursement from the Bank Accounts, so Debtors may continue to operate their business in the ordinary course through April 4, 2011. The primary impetus for the GE Entities' Motion to Appoint Trustee was the Debtors' prepetition cash management, and their erroneous belief that there would not be any material change in cash management post-petition. As discussed above, and will be discussed further below, many of the GE Entities' concerns are meritless based on (i) the retention of and control granted to the CRO, (ii) the Cash Management Order and, (iii) as drafted by both counsel for the Debtors and the GE Entities, the Cash Use Order. Pursuant to the foregoing, the Debtors can only make payments or other disbursements as directed by the CRO,

according to approved Budgets, and with the consent of GE and/or Colonial Pacific Leasing Corporation or otherwise by Court Order.

## ARGUMENT

### A. DEBTORS SHOULD REMAIN IN POSSESSION OF THE ESTATE BECAUSE APPOINTMENT OF A TRUSTEE IS AN EXTRAORDINARY REMEDY

Generally in chapter 11, the appointment of a trustee is an extraordinary remedy and should be the exception, rather than the rule. In re Eurospark Industries, Inc., 424 B.R. 621, 627 (Bankr.E.D.N.Y.,2010) (citations omitted). In fact, the Bankruptcy Code generally permits chapter 11 debtors to remain in control of their assets and business operations. Id., citing In re Adelphia Commc'ns. Corp., 336 B.R. 610, 655 (Bankr.S.D.N.Y.2006). "In the usual chapter 11 proceeding, the debtor remains in possession throughout reorganization because 'current management is generally best suited to orchestrate the process of rehabilitation for the benefit of creditors and other interests of the estate.'" In re Marvel Entertainment Group, Inc., 140 F.3d 463, 471 (C.A.3 (Del.),1998) (citing In re V. Savino Oil & Heating Co., 99 B.R. 518, 524 (Bankr.E.D.N.Y.1989)). The Marvel Entertainment Court continued, and stated:

> Thus, the bases for the strong presumption against appointing an outside trustee is that there is often no need for one: "The debtor-in-possession is a fiduciary of the creditors and, as a result, has an obligation to refrain from acting in a manner which could damage the estate, or hinder a successful reorganization." *Petit v. New England Mort. Servs., 182 B.R. 64, 69 (D.Me.1995)* (internal quotations omitted). The **strong presumption** also finds its basis in the debtor-in-possession's usual familiarity with the business it had already been managing at the time of the bankruptcy filing, often making it the best party to conduct operations during the reorganization. *See Sharon Steel, 871 F.2d at 1226.* (emphasis added).

Marvel Entertainment Group, 140 F.3d, at 471.

The Debtors filed their chapter 11 proceedings to create "the essential breathing room ... [so that they could] restructure [their] affairs with [their] creditors and reorganize into [...] viable entit[ies]." Matter of Baldwin-United Corp., 48 B.R. 901, 902 (Bkrtcy.Ohio, 1985). This honorable Court should find, as the Marvel Entertainment Court did, that Debtors' post-petition management, under Huron with Ms. Marcero at the helm and as will be further discussed below, is best suited to orchestrate the process of rehabilitation for the benefit of creditors and other interests of the estate. The Court should note that Stephen Poludniak ("Poludniak") has agreed to resign as Chief Financial Officer ("CFO") for both of Debtors' entities in this case. Kris Horner ("Mr. Horner"), Director at Huron's Dallas office, is acting as the Debtors' interim Chief Financial Officer ("CFO") until a permanent replacement can be identified. Although the GE Entities allege that the Debtors' prepetition conduct demonstrated gross mismanagement and incompetence, the Debtors' pre-petition management did not have a duty to creditors as it does now, and its alleged pre-petition actions protecting the shareholders' interests are largely irrelevant given the foregoing actions taken by the Debtors to remove prior management and control of post-petition operations.

Outside of bankruptcy, the directors of a company owe a fiduciary duty to the equity interest of the company, such as the shareholders or members. "A director of a corporation occupies a fiduciary relation to it and its stockholders. His position is one of trust and he is frequently denominated a trustee and so held accountable in equity." Ashman v. Miller, 101 F.2d 85, 90-91 (C.A.6, 1939).

