UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| KAZI FOODS OF MICHIGAN, INC. *et al.*[1] ) | Case No. 11-43971 |
| ) | *(jointly administered)* |
| Debtors. ) | |
| ) | Judge Thomas J. Tucker |
| ) | |

# DEBTORS' RESPONSE TO
# GE ENTITIES' MOTION TO CONDITION THE DEBTORS' USE, SALE OR LEASE OF COLLATERAL AND PROCEEDS IN THE ABSENSE OF ANY ADEQUATE PROTECTION OF THE GE ENTITIES' PERFECTED SECURITY INTERESTS

NOW COME the above-captioned debtors and debtors in possession (collectively, the "Debtors") by and through their counsel, McDonald Hopkins PLC, and for their response to *GE Entities' Motion to Condition the Debtors' Use, Sale or Lease of Collateral and Proceeds in the Absence of Any Adequate Protection of the GE Entities' Perfected Security Interests* ("Adequate Protection Motion"), rely on the *Brief in Support of Debtors' Response to GE Entities' Motion to Condition the Debtors' Use, Sale or Lease of Collateral and Proceeds in the Absence of Any Adequate Protection of the GE Entities' Perfected Security Interests* (attached as Exhibit A).

WHEREFORE Debtors respectfully request that this honorable Court deny the Adequate Protection Motion.

**[Space Intentionally Blank]**

---

[1] Debtors include Kazi Foods of Michigan, Inc. Case No. 11-43971 and Kazi Foods of Florida, Inc. Case No. 11-43986.

{2627762:5}

Respectfully submitted,

MCDONALD HOPKINS PLC


/s/ Jayson B. Ruff
Stephen M. Gross (P35410)
Jayson B. Ruff (P69893)
Jason L. Weiner (P74120)
McDONALD HOPKINS PLC
39533 Woodward Avenue
Suite 318
Bloomfield Hills, MI 48304
Telephone: (248) 646-5070
Facsimile: (248) 646-5075
E-mail: sgross@mcdonaldhopkins.com
jruff@mcdonaldhopkins.com
jweiner@mcdonaldhopkins.com

Dated: March 7, 2011

PROPOSED COUNSEL FOR THE DEBTORS
AND DEBTORS-IN-POSSESSION

# **EXHIBIT A**

{2627762:5}

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| KAZI FOODS OF MICHIGAN, INC. *et al.*[1] | ) | Case No. 11-43971 |
| | ) | *(jointly administered)* |
| Debtors. | ) | |
| | ) | Judge Thomas J. Tucker |
| | ) | |

## BRIEF IN SUPPORT OF DEBTORS' RESPONSE TO GE ENTITIES' MOTION TO CONDITION THE DEBTORS' USE, SALE OR LEASE OF COLLATERAL AND PROCEEDS IN THE ABSENSE OF ANY ADEQUATE PROTECTION OF THE GE ENTITIES' PERFECTED SECURITY INTERESTS

On February 17, 2011 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court. On February 21, 2011, GE Capital Commercial, Inc. ("GE Capital") and Colonial Pacific Leasing Corporation ("Colonial," and together with GE Capital, the "GE Entities") filed their *GE Entities' Motion to Condition the Debtors' Use, Sale or Lease of Collateral and Proceeds in the Absence of Any Adequate Protection of the GE Entities' Perfected Security Interests* ("Adequate Protection Motion"). On February 22, 2011, at the hearing on the Debtors' First Day Motions, this honorable Court granted an Order Authorizing the Joint Administration of the Debtors' cases (Docket No. 38).

Also on February 22, 2011, this honorable Court granted the *Order Authorizing Continued Use of Prepetition Cash Management Systems, Bank Accounts and Business Forms* ("Cash Management Order") (Docket No. 40). In the Cash Management Order, this Court authorized Laura Marcero ("Ms. Marcero") of Huron Consulting Services, LLC ("Huron") as Chief Restructuring Officer ("CRO") of the Debtors and as an authorized signatory of all Bank

---

[1] Debtors include Kazi Foods of Michigan, Inc. Case No. 11-43971 and Kazi Foods of Florida, Inc. Case No. 11-43986

{2627762:5}

Accounts of the Debtors, effective immediately. The Cash Management Order also required the immediate removal of prior management, Zubair Kazi and Shambhu Acharya, as authorized signatories on the Bank Accounts and prohibited them from having individual access to those Bank Accounts. In addition, the Cash Management Order prohibited the making of payments or other disbursements from the Bank Accounts to any affiliated entities of the Debtors absent the consent of GE and/or Colonial Pacific Leasing Corporation or otherwise by order of the Court.

