UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| KAZI FOODS OF MICHIGAN, *et al.*[1] | ) | Case No. 11-43971 |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | Judge Thomas J. Tucker |
| | ) | |

**FINAL ORDER (I) AUTHORIZING THE USE OF CASH COLLATERAL
PURSUANT TO 11 U.S.C. § 363 AND (II) GRANTING ADEQUATE PROTECTION
TO THE GE AFFILIATES PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 364**

This matter coming before this Court upon the First Day Joint Motion for (i) Expedited Relief and (ii) Interim and Final Orders (a) Authorizing the Debtors' Use of Unencumbered Cash or, in the Alternative, Cash Collateral, and (b) Granting Adequate Protection [Docket No. 5] (the "<u>Motion</u>"); General Electric Capital Corporation, GE Capital Commercial, Inc., General Electric Capital Business Asset Funding Corporation of Connecticut and Colonial Pacific Leasing Corporation (collectively, the "<u>GE Affiliates</u>") having filed their Objection to the First Day Joint Motion for (i) Expedited Relief and (ii) Interim and Final Orders (a) Authorizing the Debtors' Use of Unencumbered Cash or, in the Alternative, Cash Collateral, and (b) Granting Adequate Protection [Docket No. 33]; this Court having considered the Motion at a preliminary hearing held on February 22, 2011, and having entered the Interim Order Granting Expedited Relief and (a) Authorizing Use of Unencumbered Cash or, in the Alternative, Cash Collateral and (b) Granting Adequate Protection [Docket No. 41] (the "<u>Interim Order</u>"); the GE Affiliates, on the one hand, and Kazi Foods of Michigan, Inc., Kazi Foods of Florida, Inc., Kazi Foods of New

---

[1] Debtors include Kazi Foods of Michigan, Inc., Case No. 11-42971; Kazi Foods of Florida, Inc., Case No. 11-43986; Kazi Foods of New York, Inc., Case No. 11-47551; and Kazi Foods of Annapolis, Inc., Case No. 11-47556.

York, Inc., and Kazi Foods of Annapolis, Inc. (collectively, the "Debtors"), on the other hand, having engaged in negotiations regarding the Debtors' continuing need for use of cash collateral and having agreed to the use of such cash collateral on the terms set forth in that certain Non-binding Term Sheet dated as of March 17, 2011 (the "Term Sheet") and as stated herein; due notice of the Motion having been given; and after due deliberation and consideration, and good and sufficient cause appearing therefor:

**THE COURT FINDS AND CONCLUDES AS FOLLOWS:**

A. On February 17, 2011, Kazi Foods of Michigan, Inc. and Kazi Foods of Florida, Inc. filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

B. On March 21, 2011, Kazi Foods of New York, Inc. and Kazi Foods of Annapolis, Inc., filed voluntary petitions for relief under the Bankruptcy Code.

C. The Debtors' bankruptcy cases are being jointly administered, and the Debtors continue to operate and maintain their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

D. No official committees of unsecured creditors have been appointed by the Office of the United States Trustee pursuant to 11 U.S.C. § 1102.

E. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

F. The Debtors have provided notice of the Motion to, *inter alia*: (i) the Office of the United States Trustee; (ii) counsel for the GE Affiliates; (iii) KFC Corporation and its related entities; and (iv) the Debtors' twenty (20) largest unsecured creditors. The Court concludes that

the foregoing notice was sufficient and adequate under the circumstances and complies with Rule 4001 of the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Eastern District of Michigan.

G. Prior to the commencement of these bankruptcy cases (collectively, the "Bankruptcy Cases"), the Debtors, as borrowers, and the GE Affiliates, as lenders, entered into numerous loan agreements (collectively, the "Loan Agreements"), pursuant to which the GE Affiliates financed the Debtors' business operations. In connection with the Loan Agreements, the GE Affiliates were granted first priority security interests in substantially all the Debtors' assets – including, but not limited to, all the Debtors' tangible and intangible personal property,[2] and the GE Affiliates have properly perfected those security interests. Without limiting the foregoing, the GE Affiliates have properly perfected interests in, among other things, all the Debtors' real property, equipment, accounts receivable, inventory, goodwill, licenses, and contracts, and proceeds thereof.

H. The GE Affiliates, based upon the going concern value of the Debtors' enterprises, are oversecured and entitled to interest on account of their claims under 11 U.S.C. § 506.