Even in the "zone of insolvency," directors of a company continue to owe their fiduciary duty to the equity interest of the company, not to the creditors. In North American Catholic Educational Programming Foundation, Inc v. Gheewalla, 930 A.2d 92, 103 (Del.Supr.,2007), the

{2622620:4}                                    4
11-43971-tjt   Doc 64   Filed 03/07/11   Entered 03/07/11 14:14:19   Page 7 of 15

Supreme Court of Delaware held that "individual *creditors* of an *insolvent* corporation have *no right to assert direct* claims for breach of fiduciary duty against corporate directors." (emphasis original). The Gheewalla Court also held that "no direct claim for breach of fiduciary duties may be asserted by the creditors of a *solvent* corporation that is operating in the zone of insolvency. When a solvent corporation is navigating in the zone of insolvency, the focus for Delaware directors does not change: directors must continue to discharge their fiduciary duties to the corporation and its shareholders...." Id., at 101 (emphasis added). The Gheewalla Court cited to the Court of Chancery's reliance upon several definitions of "zones of insolvency" but ultimately concluded that "[o]ur holding in this opinion...makes it unnecessary to precisely define a "zone of insolvency." Id., at 98.

The Debtors are keenly aware that once a corporation becomes a debtor under chapter 11, its directors and management are no longer allowed to pursue the former narrow interests of shareholders but have broader fiduciary obligations which encompass all aspects of the reorganization and all of the different constituencies. *See* In re Baldwin-United Corp., 43 B.R. 443, 459 (S.D. Ohio 1984). It is primarily for this reason that the Debtors have sought Court approval to employ a CRO. The Debtors have proactively taken steps to ensure that the Debtors' estates are preserved for the benefit of all constituencies involved, including the GE Entities.

Since these chapter 11 proceedings have merely begun and there is no track record, or any evidence or allegation made by the GE Entities, of Debtors breaching their fiduciary duties to their creditors or their estates since the Petition Date, the Debtors should be permitted to have the requisite "essential breathing room" as chapter 11 debtors, and should remain in control of their assets to act in accordance with their rights and duties as debtors. Since filing their voluntary petitions, the Debtors have acted, and continue to act, with the creditors' and the

estates' best interests in mind, and the GE Entities have given no reason why the general rule of allowing Debtors, through the CRO, to remain in control of their assets should not be followed.

B.  **NO CAUSE EXISTS FOR THE APPOINTMENT OF EITHER A CHAPTER 11 TRUSTEE OR A CHAPTER 11 EXAMINER BECAUSE LAURA A. MARCERO, OF HURON CONSULTING SERVICES LLC, IS CHIEF RESTRUCTURING OFFICER OF THE DEBTORS**

It is the Court's primary obligation to ensure that the Debtors' estates are operated and administered for the benefit of all creditors and equity interest holders consistent with the Bankruptcy Code. In re Blue Stone Real Estate, Construction & Development Corporation, et al., 392 B.R. 897, 906 (M.D. Florida, 2008). The Blue Stone case is very similar to this case. In Blue Stone, the debtors filed an emergency motion for an order authorizing retention of a certified public accountant as chief restructuring officer in their jointly administered cases, which the United States Trustee ("UST") and two secured creditors opposed. Blue Stone, 392 B.R. 897, 901. The UST and both secured creditors argued that the chief restructuring officer would be controlled or directed by the principal and that the principal would be able to hide assets or documents. Id. The chief restructuring officer's engagement was proposed by counsel to the debtors in the exercise of their fiduciary duty to the debtors' estates and creditors.

After considering the motion, the arguments and the record, the Blue Stone Court found "that the relief requested in the CRO Motion is necessary and appropriate, the CRO Motion is well taken and should be granted in accordance with the terms and conditions set forth [therein]." Id., at 907. The Court further found, among other things, that the proposed chief restructuring officer was well qualified to perform and assume the duties of CRO, that the CRO and his firm were independent of the debtors and had no prior dealings with the debtors or their principals,

and that all creditors present at the hearing, although not all agreeing to the retention of a CRO, concurred that he was well qualified to assume the responsibilities of CRO. Id.

It is imperative to ensure that the enterprise value of the Debtors' business is protected, and that payments are made to the Debtors' creditors pursuant to, and in order of, contract and statutory rights. (Docket No. 34-2, 6:28-7:1-2). As contemplated by the Bankruptcy Code, the debtor is usually just as capable as a trustee to ensure value and make the requisite payments to creditors. The Blue Stone Court stated that:

> A debtor in possession operating in Chapter 11 is not conducting "business as usual" during the time between the commencement [] of the case and its emergence from bankruptcy as a reorganized debtor....The Bankruptcy Code is laden with express requirements of and limitations on business operations of a debtor in possession, not to mention discretionary requirements and limitations that may be imposed by the bankruptcy court where permitted. As touched on above, section 1107(a) specifically contemplates the use of the court's discretion in the context of what a debtor in possession must do or cannot do because it states that *"[s]ubject...to the limitations or conditions as the court prescribes,* a debtor in possession shall have all the rights...and powers...of a trustee serving in a case under this chapter."

Id., at 903, citing 11 U.S.C. § 1107(a). (emphasis original).