Furthermore on February 22, 2011, the GE Entities stipulated to, and this honorable Court entered, the *Interim Order Granting Expedited Relief and (a) Authorizing Use of Unencumbered Cash or, in the Alternative, Cash Collateral and (a) Granting Adequate Protection* ("Cash Use Order") (Docket No. 41). The Cash Use Order, which was drafted both by counsel for Debtors and by counsel for the GE Entities, also authorized Debtors to use the cash generated by the operation of their businesses to continue to operate their businesses in the ordinary course of business through April 4, 2011, consistent with the Budget (as defined in the Cash Use Order), as amended by the Debtors' CRO and as may be amended in the future with the agreement of the GE Entities. The Cash Use Order also prohibits Debtors from paying management fees or making other transfers to insiders, including Kazi Management VI, LLC ("KMVI"), except corporate overhead items approved by the GE Entities up to a aggregate and cumulative maximum of four percent (4%) of revenue (including those items already included in "corporate overhead" in the Budget). These restrictions on Debtors' use of cash address many of the concerns the GE Entities raise in their Adequate Protection Motion, to wit: that the Debtors might commingle assets and make payments to insiders at the expense of creditors including the GE Entities.

Interestingly, while the GE Entities claim that they need adequate protection because the value of Debtors' enterprise is "vanishing", the Adequate Protection Motion concedes that the Debtors' have positive earnings before interest, taxes depreciation and amortization ('EBITDA")(see Adequate Protection Motion, Docket No. 35-2, p.3 and p. 6).

## ARGUMENT

**A. THE GE ENTITIES COLLATERAL DOES NOT INCLUDE CASH OR CASH PROCEEDS AND, TO THE EXTENT IT DOES, THE GE ENTITIES INTERESTS ARE ADEQUATELY PROTECTED UNDER THE CASH USE ORDER**

As was previously discussed in detail in the *Memorandum of Law in Support of Debtors' Motion for (i) Expedited Relief, and (ii) Interim and Final Orders (a) Authorizing Use of Unencumbered Cash or, in the Alternative, Cash Collateral and (b) Granting Adequate Protection* (Docket No. 7, the "Cash Collateral Brief"), all of the Debtors' operating accounts and deposit accounts are not located or maintained with the GE Entities nor do the GE Entities hold an account control agreement over such accounts. Consequently, neither of the GE Entities have a perfected security interest or lien on the Debtors' prepetition cash. See Uniform Commercial Code ("UCC") § 9-312(a) (a security interest in a deposit account may be perfected only by control under Section 9-314); UCC § 9-313(c) (a secured party takes possession of collateral in the possession of a third party when the person in possession authenticates a record acknowledging that it holds possession of the collateral for the secured party's benefit); UCC § 9-315(c) (providing that a security interest in proceeds is a perfected security interest if the security interest in the original collateral was perfected).

There are generous amounts of legal support for the fact that the GE Entities do not have an interest in the revenues generated from the Debtors' postpetition services. This is because a restaurant, like those operated by the Debtors, generates revenue from two primary sources: (i)

the delivery of goods and (ii) the delivery of services. The GE Entities may have a lien on certain food products (subject to claims made pursuant to 7 U.S.C. § 499a *et seq.*, the Perishable Agricultural Commodities Act ("PACA"), and 7 U.S.C. § 181 *et seq.*, the Packers and Stockyards Act ("PSA")), equipment and/or other assets held by the Debtors as of the Petition Date, and these liens may extend to the "proceeds" of such collateral post-petition. Notwithstanding the foregoing, these liens do not and will not extend to the cash generated from the "services" component of the Debtors' businesses. See 11 U.S.C. § 552(b).[2] The cash generated from the provision of services is "after acquired property" and remains free and clear of the alleged liens of the GE Entities in the Debtors' cash. In re Skagit Pacific Corporation, 316 B.R. 330 (9th Cir. BAP 2004) ("Furthermore, revenue generated by the operation of a debtor's business, post-petition, is not considered proceeds if such revenue represents compensation for goods and services rendered by the debtor in its everyday business performance"). See also In re Texas Tri-Collar, Inc., 29 B.R. 724 (Bankr.W.D.La. 1983) (pursuant to Section 552, a creditor's pre-petition blanket lien does not extend to post-petition receivables).