I. The Debtors hereby admit, stipulate and agree that:

    i.    As of the date these Bankruptcy Cases were commenced (the "Petition Dates") the GE Affiliates hold valid, enforceable, and allowable claims against the Debtors in an aggregate amount equal to at least $67,834,778, consisting of not less than $61,418,390 in unpaid principal, together with accrued but unpaid interest, plus

---

[2] The sole asset class in which the GE Affiliates may not have a properly perfected security interest as of the commencement of the Bankruptcy Cases is in cash accounts held by third-party banks which would not otherwise qualify as "proceeds" of the GE Affiliates' other property interests. Additionally, one parcel of real estate property owned by Debtor, Kazi Foods of Florida, Inc., in Key West Florida is not subject to a mortgage held by GE Affiliates and is subject to a mortgage held by Bank of New York.

any and all other fees, cost, expenses, charges, other debts or obligations of the Debtors to the GE Affiliates under the Loan Agreements and applicable law (including all professional fees that are chargeable or reimbursable under the Loan Agreements now or hereafter due under the Loan Agreements) (collectively, the "<u>Pre-Petition Claims</u>");

ii. The Loan Agreements and all documents executed and delivered in connection therewith by the Debtors are valid and enforceable by the GE Affiliates against the Debtors;

iii. The GE Affiliates duly perfected their liens upon and security interests (collectively, the "<u>GE Affiliates' Liens</u>") in substantially all of the assets of the Debtors as more fully described in the Loan Agreements including, without limitation, the Debtors' real estate, all accounts receivable, chattel paper, documents, instruments, inventory, general intangibles, equipment, fixtures, deposit accounts, goods, letter-of-credit rights, and investment property, and all proceeds and rights to payment with respect thereto (collectively, the "<u>Collateral</u>") by, among other things, filing financing statements, mortgages and fixture filings and, where necessary, by possession of relevant instruments, certificates, or other property and all of such financing statements, mortgages and fixture filings were validly executed by authorized representatives of the Debtors;

iv. Pursuant to the Loan Agreements, the GE Affiliates have valid, binding, enforceable, non-avoidable and properly perfected first priority security interests in and liens upon all of the Collateral, including the Cash Collateral (as defined below);

v. The GE Affiliates' Liens relative to the Collateral constitute valid, binding, enforceable and perfected first priority liens and security interests and are not subject to avoidance, disallowance, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law;

vi. The Pre-Petition Claims constitute legal, valid, binding, and non-avoidable obligations of the Debtors and no offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the GE Affiliates' Liens relative to the Collateral exist, and no portion of the GE Affiliates' Liens or the Pre-Petition Claims is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (whether equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law;

  vii.  That the Debtors have no valid claims, objections, challenges, causes of actions, and/or choses in action, including without limitation, avoidance claims under chapter 5 of the Bankruptcy Code, against the GE Affiliates or against any of the GE Affiliates' affiliates, agents, attorneys, advisors, professionals, officers, managers, members, directors and employees arising out of, based upon or, related to the GE Affiliates' loans to the Debtors.

  J.  The GE Affiliates and the Debtors have negotiated at arms' length and in good faith regarding the Debtors' use of Cash Collateral to fund its operations during the Budget Period (as defined below). Entry of this Order is in the best interests of the Debtors and their estates. The terms of the Debtors' continued use of Cash Collateral in accordance with this Order are fair and reasonable under the circumstances. The terms of this Order reflect the Debtors' exercise of prudent business judgment consistently with their fiduciary duties and are supported by reasonably equivalent value and fair consideration.

  K.  Based on the foregoing, and upon the record made before this Court at the interim hearing on the Motion held on February 22, 2011, and the final hearing held on April 13, 2011, and good and sufficient cause appearing therefor,

  **IT IS ORDERED THAT:**

  1.  The Debtors' use of Cash Collateral and adequate protection for the GE Affiliates are approved to the extent set forth herein on a final basis on the terms and conditions set forth in this Order.