The Blue Stone Court further discussed that a debtor in possession is *already* the functional equivalent of a Chapter 11 trustee because [section 1107(a)] *"places a debtor in possession in the shoes of a trustee in every way."* Blue Stone, 392 B.R., at 904, citing Senate Report No. 95-989, 95th Cong., 2d Sess. (1978), U.S.Code Cong. & Admin. News 1978 at 5787, 5902 (emphasis original). The Blue Stone Court noted that "[n]o party in interest was able to identify any power possessed by a Chapter 11 trustee that would not be available or could not be made available under section 1107(a)—concerning the rights, powers, and duties of a debtor in

{2622620:4}                                7
11-43971-tjt    Doc 64    Filed 03/07/11    Entered 03/07/11 14:14:19    Page 10 of 15

possession—to a CRO whose engagement was authorized by an order of this Court to act on behalf of a debtor in possession." Id., at 902.

If a motion to appoint a trustee has been made, then section 1104(a)(1) compels the Court to "examine the integrity of the **new** management." Blue Stone, 392 B.R., at 905, citing In re The 1031 Tax Group, LLC, 374 B.R. 78, 89 n. 11 (Bankr.S.D.N.Y.2007) (emphasis added). In our case, Debtors have proactively sought approval by this Court, pursuant to Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 6003, to employ and retain Ms. Marcero, Managing Director at Huron, as CRO for the Debtors in their *Amended Application of the Debtors Pursuant to 11 U.S.C. §§327, 328, and 1107(b) and Fed. R. Bankr. P. 2014 to Employ and Retain Laura A. Marcero of Huron Consulting Services LLC as Chief Restructuring Officer for the Debtors-in-Possession* ("Application to Employ Marcero") (Docket No. 48). Ms. Marcero was selected by the Debtors because of her expertise in cash management, and her extensive experience and substantial knowledge in restructuring management and services. Ms. Marcero has 15 years of restructuring and transaction experience in a broad range of industries including stamping, plastics, die-casting, steel processing, fasteners, and tool and die, to transportation, information technology services, insurance, engineering, document management, retail, school districts, food processing, private equity, publishing, construction, and investment banking. She has a Bachelor of Business Administration, she is a Certified Public Accountant, and a Certified Insolvency & Restructuring Advisor. It is clear that Ms. Marcero has the expertise and in-depth comprehension of finance and accounting necessary to act as CRO in this case.

Additionally, Ms. Marcero will be working with individuals at Huron who are experts in restaurant franchise restructuring. Ms. Marcero's expertise in cash management combined with other Huron experts in the field of restaurant franchise restructuring creates an indisputable

recipe for a successful reorganization of the Debtors. Ms. Marcero and Huron have also demonstrated their absolute disinterestedness. (Docket No. 48). Plainly, Ms. Marcero possesses the ideal skill set and uncontroverted integrity, both of which are critical to a successful restructuring for the Debtors.

Although entry of an order granting Ms. Marcero's employment is still pending, this honorable Court has already authorized Ms. Marcero to *act* as "new management." At the hearing on the First Day Motions, this Court authorized Ms. Marcero, as CRO of the Debtors, to be an authorized signatory of all Bank Accounts of the Debtors, effective immediately. (Docket No. 40, 2:6-7). Effective contemporaneously was this honorable Court's authorization for the removal of Zubair Kazi and Shambhu Acharya as signatories on those same Bank Accounts (Docket No. 40, 2:7-8), leaving Ms. Marcero as the sole signatory to the Debtors' Bank Accounts. Additionally, before any payments or disbursements to affiliated entities of the Debtors can be made from the Bank Accounts, the same Order requires the consent of GE and/or Colonial Pacific Leasing Corporation or order of the Court. (Docket No.40, 2:10-13). The U.S. Trustee's *Statement of Consent to Entry of Order* Granting Application to Employ Marcero (Docket No. 53) further evinces Ms. Marcero's integral role in this reorganization.

The GE Entities' Motion to Appoint Trustee focuses on trustworthiness, prospects for rehabilitation, and ability of a trustee to accomplish the goals of a chapter 11 plan more efficiently and effectively than the Debtors. As alluded to by the GE Entities in their Motion to Appoint Trustee, generating cash is not the problem. The problem is that the "GE Entities have remained completely unpaid for 14 months while the enterprise generated at least $8.5 million, and possibly $9.8 million, of EBITDA, or cash flow available for debt service." (Docket No. 34-2, 10:5-6). These concerns are now *clearly* moot because they are addressed by the employment

of Ms. Marcero as the CRO. The GE Entities filed their Motion to Appoint a Trustee so that "a disinterested third-party...may operate the Debtors' business and objectively assess the options available to the Debtors and follow the course that most benefits the estates." (Docket No.34-2, 7:20-21). Ms. Marcero's already-substantial involvement in the role of CRO, as a dedicated and disinterested third-party who is not an insider of the management of Debtors or any of their affiliates, directly addresses this concern.