In addition to the foregoing, cash generated from restaurant operations does not constitute cash collateral. See In re Inman, 95 B.R. 479, 480-81 (Bankr. W.D. Ky. 1988) (court held that revenues generated from the operation of a debtor's fast-food restaurants were not proceeds from the sale of inventory that was subject to a creditor's security interest); In re Cafeteria Operators,

---

[2] Section 552(b) of the Bankruptcy Code states as follows:

Except as provided in sections 363, 506(c), 522, 544, 544, 547, and 548 of this title, and notwithstanding section 546(b) of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to amounts paid as rents of such property or the fees, charges, accounts or other payments for the use occupancy of rooms and other public facilities in hotels, motels, or other lodging properties, then such security interest extends to such rents and such fees, charges, accounts or other payments acquired by the estate after the commencement of the case to the extent provided in such security agreement, except to the extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

11 U.S.C. § 552(b).

L.P., 299 B.R. 400 (Bankr. N.D. Tex. 2003) (court held that revenue generated by debtor's labor, in preparing food for human consumption, was not necessarily subject to a prepetition security interest in raw food inventory); U.S. Trust Nat. Assoc v. Venice MD LLC, 92 Fed. Appx. 948, 953 (4th Cir. 2004) (court held that revenue generated by sale of food in restaurant is not considered proceeds because restaurant establishments are service-oriented businesses); In re Mid-City Hotel Assocs., 114 B.R. 634, 642-43 (Bankr. D. Minn. 1990) (court held that restaurant income is not proceeds of the real property upon which the restaurant is located); In re Zeeway Corp, 71 B.R. 210, 211 (9th Cir. BAP 1987) (court held that income is not proceeds of real property but the result of services provided by the business); Everett Home Town Limited P'ship, 146 B.R. 453, 456 (Bankr. D. Ariz. 1992) (court held that restaurant revenue cannot be considered proceeds because such revenue is the result of services provided by the business); In re GGVXX, Ltd., 130 B.R. 322 (Bankr. D. Colo., 1991); In re McCann, 140 B.R. 926 (Bankr. D. Mass. 1992) (cash obtained from operation of a restaurant are not proceeds from the sale or disposition of inventory (*e.g.*, food products), but rather proceeds from the provision of services); In re Corner Pockets of the Southwest, Inc., 85 B.R. 559, 563 (Bankr. D. Mont. 1988) (court held that restaurant revenues result form services and are not proceeds of real property upon which restaurant is located).

In the Inman case, the Bankruptcy Court for the Western District of Kentucky noted that the restaurant industry, in general, is a service-oriented industry. In re Inman, 95 B.R. at 480-81. In comparison with food wholesalers and retailers who sell food products in their natural or packaged state, restaurants expend a great deal of time and energy preparing individual food orders by transforming these natural or packaged foods into menu items. The Inman court also remarked that, as in any business, the cost of preparing such foods for human consumption is

without a doubt passed on to the consumer. The court found that revenues generated by a fast food restaurant did not constitute proceeds from the sale of inventory. Id. at 481. The court held that the secured lender did not have a valid, perfected security interest in the resulting cash deposits and concluded that the debtor's postpetition cash was free of the prepetition interests of the secured lender. The court in Cafeteria Operators reached a similar conclusion, holding that, at most, a portion of the cash received by a restaurant from its patrons constituted proceeds from the sale of inventory; the bulk of the proceeds represented payment for services. Cafeteria Operators, 299 B.R. 409. As a result, the Debtors' position that the GE Entities do not have an interest in the Debtors' cash is amply supported by the Bankruptcy Code and relevant case law. In contrast, the GE Entities attack on Debtors' well supported position is conspicuously devoid of any legal support and should be disregarded by the Court with the result that the GE Entities are not entitled to adequate protection for Debtors' use of cash.

Furthermore, even if the GE Entities are entitled to adequate protection for Debtors' use of the portions of cash proceeds that the GE Entities can trace to the proceeds of inventory as opposed to services, as the GE Entities admit, the Debtors have positive cash flow so that the replacement liens and limitations on spending in the Cash Use Order and Cash Management Order provide adequate protection.