  2.  As used herein, the term "<u>Cash Collateral</u>" shall mean all "cash collateral" as defined under section 363 of the Bankruptcy Code, together with all cash of the bankruptcy estates, wherever located, and all cash equivalents, whether in the form of negotiable instruments, documents of title, securities, deposit accounts, investment accounts, or in any other form, which represent income, proceeds, products, rents, or profits of the Collateral that were in the Debtors' possession, custody or control (or persons in privity with any Debtor) as of the

Petition Dates, or in which the Debtors will obtain an interest during the pendency of these Bankruptcy Cases and which represent income, proceeds, products, rents, or profits of the Collateral or any GE Affiliates' Adequate Protection Collateral (defined below), regardless of (i) whether such security interests, liens, or mortgages of the GE Affiliates existed as of the Petition Dates or arise thereafter pursuant to this Order, and (ii) whether the property converted to cash existed as of the Petition Dates or arose thereafter.

3. The Debtors are authorized to use Cash Collateral solely in accordance with the budget (the "<u>Budget</u>")[3], as the Budget may be amended from time to time upon the agreement of the Debtors and the GE Affiliates without further order of the Court, and the terms of this Order during the period beginning on the date of entry of this Order and ending on December 31, 2011 (the "<u>Budget Period</u>"). To the extent the terms of this Order and the Budget are inconsistent, the terms of this Order shall control. Within fourteen days of the entry of this Order, the Debtors shall modify the Budget to eliminate any inconsistencies between the terms of this Order and the expenses authorized by the Budget. The modified Budget will provide, and the Debtors agree to promptly pay, once reconciled: (i) past due post-petition amounts owing for franchise fees and advertising, and (ii) post-petition amounts that become owing for franchise fees and advertising. Nothing in this Order has any impact on the rights of KFC Corporation ("KFC") and its affiliates under any franchise or other agreements.

---

[3] The term Budget, as used herein, refers to those Budgets attached as Exhibits B to each of the *First Day Motion for (i) Expedited Relief and (ii) Interim and Final Orders (a) Authorizing the Debtors' Use of Unencumbered Cash or, in the Alternative, Cash Collateral, and (b) Granting Adequate Protection* [Doc. 5, Case No. 11-43971]; the *First Day Motion for Entry of Order Amending the Interim Order Granting Expedited Relief and (a) Authorizing Use of Unencumbered Cash, or in the Alternative, Cash Collateral, and (b) Granting Adequate Protection* [Doc. 11, Case No. 11-47551]; and the *First Day Motion for Entry of Order Amending the Interim Order Granting Expedited Relief and (a) Authorizing Use of Unencumbered Cash, or in the Alternative, Cash Collateral, and (b) Granting Adequate Protection* [Doc. 11, Case No. 11-47556].

4. Subject to the terms and conditions set forth in this Order, the Debtors may use the Cash Collateral to fund general corporate and working capital requirements and capital expenditures of the Debtors (including the Debtors' ongoing administrative expenses and professionals' fees and expenses in these Bankruptcy Cases), in each case in accordance with the Budget.

5. For each month of the Budget Period, (i) the aggregate actual disbursements by the Debtors during such month of determination must be no greater than 110% of the aggregate amount of projected disbursements for such period as set forth in the Budget, and (ii) the aggregate actual disbursements by the Debtors measured on a rolling 2-month basis must be no greater than 110% of the aggregate amount of projected disbursements for such 2-month period as set forth in the Budget.[4] The Budget may be amended or modified by the Debtors from time to time, only upon (a) the written consent of the GE Affiliates, or (b) the approval of this Court after notice and a hearing.

6. Notwithstanding anything to the contrary contained herein, Borrowers shall not pay any management fees to Kazi Management VI, LLC or Kazi Management St. Croix (collectively, the "Other Entities"), nor shall they make or pay any dividends, distributions, transfers, loans or any other payments to the Other Entities or other affiliates or insiders of the Debtors without prior written consent from the GE Affiliates, provided, however, that the foregoing shall not prohibit the payment of corporate and overhead expenses that are properly allocable to the Debtors, as determined by the Institutional CRO (as defined below), directly to

---

[4] Except as expressly set forth herein, nothing in the Budget or this Final Order shall be deemed or construed as (x) a finding or admission as to the validity of any claim relating to a budgeted amount, (y) an agreement or promise by any party in interest to pay any such budgeted claim, or (z) a waiver of the rights of any party in interest to contest any such claim. Furthermore, nothing in this Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, nor authorize the use by the Debtors of any proceeds from any such disposition of assets, except as provided for in an order of this Court.

the providers provided that the total of: (i) corporate/overhead expenses shown on the Budget; and (ii) such allocated payments shall not exceed 4% of revenue, and <u>further</u> <u>provided</u> that the GE Affiliates and the Debtors may agree to such other amounts as may be approved by the GE Affiliates in their reasonable discretion, following a review of any proposed Budget to be supplied by the Institutional CRO (as defined in Section 11.a. below) .