As evidenced by their stipulation to the Cash Management Order, the GE Entities *have* confidence in Ms. Marcero's ability to manage and preserve cash. Although confident in Ms. Marcero's abilities, the GE Entities are presumably still concerned by the fact that the Board of Directors controls Ms. Marcero. It is imperative that the GE Entities remember, as discussed above, that section 1107(a) of the Bankruptcy Code states that "'*[s]ubject...to the limitations or conditions as the court prescribes,* a debtor in possession shall have all the rights...and powers...of a trustee serving in a case under this chapter.' 11 U.S.C. § 1107(a) (emphasis [original]). Accordingly, the Bankruptcy Code contemplates that the state law powers of a corporation's board of directors can be altered while the corporation is a debtor in bankruptcy." Blue Stone, 392 B.R., at 903. The Blue Stone Court concluded that "the plain meaning of section 1107(a) permits the Court to alter the power of the [d]ebtors' board of directors...and impose requirements that will alleviate any concern, however unfounded, of a party in interest that [the]...CRO will be some toady or crony of [the debtors' principal] instead of an independent professional with absolute control over the debtors." Id. This honorable Court should conclude, as did the Blue Stone Court, that it possesses the ability, by virtue of section 1107(a), to alter the power of the Debtors' board of directors, and impose requirements that will alleviate any of the GE Entities' concerns, however unfounded, that Ms. Marcero will be some toady or crony of

{2622620:4}                                   10
11-43971-tjt    Doc 64    Filed 03/07/11    Entered 03/07/11 14:14:19    Page 13 of 15

Zubair Kazi instead of an independent professional with absolute control over the Debtors. Furthermore, the Debtors are willing to provide in the Order granting Application to Employ Marcero that she not be subject to decisions of, or termination by, the Debtors' Board of Directors absent an Order of the Court.

The GE Entities focus much of their Motion to Appoint a Trustee on the factors which justify appointment of a trustee. (Docket No. 34-2, 9:1-7); citing In re Ionosphere Clubs, Inc., 113 B.R. 164, 167-68. They argue that Debtors' prepetition conduct demonstrates an inability to be trusted. Any worry that Debtors will transfer funds is really much ado about nothing because of this Court's entry of the Cash Management Order and the Cash Use Order. As discussed above, if a motion to appoint a trustee is made, the Court must examine the integrity of the **new** management. Immediately after filing, the Debtors sought to reorganize their management team by the inclusion of a CRO to ensure a swift reorganization for the benefit of their creditors and the estates. Ms. Marcero, as the CRO of the Debtors, has demonstrated, and will continue to demonstrate, that she is a trustworthy, reputable, and disinterested third party. Furthermore, with the aid of Ms. Marcero as an expert in cash management, and other Huron experts in restaurant franchise reorganizations, Debtors are well poised to accomplish the goals of a chapter 11 plan as efficiently and effectively as any trustee. This honorable Court should find, as did the Blue Stone Court, that all powers possessed by a chapter 11 trustee would be available, or could be made available, under §1107(a)—concerning the rights, powers, and duties of a debtor in possession—to Ms. Marcero as the Debtors' CRO.

## CONCLUSION

The GE Entities can neither point to nor allege any post-petition actions by the Debtors, since the expansion of the Debtors' fiduciary duties which now include all creditors and the

estates, that would warrant the appointment of a chapter 11 trustee or examiner. Such an action would be an extraordinary remedy and, as is generally the case, Debtors' **new** management is best suited to orchestrate the process of rehabilitation for the benefit of Debtors' creditors and other interests of the estates. Debtors' have proactively sought employment of a CRO well respected, and experienced, in business restructuring. The **new** management under Ms. Marcero as CRO, coupled with the Cash Management Order and the Cash Use Order, completely addresses the concerns raised by the GE Entities leaving moot the request for an appointment of a chapter 11 trustee or examiner

WHEREFORE Debtors respectfully request that this honorable Court deny the GE Entities Motion to Appoint Trustee.

Respectfully submitted,

MCDONALD HOPKINS PLC

/s/ Jayson B. Ruff
Stephen M. Gross (P35410)
Jayson B. Ruff (P69893)
Jason L. Weiner (P74120)
McDONALD HOPKINS PLC
39533 Woodward Avenue
Suite 318
Bloomfield Hills, MI 48304
Telephone: (248) 646-5070
Facsimile: (248) 646-5075
E-mail: sgross@mcdonaldhopkins.com
jruff@mcdonaldhopkins.com
jweiner@mcdonaldhopkins.com

PROPOSED COUNSEL FOR THE DEBTORS
AND DEBTORS-IN-POSSESSION

Dated: March 7, 2011