## B. ADEQUATE PROTECTION FOR THE GE ENTITIES' INTERESTES IN OTHER COLLATERAL SHOULD ONLY BE GIVEN TO PROTECT AGAINST PROVEN DIMUNITION IN VALUE

The Debtors do not dispute that the GE Entities should be allowed to receive adequate protection for the value of their collateral other than cash, which collateral consists of liens on machinery and equipment, as well as mortgages on certain parcels of real estate from which

Debtors operate their restaurants, but only to the extent that the value of the collateral is diminishing. The Debtors' Budget, as consented to by the GE Entities, shows depreciation of approximately $192,520 per month in Debtors' equipment. Quite frankly, the Debtors believe that the depreciation reflected in the Budget is far more than the actual diminution in value caused by Debtors' use of the equipment. Debtors are willing to offer evidence in the form of a valuation performed by a qualified person as to the value of Debtors' personal property, whether or not there is a diminution in the value of the property due to Debtors' use of it, and what that diminution in value is, if any. Debtors will propose that this amount, if any, be paid to the GE Entities as adequate protection for their use of the equipment subject to the liens of the GE Entities.

The Debtors' real estate, which is being maintained and insured, does not lose value due to the Debtors' occupancy and use of it. As Debtors' experts will demonstrate, as long as the properties are being maintained, the value of the real estate increases or decreases based upon market conditions in the geographic region where each parcel is located. In fact, should the Debtors cease using and occupying the real property locations, it is indisputable that the value of the real property, once vacant and dark, would drop. As such, the GE Entities' adequate protection for Debtors' use of the real properties is the Debtors' continuing efforts to maintain, insure and use them.

While the GE Entities may be entitled to adequate protection for any diminution in value of their interest, such protection should be limited to the decrease in value from February 21, 2011 forward, since that is the date such protection was first requested. This is because an "Adequate protection analysis requires the bankruptcy court to first determine when the creditor would have obtained its state law remedies had bankruptcy not intervened. Presumably, that will

be *after the creditor first seeks relief.* The court must then determine the value of the collateral as of that date. This is consistent with Collier's[3] admonition that value should be determined as of when the protection is sought." In re Deico Electonics, Inc., 139 B.R. 945, 947 (9th Cir. B.A.P., 1992) (emphasis added). However, to the extent that the GE Entities are undersecured, such protection to the GE Entities should not include interest payments since an undersecured creditor is not entitled to receive any additional compensation, directly or indirectly. United Sav. Ass'n of Texas v. Timbers Of Inwood Forest Assocs., Ltd., 484 U.S. 365, 108 S. Ct. 626, 98 L. Ed. 2d 740 (1988); In re Reddington/Sunarrow, Ltd. P'ship, 119 B.R. 809 (Bankr. D.N.M. 1990).

## CONCLUSION

Any liens that the GE Entities might have do not extend to cash or cash collateral. To the extent that the GE Entities do have liens on Debtors' assets, the GE Entities are already adequately protected since they have received replacement liens postpetition. Prior to receiving any additional protection, the Court must first determine what assets the GE Entities have liens on, the value of those liens and the extent to which such value is being diminished since the time of the GE Entities making their request for adequate protection.

**[Space Intentionally Blank]**

---

[3] The Court here cites to 3 Collier on Bankruptcy ¶ 506.04[2] at pp. 506-38 (15th ed. 1992), stating "[i]n the case of an adequate protection valuation, the determinative date should be when the protection was first sought." 3 Collier on Bankruptcy ¶ 361.02[3] at pp. 361-7 through 361-8 (15th ed. rev. 2005) takes a similar view, stating: "[i]t would seem contrary to the policy of providing a breathing spell for the debtor and an opportunity to reorganize if the court were to require the estate to provide protection against...[a] decl ine that had already occurred as a condition to further continuation of the automatic stay or further continued use by the estate of the collateral...In any even t, a secured creditor should be vigilant in protecting its rights against possible decline in value after the filing of the case."

WHEREFORE Debtors respectfully request that this honorable Court deny the Adequate Protection Motion.

> Respectfully submitted,
>
> MCDONALD HOPKINS PLC
>
> /s/ Jayson B. Ruff
> Stephen M. Gross (P35410)
> Jayson B. Ruff (P69893)
> Jason L. Weiner (P74120)
> McDONALD HOPKINS PLC
> 39533 Woodward Avenue
> Suite 318
> Bloomfield Hills, MI 48304
> Telephone: (248) 646-5070
> Facsimile: (248) 646-5075
> E-mail: sgross@mcdonaldhopkins.com
> jruff@mcdonaldhopkins.com
> jweiner@mcdonaldhopkins.com
>
> PROPOSED COUNSEL FOR THE DEBTORS
> AND DEBTORS-IN-POSSESSION

Dated: March 7, 2011