7. As adequate protection against any diminution in the value of the GE Affiliates' interests in the Collateral including, without limitation, any such diminution resulting from or caused by, the imposition of the automatic stay, decline in market value, or the use, sale or lease by the Debtors of the Cash Collateral (any such diminution, the "<u>Adequate Protection Obligations</u>"), the GE Affiliates are hereby granted, pursuant to sections 361 and 363 of the Bankruptcy Code and effective as of the Petition Dates, (a) valid and automatically perfected first priority replacement liens and security interests in and upon, to the same extent and priority that the GE Affiliates held such liens on the applicable petition dates, (collectively, the "<u>GE Affiliates Adequate Protection Liens</u>"): all of the properties and assets of the Debtors, real or personal including, but not limited to, the Cash Collateral and those assets described in the Loan Agreements and this Order, whether acquired before or after the Petition Dates, whether now owned and existing or hereafter acquired, created, or arising, and all products and proceeds thereof (including, without limitation, claims of the Debtors against third parties for loss or damage to such property), and all accessions thereto, substitutions and replacements therefor, and wherever located, and all assets acquired by the Debtors post-petition, but specifically excluding the proceeds of any avoidance actions under chapter 5 of the Bankruptcy Code in this Case (the "<u>Avoidance Actions</u>") ( the "<u>GE Affiliates' Adequate Protection Collateral</u>"), and (b) administrative claims with priority over all other administrative claims, except allowed

professional fees (subject to Paragraph 16 of this Order) and the quarterly fees of the United States Trustee arising under 28 U.S.C. § 1930, and all of the other benefits and protections allowable under Bankruptcy Code § 507(b) (the "GE Affiliates' Adequate Protection Priority Claim") in all assets of the Debtors and their estates. The GE Affiliates' Adequate Protection Liens and the GE Affiliates' Adequate Protection Priority Claim shall be limited to securing the payment of the Adequate Protection Obligations. Notwithstanding any language herein to the contrary, the GE Affiliates Adequate Protection Liens and the GE Affiliates Liens and interests in the Collateral shall be subordinate to (x) all current and future liens to the extent and priority provided by statute to: the Oakland County Treasurer; Wayne County Treasurer; the City of Union City, New Jersey; and all other political subdivisions or local municipalities, and (y) allowed professional fees (subject to Paragraph 16 of this Order) and the quarterly fees of the United States Trustee arising under 28 U.S.C. § 1930. For clarity, nothing in this Order shall preclude any Federal, state or local municipality from asserting the priority of any lien it may possess as provided by statute.

8. As and for additional adequate protection of the GE Affiliates' interests in the Collateral, commencing on May 1, 2011, and continuing on the same day of each of the following eight calendar months until the termination of the Budget Period (which Budget Period, addressed herein, comprises a portion of the interest-only payment period specified in the Term Sheet), the Debtors shall make interest-only payments (the "Interest-Only Payments") on the Pre-Petition Claims, the principal balances of which will be reconciled and agreed to by the GE Affiliates and the Institutional CRO (as defined below). During the Budget Period, the Debtors shall be required to pay to the GE Affiliates interest calculated at a rate of LIBOR (as that term is defined in the applicable Loan Agreements) plus eight percent per annum. In the

event that the GE Affiliates are at some time prior to confirmation of any plan of reorganization of the Debtors determined to be undersecured with respect to their Pre-Petition Claims, the Interest-Only Payments hereunder, after notice, hearing and the presentation of adequate proof, may be re-characterized and applied against the principal balance due and owing under the Loan Agreements, upon notice and a hearing, and order of the Court..

9. As and for additional adequate protection of the GE Affiliates' interests in the Collateral, and notwithstanding anything contained herein or in the Budget, the Debtors shall be required to repay to the GE Affiliates: (i) on or before the closing date related to a restructuring of the Loan Agreements as set forth in the Term Sheet (the "<u>Restructuring</u>"), but in no event later than April 15, 2011, a partial payment of $500,000 (the "<u>Partial Payment</u>") attributable to the accrued and unpaid default interest that accrued under the Loan Agreements from the actual date of default thereunder through the effective date of the Restructuring (the "<u>Default Interest Amount</u>, (ii) the balance of the Default Interest Amount less the Partial Payment, calculated at LIBOR plus six percent, in equal monthly installments over a period of eighteen months, commencing on May 1, 2011 and continuing to October 1, 2012; (iii) on or before the closing date related to the Restructuring, all reasonable ancillary, reasonable legal and additional costs and expenses associated with the Restructuring, including, but not limited to, the re-documentation of the Loan Agreements (the "<u>Restructuring Costs and Expenses</u>"); and (iv) all other reasonable costs and expenses incurred by the GE Affiliates, and not included within the Restructuring Costs and Expenses, in six equal monthly installments, commencing on November 1, 2012 and continuing to April 1, 2013. The payments made to the GE Affiliates pursuant to this paragraph shall be subject to Court approval only upon the objection of any creditors, the Debtors, or the United States Trustee, and no recipient of any such payment shall be required to

file with respect thereto any interim or final fee application with the Court; provided, however, the GE Affiliates shall provide the Debtors with redacted copies of all such invoices and expenses fifteen (15) days prior to payment of same being due, unless written objections thereto are filed by the United States Trustee or any other party in interest.

10. As and for further adequate protection of the GE Affiliates' interests in the Collateral, each Debtor's obligations under the Loan Agreements shall be cross-collateralized and cross-defaulted by all of the other Debtors' assets subject to any existing liens on such assets.

11. As and for further adequate protection of the GE Affiliates' interests in the Collateral, the Debtors shall:

   a. Appoint Laura Marcero of Huron Consulting Group, Inc., or such other nationally recognized firm as may be acceptable to the GE Affiliates, as chief restructuring officer (the "Institutional CRO") of the Debtors, and the Institutional CRO shall have no obligation to take direction from or obtain authority from the current equity holders or the boards of directors of any of the Debtors during the pendency of the Bankruptcy Cases.

   b. Amend their organizational documents to provide that all management and executive control of the Debtors shall be placed in one or more person(s) or entity(ies) other than the management of the Debtors in place as of the Petition Dates.

   c. Enter into control agreements and/or lock box arrangements with respect to all receipts and revenues at all restaurant locations where the Debtors have granted the GE Affiliates a security interest pursuant to the Loan Agreements, provided, however, that the Debtors shall have use of their operating funds, less the automatic withdrawal of scheduled payments to the GE Affiliates, so long as no default or negative cash anomaly exists;

   d. Relocate their executive and operational functions within the continental United States, with such relocation to be concluded not more than sixty days after the entry of this Order, provided, however, that the relocation contemplated herein shall not prohibit the Debtors from continuing administrative and ministerial functions in the United States Virgin Islands.

   e. Maintain their accounting records in accordance with Generally Accepted Accounting Principles;

f.  Provide the GE Affiliates, so as to actually be received within twenty (20) business days following the end of each month, monthly income and expenses statements on a cash flow basis together with a variance report with explanations of the difference between the income and expense statement and the Budget, and a fully detailed accounts payable report;

g.  Provide the GE Affiliates with such financial reports as the GE Affiliates may reasonably request from time to time including a weekly budget vs. actual expenditure report;

h.  Serve the GE Affiliates with a copy of each monthly operating report filed in the Bankruptcy Cases as required by applicable law and any other financial or operating reports compiled by the Debtors on a monthly basis in the ordinary course of its operations

i.  Comply with the terms of the Loan Agreements, other than as modified herein or pursuant to the Restructuring; and

j.  Provide to the GE Affiliates within a reasonable period of time all other reasonable information and documents requested by the GE Affiliates, their attorneys or agents, subject to any order of the Bankruptcy Court limiting the documents or information to be produced by the Debtors.

12. In the event that: (i) the Institutional CRO resigns for reasons based on the Debtors' conduct, (ii) the Institutional CRO is deemed incompetent by this Court; or (iii) any payment, material financial covenant or other material financial default occurs under the terms of this Order or the terms of the Loan Agreements, as modified by the Restructuring, and which are not cured within a reasonable time, this Court shall, upon proper motion filed by the GE Affiliates and after notice and a hearing, direct the appointment of a chapter 11 trustee by the Office of the U.S. Trustee, with the consultation of the Debtors, the GE Affiliates and KFC, pursuant to 11 U.S.C. § 1104.  In the event a subsequent trustee is appointed pursuant to 11 U.S.C. § 1104 who is not acceptable to the GE Affiliates or KFC, the GE Affiliates and KFC are reserved the right to request other and additional adequate protection or other relief and remedies, notwithstanding the terms of this Order. In the event the Institutional CRO resigns or fails to serve for reasons other than the Debtors' conduct and/or the incompetence of the

Institutional CRO, the Debtors shall appoint a replacement chief restructuring officer with the same obligations and duties as the Institutional CRO (the "Replacement CRO"), which Replacement CRO shall be acceptable to the GE Affiliates and KFC.

13. Except as expressly provided herein, or as may be hereinafter agreed to by the GE Affiliates and the Debtors in accordance with the Restructuring, the Loan Agreements are hereby ratified and reaffirmed by the Debtors, and shall remain in full force and effect. The GE Affiliates, on the one hand, and the Debtors, on the other hand, have agreed and shall be bound to restructure, restate and amend the obligations of the Debtors to the GE Affiliates on the terms set forth in the Term Sheet, both during the pendency of these chapter 11 cases and with respect to periods subsequent to either the confirmation of plans of reorganization or dismissal of these chapter 11 cases, subject only to the execution of documentation reasonably acceptable to counsel. For avoidance of doubt, the GE Affiliates' obligation under the previous sentence are, and shall remain, conditioned upon the performance of undertakings under the Term Sheet by parties thereto other than the Debtors. Until payment in full of all of the Pre-Petition Claims or as otherwise agreed by the GE Affiliates, the GE Affiliates' Liens and the GE Affiliates' Adequate Protection Liens shall remain valid, binding, enforceable, non-avoidable and properly perfected first priority security interests and liens.

14. Except as set forth elsewhere in this Order, the GE Affiliates' Adequate Protection Liens shall not be subject to challenge and shall attach and become valid, first priority, perfected, enforceable, non-avoidable and effective by operation of law as of the Petition Dates without any further action by the Debtors or the GE Affiliates, and without the necessity of execution by the Debtors or the GE Affiliates, or the filing or recordation, of any financing statements, security agreements, vehicle lien applications, mortgages, or other

documents.  If the GE Affiliates hereafter request that the Debtors execute and deliver to the GE Affiliates financing statements, security agreements, vehicle lien applications, mortgages or other documents reasonably necessary or desirable to further evidence the perfection of the GE Affiliates' Adequate Protection Liens, the Debtors are hereby authorized and directed to execute and deliver such financing statements, security agreements, mortgages, collateral assignments, instruments, and documents, and the GE Affiliates are hereby authorized to file or record such documents in their discretion, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Order.

15. The Debtors' authorization to use Cash Collateral shall terminate (the "Termination Date") without further act or action by the GE Affiliates, or any further notice, hearing, or Order of this Court, on the earliest to occur of: (i) the last day of the Budget Period, unless extended in a writing signed by authorized representatives of the GE Affiliates and the Debtors, (ii) the dismissal of the Bankruptcy Cases or the conversion of the Bankruptcy Cases to cases under chapter 7 of the Bankruptcy Code; (iii) the entry of an order reversing, staying, vacating or otherwise modifying in any material respect the terms of this Order; (iv) failure by the Debtors to comply with any material provision of this Order (including, without limitation, any use of Cash Collateral in a manner inconsistent with the Budget or otherwise contrary to the terms of this Order), as determined by this Court pursuant to a final order after notice and a hearing; (v) any material misrepresentation of a material fact made after the respective petition dates by the Debtors or their agents to the GE Affiliates about (a) the financial condition of the Debtors; (b) the nature, extent, location or quality of any of the Collateral, or (c) the disposition or use of any of the Collateral, including the Cash Collateral, in each case as determined by this Court pursuant to a final order after notice and a hearing; (vi) the sale after the petition dates of

any portion of the Debtor's assets outside the ordinary course of business without the prior written consent of the GE Affiliates, in their sole discretion, or Court approval thereof; (vii) the failure by the Debtors to comply with any material terms of the Loan Agreements after the respective petition dates except to the extent modified herein or by the Restructuring (subject to the Bankruptcy Code and the terms of this Order), as determined by this Court pursuant to a final order after notice and a hearing; (viii) confirmation of a plan of reorganization by the Debtors that is not otherwise acceptable to the GE Affiliates in the treatment of the Pre-Petition Claims, in their sole and absolute discretion; (ix) any other security interest, lien, claim, or encumbrance shall be granted which is *pari passu* with or senior to the claims of the GE Affiliates; (x) the entry of an order granting relief from the automatic stay to the holder or holders of any security interest or lien in any Collateral to permit the pursuit of any judicial or non-judicial transfer or other remedy against any assets of the Debtors in an amount exceeding $250,000.00 unless the GE Affiliates shall have consented to the entry of such Order; (xi) any challenge to the extent, validity, priority, or unavoidability of the GE Affiliates' Liens securing the Pre-Petition Claims; or (xii) the Debtors fail to: (a) reach an agreement with KFC, or (b) obtain an order of this Court addressing the Debtors' and KFC's respective contractual rights and obligations, which agreement or order provides for continued operation of the Debtors' businesses and/or the rehabilitation for sale, offer for sale and sale of all or parts of the Debtors' businesses (including sales that may cause the Debtors' businesses to operate as other than KFC restaurants) on terms and conditions: (x) consistent with the Debtors' simultaneous performance of the Term Sheet and Restructuring; (y) reasonably consistent with the Debtor's projections of financial and operational performance and maximization of cash flow and income (through closing

unprofitable locations and re-negotiating leases, among other things), and (z) otherwise reasonably acceptable to the GE Affiliates.

16. Except as set forth elsewhere in this Order, the Cash Collateral may not be used by the Debtors: (a) in connection with or to finance any action, suit, arbitration, proceeding, application, motion or other litigation of any type (i) against the GE Affiliates or seeking relief that would impair the rights and remedies of the GE Affiliates under the Loan Agreements or this Order including, without limitation, for the payment of any services rendered by the professionals retained by the Debtors in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment, determination, declaration or similar relief that would impair the ability of the GE Affiliates to recover on the Pre-Petition Claims or seeking affirmative relief against the GE Affiliates, (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, the Pre-Petition Claims, or (iii) for monetary, injunctive or other affirmative relief against either the GE Affiliates or the Collateral that would impair the ability of the GE Affiliates to recover on the Pre-Petition Claims; (b) for objecting to or challenging in any way the claims, liens, or interests (including the GE Affiliates' Liens) held by the GE Affiliates; (c) for asserting, commencing or prosecuting any claims or causes of action whatsoever, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code, against the GE Affiliates; or (d) for prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the GE Affiliates' Liens or any other rights or interests of the GE Affiliates.

17. Pending further Order of the Court, the Debtors shall not seek to incur additional indebtedness with claim status equal to or senior to the Pre-Petition Claims or liens equal to or senior in priority to the GE Affiliates' Liens or the GE Affiliates' Adequate Protection Liens.

18. The automatic stay is hereby vacated and modified to the extent necessary to permit: (a) the Debtor and the GE Affiliates to undertake all acts and take all actions necessary to implement this Order, and (b) all acts, actions, and transfers contemplated herein including, without limitation, the Restructuring and any transfers of Cash Collateral and other funds to the GE Affiliates and the application by the GE Affiliates of same as provided herein.

19. Prior to the closing of the Restructuring, and except as otherwise necessary to preserve its rights against any non-Debtor defendants, the GE Affiliates agree that they will take no further action in the pending litigation against the Debtors and the other defendants.

20. Until all of the Pre-Petition Claims shall have been indefeasibly paid and satisfied in full by their terms, and without further Order of the Court: (a) the Debtors shall use all Cash Collateral strictly in accordance with the terms of the Budget requirements and other terms of this Order; (b) no other entity shall foreclose or otherwise seek to enforce any lien or other right such other party may have in and to any property of the Debtors' estate upon which the GE Affiliates hold or assert senior liens or security interests; (c) the Debtors shall not, without approval from the Bankruptcy Court, engage in any transaction that is not in the ordinary course of the Debtors' business, and (d) the Debtors shall timely comply with all of the covenants set forth in the Loan Agreement to the extent the same have not been rendered impossible or commercially impracticable as a result of existing defaults or the filing of the Bankruptcy Cases.

21. Except as otherwise expressly set forth herein, this Order and the transactions contemplated hereby shall be without prejudice to (a) the rights of the GE Affiliates to seek

additional adequate protection or the right of the Debtors to oppose such requests, (b) the rights of the Debtors or any successor (including any trustee appointed in the Debtors' chapter 11 cases or any chapter 7 trustee) to seek the continuing use of Cash Collateral (including on terms less favorable to the GE Affiliates or without the consent of the GE Affiliates) and/or the approval of any debtor-in-possession financing; or (c) the rights of the GE Affiliates to at any time seek to terminate the Debtors' authority to use Cash Collateral or the right of the Debtors to oppose such requests.

22.  The provisions of this Order shall be binding upon and inure to the benefit of the GE Affiliates, the Debtors, and each of their respective successors and assigns; provided, however, that a subsequently appointed trustee or fiduciary, after notice, hearing and upon good cause shown, may seek relief from this Order and the determinations and findings contained in this Order with respect to the rights and remedies granted the GE Affiliates hereunder. Except as explicitly provided for herein, this Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

23.  The Debtors irrevocably waive and shall not assert any surcharge claim under section 506(c) of the Bankruptcy Code or otherwise for any costs and expenses, excluding professionals fees allowed to be paid pursuant to Order of the Court and paid pursuant to the Budget (subject to Paragraph 16 of this Order), incurred in connection with the preservation, protection or enhancement of, or realization by the GE Affiliates upon, the Collateral, and the "equities of the case" exception in section 552 of the Bankruptcy Code shall not apply. The Debtors shall not allege that the GE Affiliates are subject to the equitable doctrine of marshaling or any similar doctrine with respect to the Collateral. The GE Affiliates shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code.

24. Nothing contained herein shall be deemed a finding by the Court or an acknowledgment by the GE Affiliates that the adequate protection granted herein does in fact adequately protect the GE Affiliates against any diminution in value of its interests in the Collateral (including the Cash Collateral). Furthermore, nothing herein shall preclude the GE Affiliates from seeking additional adequate protection of their interests in the Collateral.

25. The provisions of this Order and any actions taken pursuant thereto (a) shall survive the entry of any order: (i) confirming any plan of reorganization or liquidation in the Bankruptcy Cases; (ii) converting the Bankruptcy Cases to a case under chapter 7 of the Bankruptcy Code; (iii) dismissing the Bankruptcy Cases; or (iv) discharging the Debtors; and (b) shall continue in full force and effect notwithstanding the entry of any such order, and the claims, liens, and security interests granted pursuant to this Order shall maintain their priority as provided by this Order until all Adequate Protection Obligations are paid in full.

26. If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect (i) the validity of any Adequate Protection Obligations incurred prior to the actual receipt by the GE Affiliates of written notice of the effective date of such reversal, modification, vacation or stay, or (ii) the validity or enforceability of any claim, lien, security interest or priority authorized or created hereby with respect to any Adequate Protection Obligations. Notwithstanding any such reversal, modification, vacation or stay, any use of Cash Collateral or the incurrence of Adequate Protection Obligations by the Debtors prior to the actual receipt by the GE Affiliates of written notice of the effective date of such reversal, modification, vacation or stay, shall be governed in all respects by the provisions of this Order, and the GE Affiliates shall be entitled to all of the

benefits and protections granted pursuant to this Order with respect to all uses of Cash Collateral and the incurrence of Adequate Protection Obligations by the Debtors.

27. The Debtors' use of Cash Collateral and adequate protection for the GE Affiliates are approved to the extent set forth herein on a final basis on the terms and conditions set forth in this Order; *provided*, however, that should an official committee be appointed by the Office of the United States Trustee pursuant to 11 U.S.C. § 1102 ("Official Committee"), such Official Committee, pursuant to L.B.R. 4001-2(c), and any other non-insider creditors, may file objections with the Clerk for the United States Bankruptcy Court for the Eastern District of Michigan within 14 days after it is served with this Final Order, which objections shall be served upon (a) McDonald Hopkins PLC, attorneys for the Debtors, 39533 Woodward Ave., Suite 318, Bloomfield Hills, Michigan 48304, Attention: Stephen M. Gross, via email to sgross@mcdonaldhopkins.com, or via facsimile to 248-646-5075; (b) Reed Smith LLP, attorneys for GE Affiliates, 10 South Wacker Drive, 40th Floor, Chicago, Illinois, Attention: Alexander Terras, via email to aterras@reedsmith.com, or via facsimile to 312-207-6400; and (c) the Office of the United States Trustee for the Eastern District of Michigan.

28. This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

**Signed on April 14, 2011**                    **/s/ Thomas J. Tucker**
                                                **Thomas J. Tucker**
                                                **United States Bankruptcy Judge**