**ASSET PURCHASE AGREEMENT**

**among**

**STAR KFC REALCO TWO, LLC AND STAR PARTNER ENTERPRISES TWO, LLC,**

**collectively as "Buyers,"**

**and**

**KAZI FOODS OF MICHIGAN, INC., KAZI FOODS OF FLORIDA, INC.,
KAZI FOODS OF NEW YORK, INC. AND KAZI FOODS OF ANNAPOLIS, INC.**

**collectively as "Sellers"**

**Dated February 20, 2012**

# TABLE OF CONTENTS

**Article I. PURCHASE AND SALE OF THE OPERATING ASSETS** ...................................... **2**
    Section 1.1   Transfer of Operating Assets ................................................ 2
    Section 1.2   Transfers of Real Properties.............................................. 3
    Section 1.3   Excluded Assets ................................................................ 4
    Section 1.4   Assumption of Liabilities.................................................. 5
    Section 1.5   Excluded Liabilities .......................................................... 5
    Section 1.6   Post-Closing Liabilities..................................................... 6
**Article II. CONSIDERATION** ......................................................................................... **6**
    Section 2.1   Purchase Price. ................................................................. 6
    Section 2.2   Purchase Price/ Note Principal Adjustment ..................... 7
    Section 2.3   On-Hand Inventory; On-Hand Cash ................................. 9
    Section 2.4   Prorations ....................................................................... 10
    Section 2.5   Cure Costs ...................................................................... 10
    Section 2.6   Closing Payments........................................................... 10
    Section 2.7   Transaction Taxes .......................................................... 11
    Section 2.8   Allocation of Total Consideration................................... 11
**Article III. CLOSING AND DELIVERIES** ................................................................... **11**
    Section 3.1   Closing .......................................................................... 11
    Section 3.2   Sellers' Deliveries ......................................................... 11
    Section 3.3   Buyers' Deliveries ......................................................... 12
    Section 3.4   Buyers' Other Closing Obligations ................................. 12
**Article IV. REPRESENTATIONS AND WARRANTIES**.............................................. **13**
    Section 4.1   Representations and Warranties of Sellers....................... 13
    Section 4.2   Representations and Warranties of Buyers ...................... 14
    Section 4.3   Warranties Are Exclusive ............................................... 15
**Article V. COVENANTS AND OTHER AGREEMENTS** .............................................. **16**
    Section 5.1   Covenants of Sellers....................................................... 16
    Section 5.2   Covenants of Buyers ...................................................... 18
    Section 5.3   Other Covenants............................................................. 18
    Section 5.4   Confidentiality ............................................................... 19
    Section 5.5   Buyer's Releases ............................................................ 20
**Article VI. CONDITIONS PRECEDENT TO PERFORMANCE BY PARTIES**............... **20**
    Section 6.1   Conditions Precedent to Performance by Sellers............. 20
    Section 6.2   Conditions Precedent to the Performance by Buyers........ 20
**Article VII. TERMINATION** ......................................................................................... **21**
    Section 7.1   Conditions of Termination .............................................. 21
    Section 7.2   Effect of Termination; Remedies..................................... 23
    Section 7.3   Exclusive Remedy; Waiver ............................................. 24
**Article VIII. SURVIVAL AND INDEMNIFICATION** .................................................. **24**
    Section 8.1   Survival; Indemnification ............................................... 24
**Article IX. MISCELLANEOUS** .................................................................................... **24**
    Section 9.1   Alternative Transaction.................................................. 24
    Section 9.2   Further Assurances......................................................... 24
    Section 9.3   Successors and Assigns................................................... 25

Section 9.4    Governing Law; Jurisdiction ........................................................................... 25
Section 9.5    Expenses ......................................................................................................... 25
Section 9.6    Broker's and Finder's Fees ............................................................................. 25
Section 9.7    Severability .................................................................................................... 25
Section 9.8    Notices. .......................................................................................................... 25
Section 9.9    Amendments; Waivers .................................................................................. 26
Section 9.10   Public Announcements .................................................................................. 27
Section 9.11   Entire Agreement ........................................................................................... 27
Section 9.12   No Third Party Beneficiaries ......................................................................... 27
Section 9.13   Headings ......................................................................................................... 27
Section 9.14   Counterparts; Delivery .................................................................................. 27
Section 9.15   Construction ................................................................................................... 27
**Article X. DEFINITIONS ....................................................................................... 28**

<u>**EXHIBITS**</u>

Exhibit A ...................................................................................................... Sale Procedures

Exhibit B ........................................................................................................... List of Stores

<u>**SCHEDULES**</u>

Schedule 1.1(f) ..................................................................... Acquired Contracts List

Schedule 1.1(g) ............................................................................................... Permits

Schedule 1.1(n) ......................................................................... Telephones, etc.

Schedule 1.2 ...................................................................................... Real Properties

Schedule 1.2(a) ........................................................................... Escrowed Properties

Schedule 1.3(i) ................................................................................ Excluded Deposits

Schedule 1.3(l) ......................................................................... Excluded Assets List

Schedule 2.2 ........................................................................................ Expired Leases

Schedule 2.8 ................................................................... Allocation of Purchase Price

Schedule 4.1(e) ...................................................................................... Litigation

Schedule 4.1(g) .................................................................... Real Property Taxes

# ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this "**Agreement**"), dated as of **February 20**, 2012 (the "**Execution Date**"), is made by and among **KAZI FOODS OF MICHIGAN, INC.,** a Delaware corporation ("**Michigan**"), **KAZI FOODS OF FLORIDA, INC.,** a Delaware corporation ("**Florida**"), **KAZI FOODS OF NEW YORK, INC.,** a Delaware corporation ("**NY**") and **KAZI FOODS OF ANNAPOLIS, INC.,** a Delaware corporation ("**Annapolis**"; and collectively with Michigan, Florida and NY the "**Sellers**"), and **STAR KFC REALCO TWO, LLC,** a Texas limited liability company ("**Realco**") and **STAR PARTNER ENTERPRISES TWO, LLC,** a Texas limited liability company ("**Partner**" and collectively with Realco the "**Buyers**"). Unless otherwise set forth herein, capitalized terms used in this Agreement are defined or cross-referenced in Article X.

## RECITALS

WHEREAS, on February 17, 2011 (the "**MI Petition Date**"), Michigan and Florida commenced voluntary cases (collectively, the "MI **Bankruptcy Case**") under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Eastern District of Michigan (the "**Bankruptcy Court**"); and on March 21, 2011, NY and Annapolis (the "**NY Petition Date**") commenced cases (collectively, the "NY Bankruptcy Case," and together with the MI Bankruptcy Case, the "Bankruptcy Case") under chapter 11 of the Bankruptcy Code, in the Bankruptcy Court, which cases were administratively consolidated into the MI Bankruptcy Case.

WHEREAS, pursuant to a motion filed by the Sellers, the Bankruptcy Court entered an Order (Doc. No. 577) (a) approving certain procedures governing the sale of all or substantially all of the Sellers' property and assets and the assumption and assignment of the Sellers' executory contracts and unexpired leases and (b) granting certain related relief.

WHEREAS, this Agreement shall constitute a Qualified Bid (as such term is defined in the Sale Procedures);

WHEREAS, Buyers desire to purchase the Acquired Assets and assume the Assumed Liabilities from Sellers, and Sellers desire to sell, assign, transfer, convey and deliver to Buyers the Acquired Assets together with the Assumed Liabilities, all in the manner and subject to the terms and conditions set forth in this Agreement and the Sale Order and in accordance with sections 105, 363, 365, 1146 and all other applicable provisions of the Bankruptcy Code; and

WHEREAS, Buyers have made, or will make concurrent with the execution of this Agreement, funding in an amount equal to $6,600,000 (the "**Proof of Funding**") into an account (the "**Funding Account**") with the MV Equity Partners, Inc. ("**MVE**") and have provided Sellers with evidence of Proof of Funding.

NOW, THEREFORE, in consideration of the foregoing and their respective representations, warranties, covenants and agreements herein contained, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Sellers and Buyers hereby agree as follows:

# ARTICLE I.
## PURCHASE AND SALE OF THE OPERATING ASSETS

Section 1.1  **Transfer of Operating Assets**.  At the Closing, and upon the terms and conditions set forth herein and the Sale Order, Sellers shall sell, assign, transfer, convey and deliver to Partner free and clear of all Liens, Claims and Interests except for the Assumed Liabilities specified in Section 1.4 below, and Partner shall purchase from Sellers "as is where is", all of Sellers' right, title and interest of every kind and nature (including indirect and other forms of beneficial ownership) in and to all of the properties, assets and rights (contractual or otherwise) in each of the Acquired Stores as of the Closing Date, whether tangible or intangible, real or personal and wherever located and by whomever possessed including, without limitation, those assets described below (collectively, the "**Operating Assets**"), but excluding the Excluded Assets and the Real Properties:

(a)    Petty and other restaurant operating cash on-hand, but excluding cash in transit, at the Acquired Stores (the "**On-Hand Cash**");

(b)    All Inventory on-hand in the Acquired Stores (the "**On-Hand Inventory**") plus all Inventory that has been ordered by Sellers for the Acquired Stores but that has not yet arrived ("**In-Transit Inventory**");

(c)    The leased real property of Sellers relating to the Acquired Stores leased pursuant to the leases included in the Acquired Contracts, to the extent assignable and transferable, including all Leasehold Improvements thereon (collectively, the "**Leased Real Property**");

(d)    All tangible personal property, including but not limited to all machinery, equipment, supplies, materials, office furniture and office equipment, computers, mobile phones, personal digital assistants, fixtures, trade fixtures, computer equipment, hardware, peripherals, information technology infrastructure, telephone systems, computing and telecommunications equipment, safes and alarms, and other items of personal property owned or leased by Sellers for use in the Acquired Stores, and all warranties and licenses thereunder or related thereto; but excluding all computer hardware and systems not physically residing in an Acquired Store location;

(e)    All advertising and promotional materials and any rights thereto possessed, or entitled to be used, by Sellers;

(f)    The Contracts listed on Schedule 1.1(f), other than those excluded by Buyers from the Acquired Assets pursuant to Section 1.3 hereof (if any), but including all contractual rights (including rights to indemnification, exculpation, advancement or reimbursement of expenses), Claims, causes of action, choses in action, lawsuits, demands and judgments in law or in equity, of every kind and nature, that Sellers have or may have against any other Person and that are related to the Acquired Contracts, other than those excluded pursuant to Section 1.3 (the "**Contract Claims**" and such acquired contracts, the "**Acquired Contracts**");

2

(g)     All permits, registrations, Orders, operating permits, certificates of occupancy, approvals, authorizations and licenses (collectively, the "**Permits**") issued to Sellers by any Government or other third party, including those listed on Schedule 1.1(g);

(h)     All insurance benefits, rights and proceeds arising from or relating to any event or incident between the date of execution of this Agreement and prior to the Closing that materially and adversely affects, impacts or alters any Acquired Asset;

(i)     Except for the Excluded Assets included in Sections 1.3(f) and (g) all rights, Claims, rights of offset, causes of action, lawsuits, judgments and other Claims or demands of any nature against any third party arising out of, and with respect to, the Acquired Assets or Assumed Liabilities;

(j)     All books, files and records held or otherwise owned by Sellers in Sellers' possession or control that relate to current or former employees and other personnel, including, without limitation, books, files and records that are related to medical history, medical insurance or other medical matters and to workers' compensation and to the evaluation, appraisal or performance of current or former employees and other personnel of Sellers (collectively, the "**Employee Records**");

(k)     Copies of all books, files and records of sales and general business operations of the Acquired Stores and Sellers' supplier lists for the Acquired Stores in Sellers' possession or control or to which Sellers' have access ("**Business Records**");

(l)     All goodwill as a going concern and all other right, title and interest of Sellers in and to the general intangibles incident to Sellers' business at the Acquired Stores;

(m)     Any and all computer applications and software, whether owned or licensed, whether for general business usage (e.g., accounting, word processing, graphics, spreadsheet analysis, etc.) or specific, unique-to-the-business usage, all computer operating, security or programming software, owned or licensed by the Sellers, and, in each case, all source code, executable code, data, databases and related documentation of any of the foregoing, and copies and tangible embodiments of any of the foregoing in whatever form or medium, including Sellers' proprietary software and documentation used to transfer (FTP-File Transfer Protocol) and process (translate the data) the Sabretooth and Aloha software used by Sellers;

(n)     All telephone numbers, fax numbers, email addresses, websites, URLs and internet domain names, including those listed on Schedule 1.1(n); and

(o)     All monies payable, whether rebates or dividends on account of, accrued by or due from Pepsi Cola to Sellers pursuant to any agreement or arrangement with Pepsi Cola (collectively, the "**Pepsi Prebates**").

Section 1.2     **Transfers of Real Properties**.  At the Closing, and upon the terms and conditions set forth herein and the Sale Order, Sellers shall sell, assign, transfer, convey and

deliver to Realco, free and clear of all Liens, Claims and Interests except for the Assumed Liabilities, and Realco shall purchase from Sellers, all of Sellers' rights, title and interest of every kind and nature (including indirect and other forms of beneficial ownership) in each of the real properties set forth on <u>Schedule 1.2</u> (the "**Real Properties**"; and together with the Operating Assets the "**Acquired Assets**"), except for the real properties set forth on <u>Schedule 1.2(a)</u> (the "**Escrowed Properties**"), to which Sellers shall convey to Realco title as reasonably practical upon Sellers receiving marketable title to same and to which Buyers shall receive possession at Closing. Sellers shall be responsible for paying the costs of owners title policies for the benefit of Buyers for all of the Real Properties transferred, including the Escrowed Properties.

Section 1.3    **Excluded Assets**.    Notwithstanding anything to the contrary in this Agreement, Sellers shall retain all rights, title and interests in, to and under those assets, properties and rights of Sellers that are not included in or used in the operation of the Acquired Stores and the following assets (collectively, the "**Excluded Assets**"):

(a)    All of Sellers' cash, checks, cash equivalents, credit card receipts for transactions prior to Closing, cash and deposits in Sellers' bank accounts, cash-in-transit and all accounts receivable of Sellers earned as of the Closing Date, other than the On-Hand Cash.

(b)    All equity ownership interests in Sellers;

(c)    Subject to <u>Section 2.4</u>, all rights to refunds of, credits for, and Claims in connection with Taxes of Sellers, and any records relating to Taxes of Sellers;

(d)    Subject to <u>Section 1.1(h)</u>, all insurance premiums, claims for refunds of premiums for insurance policies, policies, contracts and coverage obtained by Sellers, and all rights to insurance proceeds or other Contracts of insurance or indemnity (or such similar agreement) recoveries;

(e)    All avoidance Claims and causes of action arising under chapter 5 of the Bankruptcy Code or any other fraudulent transfer statue and any related Claims and causes of action under applicable non-bankruptcy law arising out of the same set of facts, the Claims asserted in Adversary Proceeding  No.11-6900 pending in the Bankruptcy Case, and the proceeds from any of the foregoing;

(f)    All rights of and benefits to Sellers under this Agreement, the Ancillary Agreements or any other agreements or instruments otherwise delivered, executed or made in connection with this Agreement;

(g)    Each Contract to which Sellers are a party that do not constitute an Acquired Contract, and all deposits, Claims, rebates or refunds thereunder or related thereto;

(h)    All prepaid expenses and deposits of Sellers made by the Sellers since the filing of the Bankruptcy case, including, but not limited to, those listed on Schedule 1.3(h) up to a maximum of $500,000, and retainers paid to professionals (the

"**Excluded Deposits**") and the right to receive and retain all mail and other communications of the Sellers;

(i)     The assets listed on Schedule 1.3(i);

(j)     Corporate seals, minute books, charter documents, stock transfer records, record books, original Tax and financial records and such other files, books and records relating to any of the Excluded Assets or to the organization, existence or capitalization of Sellers;

(k)     Contracts that Buyers have identified prior to the Closing that Buyers will not assume at Closing; and

(l)     Computer hardware and systems not physically residing in an Acquired Store location.

Section 1.4     **Assumption of Liabilities**.  At the Closing, Buyers shall not assume any obligations or Liabilities from Sellers other than those obligations and Liabilities expressly listed below (all such Liabilities and obligations assumed pursuant to this Section 1.4, the "**Assumed Liabilities**"):

(a)     All real estate and personal property Taxes, and other related assessments and fees, if any, related to or arising from the ownership of the Acquired Assets arising after Closing (the **"Property Taxes"**);

(b)     Up to $52,500,000 of Liens, Claims and Interests of General Electric Capital Corporation and its affiliates ("**GE**") against the Sellers' for loans made prior to the Petition Date, which Liens, Claims and Interests (the "**GE Secured Claims**") are being restructured and paid as set forth in Section 2.1 below;

(c)     Sellers' secured debt to YUM! Capital Funding Corporation ("**YUM!**") in an amount not to exceed $720,000, which shall be paid pursuant to the terms of the Annapolis Note to YUM! dated December 11, 2009;

(d)     Sellers's obligations to pay for In-Transit Inventory;

(e)     Sellers's obligations under the Acquired Contracts, to the extent that those obligations arise, and relate to any time period, after the Closing Date;

This Section 1.4 shall not limit any claims or defenses Buyers may have against any party other than the Sellers.  The transactions contemplated by this Agreement shall in no way expand the rights or remedies of any third party against Buyers or the Sellers as compared to the rights and remedies which such third party would have had against the Sellers had Buyers not assumed such Assumed Liabilities.

Section 1.5     **Excluded Liabilities.**  The Acquired Assets are being sold, assigned, transferred, conveyed, and delivered to Buyers free and clear of any and all Liens, Claims, and Interests pursuant to 11 U.S.C. §§ 105 and 363, except for the Assumed Liabilities. Buyers are

assuming only the Assumed Liabilities and are not assuming, and shall not be the successor to, any other Liability or obligation of Sellers or any predecessor or Affiliate of Sellers whatsoever, or any Liability or obligation related to Sellers' businesses of any nature (either pre-petition or post-petition), including, employee related salaries, benefits, accrued vacation, employee related taxes that accrued prior to Closing, any direct or indirect Indebtedness, guaranty, endorsement, Claim, loss, damage, deficiency, cost, expense, obligation or responsibility, whether fixed or unfixed, known or unknown, asserted or unasserted, absolute or contingent, accrued or unaccrued, due or to become due, choate or inchoate, liquidated or unliquidated, secured or unsecured, or any Lien or Interest related thereto. All such Liabilities and obligations shall be retained by, and remain Liabilities and obligations of, Sellers (all such Liabilities are, collectively, the "**Excluded Liabilities**"). The Parties acknowledge and agree that disclosure of any Liability on any Schedule to this Agreement shall not create an Assumed Liability or other Liability of Buyers, except where such disclosed Liability or obligation has been expressly assumed by Buyers as an Assumed Liability under Section 1.4.

Section 1.6 **Post-Closing Liabilities.** Buyers acknowledge that Buyers shall be responsible for all Liabilities and obligations relating to Buyers' ownership or use of, or right to use, the Acquired Assets and the Assumed Liabilities after the Closing Date, including without limitation all Taxes arising out of or related to the Acquired Assets or the operation or conduct of the business acquired pursuant to this Agreement for all Tax periods beginning after the Closing Date.

**ARTICLE II.**
**CONSIDERATION**

Section 2.1 **Purchase Price.**

(a) The base purchase price for the Acquired Assets is estimated to be approximately $56,220,000 ("**Base Purchase Price**"), consisting of (i) the Cash Consideration of $2,850,000, (ii) the assumption by Realco of $32,750,000 of Sellers' secured debt to GE ("**Realco Term Note**"); (iii) the assumption by Partner of $19,750,000 of Sellers' secured debt to GE ("**Opco Term Note**"); (iv) the assumption by Buyers of Sellers' secured debt to YUM! not to exceed $720,000 (the "**YUM! Note**"), and (v) the first $150,000 of the Pepsi Prebates received by the Buyers following the Closing Date ("**Sellers' Prebates**"); subject to adjustment (the "**Adjusted Purchase Price**"), as provided below.

(b) The Adjusted Purchase Price shall consist of the (i) Cash Consideration, as adjusted in Section 2.1(c), (ii) the principal amount of the Realco Term Note, as adjusted pursuant to Section 2.2, (iii) the principal amount of the Opco Term Note, as adjusted pursuant to Section 2.2, (iv) the principal amount of the YUM! Note outstanding at Closing and (v) the Sellers' Prebates.

(c) The cash consideration ("**Cash Consideration**") payable at closing shall be equal to $2,850,000 (A) plus or minus the Prorated Amounts, as initially determined pursuant to Section 2.4; (B) less the Cure Costs directly wired to the respective

6

counterparties to the Acquired Contracts pursuant to Section 2.7(a); and (C) less the Cure Costs Dispute Amount deposited with the Cure Dispute Escrow Agent.

Section 2.2    **Purchase Price/ Note Principal Adjustment**.

(a)    Set forth on Schedule 2.2 is a list of Stores at which the Real Property Lease has expired or at which the landlord has not consented to the extension of the assumption deadline under 11 U.S.C. §365(d)(4) for such leased property (the "**Expired Leases**").  Prior to the Closing Date, the Sellers and the Buyers shall use commercially reasonable efforts to obtain from the landlords from which each Expired Lease was obtained either (i) an agreement to enter into a new lease with Partner for each Expired Lease, (ii) an agreement to the assumption by Partner of the Expired Lease, or (iii) an agreement that Partner may continue to operate under the terms of the Expired Lease for a period of time, in each case, on terms and conditions satisfactory to Buyers (in each case, a "**New Lease**").  If, on the Closing Date, (i) the Buyers have not obtained a New Lease with respect to each Expired Lease or (ii) Sellers cannot deliver to Buyers at Closing an effective assignment of any Real Property Lease other than the Expired Leases satisfactory both to Buyers and GE (in each case of (i) and (ii), a "**Failed Lease**"), the Purchase Price shall be reduced by means of a reduction in the principal amount of the Opco Term Note executed at Closing.

(b)    If Buyers determine prior to Closing that: (i) GE will not lend on any of the Real Properties included on Schedule 1.2 (not the Escrowed Properties) because such lenders cannot determine that Sellers have title to such Real Property, free and clear of all Liens, Claims and Interests; or (ii) Buyers' decline to purchase any of the Real Properties included on Schedule 1.2 (not the Escrowed Properties) because Buyers' cannot determine that Sellers have title to such Real Property, free and clear of all Liens, Claims and Interests (with each of (i) and (ii), a "**Failed Property**"), the Purchase Price shall be reduced by means of a reduction in the principal amount of the Realco Term Note executed at Closing (together with the Opco Term Note, the "**Notes**"). The Stores actually acquired at Closing by Buyers, whether leased or owned, shall be referred to herein as the "**Acquired Stores**".

(c)    Within 35 days after Closing, Buyers shall notify GE whether On-Hand Cash was less than $1,000 per Acquired Store, on average, whether and On-Hand Inventory was less than $5,000 per Acquired Store, on average, and whether the Prorated Amounts paid by Buyers at Closing were higher than actual amounts. The principal amount of the Opco Term Note shall be reduced by the amount by any shortage of average On-Hand Cash or On-hand Inventory received by the Buyers and by any overpayment by the Buyers of the Prorated Amounts.

(d)    At any time prior to 60 days after Closing, Buyers shall promptly forward any claim to the Sellers for payment of an Excluded Liability (other than real property taxes) that Buyers are obligated to pay in order to obtain shipments of supplies in the ordinary course or services that were being provided to Sellers prior to

Closing. If the Sellers do not pay such amount or provide proof of prior payment of such amount, the principal amount of the Opco Term Note shall be reduced by the amount of such Excluded Liability.

(e)     At any time prior to 180 days after Closing, Buyers shall promptly notify GE and Sellers if any person claiming to be the landlord of any Real Property Lease purported to be transferred to Buyers by Sellers at Closing has challenged Buyer's right to assume such Real Property Lease. Buyers shall tender to GE and Sellers the right to defend against any such claim. If Buyers lose possession of the applicable Store prior to the expiration of the applicable Real Property Lease, the principal amount of the Opco Term Note shall be reduced. The amount of the reduction in the principal amount of Opco Term Note applicable to such lease shall be equal to the Store EBITDA less the amount of EBITDA earned by Buyers at that location from the Closing Date until the date the Buyers were dispossessed.

(f)     At any time prior to 180 days after Closing, if Buyers lose possession of any Expired Lease that was superseded by an agreement that Partner may continue to operate under the terms of the Expired Lease for a period of time of less than 12 months, prior to the expiration of the applicable Real Property Lease, the principal amount of the Opco Term Note shall be reduced. The amount of the reduction in the principal amount of Opco Term Note applicable to such lease shall be equal to the Store EBITDA less the amount of EBITDA earned by Buyers at that location from the Closing Date until the date the Buyers were dispossessed.

(g)     If Buyers do not receive an Acceptable Title Policy with respect to any Real Property within 30 days after Closing, Buyers shall give GE and the Sellers prompt notice of such failure (a "**Title Policy Failure**"). If GE or the Sellers do not deliver an Acceptable Title Policy to Buyers within 365 days after the Closing Date with respect to real property which is the subject of a Title Policy Failure or Buyers are dispossessed of such property, the principal amount of the Realco Term Note shall be reduced. The amount of the reduction in the principal amount of Realco Term Note applicable to each such property shall be equal to the Store Value less the EBITDA earned by Buyers at the applicable Store from the Closing Date to the earlier of the date the Buyers are dispossessed or the one-year anniversary of Closing.

(h)     If GE or the Sellers do not deliver a special or limited warranty deed (or its equivalent) and an Acceptable Title Policy to Buyers within one year after the Closing Date with respect to an Escrowed Real Property other than Dania Beach or Buyers are dispossessed of such property prior to such date, the principal amount of the Realco Term Note shall be reduced. The amount of the reduction in the principal amount of Realco Term Note applicable to each such property shall be equal to the Store Value less the EBITDA earned by Buyers at the applicable Store from the Closing Date to the earlier of the date the Buyers are dispossessed or the one-year anniversary of Closing.

(i)      At any time prior to 180 days after Closing, Buyers shall promptly forward any claim to the Sellers for payment of an Excluded Liability consisting of real property taxes. If the Sellers do not pay such amount or contest such amount so that Buyers are not at risk of losing possession of the applicable Acquired Store, the principal amount of the Opco Term Note shall be reduced by the amount of such Excluded Liability paid by Buyers.

(j)      If GE or the Sellers do not deliver a special or limited warranty deed (or its equivalent) and an Acceptable Title Policy to Buyers within 365 days of the Closing Date with respect to the Real Property for Store 140 located at 506 S. Federal Hwy, Dania Beach, Florida ("**Dania Beach**") or Buyers are dispossessed of such property prior to such date, the principal amount of the Realco Term Note shall be reduced by $400,000.

(k)      The amount of the reduction in the principal amount of Opco Term Note applicable to each Failed Lease at Closing shall be equal to the Store EBITDA applicable to that location.

(l)      The amount of the reduction in the principal amount of Realco Term Note applicable to each Failed Property at Closing shall be equal to the Store Value applicable to that location.

(m)      Notwithstanding the foregoing, there shall be no reduction in the principal amount of the Opco Term Note unless and until the aggregate of the deductions required in Sections 2(a), (c), (d), (e), (f) and (i) exceed $250,000 (the "**Opco Deductible**") and then, only to the extent such reductions, in the aggregate, exceed the Opco Deductible. The maximum amount of the reduction in the principal amount of the Opco Term Note provided for by this Section 2.2 shall be $3,000,000. The reductions in the principal amount of the Opco Term Note that do not occur at Closing shall be effective: (i) 120 days after Closing for any claims submitted to GE on or prior to the 90th day after the Closing and (ii) 240 days after Closing for any claims submitted to GE after the 90th day after the Closing.

(n)      Notwithstanding the foregoing, there shall be no reduction in the principal amount of the Realco Term Note unless and until the aggregate of the deductions required in Sections 2(b), (g), (h) and (j) exceed $50,000 (the "**Realco Deductible**") and then, only to the extent such reductions, in the aggregate, exceed the Realco Deductible. The reductions in the principal amount of the Realco Term Note that do not occur at Closing shall be effective: (i) 120 days after Closing for any claims submitted to GE on or prior to the 90th day after the Closing, (ii) 240 days after Closing for any claims submitted to GE after the 90th day after the Closing but on or prior to the 180th day after Closing, and (iii) 390 days after Closing for any claims submitted to GE after the 180th day after the Closing.

Section 2.3    **On-Hand Inventory; On-Hand Cash**.  Immediately after the close of business on the day before the Closing Date, but in no event later than 11:59 p.m., Sellers shall perform a physical count of all Inventory and will count the On-Hand Cash in each Acquired

Store. Sellers shall create a written summation of the amount of (a) On-Hand Inventory counted and its cost value, each subtotaled by Acquired Store and by type and (b) On-Hand Cash. A copy of the summations shall be provided to Buyers. The physical count of the Inventory and the Inventory valuation shall be reasonable, but otherwise shall be based on and in accordance with Sellers' prior practices and methodologies.

Section 2.4 **Prorations**. Sellers shall calculate, in good faith, prorated amounts (the "**Proration**") for (a) rent under Leased Real Property and personal property leases, (b) Property Taxes, (c) common area maintenance charges, and (d) charges for sewer, water, fuel, telephone, electricity and other utilities (items (a) through (d) together, the "**Prorated Amounts**"), as of the Closing Date for the Acquired Stores. For the Proration, Sellers shall be liable to the extent the Prorated Amounts relate to any time period up and including the Closing Date and Buyers shall be liable to the extent the Prorated Amounts relate to periods after the Closing Date. The Proration shall credit Sellers for any Excluded Deposits Buyers take possession of or receive credit from for from third parties. Sellers shall provide Buyers the Proration, and reasonable supporting documentation, at least three (3) Business days prior to the Closing Date. The Proration shall be based on the latest available rates, valuations, readings, or such other information or documents that most accurately reflect current charges, if known, or otherwise reasonably estimate the outstanding charges for the Prorated Amounts as of the Closing Date. On the Closing Date, the Purchase Price shall be (x) increased by the net amount of the Proration if such amount is in Sellers' favor, and (y) decreased by the net amount of the Proration if such amount is in Buyers' favor.

Section 2.5 **Cure Costs.** The Buyers shall be responsible for the payment of any Cure Costs related to the assumption and assignment of the Acquired Contracts, as determined by the Bankruptcy Court in the Sale Order or such other Order regarding the payment of Cure Costs associated with an Acquired Contract. The Buyers shall pay the Cure Costs in accordance with the provisions of Section 2.6 below.

Section 2.6 **Closing Payments**. At the Closing, Buyers shall pay the Cure Costs and Cash Consideration as follows:

(a) With respect to Cure Costs that have been finalized and determined by the Bankruptcy Court before the Closing, Buyers shall pay or direct MVE to pay directly to the respective counterparties to the Acquired Contracts, by wire transfer of immediately available funds the full amount of each such party's Cure Cost, as specified in the Sale Order or such other order(s) of the Bankruptcy Court regarding the amount of Cure Costs associated with any Acquired Contract, and provide proof of such payment to Sellers;

(b) Buyers shall deposit or direct MVE to deposit an amount equal to the aggregate amount of Cure Costs, if any, that remain in dispute between Sellers and the respective counterparties to the Acquired Contracts as of the Closing Date (the "**Cure Costs Dispute Escrow Amount**") into an escrow account (the "**Cure Costs Dispute Escrow Account**") to be established pursuant to the Sale Order; and

11-43971-tjt    Doc 672-1    Filed 02/28/12    Entered 02/28/12 15:58:29    Page 13 of 82

(c)      Buyers shall pay or direct MVE to pay, by wire transfer of immediately available funds, to an account designated by Sellers the remaining balance of the Cash Consideration due at Closing after application of the payments pursuant to this Agreement.

Section 2.7    **Transaction Taxes.**  All Taxes, including all state and local Taxes in connection with the transfer of the Acquired Assets and all recording and filing fees (collectively, "**Transaction Taxes**"), that may be imposed by reason of the sale, transfer, assignment and delivery of the Acquired Assets, and that are not exempt under §1146(a) of the Bankruptcy Code, shall be borne by Buyers, except that the Taxes payable upon transfer of the Real Properties located in the State of Maryland, whether or not such properties are Escrowed Properties, shall be paid, if and when incurred, by the Sellers. Buyers and Sellers shall cooperate to (a) determine the amount of Transaction Taxes payable in connection with the transactions contemplated under this Agreement; (b) provide all requisite exemption certificates; and (c) prepare and file any and all required Tax Returns for or with respect to such Transaction Taxes with any and all appropriate Government taxing authorities.

Section 2.8    **Allocation of Total Consideration.**  Buyers and Sellers shall allocate the Total Consideration among the Acquired Assets in accordance with Schedule 2.8 (the "**Allocation**") to be mutually agreed upon by the parties prior to Closing. The Allocation will be binding upon Buyers and Sellers and their respective successors and assigns, and none of the parties to this Agreement will take any position (whether in returns, audits or otherwise) that is inconsistent with the Allocation. Buyers and Sellers will report the purchase and sale of the Acquired Assets on all tax returns, including Form 8594 as provided for in section 1060 of the Code, in accordance with the Allocation and will cooperate in timely filing with the Internal Revenue Service their respective Forms 8594.

## ARTICLE III.
## CLOSING AND DELIVERIES

Section 3.1    **Closing.**  The consummation of the transactions contemplated by this Agreement (the "**Closing**") shall take place on February 29, 2012 or on such other date or at such other time as may be mutually agreed to by the parties (the "**Closing Date**") and shall be effective as of 11:59 p.m. on the Closing Date. Subject to such different procedures agreed upon by the parties, the Closing shall take place via a "paper" close wherein Buyers and Sellers shall exchange such documents and instruments, or copies thereof, sufficient to effect the Closing by electronic or other means without the use of a "roundtable" closing at a particular location. All proceedings to be taken and all documents to be executed and delivered by all parties at the Closing shall be deemed to have been taken and executed simultaneously and no proceedings shall be deemed to have been taken nor documents executed or delivered until all have been taken, executed and delivered.

Section 3.2    **Sellers' Deliveries.**  Sellers shall deliver to Buyers at or prior to the Closing or such other time as set forth in this Agreement:

(a)      A bill of sale for all of the Operating Assets that are tangible personal property, without representation, warranty or covenant of any kind;

11-43971-tjt   Doc 672-1   Filed 02/28/12   Entered 02/28/12 15:58:29   Page 14 of 82

(b)     An executed agreement for the assumption of the Assumed Liabilities, without representation, warranty or covenant of any kind;

(c)     For all intangible Operating Assets, including all Acquired Contracts, (i) an agreement of assumption and assignment, without any representation, warranty or covenant of any kind, or (ii) an Order of the Bankruptcy Court (which may be the Sale Order) effecting the same;

(d)     Special or limited warranty deeds (or their equivalent) subject to the Permitted Exceptions conveying the Real Properties, except the Escrowed Properties which shall be placed into escrow at Closing;

(e)     A certificate dated as of the Closing Date, signed by the CRO of each of the Sellers certifying to the accuracy of the matters set forth in Section 6.2(a);

(f)     Such other agreements, documents or instruments of assignment and transfer that Buyers may reasonably request;

(g)     The Cure Costs Dispute Escrow Agreement, duly executed by Sellers and Cure Dispute Escrow Agent;

(h)     A true and complete copy of the Sale Order.

Section 3.3     **Buyers' Deliveries.**     Buyers shall deliver to Sellers at or prior to the Closing or such other time as set forth in the Agreement or by consent of the Parties:

(a)     The Cash Consideration in accordance with Section 2.1;

(b)     A duly executed counterpart by Buyers to each of the documents listed in Section 3.2(b) and 3.2(c);

(c)     A certificate, dated the Closing Date, signed by each of Buyers' respective Secretaries, Managers or Members, certifying the accuracy of the matters set forth in Section 6.1(a);

(d)     The Cure Costs Dispute Escrow Agreement, duly executed by Buyers and Cure Dispute Escrow Agent;

(e)     Such other agreements, documents or instruments of assignment and transfer that Sellers may reasonably request;

(f)     Evidence that the Franchisor Consent has been obtained by Buyers.

Section 3.4     **Buyers' Other Closing Obligations.**     In addition to Buyers' obligations under Section 3.3, at the Closing Buyers shall enter into new franchise agreements (the "**New Franchise Agreements**"), upon terms acceptable to Buyers and the YUM! Parties, for the Acquired Stores with the YUM! Parties.

# ARTICLE IV.
# REPRESENTATIONS AND WARRANTIES

Section 4.1 **Representations and Warranties of Sellers.** Sellers hereby represent and warrant to Buyers as of the Execution Date as follows:

(a) Authorization and Validity. Subject to the Bankruptcy Court's entry of the Sale Order, (i) Sellers have all requisite power and authority to enter into this Agreement and any Ancillary Agreements to which any of Sellers are a party and to perform their obligations hereunder and thereunder; and (ii) this Agreement constitutes Sellers' valid and binding obligation, enforceable against Sellers in accordance with its terms.

(b) No Conflict or Violation. The execution, delivery and performance by Sellers of this Agreement and any Ancillary Agreement to which any Seller is a party does not (i) violate or conflict with any provision of any Seller's certificate of incorporation or bylaws or similar organizational documents, (ii) violate any provision of law, or any Order, judgment or decree of any court or Government applicable to any Seller or any of its properties or assets; or (iii) violate or result in a material breach of or constitute (with due notice or lapse of time or both) a default under any material Contract to which any Seller is a party or by which any Seller is bound and to which any of the Acquired Assets is subject.

(c) Title to Assets. Sellers own, and have good, valid, and marketable title to, all of the Acquired Assets, except the Escrowed Properties.

(d) Title to Acquired Assets. Subject to the entry of the Sale Order, at the Closing, Buyers will obtain good and marketable title to or a valid and enforceable right by Contract to use, the Acquired Assets which shall be transferred to Buyers free and clear of all Liens, Claims and Interests, except the Assumed Liabilities. The Sellers own or lease all buildings, machinery, equipment, and other tangible assets necessary for the conduct of the Sellers' operations at each of the Stores as presently conducted. Except for the Excluded Assets identified in Sections 1.3, the Acquired Assets constitute all the assets, agreements, licenses and properties, agreements, licenses and properties necessary to conduct the Business as presently conducted.

(e) Litigation. To the best of Sellers' knowledge, there are no claims, actions, suits, proceedings or investigations pending or threatened, in writing, against Sellers, or any Related Person of Sellers, that could affect the ability of Sellers to consummate the transactions contemplated by this Agreement and each Ancillary Agreement, but for those identified on Schedule 4.1(e).

(f) Assignability. Schedule 1.1(f), sets forth each Acquired Contract, other than those removed from the list of Acquired Contracts by Buyer prior to Closing pursuant to Section 1.3(i); following the Closing each Acquired Contract shall be in full force and effect; and Sellers shall, following the Closing, have the same

rights under each Acquired Contract that Buyers had under such Acquired Contract prior to the Closing.

(g)     Taxes. To the best of Sellers' knowledge, Schedule 4.1(g) contains a list, for each Store that is leased, of the Property Taxes owed on the applicable property for 2011 and the date such property taxes were paid.

(h)     YUM! Note.   Sellers are current in the payment of principal and interest on the Annapolis Note to YUM!.

Section 4.2   **Representations and Warranties of Buyers**.   Buyers hereby represent and warrant to Sellers as of the Execution Date as follows:

(a)     Corporate Organization. Each Buyer is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and has all requisite limited liability company power and authority to own its properties and assets and to conduct its business as now conducted.

(b)     Qualification to Conduct Business. Each Buyer is duly qualified to do business as a foreign corporation and is in good standing in every jurisdiction in which the character of the properties owned or leased by it or the nature of the business conducted by it makes such qualification necessary.

(c)     Authorization and Validity.   Each Buyer has all requisite limited liability company power and authority to enter into this Agreement and any Ancillary Agreement to which such Buyer is a party and to perform its obligations hereunder and thereunder.  The execution and delivery of this Agreement and any Ancillary Agreement to which any Buyer is a party and the performance of Buyers' obligations hereunder and thereunder have been, or on the Closing Date will be, duly authorized by all necessary limited liability company action of Buyers, and no other limited liability company proceedings on the part of Buyers are necessary to authorize such execution, delivery and performance. This Agreement has been, and any Ancillary Agreement to which any Buyer is a party has been duly executed by such Buyer and constitutes such Buyer's valid and binding obligations, enforceable against it in accordance with their respective terms.

(d)     No Conflict or Violation.  The execution, delivery and performance by Buyers of this Agreement and any Ancillary Agreement to which either Buyer is a party does not (i) violate or conflict with any provision of either Buyer's organizational documents; (ii) materially violate any provision of Law, or any Order, judgment or decree of any court or Government applicable to Buyers or any of their respective properties or assets; or (iii) violate or result in a breach of or constitute (with due notice or lapse of time or both) a default under any material Contract to which either Buyer is party or by which any Buyer is bound or to which any of Buyers' properties or assets is subject.

(e)    <u>Consents and Approvals</u>.  Other than the entry of the Sale Order, no consent, waiver, authorization or approval of any Person or declaration, filing or registration with any Government is required in connection with the execution and delivery by Buyers of this Agreement or any Ancillary Agreement to which any Buyer is a party or the performance by Buyers of their obligations hereunder or thereunder.

(f)    <u>Adequate Assurances Regarding Acquired Contracts</u>.  Buyers are capable of satisfying the conditions contained in section 365(f) of the Bankruptcy Code with respect to the Acquired Contracts.

(g)    <u>Franchise Agreements</u>.  As of the Execution Date, Buyers have obtained, and have provided Sellers with written evidence that KFC Corporation, a Delaware corporation ("**KFCC**"), Taco Bell Corp., a California corporation ("**Taco Bell**"), and Pizza Hut, Inc., a California corporation ("**Pizza Hut**" and, together with KFCC and Taco Bell, the "**YUM! Parties**") have consented to the execution of new franchise agreements for the Acquired Stores wherein Buyers will become a duly authorized operator of YUM! Parties' restaurants at the Acquired Stores upon the Closing ("**Franchisor's Consent**").

(h)    <u>Litigation</u>.  There are no claims, actions, suits, proceedings or investigations pending or threatened, in writing, against Buyers, or any Related Person of Buyers, that could affect the ability of Buyers to consummate the transactions contemplated by this Agreement and each Ancillary Agreement.

(i)    <u>Adequacy of Funds</u>.  Buyers shall have at Closing cash on hand, existing availability under existing lines of credit, or other immediately available financial resources sufficient to pay the Cash Consideration at Closing, and to fund the other payments required pursuant <u>to Section 3.4</u>.

Section 4.3   **Warranties Are Exclusive.**  The parties acknowledge that the representations and warranties contained in this <u>Article IV</u> are the only representations or warranties given by the parties and that all other express or implied warranties are disclaimed and Buyers hereby expressly disclaim any other representations or warranties, whether made by Sellers or any of their Affiliates, officers, directors, employees, agents or representatives. Without limiting the foregoing, Buyers acknowledge that, except for the representations and warranties contained in <u>Section 4.1</u>, the Acquired Assets are conveyed "AS IS," "WHERE IS" and "WITH ALL FAULTS" and that all warranties of merchantability or fitness for a particular purpose are disclaimed. WITHOUT LIMITING THE FOREGOING, BUYERS ACKNOWLEDGE THAT, EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES CONTAINED IN <u>Section 4.1</u>, SELLERS AND ITS RELATED PERSONS AND AFFILIATES HAVE MADE NO REPRESENTATION OR WARRANTY CONCERNING ANY (A) USE TO WHICH THE ACQUIRED ASSETS MAY BE PUT, (B) FUTURE REVENUES, COSTS, EXPENDITURES, CASH FLOW, RESULTS OF OPERATIONS, FINANCIAL CONDITION OR PROSPECTS THAT MAY RESULT FROM THE OWNERSHIP, USE OR SALE OF THE ACQUIRED ASSETS OR THE ASSUMPTION OF THE ASSUMED LIABILITIES OR (C) OTHER INFORMATION OR DOCUMENTS MADE AVAILABLE TO BUYERS OR ITS

AFFILIATES OR RELATED PERSONS. Buyers acknowledge that Buyers have conducted, or have had an adequate opportunity to conduct, due diligence investigation related to Sellers' business and operations, the Acquired Assets, the Assumed Liabilities, and all matters related thereto. In proceeding with the transactions contemplated in this Agreement, except for any representations and warranties expressly set forth in Section 4.1, Buyers are doing so based solely upon their own due diligence and review, and Buyers have not relied upon any oral or written statements, representations or guaranties whatsoever, whether express or implied, made by Sellers or their agents and representatives.

## ARTICLE V.
## COVENANTS AND OTHER AGREEMENTS

Section 5.1 **Covenants of Sellers.** Sellers covenant to Buyers that, during the period from the Execution Date, through and including the Closing Date or the earlier termination of this Agreement:

(a) Conduct of Business Before the Closing. Unless otherwise agreed by Sellers and Buyers, Sellers shall use commercially reasonable efforts to conduct their business in all material respects in the manner in which it has been conducted since the Petition Date and to preserve intact their respective business or organization and relationships with third parties. Sellers shall conduct their business in such a manner that On-Hand Cash and On-Hand Inventory at Closing are consistent with Sellers's past practices and Sellers shall pay for On-Hand Inventory in a timely manner after the invoices therefor are received.

(b) Cooperation. Sellers shall use commercially reasonable efforts to (i) take, or cause to be taken, all action and to do, or cause to be done, all things necessary or proper or reasonably requested by Buyers, consistent with applicable Law, to consummate and make effective as soon as possible the transactions contemplated hereby; and (ii) assist Buyers' efforts to transfer any Permits required to own or use the Acquired Assets.

(c) Sale Order. Without limiting Section 5.1(b)(i), Sellers shall use commercially reasonable efforts to obtain entry of the Sale Order by the Bankruptcy Court as soon as reasonably practicable.

(d) Access to Records and Properties. Buyers shall be entitled, and the Sellers shall permit Buyers, to conduct such additional investigation of the condition (financial or otherwise), of the businesses, assets, properties or operations of the Sellers as Buyers shall reasonably deem appropriate. The Sellers shall (i) provide Buyers and their representatives (A) access at any reasonable time during normal business hours upon at least 24 hours prior notice to all the facilities, offices and personnel of the Sellers and to all of the books and records of the Sellers, including, to perform field examinations and inspections of the Sellers' Inventory, Cash On-Hand, facilities, equipment and other assets and properties and (B) deliver copies of such documents as Buyers shall reasonably request; and (ii) cause the Sellers' representatives to furnish Buyers with such financial and

operating data and other information with respect to the condition (financial or otherwise), of the businesses, assets, properties or operations as Buyers shall reasonably request; provided, however, that Buyers and their representatives shall use commercially reasonable efforts to prevent any such investigation from unreasonably interfering with the operation of the Business. The Sellers shall promptly deliver to Buyers one copy of all pleadings, motions, notices, statements, schedules, applications, reports and other papers as filed by the Sellers or any other party in the Bankruptcy Case regarding, or in any way impacting, the transactions contemplated under this Agreement, including the sale of the Acquired Assets and assumption and assignment of the Acquired Contracts.

(e)     Notice of Certain Events.   The Sellers shall promptly notify Buyers of, and furnish to Buyers any information Buyers may reasonably request with respect to, (i) the occurrence or nonoccurrence of any event or condition or the existence of any fact that would reasonably be expected or likely to cause any of the conditions to Buyers' obligations to consummate the transaction(s) contemplated by this Agreement or by any Ancillary Agreement not to be fulfilled or (ii) any Material Adverse Effect. Notwithstanding the foregoing, the delivery of any notice pursuant to this Section 5.1(e) shall not (i) be deemed to amend or supplement any of the Schedules contemplated hereby, (ii) be deemed to cure any breach or any representation, warranty covenant or agreement or to satisfy any condition or (iii) limit or otherwise affect the remedies available to Buyers hereunder, unless Buyers proceed to Close the transactions contemplated by this Agreement without terminating this Agreement pursuant to Section 7.1.

(f)     No later than March 2, 2012, Sellers shall fund in full the Business's payroll for amounts accruing during the February 20, 2012 through February 26, 2012 pay period. No later than March 9, 2012, Sellers shall fund in full the Business's payroll for amounts accruing during the February 27, 28 and 29, 2012 pay period. This subsection (f) shall only apply should the transactions contemplated by this Agreement Close on or before February 29, 2012.

(g)     Prior to Closing, Sellers shall have provided Buyers with access to a correct and complete copy of each Acquired Contract having a value or creating obligations over $5,000 (and all amendments, modifications, and supplements thereto).

(h)     Prior to Closing, Sellers shall have provided Buyers with each Real Property Lease included in the Acquired Assets in Sellers' possession or control, including all related documents reasonably necessary to determine Sellers' rights and obligations, as well as rights to renew or extend, under such Real Property Lease.

(i)     For 90 days following the Closing, at Sellers' cost, Sellers shall cooperate with Buyers to: (i) migrate Sellers' data from Sellers' servers to Buyers' servers; (ii) assist in the integration of the POS system to Buyers' servers; (iii) assist in the preparation of Buyers' first payroll following the Closing with respect to the Business; and (iv) assist Buyers in their negotiation of a consulting agreement with Richard Cueny.

Section 5.2    **Covenants of Buyers.**  Buyers covenant to Sellers that, during the period from the Execution Date through and including the Closing Date or the earlier termination of this Agreement:

(a)    Cooperation.  Buyers shall use commercially reasonable efforts to take, or cause to be taken, all action and to do, or cause to be done, all things necessary or proper, consistent with applicable Law, to consummate and make effective as soon as possible the transactions contemplated hereby.

(b)    Communications. Buyers shall use commercially reasonable efforts to keep Sellers reasonably informed of the status of discussions between Buyers and the YUM! Parties regarding the Franchisor's Consent.

(c)    Adequate Assurances Regarding Acquired Contracts and Required Orders.  With respect to each Acquired Contract, Buyers shall provide adequate assurance of the future performance of such Acquired Contract by Buyers as required under 11 U.S.C. § 365(f). Buyers shall cooperate with the Sellers in their efforts to obtain the Bankruptcy Court's entry of the Sale Order and any other Order of the Bankruptcy Court reasonably necessary to consummate the transactions contemplated by this Agreement.

Section 5.3    **Other Covenants.**

(a)    Improper Receipt of Payment.  From and after the Closing, (i) Sellers shall promptly forward to Buyers any and all payments received by Sellers   that constitute part of the Acquired Assets; and (ii) Buyers shall promptly forward to Sellers any and all payments received by Buyers that constitute part of the Excluded Assets.

(b)    Records. From and after the Closing and to the extent permitted by Law, Buyers shall provide Sellers, and their agents and representatives, as the case may be, access to, reasonable means of copying, i.e., provide a copy machine, or copies of, the Business Records and Employee Records for use by Sellers in any dispute, Claim, action or controversy regarding any employee matter, and permit Sellers, to the extent permitted by Law, to either make copies or, as may be necessary to fully comply with any Law, regulation or court mandate, borrow the original Business Records or Employee Records for such time as may be reasonably needed by Sellers.

(c)    Employee Matters. Immediately prior to the Closing, Sellers shall terminate the employment of all employees of the Acquired Stores.  Effective as of the Closing Date, Buyers shall use commercially reasonable efforts to offer employment to all employees of each of the Acquired Stores, plus all area coaches, market managers, regional managers, regional directors, accounts payable coordinator, IT tech in-market, maintenance personnel, in-marked director of training and operational leaders (but specifically excluding accounts payable clerks in the field), on terms and conditions that are substantially similar to the terms and

conditions in effect immediately prior to the Closing Date; provided, however, that nothing contained herein, express or implied: (i) is intended to confer upon any current or former employee any right to employment or continued employment for any period of time by reason of this Agreement, or any right to a particular term or condition of employment, or (ii) is intended to confer upon any individual (including employees, retirees, or dependents or beneficiaries of employees or retirees) any right as a third-party beneficiary of this Agreement. Sellers agree to assist Buyers in the process of hiring Sellers' former employees.

(d)     Proof of Funding Escrow. If the Closing does not occur in accordance with the terms of this Agreement by the close of business on February 29, 2012, the Buyers shall have the right, exercisable in their sole discretion, to return the Proof of Funding to Buyers' funding sources. If Buyers agree not to terminate this Agreement by the close of business on February 29, 2012, Buyers' shall not withdraw the Proof of Funding unless and until Buyers' elect to terminate this Agreement.

(e)     Schedules. At the Execution Date, certain of the Schedules to this Agreement have not been finalized. The parties agree to work in good faith to agree to final Schedules to this Agreement prior to the Closing Date.

Section 5.4     **Confidentiality.**   On and after the Closing Date, Sellers shall, treat and hold as confidential any information concerning the business and affairs of Buyers and the Acquired Assets and Assumed Liabilities that are not already generally available to the public (the "**Confidential Information**"), and shall, along with their Affiliates, cause their Affiliates refrain from using or disclosing any of the Confidential Information except in connection with (i) enforcing their rights under this Agreement, or (ii) their responsibility for or their ownership and use of the Excluded Assets and the Excluded Liabilities, and shall deliver promptly to Buyers or destroy, at the request and option of Buyers, all tangible embodiments (and all copies, other than one copy to be kept subject to this Section 5.4 for archival and/or regulatory compliance purposes) of the Confidential Information which are in his, her or its possession or under his, her or its control.  In the event that Sellers or any of their Affiliates are requested or required (by oral question or request for information or documents in any legal proceeding, interrogatory, subpoena, civil investigative demand, or similar process) to disclose any Confidential Information, Sellers shall, along with their Affiliates, as the case may be, notify Buyers in writing promptly of the request or requirement so that Buyers may seek an appropriate protective order or waive compliance with the provisions of this Section 5.4.  If, in the absence of a protective order or the receipt of a waiver hereunder, Sellers, or Sellers' Affiliates, is advised, on the advice of counsel, to disclose any Confidential Information to any third party, tribunal or Government, Sellers, or Sellers' Affiliates, as the case may be, may disclose such Confidential Information to the third party, tribunal or Government; provided that such Sellers and such Sellers' Affiliates shall use his, her or its commercially reasonable efforts to obtain, at the request of Buyers and at Buyers' sole expense, an order or other reasonable assurance that confidential treatment shall be accorded to such portion of the Confidential Information required to be disclosed.

Section 5.5 **Buyer's Releases.** Upon the Closing Date, Buyers agree to forever release, settle, cancel, discharge and acknowledge as fully satisfied, any and all claims, demands, rights and/or causes of action of whatever kind which Buyers may have against Huron, its employees, affiliates and subsidiaries, and Laura A. Marcero as of the Closing Date, other than claims arising out of the gross negligence or willful malfeasance of such parties.

## ARTICLE VI.
## CONDITIONS PRECEDENT TO PERFORMANCE BY PARTIES

Section 6.1 **Conditions Precedent to Performance by Sellers.** The obligation of Sellers to consummate the transactions contemplated by this Agreement is subject to the fulfillment, at or before the Closing, of the following conditions, any one or more of which, other than the condition contained in <u>Section 6.1(c)</u>, may be waived by Sellers, in their discretion:

(a) <u>Representations and Warranties of Buyers</u>. The representations and warranties of Buyers made in <u>Section 4.2</u> of this Agreement, in each case, shall be true and correct in all material respects as of the Execution Date and as of the Closing Date as though made by Buyers as of the Closing Date, except to the extent such representations and warranties expressly relate to an earlier date, in which case such representations and warranties shall be true and correct in all material respects on and as of such earlier date.

(b) <u>Performance of the Obligations of Buyers</u>. Buyers shall have performed in all material respects all obligations required under this Agreement and any Ancillary Agreement to which either Buyer is party to be performed by either Buyer on or before the Closing Date.

(c) <u>Governmental Consents and Approvals</u>. The Bankruptcy Court shall have entered the Sale Order in form and substance acceptable to Buyers, and such Order shall be in full force and effect, and no Order staying, reversing, modifying, vacating or amending the Sale Order shall be in effect on the Closing Date.

(d) <u>Closing Deliveries</u>. Buyers shall have made the deliveries contemplated under <u>Sections 3.3</u> and <u>3.4</u>.

(e) <u>Adequate Funds for Administrative Claims</u>. Sellers shall, in their own unfettered discretion, have determined that after Closing, Sellers will have sufficient funds and anticipated funds to satisfy their obligations under the Bankruptcy Code to satisfy Claims arising after the Petition Date entitled to administrative status under Sections 503 and 507 of the Bankruptcy Code.

Section 6.2 <u>Conditions Precedent to the Performance by Buyers</u>. The obligations of Buyers to consummate the transactions contemplated by this Agreement are subject to the fulfillment, at or before the Closing, of the following conditions, any one or more of which, other than the condition contained in <u>Section 6.2(e)</u>, may be waived by Buyers, in their discretion:

(a) <u>Representations and Warranties of Sellers</u>. The representations and warranties of Sellers made in <u>Section 4.1</u> of this Agreement shall be true and correct in all

material respects as of the Execution Date and as of the Closing as though made by Sellers as of the Closing, except to the extent such representations and warranties expressly relate to an earlier date, in which case such representations and warranties shall be true and correct in all material respects on and as of such earlier date.

(b) <u>Performance of the Obligations of Sellers</u>.  Sellers shall have performed in all material respects all obligations required under this Agreement or any Ancillary Agreement to which any Seller is a party to be performed by a Seller on or before the Closing.

(c) <u>Governmental Consents and Approvals</u>.  The Bankruptcy Court shall have entered the Sale Order and the Assignment Order, and such Orders shall be in full force and effect, and no Order staying, reversing, modifying, vacating or amending such Orders shall be in effect on the Closing Date.

(d) <u>Closing Deliveries</u>.  Sellers shall have made the deliveries contemplated under <u>Section 3.2</u>.

(e) <u>Franchisor's Consent and GE Secured Claim Assumption</u>.  Buyers shall have entered into the New Franchise Agreements and shall have entered into agreements for the assumption by Buyers of the GE Secured Claims upon terms reasonably satisfactory to Buyers.

(f) <u>No Material Adverse Effect</u>.  No Material Adverse Effect shall have occurred between the Execution Date and the Closing Date.

(g) <u>Letter of Credit</u>. GE shall have provided the YUM! Parties with a Letter of Credit in the amount of $1,400,000 as required by the New Franchise Agreements and satisfactory to Buyers.

(h) <u>Pepsi Prebate</u>. Sellers shall have provided Buyers with a letter of instructions, acknowledged by Pepsi, whereby Sellers have directed Pepsi to pay the Pepsi Prebates, including the payment to be made on or about March 20, 2012, to Buyers.

(i) <u>Acquired Contracts Review</u>.  Buyers shall have determined, in their good faith reasonable discretion, that the documents evidencing the Acquired Contracts and the Real Property Leases provided by Sellers pursuant to Section 5.1(g) and (h) are satisfactory to Buyers.

## ARTICLE VII.
## TERMINATION

Section 7.1   **Conditions of Termination**.  This Agreement may be terminated only in accordance with this <u>Section 7.1</u>.  This Agreement may be terminated at any time before the Closing as follows:

11-43971-tjt   Doc 672-1   Filed 02/28/12   Entered 02/28/12 15:58:29   Page 24 of 82

(a)     By mutual consent of Sellers and Buyers;

(b)     By Sellers, upon written notice to Buyers, if Sellers have provided Buyers with notice of any material inaccuracy of any representation or warranty contained in Section 4.2, or of a material failure to perform any pre-Closing covenant or obligation of any Buyer contained in this Agreement or any Ancillary Agreement to which Buyers are a party, and (except as to Section 3.3(a)) Buyers have failed, within five (5) days after giving of such notice, to remedy such inaccuracy or perform such covenant or provide reasonably adequate assurance to Sellers of Buyers' ability to remedy such inaccuracy or perform such covenant or obligation; provided, however, that Sellers shall not have the right to terminate this Agreement under this Section 7.1(b) if Sellers are then in material breach of this Agreement;

(c)     By Sellers, if the Bankruptcy Court dismisses the Bankruptcy Case or converts the Bankruptcy Case to a case under chapter 7 of the Bankruptcy Code prior to Closing, or fails to enter the Sale Order;

(d)     By Buyers, upon written notice to Sellers, if Buyers have previously provided Sellers with notice of any material inaccuracy of any representation or warranty of Sellers contained in Section 4.1 or a material failure to perform any pre-Closing covenant of any Seller contained in this Agreement or any Ancillary Agreement to which any Seller is party, and Sellers have failed, within five (5) days after giving of such notice, to remedy such inaccuracy or perform such covenant or provide reasonably adequate assurance to Buyers of Sellers' ability to remedy such inaccuracy or perform such covenant; provided, however, that Buyers shall not have the right to terminate this Agreement under this Section 7.1(d) if Buyers are then in material breach of this Agreement;

(e)     Automatically, upon the consummation of an Alternative Transaction;

(f)     By Buyers, if Sellers (i) designate any Person other than Buyers as the successful bidder at the conclusion of the Auction as defined in the Sale Procedures (ii) seeks or supports Bankruptcy Court approval of an Alternative Transaction (other than to or by Buyers) or (iii) executes and delivers an agreement with any Person (other than Buyers and its Affiliates) with respect to an Alternative Transaction;

(g)     By either the Sellers or Buyers, if the Bankruptcy Court has entered a Final Order approving the sale of all or substantially all of the Acquired Assets to any Person other than Buyers and such sale closes;

(h)     By Sellers on any day on or after February 29, 2012 (the "**Sellers' Termination Date**"), if the Closing shall not have been consummated by such date, unless the Closing has not occurred due to a material failure of the terminating party to perform or observe its covenants or obligations as set forth in this Agreement required to be performed or observed by it on or before the Closing Date; or

(i)     By Buyers on any day on or after February 29, 2012 (the "**Buyers' Termination Date**" and, with the Sellers' Termination Date, the "**Termination Date**"), if the Closing shall not have been consummated by such date, unless the Closing has not occurred due to a material failure of the terminating party to perform or observe its covenants or obligations as set forth in this Agreement required to be performed or observed by it on or before the Closing Date.

Section 7.2     **Effect of Termination; Remedies.**

(a)     In the event of termination pursuant to <u>Section 7.1</u>, this Agreement shall become null and void and have no effect (other than <u>Article VII</u>, <u>Article VIII</u> and <u>Article IX</u>, which shall survive termination), with no Liability on the part of Sellers, Buyers, or their respective Affiliates or respective Related Persons, with respect to this Agreement or any Ancillary Agreement, except for any Liability provided for in this <u>Article VII</u>.

(b)     If this Agreement is terminated pursuant to any provision in <u>Section 7.1</u>, then Buyers shall immediately instruct MVE to distribute to its funding sources the Proof of Funding, together with interest earned thereon, by wire transfer of immediately available funds to an account designated in writing by Buyers.

(c)     If this Agreement is terminated pursuant to any of <u>Section 7.1(e), (f), or (g)</u>, then Sellers shall (1) pay to Buyers (A) a break-up fee equal to $1,000,000 (the "**Break-Up Fee**"); and (B) Buyers' reasonable transaction expenses related to the negotiation, execution and performance of this Agreement up to $500,000 ("**Buyer Expenses**"), as evidenced in writing to Seller in reasonable detail and (2) together with Buyer, within two (2) Business Days of such termination. The Break-Up Fee and Buyer Expenses shall be entitled to administrative priority (which shall be a super-priority administrative expense Claim senior to all other administrative expense Claims) under Section 364(c)(1) of the Bankruptcy Code. The obligation to pay in full in cash when due any amount owed by Seller to Buyer under this Agreement, including the Breakup Fee and Buyer Expenses, (i) shall be binding on any trustee or examiner appointed in these cases or any subsequent or converted cases of the Sellers under chapter 7 or chapter 11 of the Bankruptcy Code and (ii) shall not be discharged, modified or otherwise affected by any plan of reorganization or liquidation for Sellers or by any other Order of the Bankruptcy Court.

(d)     If this Agreement is terminated pursuant to <u>Section 7.1(i)</u> and Buyers, at the request of Sellers and GE, agrees to not exercise its right to terminate or waives its termination under <u>Section 7.1(i)</u> for a period of seven (7) days, then Buyer shall be paid the Buyer Expenses if Closing does not occur prior to the expiration of such seven (7) day extension period, and the Sale Order shall contain a provision providing for a carve out by GE from its collateral for the payment of the Buyer Expenses pursuant to this <u>Section 7.2(d)</u> or the Sellers shall obtain some other Order from the Bankruptcy Court providing for same prior to Closing.

(e)     If this Agreement is terminated pursuant to Section 7.1(h) and Buyers were not in breach of this Agreement, then Buyers shall be paid the Buyer Expenses, and the Sale Order shall contain a provision providing for a carve out by GE from its collateral for the payment of the Buyer Expenses pursuant to this Section 7.2(e) or the Sellers shall obtain some other Order from the Bankruptcy Court providing for same prior to Closing.

(f)     Sellers acknowledge that the Break-Up Fee and Buyer Expenses (or any portion thereof) are necessary and appropriate expenses for the administration of its estate, pursuant to sections 503 and 507 of the Bankruptcy Code, and that the Break-Up Fee and Buyer Expenses (or any portion thereof) are allowed administrative expenses against their bankruptcy estates.

Section 7.3     **Exclusive Remedy; Waiver**.  Prior to the Closing, the parties' sole and exclusive remedies for any Claim arising out of or in connection with this Agreement shall be termination in accordance with, and obtaining the remedies provided in, this Article VII. The failure by either Sellers or Buyers to pursue or foreclose on any right or remedy against the other party, by itself, shall not constitute a waiver, and any waiver under this Article VII shall be effective only if made in writing.

## ARTICLE VIII.
## SURVIVAL AND INDEMNIFICATION

Section 8.1     **Survival; Indemnification.**  Except for the releases granted under Section 5.5, none of the representations and warranties of Sellers and of Buyers made in this Agreement shall survive the Closing Date, and all of such representations and warranties shall be extinguished by the Closing.  All covenants and agreements of the parties contained in this Agreement shall survive the Closing, unless otherwise expressly stated therein.  Sellers shall have no monetary obligation to Buyers for breach of any covenant or agreement except as provided in Section 7.2. If the Closing occurs, Buyers shall, subject to Section 1.3, indemnify and hold harmless Sellers and their respective Affiliates and Related Persons against any and all losses, Liabilities, expenses or damages that result from or arise out of the Assumed Liabilities.

## ARTICLE IX.
## MISCELLANEOUS

Section 9.1     **Alternative Transaction**.  Notwithstanding anything herein or in any Ancillary Agreement to the contrary, but subject to the notice requirement of Section 5.1(e), Sellers may furnish information concerning Sellers, the Acquired Assets and the Assumed Liabilities to any Person in connection with a potential Alternative Transaction and negotiate, enter into and consummate an Alternative Transaction.

Section 9.2     **Further Assurances**.  At the request and the sole expense of the requesting party, Buyers or Sellers, as applicable, shall execute and deliver, or cause to be executed and delivered, such documents as Buyers or Sellers, as applicable, or their respective counsel may reasonably request to effectuate the purposes of this Agreement and the Ancillary Agreements.

Section 9.3     **Successors and Assigns**.  This Agreement shall inure to the benefit of and shall be binding upon the successors and assigns of the parties hereto.  Buyers may assign their rights under this Agreement to any subsidiary or affiliate of Buyers acceptable to the YUM! Parties and GE.

Section 9.4     **Governing Law; Jurisdiction**.     This Agreement shall be construed, performed and enforced in accordance with, and governed by, the laws of the State of Michigan (without giving effect to the principles of conflicts of laws thereof), except to the extent that the laws of such State are superseded by the Bankruptcy Code or other applicable federal law.  For so long as Sellers are subject to the jurisdiction of the Bankruptcy Court, the parties irrevocably elect, as the sole judicial forum for the adjudication of any matters arising under or in connection with the Agreement, and consent to the exclusive jurisdiction of, the Bankruptcy Court.

Section 9.5     **Expenses**.  Except as otherwise provided in this Agreement, Sellers and Buyers shall pay their own expenses in connection with this Agreement and the transactions contemplated hereby, including, any legal and accounting fees, whether or not the transactions contemplated hereby are consummated.

Section 9.6     **Broker's and Finder's Fees**.  Except for Mastodon Ventures, Inc., which has been retained by Buyers and shall be paid solely by Buyers, neither Sellers nor Buyers have engaged any broker or finder in connection with any of the transactions contemplated by this Agreement and, insofar as such party knows, no other broker or other Person is entitled to any commission or finder's fee in connection with any of the transactions contemplated by this Agreement.

Section 9.7     **Severability**.  In the event that any part of this Agreement is declared by any court or other judicial or administrative body to be null, void or unenforceable, said provision shall survive to the extent it is not so declared, and all of the other provisions of this Agreement shall remain in full force and effect only if, after excluding the portion deemed to be unenforceable, the remaining terms shall provide for the consummation of the transactions contemplated hereby in substantially the same manner as set forth on the Execution Date.

Section 9.8     **Notices.**

(a)     All notices, requests, demands, consents and other communications under this Agreement shall be in writing and shall be deemed to have been duly given: (i) on the date of service, if served personally on the party to whom notice is to be given; (ii) on the day of transmission, if sent via facsimile transmission to the facsimile number given below or by electronic mail to the electronic mail address given below; (iii) on the day after delivery to Federal Express or similar overnight courier or the Express Mail service maintained by the United States Postal Service addressed to the party to whom notice is to be given; or (iv) on the fifth day after mailing, if mailed to the party to whom notice is to be given, by first class mail, registered or certified, postage prepaid and properly addressed, to the party as follows:

If to Sellers:

Kazi Foods of Michigan, Inc c/o
Huron Consulting Group
900 Wilshire Drive
Troy, Michigan  48084
Attn:  Laura A. Marcero
Email:  lmarcero@huronconsultinggroup.com
Phone:  248.244.2410
Fax:  248.244.2411

With a copy to (which shall not constitute notice):

McDonald Hopkins PLC
39533 Woodward Ave.
Suite 318
Bloomfield Hills, MI  48304
Attention:  Stephen M. Gross, Esq.
Email: sgross@mcdonaldhopkins.com
Phone:  248.220.1337
Facsimile:  248.646.5075

If to Buyers:

Star Partner Enterprises Two, LLC
515 Congress Avenue, Suite 1400
Austin, Texas 78701
Attention: Robert S. Hersch
Facsimile (512) 498-1201
Email:  rhersch@mastodonventures.com

With copies to (which shall not constitute notice):

Arthur S. Berner
Haynes and Boone, LLP
1221 McKinney Street, Suite 2100
Houston, Texas 77010
Facsimile (713) 236-5652
Email:  Arthur.Berner@HaynesBoone.com

(b)     Any party may change its address, facsimile number or email address for the purpose of this <u>Section 9.8</u> by giving the other parties written notice of its new address in the manner set forth above.

Section 9.9     **Amendments; Waivers**.  This Agreement may only be amended or modified, and any of the terms, covenants, representations, warranties or conditions hereof may only be waived, by a written instrument executed by Buyers and Sellers, or in the case of a waiver, by the party waiving compliance.  Any waiver by any party of any condition, or of the breach of any provision, term, covenant, representation or warranty contained in this Agreement, in any one or more instances, shall not be deemed to be or construed as a furthering or

26

continuing waiver of any such condition, or of the breach of any other provision, term, covenant, representation or warranty of this Agreement.

Section 9.10 **Public Announcements**.  Promptly after the Closing, the parties may make a joint press release in form and substance reasonably satisfactory to both of them regarding the transactions contemplated herein.  Except as provided in the foregoing sentence, no party shall make any press release or public announcement concerning the transactions contemplated by this Agreement without first coordinating their communications strategy with the other party, unless a press release or public announcement is required by Law, the rules of any stock exchange, or is permitted by, or required by an Order of the Bankruptcy Court. If any such announcement or other disclosure is required by Law, the rules of any stock exchange or is permitted by, or required by an Order of the Bankruptcy Court, the disclosing party shall use reasonable efforts to give the non-disclosing party or parties prior notice of, and an opportunity to comment on, the proposed disclosure; provided, there shall be no Liability to the disclosing party for failure to notify the other party.  The parties acknowledge that Sellers shall file this Agreement with the Bankruptcy Court in connection with obtaining the Sale Order and that the YUM! Parties may provide or release their own press release or announcement without the consent or input of either Buyers or Sellers.

Section 9.11 **Entire Agreement**.  This Agreement and the Ancillary Agreements contain the entire understanding between the parties with respect to the transactions contemplated hereby and supersede and replace all prior and contemporaneous agreements and understandings, oral or written, with regard to such transactions.  The Recitals and all Exhibits and Schedules hereto and any documents and instruments delivered pursuant to any provision hereof are expressly made a part of this Agreement as fully as though completely set forth herein.

Section 9.12 **No Third Party Beneficiaries**.  Except with respect to assumed liabilities and releases granted in Section 5.5, nothing in this Agreement is intended to, or shall confer any rights or remedies under or by reason of this Agreement, on any Persons other than Sellers and Buyers and their respective successors and permitted assigns.  Nothing in this Agreement is intended to or shall relieve or discharge the obligator or Liability of any third Persons to Sellers or to Buyers.  This Agreement is not intended and shall not give any third Persons any right of subrogation or action over or against Sellers or Buyers.

Section 9.13 **Headings**.  The article and section headings in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

Section 9.14 **Counterparts; Delivery**.  This Agreement may be executed in counterparts, each of which shall be deemed an original, and all of which shall constitute the same agreement.  The signature of any of the parties may be delivered and made by facsimile, portable document format ("**pdf**") or other electronic means capable or creating a printable copy, and each such signature shall be treated as original signatures for all purposes.

Section 9.15 **Construction**.  Any reference to any Law shall be deemed also to refer to all rules and regulations promulgated thereunder, unless the context requires otherwise.  The word "including" shall mean including without limitation.  Any reference to the singular in this

Agreement shall also include the plural and vice versa. The phrase "to which Sellers is a party," or similar construction, is intended to limit the applicable listing of any items, properties, assets, or Contracts to only those items that a Sellers actually owns or to which Sellers is actually a party, as the case may be, and is meant to exclude any listed property or Contract otherwise.

# ARTICLE X.
## DEFINITIONS

As used in this Agreement, the following terms have the following meanings:

"**Acceptable Title Policy**" means an ALTA Owner's Policy of Title Insurance for each Real Property or Escrowed Real Property, as applicable, in an amount equal to the allocable value for such Real Property as set forth on Schedule 2.8, insuring good and marketable title in and to such Real Property to Buyers, free and clear of all liens and encumbrances except the Permitted Exceptions.

"**Acquired Assets**" has the meaning set forth in Section 1.2.

"**Acquired Contracts**" has the meaning set forth in Section 1.1(f).

"**Acquired Stores**" has the meaning set forth in Section 2.2(b).

"**Adjusted Purchase Price**" has the meaning set forth in Section 2.1(a).

"**Affiliate**" means, with respect to any Person, any other Person directly or indirectly controlling, controlled by or under direct or indirect common control with such Person.

"**Agreement**" has the meaning set forth in the Preamble.

"**Allocation**" has the meaning set forth in Section 2.9.

"**Alternative Transaction**" means any transaction (regardless of the form thereof) involving a sale of or recapitalizing affecting all or any substantial portion of the Acquired Assets by Sellers, or any one or more of them, to a purchaser or purchasers other than Buyers; whether such transaction is undertaken pursuant to section 363 of the Bankruptcy Code or pursuant to a chapter 11 plan.

"**Ancillary Agreements**" means the Cure Costs Dispute Escrow Agreement, any bill of sale, any assignment or assumption agreement, and any other related agreements by and between any Seller and any Buyer effecting or evidencing the transactions contemplated under this Agreement.

"**Annapolis**" has the meaning set forth in the Preamble.

"**Assumed Liabilities**" has the meaning set forth in Section 1.4.

"**Bankruptcy Case**" has the meaning set forth in the Recitals.

**"Bankruptcy Code"** has the meaning set forth in the Recitals.

**"Bankruptcy Court"** has the meaning set forth in the Recitals.

**"Base Purchase Price"** has the meaning set forth in Section 2.1(a).

**"Break-Up Fee"** has the meaning set forth in Section 7.2(d).

**"Business"** means the business of each of the Stores, as presently conducted.

**"Business Day"** means any day other than Saturday, Sunday and any day that is a federal legal holiday.

**"Business Records"** has the meaning set forth in Section 1.1(k).

**"Buyer Expenses"** has the meaning set forth in Section 7.2(d).

**"Buyers"** has the meaning set forth in the Preamble.

**"Buyers' Notice"** has the meaning set forth in Section 2.5(b).

**"Buyer's Termination Date"** has the meaning set forth in Section 7.1(i).

**"Cash Consideration"** has the meaning set forth in Section 2.1(c).

**"Claim"** has the meaning given that term in section 101(5) of the Bankruptcy Code and shall expressly include Claims arising under any theory of successor liability.

**"Closing"** has the meaning set forth in Section 3.1.

**"Closing Amounts"** has the meaning set forth in Section 2.2(d).

**"Closing Date"** has the meaning set forth in Section 3.1.

**"Code"** means the Internal Revenue Code of 1986, as amended.

**"Confidential Information"** has the meaning set forth in Section 5.4.

**"Contract"** means any contract, agreement, lease or sublease, license or sublicense, instrument, indenture, commitment or undertaking, whether in written form or otherwise.

**"Contract Claims"** has the meaning set forth in Section 1.1(f).

**"Cure Costs"** means all cure costs required to be paid pursuant to section 365 of the Bankruptcy Code in connection with the assumption and assignment of the Acquired Contracts.

**"Cure Costs Dispute Escrow Account"** has the meaning set forth in Section 2.7(b).

**"Cure Costs Dispute Escrow Agreement"** means that certain escrow agreement, dated as of the Closing Date, by and Buyers, Sellers and Cure Dispute Escrow Agent, in a form to be mutually agreed upon by the parties thereto.

**"Cure Dispute Escrow Agent"** means McDonald Hopkins PLC as escrow agent for the Cure Costs Dispute Escrow Agreement.

**"Cure Costs Dispute Escrow Amount"** has the meaning set forth in Section 2.4(b).

**"Dania Beach"** has the meaning set forth in Section 2.2(j).

**"Employee Records"** has the meaning set forth in Section 1.1(j).

**"Escrowed Properties"** has the meaning set forth in Section 1.2.

**"Excluded Assets"** has the meaning set forth in Section 1.3.

**"Excluded Contracts"** means any Contract to which a Sellers is a party that is not an Acquired Contract.

**"Excluded Deposits"** has the meaning set forth in Section 1.3(h).

**"Excluded Liabilities"** has the meaning set forth in Section 1.5.

**"Execution Date"** has the meaning set forth in the Preamble.

**"Expired Lease"** has the meaning set forth in Section 2.2(a).

**"Failed Lease"** has the meaning set forth in Section 2.2(a).

**"Failed Property"** has the meaning set forth in Section 2.2(b).

**"Final Order"** means an Order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, the implementation, operation or effect of which has not been stayed and as to which Order (or any revision, modification or amendment thereof) the time to appeal or seek review, rehearing or writ of certiorari has expired and as to which no appeal or petition for review, reconsideration, rehearing or certiorari has been taken and is pending.

**"Florida"** has the meaning set forth in the Preamble.

**"Franchisor's Consent"** has the meaning set forth in Section 4.2(g).

**"GE"** has the meaning set forth in Section 1.4(b).

**"GE Secured Claims"** has the meaning set forth in Section 1.4(b).

**"Government"** means any agency, division, subdivision or governmental or regulatory authority, or any adjudicatory body thereof, of the United States or any state or territory thereof.

"**Huron**" means the Huron Consulting Group.

"**Huron Report**" means the information prepared by Huron Consulting Group and provided to Buyers, Sellers and GE concerning the operations of the Stores as of December 31, 2011.

"**In-Transit Inventory**" has the meaning set forth in <u>Section 1.1(b)</u>.

"**Indebtedness**" of any Person means, without duplication, (a) all obligations of such Person for borrowed money or advances; (b) all obligations or Liabilities of such Person evidenced by bonds, debentures, notes, loan agreements or similar instruments; (c) all obligations of such Person under conditional sale or other title retention agreements relating to property purchased by such Person (even though the rights and remedies of the Sellers or lenders under such agreement in the event of default are limited to repossession or sale of such property); (d) all obligations of such Person issued or assumed as part of the deferred purchase price of property or services (excluding trade accounts payable and accrued obligations incurred in the ordinary course of business on normal trade terms and not overdue by more than 90 days); (e) all indebtedness secured by any Lien on property owned or acquired by such Person (including indebtedness arising under conditional sales or other title retention agreements), whether or not the obligations secured thereby have been assumed, but limited to the lower of (i) the fair market value of such property and (ii) the amount of the Indebtedness secured; (f) all capital lease obligations of such Person; (g) any commitment by which such Person assures a creditor against loss (including all obligations of such Person for the reimbursement of any obligor in respect of letters of credit, letters of guaranty, bankers' acceptances and similar credit transactions) or other indebtedness guaranteed in any manner by such Person; (h) all uncashed checks issued by such Person that are outstanding as of the Closing Date; and (i) all contingent obligations of such Person in respect of Indebtedness or obligations of others of the kinds referred to in clauses (a) through (h) above.

"**Interest**" has the meaning ascribed to such term under section 363(f) of the Bankruptcy Code.

"**Inventory**" means all of Sellers' (a) consumable, unexpired food, beverages and condiments, (b) paper products and (c) premium kids products (to the extent that the promotional licenses to sell such kids products have not expired), in each case, solely to the extent such items are included in the Acquired Assets pursuant to <u>Section 1.2</u>.

"**KFCC**" has the meaning set forth in <u>Section 4.2(g)</u>.

"**Law**" means any law, statute, regulation, code, decree, constitution, ordinance, treaty, rule of common law, or Order of, administered or enforced by or on behalf of, any Government.

"**Leased Real Property**" has the meaning set forth in <u>Section 1.1(c)</u>.

"**Leasehold Improvements**" means those fixtures, structures and other improvements located on any Leased Real Property used in the operation of Sellers' business.

"**Liability**" means any liability (whether known or unknown, whether asserted or unasserted, whether absolute or contingent, whether accrued or unaccrued, whether liquidated or unliquidated, and whether due or to become due and regardless of when asserted), including any liability for Taxes, product liability or infringement liability.

"**Lien**" has the meaning ascribed to such term under section 101(37) of the Bankruptcy Code and also includes any lien (statutory or otherwise), hypothecation, encumbrance, security interest, interest, mortgage, pledge, restriction, charge, instrument, license, preference, priority, security agreement, easement, covenant, encroachment, option, right of recovery, right of pre-emption, right of first refusal or other third party right, Tax (including foreign, federal, state and local Tax), Order of any Government, of any kind or nature (including (i) any conditional sale or other title retention agreement and any lease having substantially the same effect as any of the foregoing, (ii) any assignment or deposit arrangement in the nature of a security device, (iii) any Claim based on any theory that any Buyers are a successor, transferee or continuation of the Sellers, and (iv) any leasehold interest, license or other right, in favor of a third party or Sellers, to use any portion of the Acquired Assets), whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, known or unknown.

"**Material Adverse Effect**" means, between the date of execution of this Agreement and the Closing, a state of facts, event, change or effect with respect to the Acquired Assets or the Assumed Liabilities, that individually or in the aggregate results in, or could reasonably be expected to have, a material adverse effect on the value of the Acquired Assets, taken as a whole, a material increase in the amount of the Assumed Liabilities, a material impairment to the revenue or anticipated revenue of the Stores, or result in a material adverse effect or change in the operation, results of operations or condition (financial or otherwise) of the Acquired Assets or the Stores, taken as a whole.

"**MI Bankruptcy Case**" has the meaning set forth in the Recitals.

"**MI Petition Date**" has the meaning set forth in the Recitals.

"**Michigan**" has the meaning set forth in the Preamble.

"**MVE**" has the meaning set forth in the Recitals.

"**New Franchise Agreements**" has the meaning set forth in Section 3.4(a).

"**New Lease**" has the meaning set forth in Section 2.2.

"**Notes**" has the meaning set forth in Section 2.2(b).

"**NY**" has the meaning set forth in the Preamble.

"**NY Petition Date**" has the meaning set forth in the Recitals.

"**On-Hand Cash**" has the meaning set forth in Section 1.1.

**"On-Hand Inventory"** has the meaning set forth in <u>Section 1.1(b)</u>.

**"Opco Deductible"** has the meaning set forth in <u>Section 2.2(l)</u>.

**"Opco Term Note"** has the meaning set forth in <u>Section 2.1(a)</u>.

**"Operating Assets"** has the meaning set forth in <u>Section 1.1</u>.

**"Orders"** means any award, decision, decree, order, injunction, ruling, judgment, or consent of or entered, issued, made or rendered by any Government.

**"Overpayment Amount"** has the meaning set forth in <u>Section 2.2(d)</u>.

**"pdf"** has the meaning set forth in <u>Section 9.14</u>.

**"Partner"** has the meaning set forth in the Preamble.

**"Pepsi Prebates"** has the meaning set forth in <u>Section 1.1(o)</u>.

**"Permits"** has the meaning set forth in <u>Section 1.1(g)</u>.

**"Permitted Exceptions"** means the following:  (i) all real estate taxes and assessments, both general and special, not yet due and payable; (ii) declarations, conditions, covenants, restrictions, easements, rights of way and other matters of record, including without limitation, those items shown on the subdivision plat of the Property, which do not render title unmarketable; (iii) zoning and building ordinances; (iv) roads, highways and rights-of-way; (v) those matters which would be disclosed by an accurate survey of the Property; (vi) all standard or pre-printed exceptions; (vii) any matters created by, through or under Buyers; (viii) Assumed Liabilities; and (ix) any other matter approved by Buyers.

**"Person"** means any individual, corporation, partnership, limited liability company, joint venture, association, joint-stock company, trust, unincorporated organization or Government.

**"Petition Date"** has the meaning set forth in the Recitals.

**"Pizza Hut"** has the meaning set forth in <u>Section 4.2(g)</u>.

**"Proceeding"** means any Claim, charge, complaint, dispute, demand, grievance, action, litigation, audit, investigation, review, inquiry, arbitration, suit in equity or at Law, administrative, regulatory or quasi-judicial proceeding, account, cost, expense, setoff, contribution, attorney's fee or causes of action of whatever kind or character.

**"Proof of Funding"** has the meaning set forth in the Recitals.

**"Property Taxes"** has the meaning set forth in <u>Section 1.4(a)</u>.

**"Prorated Amounts"** has the meaning set forth in <u>Section 2.4</u>.

**"Proration"** has the meaning set forth in <u>Section 2.4</u>.

**"Purchase Price"** has the meaning set forth in <u>Section 2.1</u>.

**"Real Property"** has the meaning set forth in <u>Section 1.2</u>.

**"Real Property Lease"** means any lease arrangement or agreement for the Leased Real Property identified and included in the Acquired Contracts.

**"Realco"** has the meaning set forth in the Preamble.

**"Realco Deductible"** has the meaning set forth in <u>Section 2.2(m)</u>.

**"Realco Term Note"** has the meaning set forth in <u>Section 2.1(a)</u>.

**"Related Person"** means, with respect to any Person, all past, present and future directors, officers, members, managers, stockholders, employees, controlling persons, agents, professionals, attorneys, accountants, lenders, investment bankers or representatives of any such Person.

**"Sale Order"** means an Order of the Bankruptcy Court that is reasonably acceptable to the Buyers in form and substance that (a) approves the sale and transfer of the Acquired Assets and Assumed Liabilities to Buyers pursuant to §§ 105 and 363 of the Bankruptcy Code, (b) (i) authorizes the assumption and assignment by and to Buyers of the Acquired Contracts pursuant to §§ 105 and 365 of the Bankruptcy Code, (ii) establishes the Cure Costs relating to the Acquired Contracts, and (iii) provides that Buyers have demonstrated adequate assurance of future performance under the Acquired Contracts, and (c) contains other provisions reasonably required by the Buyers related to the transactions contemplated under this Agreement.

**"Sale Procedures"** means the Bidding Procedures in the form attached hereto as Exhibit A, which were approved by the Bankruptcy Court pursuant to the Order entered in the Bankruptcy Case at Docket #577.

**"Sellers"** has the meaning set forth in the Preamble.

**"Sellers' Prebates"** has the meaning set forth in <u>Section 2.1(a)</u>.

**"Sellers' Termination Date"** has the meaning set forth in <u>Section 7.1(h)</u>.

**"Store"** means Sellers' locations from which any Seller operates franchised quick serve food restaurants as set forth on Exhibit B.

**"Store EBITDA"** for each Real Property Lease shall be equal to the December 31, 2011 (i) twelve-month trailing EBITDA for the applicable Store less 4% of sales for general and administrative expense (ii) times 4, based on the information included in the Huron Report.

**"Store Value**" shall be equal to 7% of revenues derived from such property during the trailing twelve months ended December 31, 2011 based on the information included in the Huron Report divided by a cap rate of 9.5%.

"**Supplies**" means (i) operating supplies, (ii) cleaning supplies, (iii) uniforms and (iv) all other items (other than Inventory) useable or saleable in the preparation of, serving or cleaning-up from meals.

"**Taco Bell**" has the meaning set forth in Section 4.2(g).

"**Tax Return**" means any report, return, information return, filing or other information, including any schedules, exhibits or attachments thereto, and any amendments to any of the foregoing required to be filed or maintained in connection with the calculation, determination, assessment or collection of any Taxes (including estimated Taxes).

"**Taxes**" means all taxes, however denominated, including any interest, penalties or additions to tax that may become payable in respect thereof, imposed by any Government, whether payable by reason of contract, assumption, transferee liability, operation of law or Treasury Regulation section 1.1502-6(a) (or any predecessor or successor thereof or any analogous or similar provision under state, local or foreign law), which taxes shall include all income taxes, payroll and employee withholding, unemployment insurance, social security (or similar), sales and use, excise, franchise, gross receipts, occupation, real and personal property, stamp, transfer, workmen's compensation, customs duties, registration, documentary, value added, alternative or add-on minimum, estimated, environmental (including taxes under section 59A of the Code) and other assessments or obligations of the same or a similar nature, whether arising before, on or after the Closing Date.

"**Termination Date**" has the meaning set forth in Section 7.1(i).

"**Title Policy Failure**" has the meaning set forth in Section 2.2(g).

"**Transaction Taxes**" has the meaning set forth in Section 2.8.

"**YUM!**" shall have the meaning set forth in Section 1.4(c).

"**YUM! Note**" shall have the meaning set forth in Section 2.1(a).

"**YUM! Parties**" shall have the meaning set forth in Section 4.2(g).

[Signature Page Follows]

IN WITNESS WHEREOF, the parties hereto have caused this Asset Purchase Agreement to be executed as of the Execution Date.

**BUYERS:**

**STAR KFC REALCO TWO, LLC**
By: Mastodon Restaurant Management, LLC,
its Manager

By:_____
Robert S. Hersch, Manager

**STAR PARTNER ENTERPRISES TWO, LLC**

By:_____
Robert S. Hersch, Manager

**SELLERS:**

**KAZI FOODS OF MICHIGAN, INC.**

By:_____
Name:_____
Title:_____

**KAZI FOODS OF FLORIDA, INC.**

By:_____
Name:_____
Title:_____

**KAZI FOODS OF NEW YORK, INC.**

By:_____
Name:_____
Title:_____

**KAZI FOODS OF ANNAPOLIS, INC.**

By:_____
Name:_____
Title:_____

36

**Exhibit A**

**SALE PROCEDURES**

Please see attached.

# IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

|                                        |   |                        |
|----------------------------------------|---|------------------------|
| In re:                                 | ) | Chapter 11             |
|                                        | ) |                        |
| KAZI FOODS OF MICHIGAN, INC., et al.[1]| ) | Case No. 11-43971      |
|                                        | ) | (*jointly administered*) |
| Debtor.                                | ) |                        |
|                                        | ) | Judge Thomas J. Tucker |

## ORDER (A) APPROVING PROCEDURES IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS; (B) SCHEDULING RELATED AUCTION AND HEARING TO CONSIDER APPROVAL OF SALE; (C) APPROVING PROCEDURES RELATED TO THE ASSUMPTION AND ASSIGNMENT OF CERTAIN OF DEBTORS' EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) APPROVING THE FORM AND MANNER OF NOTICE THEREOF; AND (E) GRANTING RELATED RELIEF

These jointly administered cases came before the Court for an expedited hearing on December 22, 2011, on the motion of the above-captioned debtors and debtors in possession (the "**Debtors**"), for the entry of an order pursuant to sections 105(a), 363 and 365 of Title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended from time to time, the "**Bankruptcy Rules**"), and Local Bankruptcy Rule 6004-1 (E.D.Mich.) for entry of an order (i)(a) approving procedures in connection with the sale of substantially all of the Debtors' Assets; (b) scheduling the related auction and hearing to consider approval of sale; (c) approving procedures related to the assumption of certain of the Debtors' executory contracts and unexpired leases; (d) approving the form and manner of notice thereof; and (e) granting related relief; and (ii)(a) authorizing the sale of such Debtors' Assets free and clear of liens, claims, encumbrances, and other interests; (b) approving the assumption and

---

[1] The Debtors in these cases include Kazi Foods of Michigan, Inc., Case No. 11-43971; Kazi Foods of Florida, Inc., Case No 11-43986; Kazi Foods of New York, Inc., Case No. 11-47551; and Kazi Foods of Annapolis, Inc., Case No. 11-47556.

assignment of certain of the Debtors' executory contracts and unexpired leases related thereto; and (c) granting related relief (the "**Motion**")[**Doc. No. 561**];[2] the Court having reviewed the Motion and the Court having found that (i) the Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; (ii) venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(6); (iv) notice of the Motion was sufficient under the circumstances; and after due deliberation the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates and their creditors; and good and sufficient cause having been shown;

AND THE COURT FURTHER FINDING AND DETERMINING THAT:

A.      The Debtors' proposed notice of the Bidding Procedures, the Cure Procedures, the Auction and the hearing to approve any sale of the Debtor's Assets (the "**Sale Approval Hearing**") is appropriate and reasonably calculated to provide all interested parties with timely and proper notice, and no other or further notice is required.

B.      The modified Bidding Procedures filed at Docket No. 571, are fair, reasonable, and appropriate and are designed to maximize the recovery from the Sale of the Debtors' Assets.

C.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

D.      To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

_____

[2] Capitalized terms used herein shall have the meaning ascribed to them in the Motion.

IT IS ORDERED THAT:

1.  The Motion is GRANTED to the extent of the relief provided in this Order.

2.  The Bidding Procedures, as modified on the record and filed at **Docket No. 571**, are APPROVED.

3.  The Bid Deadline shall be set for **February 15, 2012, at 5:00 p.m.** (prevailing Eastern Time).

4.  The Debtors, in conjunction with the Notice Parties (as defined in the Bidding Procedures), shall have the exclusive right to determine whether a bid is a Qualified Bid and shall notify bidders by **2:00 p.m. (prevailing Eastern Time) on February 17, 2012** whether their bids have been recognized as such prior to the Auction.[3] Any party submitting a bid that is not approved as a Qualified Bid on account of non-monetary or non-financial defects in the bid may cure such defects and re-submit such bid up to 24 hours prior to the Auction.

5.  The Auction, if necessary, shall be held on **February 20, 2012,** beginning at **10:00 a.m. (prevailing Eastern Time)**, at the offices of Debtors' counsel, McDonald Hopkins PLC, 39533 Woodward Ave., Suite 318, Bloomfield Hills, Michigan 48304, or at such other later date, time and place as may be designated in writing by the Debtors, in conjunction with the Notice Parties, and served on Qualified Bidders via electronic mail, facsimile transmission, or overnight mail delivery.

6.  The Sale Approval Hearing shall be held on **February 22, 2012 at 11:00 a.m. (prevailing Eastern Time)** before this Court, the U.S. Bankruptcy Court for the Eastern District of Michigan, in the courtroom of the Honorable Thomas J. Tucker, 19th Floor, 211 W. Fort Street, Detroit, Michigan 48226. The deadline for any party to file objections to the Sale

---

[3] All rights granted in favor of the Debtors in these Bidding Procedures shall be exercised in accordance with its fiduciary obligations.

is **February 17, 2012 at 5:00 p.m. (prevailing Eastern Time)**; *provided, however*, that specific objections as they relate to the conduct of the Auction may be raised at the Sale Approval Hearing.

7.     Nothing in this Order, the Bidding Procedures, any of the forms of Notice, or otherwise, shall be construed as a waiver of any objection to the Sale or otherwise prohibit a party from objecting to the Sale, which right to object is expressly reserved.

8.     The Sale Approval Hearing may be adjourned from time-to-time without further notice to creditors or parties-in-interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Approval Hearing, and the Debtors shall have the exclusive right, in the exercise of their fiduciary obligations and business judgment, to cancel the Sale at any time.

9.     The following forms of notice are approved as modified on the record at hearing: (a) Notice of Sale Procedures, Auction Date, and Sale Approval Hearing, in the form as filed at **Doc. No. 572** (the "**Procedures Notice**") and (b) the Notice to Counterparties to Executory Contracts and Unexpired Leases of the Debtor That May be Assumed and Assigned as filed at **Doc. No. 573** (the "**Cure Notice**").

10.     The Debtors will serve a copy of the Procedures Notice, together with this Bidding Procedures Order, on the following parties: (a) the U.S. Trustee, (b) counsel for the Lenders, (c) counsel for KFC, (d) counsel for KFC National Council and Advertising Cooperative, (e) any parties requesting notices in this Case pursuant to Local Bankruptcy Rule 2002-1, (f) all creditors or their counsel known to the Debtors to have asserted a lien (including a security interest), claim, right, interest or encumbrance of record against all or any portion of the Assets, and (g) all parties who have expressed an interest in purchasing the Assets, or their counsel (the "**Potential Bidders**").

11.     The Debtors shall serve, or cause to be served, the Procedures Notice no later

than **December 28, 2011** by first-class U.S. mail, overnight mail delivery, electronic mail,

facsimile transmission, or the Court's ECF notice system.

12.     The Debtors will serve the Motion and the Cure Notice upon each counterparty

to Assumed Contracts and Leases, or their counsel (if known), no later than **December 28,**

**2011**. The Cure Notice will state the date, time and place of the Sale Approval Hearing as well

as the date by which any objection to the assumption and assignment of Assumed Contracts

and Leases must be filed and served. The Cure Notice also will include the amounts, if any,

that the Debtors believe are owed to each counterparty to an Assumed Contract or Lease in

order to cure any defaults that exist under such contract or lease (the "**Cure Amounts**").

13.     If any counterparty objects for any reason to the assumption and assignment of

an Assumed Contract or Lease, including, but not limited to, the Cure Amounts or whether

such contract may be assumed and assigned (a "**Cure Amount Objection**"), the counterparty

must file the objection by no later than (i) 4:00 p.m. (prevailing Eastern Time) on **January 25,**

**2012** or (ii) such date and time agreed upon between the Debtors and such counterparty;

provided, however, that any counterparty may raise at the Sale Approval Hearing an objection

to the assumption and assignment of the Assumed Contract or Lease solely with respect to the

Prevailing Bidder's ability to provide adequate assurance of future performance under the

Assumed Contract or Lease. If an objection is filed by a counterparty to an Assumed

Executory Contract with respect to the Cure Amounts, such objection must set forth a specific

default in any executory contract or unexpired lease and claim a specific monetary amount that

differs from the amount, if any, specified by the Debtor in the Cure Notice. In the event that

the Debtors and the non-debtor party cannot resolve the Cure Amount Objection at or prior to

the Sale Approval Hearing, or such objection is not otherwise determined by the Court at the

Sale Approval Hearing, the dollar amount of such unresolved Cure shall be segregated and held in escrow from the Sale Proceeds at the closing pending the resolution of any such Cure dispute by the Court or mutual agreement of the parties.

14.     The Prevailing Bidder shall have the burden of satisfying any requirements regarding adequate assurance of future performance that may be imposed under section 365(b) of the Bankruptcy Code in connection with the proposed assignment of any Assumed Contract or Lease.  The Court will hear, and if possible, rule on any and all disputed issues concerning adequate assurance of future performance under the Assumed Contracts and Leases pursuant to section 365(b) of the Bankruptcy Code at the Sale Approval Hearing.  Cure Amounts disputed by any counterparty will be resolved, if possible, by the Court at the Sale Approval Hearing, subject to Paragraph 13 of this Order.

15.     The Debtors shall be relieved of all liability accruing or arising after the assumption and assignment of any and all of the Assumed Contracts and Leases pursuant to section 365(k) of the Bankruptcy Code.

16.     Nothing in this Order, the approved Bidding Procedures, and any of the attached forms of Notice or otherwise, shall be construed to modify, impair or adversely affect, in any way, any of the liens, claims, rights, protections and interests granted in favor of the Lenders as set forth in any Orders entered by the Court.

17.     The Court shall retain jurisdiction over all matters arising from or related to the interpretation and implementation of this Order.  This Order shall be effective immediately upon its entry, and the 10 day stay provided by F.R.Bankr.P. 6004(g) and 6006(d) is waived.

.

**Signed on December 22, 2011**

_/s/ Thomas  J. Tucker_
Thomas  J. Tucker
United States Bankruptcy  Judge

# BIDDING PROCEDURES[1]

The following procedures (the "Bidding Procedures") shall govern the auction and proposed sale (the "Sale") of substantially all of the assets (the "Assets") of the Debtors, Kazi Foods of Michigan, Inc., Kazi Foods of Florida, Inc., Kazi Foods of New York, Inc., and Kazi Foods of Annapolis, Inc. (collectively, the "Debtors"). The Debtors have filed a motion (the "Motion")[Doc. No. 561] seeking, among other things, approval of these Bidding Procedures, to govern the sale of Debtors' Assets to the highest and best bid at Auction. On December ____, 2011, the Bankruptcy Court entered an order, among other things, approving these Bidding Procedures (the "Bidding Procedures Order")[Doc. No. _____]. The Bidding Procedures Order approves the following procedures for the qualification of bidders and consideration of Qualified Bids, directs the form and manner of notice of these Bidding Procedures, and schedules the Auction and hearing to approve the sale of the Debtors' Assets to the Prevailing Bidder (as defined below).

## THE AUCTION PROCESS – OVERVIEW OF DEADLINES

The auction process shall be undertaken by the Debtors pursuant to the following deadlines:

- In order to participate in the bidding process and be deemed a Qualified Bidder, each potential bidder must deliver to the Debtors and the Notice Parties (identified below), a written offer or group of offers for all of the Assets of the Debtors so as to be received by no later than 5:00 p.m. (prevailing Eastern Time) on or before Wednesday, February 15, 2012 ("**Bid Deadline**").

- The Debtors shall, if necessary, conduct an Auction at 10:00 a.m. (prevailing Eastern Time) on February 20, 2012, and select the Prevailing Bidder (as defined below) from the those parties submitting a Qualified Bid (the "**Auction Date**").

- Approval of the Sale of the Assets to the Prevailing Bidder shall be considered at a hearing before the Bankruptcy Court, commencing on Wednesday, February 22, 2012, at 11:00 a.m. (prevailing Eastern Time) (the "**Sale Approval Hearing**").

- The Sale of the Assets shall close on or before February 29, 2012, unless extended by agreement of Debtors, Lenders and the Prevailing Bidder ("**Closing**")

The Debtors shall serve the Procedures Notice by December 28, 2011, by either (i) first-class mail, postage prepaid, (ii) overnight mail delivery, (iii) the Court's ECF system, or (iv) e-mail delivery, on: (a) the U.S. Trustee, (b) counsel for the Lenders (the GE Affiliates), (c) counsel for KFC Corporation ("KFC"), (d) counsel for KFC National Council and Advertising

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Bidding Procedures Order and the Motion , as applicable, copies of which are provided with these Bidding Procedures.

Cooperative ("NCAC")(e) all parties with liens or interests on the Assets proposed to be sold, (f) the Special Service List authorized pursuant to Local Rule 2002-1, and (g) all parties who have expressed an interest in purchasing the Assets (the "**Potential Bidders**").

## INFORMATION CONTACT AND NOTICE PARTIES

For purposes of these Bidding Procedures, the following parties constitute the "Notice Parties":

Stephen M. Gross, Esq.
McDonald Hopkins LLC
39533 Woodward Avenue
Suite 318
Bloomfield Hills, MI 48304
Phone: 248.220.1337
Fax: 248.646.5075
Email: sgross@mcdonaldhopkins.com

Laura A. Marcero
Huron Consulting Group
900 Wilshire Drive
Troy, MI 48084
Phone: 248.244.2415
Fax 248.244.2411
Email: lmarcero@huronconsultinggroup.com

Alexander Terras, Esq.
Reed Smith
10 South Wacker Drive, 40th Floor
Chicago, IL 60606
Phone: 312.207.2448
Fax: 312.207.6400
Email: aterras@reedsmith.com

Erika R. Barnes, Esq.
Stites & Harbison, PLLC
401 Commerce Street, Suite 800
Nashville, TN 37219
Telephone: 615.782.2252
Fax: 615.742.0734
Email: ebarnes@stites.com

Claude R. Bowles, Jr.
Greenebaum Doll & McDonald PLLC
3500 National City Tower
101 South Fifth Street
Louisville, KY 40202

Telephone: 502.587.3746
Fax: 502.540.2274
Email: crb@gdm.com

In order to participate in the bidding process and be deemed a Qualified Bidder pursuant to these Bidding Procedures, each potential bidder must deliver to the Notice Parties a bid that contains the following items:

- state such Qualified Bidder offers to purchase all or some of the Assets upon the terms and conditions as set forth in a proposed Asset Purchase Agreement and on such terms as appropriate and desirable for such transaction;

- state that such Qualified Bidder is prepared to enter into a legally binding purchase and sale agreement or similar agreement for the acquisition of the Assets;

- be accompanied by a clean and duly executed proposed Asset Purchase Agreement (the "**Asset Purchase Agreement**");

- state that such Qualified Bidder is financially capable of consummating the transactions contemplated by the Asset Purchase Agreement, without financing contingencies;

- state that such Qualified Bidder's offer is irrevocable until the closing of the purchase of the Assets if such Qualified Bidder is the Prevailing Bidder or the Stand-By Bidder (both, as defined below);

- contain such financial and other information, including, but not limited to: bank statements demonstrating full equity investment of an amount sufficient to close the Sale, board resolutions or other such documents authorizing use of funds to consummate the Sale, contact information, and such other information that will allow the Debtors, in their sole discretion, after consultation with the Notice Parties, to make a determination as to the Qualified Bidder's financial and other capabilities to consummate the transactions contemplated by the Qualified Bid or proposed Asset Purchase Agreement, including adequate assurance of such bidder's ability to perform under any Assumed Contract or Lease (as defined below);

- identify with particularity each and every executory Contract and unexpired Lease ("Assumed Contract or Lease"), the assumption and assignment of which is a condition to closing;

- identify whether such bidder seeks to obtain new franchise agreements from KFC, Taco Bell Corp., Pizza Hut, Inc., A&W Restaurants, Inc., and Long John Silver's, Inc. (collectively "Franchisors"), whether such bidder seeks consent from Franchisors to take an assignment of the Debtors' existing franchise agreements, or whether such bidder does not intend to operate the Assets as a franchisee of Franchisors.

- acknowledge that such bid does not request or entitle the bidder to any transaction or break-up fee, expense reimbursement, or similar type of payment, other than to the extent of the Expense Reimbursement Fee agreed upon separately with Lenders as disclosed in the Motion;

- fully disclose the identity of each entity that will be bidding for the Assets or otherwise participating in connection with such bid, and the complete terms of any such participation;

- (a) state that such bid does not contain any due diligence or financing contingencies of any kind; and (b) provide evidence satisfactory to the Notice Parties that the bidder has received bona fide funding commitments or has financial resources readily available sufficient, in the aggregate, to finance the purchase of the Assets;

- include evidence of authorization and approval from the bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Asset Purchase Agreement;

- be accompanied by a cash deposit in the amount of 5% of the Purchase Price (the "**Deposit**") to be wired to an account maintained and specified by the Debtors' Counsel; provided, however, that Lenders shall not be required to make such a deposit;

- Notwithstanding any of the foregoing, the Lenders automatically shall be considered a Qualified Bidder.

- Other written evidence, in form and substance reasonably satisfactory to the Debtors and as may subsequently be requested by the Debtors or its advisors, from time to time.

A party who complies with all of the foregoing requirements *may be* determined by the Debtors to be a "Qualified Bidder." The Debtors shall, in their sole discretion, after consultation with the Notice Parties, make their initial determination as to which prospective bidders have qualified to become a Qualified Bidder and shall give prompt notice thereof to the bidder on or before 2:00 p.m (prevailing Eastern Time), February 17, 2012.

## DUE DILIGENCE

Qualified Bidders desiring to conduct due diligence shall not directly contact management or other employees of the Debtors, but are directed to contact the Debtors' CRO, Laura A. Marcero, or the Debtors' counsel, Stephen M. Gross. The Debtors and their representatives shall not be obligated to furnish any information of any kind whatsoever relating to the Debtors' business or the Assets to any person who has not been determined to be a Qualified Bidder. The Debtors reserve the right (after consultation with the Notice Parties) to limit access to certain due diligence information or otherwise manage the process of providing due diligence information to Qualified Bidders.

Any party that wishes to conduct due diligence regarding the Assets will be granted access to all material information that was or will be provided to any Qualified Bidder; provided, however, that such party first agree to and execute a confidentiality agreement with respect thereto.

All due diligence efforts undertaken by Qualified Bidders must be completed by the Bid Deadline; and after such date, the Debtors shall have no obligation to furnish any additional due diligence information relating to the Debtors' business or the Assets.

## AUCTION

If the Debtors receive one or more Qualified Bids submitted by Qualified Bidders, the Debtors will conduct an auction (the "Auction"). Otherwise, the Debtors shall, in their sole discretion, seek Bankruptcy Court approval to consummate the Sale with the single Qualified Bid at the Sale Approval Hearing. The Auction will take place on February 20, 2012 at 10:00 a.m. (prevailing Eastern Time) at the offices of Debtors' counsel: McDonald Hopkins PLC, 39533 Woodward Avenue, Suite 318, Bloomfield Hills, MI 48304, or such later date, time or place as the Debtors shall notify the Qualified Bidders. Counsel for the Notice Parties are permitted to attend the Auction without the necessity of qualifying as a Qualified Bidder. Otherwise, only the Qualified Bidders participating in the Auction may appear at the Auction, in person, or through a duly authorized representative. One business day prior to the Auction, each Qualified Bidder must inform the Debtors' counsel whether it intends to participate in the Auction. No later than 24 hours after the Bid Deadline, the Lenders shall inform the Debtors' counsel, KFC and NCAC of whether Lenders intend to credit bid on all or any portion of the Assets.

Based upon the terms of the Qualified Bids submitted by the Qualified Bidders, and such other information as the Debtors, in conjunction with the Notice Parties determine is relevant, at the commencement of the Auction the Debtors shall advise the Qualified Bidders participating in the Auction which of the Qualified Bids has been determined by the Debtors, in consultation with the Notice Parties, to be the highest or otherwise best proposal. The Auction shall be conducted as follows:

- only Qualified Bidders shall be entitled to make any subsequent bids at the Auction, in $500,000 increments, or such lesser or greater amount as may be established by the Debtors, and only Qualified Bidders or their

authorized representative or legal counsel are entitled to attend and/or participate in the Auction. The Notice Parties and/or their designated representatives or legal counsel shall be entitled to attend and participate in the Auction;

- each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale;

- each Qualified Bidder shall appear in person at the Auction, or through a duly authorized representative or legal counsel, unless alternate arrangements are made with Debtors no later than three (3) business days prior to the Auction for appearance via other means;

- bidding shall commence at the amount of the highest and best Qualified Bid submitted prior to the Auction, as determined in the sole discretion of Debtors, after consultation with the Notice Parties, for the Assets or group of Assets upon which a Qualified Bid was properly and timely submitted;

- all Qualified Bidders shall have the right to submit additional bids and make additional modifications to their respective proposed Asset Purchase Agreement at the Auction, so long as any further bids or the Asset Purchase Agreement as further modified otherwise constitutes a Qualified Bid;

- the Auction will be conducted openly and transcribed, and each Qualified Bidder will be informed of the terms of the previous bid;

- the Auction shall continue until there is only one offer that the Debtors, in their sole discretion, after consultation with the Notice Parties, determine, subject to Court approval, is the final highest and best offer from among the Qualified Bids submitted at the Auction (the "**Prevailing Bid**"). In making this decision, the Debtors shall consider, without limitation, the amount of the purchase price, the net benefit to the Debtors' estates, the form of consideration being offered, the likelihood of the bidder's ability to close a transaction and the timing thereof, and the totality of the Assets being purchased. The bidder submitting such Prevailing Bid shall become the "**Prevailing Bidder**," and shall have such rights and responsibilities of the Purchaser, as set forth in an applicable Asset Purchase Agreement. Within 3 calendar days after adjournment of the Auction (but in no event later than the commencement of the Sale Approval Hearing), the Prevailing Bidder shall complete and execute all agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Prevailing Bid was made. Absent irregularities in the conduct of the Auction, or reasonable and material confusion during the bidding, bids made after the close of the Auction shall not be considered by the Court; and

- the Lenders shall, at all times, be permitted to credit bid the Lenders' secured claims pursuant to section 365(k) with respect to all or any portion of the Assets at any time during the Auction, whether or not Lenders previously submitted a credit bid prior to the Bid Deadline, provided that the Lenders have notified the Debtors' counsel, KFC and NCAC no later than 24 hours after the Bid Deadline that Lenders intend to credit bid on all or any portion of the Assets.

- Qualified Bidders shall be permitted to caucus privately among themselves (but not with other Qualified Bidders) at any time, with or without the participation of the Debtors and its advisors at the Qualified Bidder's request; provided, however, the Debtors reserve the right to impose uniform reasonable time restrictions on such caucuses so that the Auction may continue and be completed in an orderly and timely manner;

- A bidder that wishes to submit an incremental higher bid that is less than the Minimum Overbid Amount may do so, but only by announcing that such bid is such bidder's highest or otherwise best bid and, if topped, such bidder shall no longer participate in the Auction. Bidding among the remaining bidders shall continue to be made pursuant to the Minimum Overbid Amount, subject to Debtors' right in consultation with the Notice Parties, to modify the minimum bid increments at the Auction;

- Bidders shall not be allowed to "pass" a round of bidding, but must make an incremental higher bid or announce that such bidder shall no longer participate in the Auction; and

- The Debtors, in their sole discretion, after consultation with the Notice Parties, may adopt such other rules for the Auction (including rules that may depart from those set forth herein) that it anticipates will result in the highest or otherwise best value for its estate and that are not inconsistent with any Bankruptcy Court order, *provided* that any changed or additional rules for the Auction are not materially inconsistent with these Bidding Procedures and are communicated to all participants at or prior to the Auction.

**APPROVAL OF PREVAILING BID AND BIDDER AND STAND-BY BIDDER**

At the Sale Approval Hearing, the Debtors will seek (i) confirmation that the Prevailing Bidder is a Qualified Bidder and that the Prevailing Bid is the highest and best at Auction (as it may have been modified at the Auction), (ii) approval of the Sale of Debtors' Assets to the Prevailing Bidder pursuant to the Prevailing Bid, (iii) authority to enter into s definitive agreement(s) with respect to the Prevailing Bid and consummate the transactions contemplated by the Prevailing Bid, (iv) entry of the Sale Order, and (v) approval of the Stand-By Bid and Stand-By Bidder. The proposed Prevailing Bidder shall appear at the Sale Approval Hearing and be prepared to testify in support of its Prevailing Bid and its ability to close in a timely manner and provide adequate assurance of its future performance under any and all executory contracts

and unexpired leases to be assumed by the Debtors and assigned to the Prevailing Bidder at Closing, if any. The Debtors shall accept a Prevailing Bid only when (x) the Bankruptcy Court has approved the Prevailing Bid and Prevailing Bidder, (y) the Sale Order approving such Prevailing Bid has been docketed, and (z) definitive documentation has been executed and delivered by the Prevailing Bidder and Debtors.

The Stand-By Bidder shall be the Qualified Bidder with the second highest and best offer at Auction, as determined by the Debtors and Lender, who shall be required to hold such bid open and irrevocable until the later of 5:00 p.m. (prevailing Eastern Time) on February 29, 2012, or (ii) the actual scheduled closing of the Sale with the Prevailing Bidder.

Any objections relating to the conduct of the Auction, and the approval of the Prevailing Bid may be raised at the Sale Approval Hearing.

### FAILURE TO CONSUMMATE THE PREVAILING BID

If for any reason the Prevailing Bidder fails to timely consummate the transactions contemplated by the Prevailing Bid and the Sale Order, the Debtors may declare the Stand-By Bidder as having submitted the highest or otherwise best bid and seek to consummate the Stand-By Bid without further approval by the Bankruptcy Court. The Stand-By Bidder shall keep its bid open and irrevocable until the later of (i) 5:00 p.m (prevailing Eastern Time) on February 29, 2012 or (ii) the actual scheduled Closing of the Sale with the Prevailing Bidder.

### PROCEDURES WITH RESPECT TO DEPOSITS

All Deposits of Qualified Bidders shall be returned within five (5) days after the Bankruptcy Court enters the Sale Order, except for deposits submitted by (i) the Prevailing Bidder and (ii) the Stand-By Bidder. The Deposit of the Stand-By Bidder shall be returned within five (5) days after the Closing of the Sale with the Prevailing Bidder.

The Prevailing Bidder and/or Stand-By Bidder will forfeit its respective Deposit (i) if the bidder withdraws or modifies (in a manner determined by the Debtors to be less favorable) its bid after the Auction and before the conclusion of the Sale Approval Hearing or (ii)(a) modifies or withdraws its bid without the Debtors' consent, (b) materially breaches the terms and conditions of its bid, or (c) fails to otherwise close the Sale for reasons other than the Debtors' breach. The forfeiture of the Deposits shall be in addition to any and all other rights of the Debtors for damages.

**Exhibit B**

**List of Stores**

Please see attached.

**EXHIBIT B - LIST OF STORES**

| Market | Store No. | Code | Address | City | State |
|--------|-----------|------|---------|------|-------|
| KFL | 00025 | MDrv | 16215 Northeast 15th Avenue | North Miami Beach | FL |
| KFL | 00027 | NW27A | 17701 Northwest 27th Avenue | Miami | FL |
| KFL | 00030 | Bscyn | 13801 North East Biscayne Boulevard | North Miami Beach | FL |
| KFL | 00072 | Fcity | 232 S.E. 1st Avenue | Florida City | FL |
| KFL | 00073 | Mrthn | 6501 Overseas Highway | Marathon | FL |
| KFL | 00128 | SW8S | 966 SW 8th St | Miami | FL |
| KFL | 00129 | Dixie | 9690 S Dixie Hwy | Miami | FL |
| KFL | 00130 | NW7A | 3515 N.W. Seventh Avenue | Miami | FL |
| KFL | 00131 | NW62S | 1190 NW 62nd Street | Miami | FL |
| KFL | 00132 | SW40S | 11585 SW 40th St | Miami | FL |
| KFL | 00133 | Hlndl | 815 W Hallandale Beach Blvd | Hallandale | FL |
| KFL | 00135 | Brwrd | 3100 W Broward Blvd. | Fort Lauderdale | FL |
| KFL | 00138 | Sampl | 10395 W. Sample Rd. | Coral Springs | FL |
| KFL | 00140 | Dania | 506 S. Federal Hwy. | Dania | FL |
| KMD | 00018 | Anpls | 1978 West Street | Annapolis | MD |
| KMD | 00019 | Lplta | Rt. 301 & Rt. 6 | La Plata | MD |
| KMD | 00020 | Gmbrl | 1053 N. Route 3 | Gambrills | MD |
| KMD | 00021 | Mlrvl | 8073 Veterans Highway | Millersville | MD |
| KMD | 00022 | Wldrf | 2180 Crain Highway | Waldorf | MD |
| KMD | 00023 | Psdna | 4107 Mountain Road | Pasadena | MD |
| KMD | 00024 | Ktrng | 10 Watkins Park Drive | Upper Marlboro | MD |
| KMD | 00056 | Kentl | 373 Thompson Creek Mall | Stevensville | MD |
| KMD | 00065 | MSqr | 5785 S.w. Crain Highway | Upper Marlboro | MD |
| KMD | 00077 | PFrd | 65 West Dares Beach Road | Prince Frederick | MD |
| KMD | 00081 | Brkln | 5734 Ritchie Hwy | Baltimore | MD |
| KMD | 00082 | Fmead | 1682 Annapolis Rd | Odenton | MD |
| KMD | 00083 | GlBrn | 6734 Ritchie Hwy | Glen Burnie | MD |
| KMD | 00084 | Crmwl | 7395 Baltimore Annapolis Blvd | Glen Burnie | MD |
| KMD | 00085 | Nrsry | 708 Nursery Rd | Linthicum Heights | MD |
| KMD | 00142 | Bryans | 302 Canberra Way | Bryans Road | MD |
| KMD | 00087 | rands) | 5400 Lynx Ln | Columbia | MD |

| Market | Store No. | Code | Address | City | State |
|---|---|---|---|---|---|
| KMI | 00199 | EWrrn | 17505 E Warren Ave | Detroit | MI |
| KMI | 00200 | Drbrn | 10120 W Warren Ave | Dearborn | MI |
| KMI | 00202 | Lvrns | 9848 Livernois Ave | Detroit | MI |
| KMI | 00204 | LkOrn | 383 S Broadway St | Lake Orion | MI |
| KMI | 00206 | 893W7 | 8939 W 7 Mile Rd | Detroit | MI |
| KMI | 00207 | 15700000000 | 15700 E 8 Mile Rd | Detroit | MI |
| KMI | 00208 | 26000000000 | 2600 E 8 Mile Rd | Detroit | MI |
| KMI | 00209 | WFort | 6320 W Fort St | Detroit | MI |
| KMI | 00210 | Wtrfd | 4790 Dixie Hwy | Waterford | MI |
| KMI | 00211 | Clio | 3510 Clio Rd | Flint | MI |
| KMI | 00213 | Jfrsn | 13320 E Jefferson Ave | Detroit | MI |
| KMI | 00215 | WGrnd | 2716 W. Grand Blvd. | Detroit | MI |
| KMI | 00217 | GrtAv | 9654 Gratiot Ave | Detroit | MI |
| KMI | 00218 | Fenkl | 17750 Fenkell St | Detroit | MI |
| KMI | 00219 | 2785G | 3785 Gratiot St. | Detroit | MI |
| KMI | 00220 | Chmrs | 9041 Chalmers | Detroit | MI |
| KMI | 00221 | RHill | 606 S. Rochester Rd. | Rochester Hills | MI |
| KMI | 00222 | WMNcl | 13546 W McNichols Rd | Detroit | MI |
| KMI | 00223 | HrpWd | 20990 Harper Ave | Harper Woods | MI |
| KMI | 00224 | Hghld | 13253 Woodward Ave | Highland Park | MI |
| KMI | 00225 | Mchgn | 12721 Michigan Ave | Dearborn | MI |
| KMI | 00227 | GBlnc | 6021 Dort Hwy | Grand Blanc | MI |
| KMI | 00228 | Wstld | 2339 S Wayne Rd | Westland | MI |
| KMI | 00229 | Cantn | 41670 Ford Rd | Canton | MI |
| KMI | 00230 | MtMrs | G-6030 N Saginaw | Mount Morris | MI |
| KMI | 00231 | Corna | 4427 Corunna Road | Flint | MI |
| KMI | 00232 | GRvr | 22345 Grand River | Detroit | MI |
| KMI | 00234 | AHill | 1361 N Opdyke Road | Auburn Hills | MI |
| KMI | 00235 | Davsn | 2601 W Davison Avenue | Detroit | MI |
| KMI | 00236 | Brstl | 1445 West Bristol Road | Flint | MI |
| KMI | 00238 | NDort | 1914 N Dort Hwy | Flint | MI |
| KMI | 00240 | 142W7 | 14201 W 7 Mile Rd | Detroit | MI |
| KMI | 00247 | Pontiac | 1000 S. Opdyke Road | Pontiac | MI |
| KMI | 00252 | NDortHwy | 1765 South Dort Highway | Flint | MI |

| Market | Store No. | Code | Address | City | State |
|--------|-----------|------|---------|------|-------|
| KNY | 00031 | PAmby | 576 New Brunswick Avenue | Perth Amboy | NJ |
| KNY | 00033 | Hazet | Route 36, Airport Plaza | Hazlet | NJ |
| KNY | 00034 | Abrdn | 1109 State Highway 34 | Aberdeen | NJ |
| KNY | 00035 | Rckwy | 190 Route 46 | Rockaway | NJ |
| KNY | 00036 | Ldgwd | 1110 Route 46 | Ledgewood | NJ |
| KNY | 00037 | Htown | 230 East Mountain Avenue | Hackettstown | NJ |
| KNY | 00039 | FPark | 185 Ridgedale Avenue | Florham Park | NJ |
| KNY | 00059 | Pspny | 1452 Route 46 West | Parsippany | NJ |
| KNY | 00145 | FtLee | 2170 Fletcher Ave | Fort Lee | NJ |
| KNY | 00146 | Tneck | 585 Cedar Ln | Teaneck | NJ |
| KNY | 00147 | UCity | 600 Paterson Plank Rd | Union City | NJ |
| KNY | 00148 | Forst | 1453 Forest Ave | Staten Island | NY |
| KNY | 00150 | Bcknr | 1959 Bruckner Blvd | Bronx | NY |
| KNY | 00154 | Ebrth | 114-116 Rahway Avenue | Elizabeth | NJ |
| KNY | 00155 | EJrsy | 955 E Jersey St | Elizabeth | NJ |
| KNY | 00156 | ParkA | 249 Park Ave | Newark | NJ |
| KNY | 00157 | JCity | 591 Communipaw Ave | Jersey City | NJ |
| KNY | 00158 | Lyons | 688-692 Lyons Avenue | Irvington | NJ |
| KNY | 00161 | EOrng | 434 Central Ave | East Orange | NJ |
| KNY | 00162 | Byone | 516 Broadway | Bayonne | NJ |
| KNY | 00164 | NBnsk | 1055 Route 1 South | North Brunswick | NJ |
| KNY | 00166 | Sprng | 841 Springfield Avenue | Irvington | NJ |
| KNY | 00167 | Brgen | 125 Bergen St | Newark | NJ |
| KNY | 00168 | Islin | 419 U.S. Route 1 | Iselin | NJ |
| KNY | 00169 | Georg | 92 St Georges Avenue | Rahway | NJ |
| KNY | 00171 | Vctry | 44 Victory Blvd | Staten Island | NY |
| KNY | 00173 | Hylan | 2471 Hylan Blvd | Staten Island | NY |
| KNY | 00174 | WBnsd | 1 West Burnside Ave | Bronx | NY |
| KNY | 00175 | WFdhm | 1 West Fordham Rd | New York | NY |
| KNY | 00176 | 149th | 375 East 149th Street | Bronx | NY |
| KNY | 00177 | Wbstr | 1731 Webster Avenue | Bronx | NY |
| KNY | 00179 | SSlna | 1524 S Salina St | Syracuse | NY |
| KNY | 00180 | Ccero | 7900 Brewerton Rd | Cicero | NY |
| KNY | 00181 | Aburn | 276 Grant Avenue | Auburn | NY |
| KNY | 00183 | Btrnt | 825-829 Butternut St | Syracuse | NY |
| KNY | 00184 | Rte31 | 3821 Route 31 | Liverpool | NY |
| KNY | 00185 | 7Nrth | 1055 7th North Street | Liverpool | NY |
| KNY | 00186 | Cmlus | 3520 W Genesee Street | Camillus | NY |
| KNY | 00187 | Wtrlo | 2430 Route 414 | Waterloo | NY |
| KNY | 00188 | Onida | 127 Genesee Street | Oneida | NY |
| KNY | 00189 | EDwit | 3406 Erie Blvd | Syracuse | NY |
| KNY | 00191 | NHtfd | 8512 Seneca Tpke | New Hartford | NY |
| KNY | 00192 | Hrkmr | 200 S Caroline Street | Herkimer | NY |
| KNY | 00193 | Wtrtn | 1004 Arsenal St | Watertown | NY |
| KNY | 00194 | Evnml | 26720 Us Route 11 | Evans Mills | NY |
| KNY | 00198 | Rome | 235 Erie Boulevard West | Rome | NY |

**Summary**

| Market | Total |
|--------|-------|
| **KFL** | 14 |
| **KMD** | 17 |
| **KMI** | 34 |
| **KNY** | 46 |
| | 111 |

| Debtor | CREDITOR OR OTHER PARTIES TO LEASE OR CONTRACT. (Included on Schedule G) | Lessor | Contract/Property Description | Category | STORE |
|---|---|---|---|---|---|
| | **Acquired Contracts List - Schedule 1.1(f)** | | | | |
| MD | La Plata Shopping Center LP c/o Mote Management Company, Inc. PO Box 2486 La Plata, MD 20646 | La Plata Shopping Center LP c/o Mote Management Company, Inc. PO Box 2486 La Plata, MD 20646 | Lease - Store #19 Route 301 LaPlata, MD 20646 | RE Lease | 19 |
| MD | Hopkins Road Associates c/o O'meara Properties 277 K Peninsula Farm Road Arnold, MD 21012 | Hopkins Road Associates c/o O'meara Properties 277 K Peninsula Farm Road Arnold, MD 21012 | Lease - Store #20 1053 N Route 3 Gambrills, MD 21054 | RE Lease | 20 |
| MD | Cloverleaf Warehouse and Business Park LLLP 8028 Ritchie Hwy Suite 118 Pasadena, MD 21122 | Cloverleaf Warehouse and Business Park LLLP 8028 Ritchie Hwy Suite 118 Pasadena, MD 21122 | Lease - Store #21 8073 Veterans Highway Millersville, MD 21108 | RE Lease | 21 |
| MD | Lake Shore Associates c/o St. John Properties, Inc. 2560 Lord Baltimore Drive Baltimore, MD 21244 | Lake Shore Associates c/o St. John Properties, Inc. 2560 Lord Baltimore Drive Baltimore, MD 21244 | Lease - Store #23 4107 Mountain Rd Pasadena, MD 21122 | RE Lease | 23 |
| MD | USRP I, LLC (Watkins Park Plaza Shopping Center) c/o Regency Centers PO Box 822179 Philadelphia, PA 19182 | USRP I, LLC (Watkins Park Plaza Shopping Center) c/o Regency Centers PO Box 822179 Philadelphia, PA 19182 | Lease - Store #24 10 Watkins Park Dr Upper Marlboro, MD 20774 | RE Lease | 24 |
| FL | Adventurers Inn, Inc 1000 E HALLANDALE BEACH BLVD, Hallendale , FL 33009 | Adventurers Inn, Inc 1000 E Hallandale Beach Blvd Hallendale, FL 33009 | Lease - Store #25 16215 Northeast 15th Ave, Miami FL 33162 | RE Lease | 25 |
| FL | Maurice Donsky- 440 Rovino Ave Coral Gables, Fl 33156 | Maurice Donsky- 440 Rovino Ave Coral Gables, Fl 33156 | Lease - Store #30 13801 NE Biscayne BLVD, North Miami, FL 33181 | RE Lease | 30 |
| NY | Scudiery Enterprises Airport Plaza 1390 Highway #36 Suite 105 Hazlet, NJ 07730 | Scudiery Enterprises Airport Plaza 1390 Highway #36 Suite 105 Hazlet, NJ 07730 | Lease - Store#33 Route 36 Airport Plaza Hazlet, NJ 07730 | RE Lease | 33 |
| MD | TC Shopping Center LP c/o Hyatt Commercial 200 Westgate Circle Suite Annapolis, MD 21401 | TC Shopping Center LP c/o Hyatt Commercial 200 Westgate Circle Suite Annapolis, MD 21401 | Lease - Store #56 373 Thompson Creek Mall Stevensville, MD 21666 | RE Lease | 56 |
| NY | Channel 46 Associates, LLC c/o Mandelbaum and Mandelbaum 80 Main Street West Orange, NJ 07052 | Channel 46 Associates, LLC c/o Mandelbaum and Mandelbaum 80 Main Street West Orange, NJ 07052 | Lease - Store #59 1452 Route 46 West Parsippany, NJ 07054 | RE Lease | 59 |
| FL | Herman & Valerie Rolfs P.O. Box 6592 Gulf Breeze, FL 32562 | Herman & Valerie Rolfs P.O. Box 6592 Gulf Breeze, FL 32562 | Lease - Store #72 232 S.E. 1st Ave Florida City, FL 33034 | RE Lease | 72 |
| FL | Puto Family LP 455 122nd Street Ocean Marathon, FL 33050 | Puto Family LP 455 - 122nd Street Ocean, Marathon, FL 33050 | Lease - Store #73 - Parking Lot 6501 Overseas HWY, Marathon, FL 33050 | RE Lease | 73 |
| MD | South Joleh Corp. (Ritchie Hwy Shopping Center) c/o US Realty Management CO 3003 English Creek Ave D 13A Egg Harbor Township, NJ 08234 | South Joleh Corp. (Ritchie Hwy Shopping Center) c/o US Realty Management CO 3003 English Creek Ave D 13A Egg Harbor Township, NJ 08234 | Lease - Store #81 5734 Ritchie Hwy Baltimore, MD 21225 | RE Lease | 81 |
| MD | Thomas Shipley, Betty Lou, Chalk & George Shipley c/o Alan R. Engel Attorney at Law 808 Landmark Drive Suite 223 Glen Burnie, MD 21061 | Thomas Shipley, Betty Lou, Chalk & George Shipley c/o Alan R. Engel Attorney at Law 808 Landmark Drive Suite 223 Glen Burnie, MD 21061 | Lease - store #83 6734 Ritchie Hwy Glen Burnie, MD 21061 | RE Lease | 83 |

| Debtor | CREDITOR OR OTHER PARTIES TO LEASE OR CONTRACT. (Included on Schedule G) | Lessor | Contract/Property Description | Category | STORE |
|---|---|---|---|---|---|
| MD | Cromwell Field Associates LP c/o Metropolitan Management CO 11299 Owings Mills Blvd #200 Owings Mills, MD 21117 | Cromwell Field Associates LP c/o Metropolitan Management CO 11299 Owings Mills Blvd #200 Owings Mills, MD 21117 | Lease - Store #84 7935 Baltimore Annapolis Blvd Cromwell, MD 21090 | RE Lease | 84 |
| MD | Fred Sawzcyn c/o Briar Rose Center Prop, LLC 112 Graylin Drive Chapel Hill, NC 27516 | Fred Sawzcyn c/o Briar Rose Center Prop, LLC 112 Graylin Drive Chapel Hill, NC 27516 | Lease - Store #85 708 Nursery Rd Linthicum Heights, MD 21090 | RE Lease | 85 |
| FL | Robert Litowitz/ Revocable Trust 11401 SW 49th Street #370 Miami, FL 33165 | Robert Litowitz/ Revocable Trust 11401 SW 49th Street #370 Miami, FL 33165 | Lease - Store #132 11585 SW 40th Street, Miami, FL 33165 | RE Lease | 132 |
| MD | Arthur H. Lund & Sharon E. Pailthorp c/o Jim Pailthorp 648 Ranger Court Davidsonville, MD 21035 (5447 Chapman's Landing Indian Head, MD 20640) | Arthur H. Lund & Sharon E. Pailthorp c/o Jim Pailthorp 648 Ranger Court Davidsonville, MD 21035 (5447 Chapman's Landing Indian Head, MD 20640) | Lease - Store #142 302 Canberra Way Bryans Road, MD 20616 | RE Lease | 142 |
| NY | Fletcher and West Associates, LLC c/o Stanley J. Atkins 5600 Kennedy Blvd West New York, NJ 07093 | Fletcher and West Associates, LLC c/o Stanley J. Atkins 5600 Kennedy Blvd West New York, NJ 07093 | Lease - Store #145 2170 Fletcher Ave Fort Lee, NJ 07024 | RE Lease | 145 |
| NY | Solomon Grossman Real Estate 335 Oak Ave River Edge, NJ 07661 | Solomon Grossman Real Estate 335 Oak Ave River Edge, NJ 07661 | Lease for Store #146 587 Cedar Lane Teaneck, NJ | RE Lease | 146 |
| NY | Nexus Foods, Inc. PO Box 25092 Newark, NJ 07101 | Nexus Foods, Inc. PO Box 25092 Newark, NJ 07101 | Lease - Store #147 600 Peterson Plank Rd Union City, NJ | RE Lease | 147 |
| NY | Solomon Staten Island, LLC 3170 Santa Maria Road Topanga, CA 90290 | Solomon Staten Island, LLC 3170 Santa Maria Road Topanga, CA 90290 | Lease - Store#148 1453 Forest Ave. Staten Island, NY 10302 | RE Lease | 148 |
| NY | 1959 Colonel Bruckner Realty Associates 110 West 34th Street 9th Floor New York, NY 10001 | 1959 Colonel Bruckner Realty Associates 110 West 34th Street 9th Floor New York, NY 10001 | Lease - Store #150 1959 Bruckner Blvd Bronx, NY 10472 | RE Lease | 150 |
| NY | David M. Wahl 10971 Southwest 69th Circle Ocala, FL 34476 | David M. Wahl 10971 Southwest 69th Circle Ocala, FL 34476 | Lease - Store #154 114-116 Rathway Ave. Elizabeth, NJ | RE Lease | 154 |
| NY | Elizabethtown Healthcare Foundation PO Box 259 Elizabeth, NJ 07207 | Elizabethtown Healthcare Foundation PO Box 259 Elizabeth, NJ 07207 | Lease - Store #155 955 E. Jersey St. Elizabeth, NJ | RE Lease | 155 |
| NY | Sunrise Equities Corp. c/o United Capital Corp. 9 Park Place 4th Floor Great Neck, NY 11021 | Sunrise Equities Corp. c/o United Capital Corp. 9 Park Place 4th Floor Great Neck, NY 11021 | Lease - Store #156 249 Park Ave Newark, NJ | RE Lease | 156 |
| NY | Aetna Realty Financial Corp. c/o US Realty Management Corp. 450 7th Ave Suite 4500 New York, NY 10123 | Aetna Realty Financial Corp. c/o US Realty Management Corp. 450 7th Ave Suite 4500 New York, NY 10123 | Lease - Store #161 434 Central Ave. Newark, NJ | RE Lease | 161 |
| NY | Victor Zalta and Seymour Klein c/o K&Z Partners 505 Broadway Bayonne, NJ 07002 | Victor Zalta and Seymour Klein c/o K&Z Partners 505 Broadway Bayonne, NJ 07002 | Lease - Store #162 516 Broadway Bayonne, NJ | RE Lease | 162 |
| NY | Sears Holding Corporation 12670 Collections Drive Chicago, IL 60693 | Sears Holding Corporation 12670 Collections Drive Chicago, IL 60693 | Lease - Store #164 Block 140, Lot 62 Rt. 1 North Brunswick, NJ | RE Lease | 164 |

| Debtor | CREDITOR OR OTHER PARTIES TO LEASE OR CONTRACT. (Included on Schedule G) | Lessor | Contract/Property Description | Category | STORE |
|---|---|---|---|---|---|
| NY | SJU Property Holdings, LLC 26 South Valley Road West Orange, NJ 07052 | SJU Property Holdings, LLC 26 South Valley Road West Orange, NJ 07052 | Lease - Store #166 Springfield Ave Irvington, NJ | RE Lease | 166 |
| NY | Bergen Street, LLC 447 Northfield Ave Suite 200 West Orange, NJ 07052 | Bergen Street, LLC 447 Northfield Ave Suite 200 West Orange, NJ 07052 | Lease - Store #167 125 Bergen St Newark, NJ | RE Lease | 167 |
| NY | Raritan Enterprises 417 Elizabeth Ave Somerset, NJ 08873 | Raritan Enterprises 417 Elizabeth Ave Somerset, NJ 08873 | Lease - Store #169 92 St. Georges Ave Rathway, NJ 07065 | RE Lease | 169 |
| NY | Morris Bailey c/o JEMB Realty Corp. 150 Broadway New York, NY 10038 | Morris Bailey c/o JEMB Realty Corp. 150 Broadway New York, NY 10038 | Lease - Store #171 44 Victory Blvd Staten Island, NY 10302 | RE Lease | 171 |
| NY | 2469 Hylan Blvd, LLC c/o Cassidy Turley 40 East 52nd Street New York, NY 10022 | 2469 Hylan Blvd, LLC c/o Cassidy Turley 40 East 52nd Street New York, NY 10022 | Lease - Store #173 KFC# Y332076; 2471 Hylan Blvd Staten Island, NY | RE Lease | 173 |
| NY | Burnside Realty Corp. 36 Laurel Hill Road Centerport, NY 11721 | Burnside Realty Corp. 36 Laurel Hill Road Centerport, NY 11721 | Lease - Store #174 Ground lease 1 W Burnside Ave Bronx, NY | RE Lease | 174 |
| NY | New Gold Equities Corp. c/o Building Management Co, Inc. 417 Fifth Ave 4th Floor New York, NY 10016 | New Gold Equities Corp. c/o Building Management Co, Inc. 417 Fifth Ave 4th Floor New York, NY 10016 | Lease - Store #175 KFC #: Y332133; C501 West Fordham Rd. Bronx, NY | RE Lease | 175 |
| NY | 375 E. 149th Street Corp. c/o Bloomfield Properties 349 East 149th Street Bronx, NY 10451 | 375 E. 149th Street Corp. c/o Bloomfield Properties 349 East 149th Street Bronx, NY 10451 | Lease - Store #176 KFC # Y332134; 375 East 149th St. Bronx, NY | RE Lease | 176 |
| NY | Robert Matzkin Company, Inc. 416 E. 174th Street Bronx, NY 10457 | Robert Matzkin Company, Inc. 416 E. 174th Street Bronx, NY 10457 | Lease - Store #177 KFC # Y332147; 1731 Webster Ave. Bronx, NY | RE Lease | 177 |
| NY | Robert M. VanTassel 1337 Rembroke Drive Westchester, PA 19380 | Robert M. VanTassel 1337 Rembroke Drive Westchester, PA 19380 | Lease - Store #179 KFC #: X732523 1524 S. Salina St Syracuse, NY | RE Lease | 179 |
| NY | James M. Donegan PO Box 669 Alexandria Bay, NY 13607 | James M. Donegan PO Box 669 Alexandria Bay, NY 13607 | Lease - Store #180 7900 Brewerton Rd Cicero, NY | RE Lease | 180 |
| NY | James M. Donegan Family Trust 23590 Iroquois Island Shore Road Alexander Bay, NY 13607 | James M. Donegan Family Trust 23590 Iroquois Island Shore Road Alexander Bay, NY 13607 | Lease - Store #181 KFC#: Y332019 276 Grant Ave. Auburn, NY | RE Lease | 181 |
| NY | Brookside Development, LLC 276 Grant Avenue Auburn, NY 13021 | Brookside Development, LLC 276 Grant Avenue Auburn, NY 13021 | Lease (Ground lease) - Store #181 KFC/A&W Restaurant; Site: 12-0106, Auburn, NY; 276 Grant | RE Lease | 181 |
| NY | Frances and Tino Marcoccia 2900 James Street Syracuse, NY 13206 | Frances and Tino Marcoccia 2900 James Street Syracuse, NY 13206 | Lease - Store #183 825-829 butternut Syracuse, NY | RE Lease | 183 |
| NY | COR Route 31 Company, LLC 540 Towne Drive Fayetteville, NY 13006 | COR Route 31 Company, LLC 540 Towne Drive Fayetteville, NY 13006 | Lease - Store #184 3821 Route 31 Liverool, NY | RE Lease | 184 |
| NY | KFC U.S. Properties PO Box 102778 Atlanta, GA 30368 | KFC U.S. Properties 1441 Gardiner Lane Louisville, KY 40213 | Lease - Store #185 1055 7th North Street Liverpool, NY | RE Lease | 185 |
| NY | Peter and Deena C Procopio 5 River Island Drive Brewerton, NY 13029 | Peter and Deena C Procopio 5 River Island Drive Brewerton, NY 13029 | Lease - Store #186 3520 W Genessee Camillus, NY | RE Lease | 186 |
| NY | Glenwood Shopping Plaza, LLC 600 Old County Road Suite 435 Garden City, NY 11530 | Glenwood Shopping Plaza, LLC 600 Old County Road Suite 435 Garden City, NY 11530 | Lease - Store #188 127 Genesse St Oneida, NY | RE Lease | 188 |
| NY | Arkshu Inc. DBA Econolodge 3400 Erie Blvd East DeWitt, NY 13214 | Arkshu Inc. DBA Econolodge 3400 Erie Blvd East Dewitt, NY 13214 | Lease - Store #189 3406 Erie Blvd Syracuse, NY | RE Lease | 189 |

| Debtor | CREDITOR OR OTHER PARTIES TO LEASE OR CONTRACT. (Included on Schedule G) | Lessor | Contract/Property Description | Category | STORE |
|---|---|---|---|---|---|
| NY | David R. White PO Box 364 Clinton NY 13323 | David R. White PO Box 364 Clinton NY 13323 | Lease - Store #191 8512 Seneca Turnpike New Hartford, NY | RE Lease | 191 |
| NY | Coolidge Herkimer, LLC Four West Red Oak Lane White Plains, NY 10604 | Coolidge Herkimer, LLC Four West Red Oak Lane White Plains, NY 10604 | Lease - Store #192 200 S. Caroline St Herkimer, NY | RE Lease | 192 |
| NY | David R. White PO Box 364 Clinton NY 13323 | David R. White PO Box 364 Clinton NY 13323 | Lease - Store #193 1004 Arsenal St Watertown, NY | RE Lease | 193 |
| NY | Developers Diversified Realty, Inc. 3300 Enterprise Parkway Beachwood, OH 44122 | Developers Diversified Realty, Inc. (DDR) 3300 Enterprise Parkway Beachwood, OH 44122 | Lease - Store #198 235 Erie Blvd W Rome, NY | RE Lease | 198 |
| MI | GE Capital Franchise Finance Corporation c/o KFC US Properties | GE Capital Franchise Finance Corporation c/o KFC US Properties | Lease - Store #204 383 South Broadway Lake Orion, MI 48326 | RE Lease | 204 |
| MI | Lojon Property c/o KFC US Properties | Lojon Property c/o KFC US Properties | Lease - Store #225 12721 Michigan Avenue Dearborn, MI | RE Lease | 225 |
| MI | MDK-Flint, LLC | Che Tang and Sherry Tang 7950 Cherry Ave. Fontana, CA 92336 | Lease - Store #231 4427 Corunna Rd, Flint, MI | RE Lease | 231 |
| MI | Hartford Economic Development Corp, Diane Jenskin | Hartford Economic Development Corp, Diane Jenskin 18700 James Couzens Highway Detroit, MI 48235 | Land Lease - Store #240 14201 W 7 Mile Rd Detroit, MI | RE Lease | 240 |
| MD | A & W Restaurants, Inc. | | Co-Brand Franchise and Advertising Agreement | | 65 |
| NY | A & W Restaurants, Inc. | | Co-Brand Franchise and Advertising Agreement | | 181 |
| NY | A & W Restaurants, Inc. | | Co-Brand Franchise and Advertising Agreement | | 184 |
| NY | A & W Restaurants, Inc. | | Co-Brand Franchise and Advertising Agreement | | 188 |
| MI | A & W Restaurants, Inc. | | Co-Brand Franchise and Advertising Agreement | | 210 |
| MI | A & W Restaurants, Inc. | | Co-Brand Franchise and Advertising Agreement | | 231 |
| MI | A & W Restaurants, Inc. | | Co-Brand Franchise and Advertising Agreement | | 234 |
| NY | Long John Silvers, Inc. | | Co-Brand Franchise and Advertising Agreement | | 36 |
| MD | Long John Silvers, Inc. | | Co-Brand Franchise and Advertising Agreement | | 82 |
| MD | Long John Silvers, Inc. | | Co-Brand Franchise and Advertising Agreement | | 142 |
| MI | Long John Silvers, Inc. | | Co-Brand Franchise and Advertising Agreement | | 221 |
| MI | Long John Silvers, Inc. | | Co-Brand Franchise and Advertising Agreement | | 240 |
| NY | Pizza Hut, Inc. | | Co-Brand Franchise and Advertising Agreement | | 164 |
| NY | Pizza Hut, Inc. | | Co-Brand Franchise and Advertising Agreement | | 157 |
| NY | Pizza Hut, Inc. | | Co-Brand Franchise and Advertising Agreement | | 166 |
| NY | Pizza Hut, Inc. | | Co-Brand Franchise and Advertising Agreement | | 169 |
| MI | Pizza Hut, Inc. | | Co-Brand Franchise and Advertising Agreement | | 204 |
| MI | Pizza Hut, Inc. | | Co-Brand Franchise and Advertising Agreement | | 206 |
| MI | Pizza Hut, Inc. | | Co-Brand Franchise and Advertising Agreement | | 208 |
| FL | Taco Bell, Corp | | Co-Brand Franchise and Advertising Agreement | | 72 |
| FL | Taco Bell, Corp | | Co-Brand Franchise and Advertising Agreement | | 73 |
| NY | Taco Bell, Corp | | Co-Brand Franchise and Advertising Agreement | | 145 |

| Debtor | CREDITOR OR OTHER PARTIES TO LEASE OR CONTRACT. (Included on Schedule G) | Lessor | Contract/Property Description | Category | STORE |
|---|---|---|---|---|---|
| NY | Taco Bell, Corp | | Co-Brand Franchise and Advertising Agreement | | 185 |
| NY | Taco Bell, Corp | | Co-Brand Franchise and Advertising Agreement | | 187 |
| NY | Taco Bell, Corp | | Co-Brand Franchise and Advertising Agreement | | 171 |
| NY | Taco Bell, Corp | | Co-Brand Franchise and Advertising Agreement | | 177 |
| NY | Taco Bell, Corp | | Co-Brand Franchise and Advertising Agreement | | 192 |
| MI | Taco Bell, Corp | | Co-Brand Franchise and Advertising Agreement | | 209 |
| MI | Taco Bell, Corp | | Co-Brand Franchise and Advertising Agreement | | 213 |
| MI, MD, NY, NJ, FL | Pepsi-Cola Fountain Company, Inc. | | Supply and Marketing Agreement 1/1/2000 | Supply and Marketing Agreement | |

*All transferable permits related to the Acquired Assets that are non-refundable.*

| State | Type of Permit | Number | Jurisdiction | Expiration Date | Store # | Store Address |
|---|---|---|---|---|---|---|
| Florida | Seating Food Service | AC#5817948 | State of Florida | 10/1/2012 | 25 | 16215 NE 15th Ave., North Miami Beach, Florida |
| Florida | Seating Food Service | AC#5817946 | State of Florida | 10/1/2012 | 27 | 17701 NW 27th Ave., Miami, Florida |
| Florida | Business Tax Receipt | 153218 | City of North Miami Beach | 9/30/2012 | 30 | 13801 Biscayne Blvd, North Miami Beach, Florida |
| Florida | Seating Food Service | AC#5809727 | State of Florida | 10/1/2012 | 72 | 232 SE 1 Ave., Florida City, Florida |
| Florida | Seating Food Service | AC#5756588 | State of Florida | 10/1/2012 | 73 | 6501 Overseas Highway, Marathon, Florida |
| Florida | Seating Food Service | AC#5756587 | State of Florida | 10/1/2012 | 128 | 966 SW 8th St., Miami, Florida |
| Florida | Seating Food Service | AC#5817947 | State of Florida | 10/1/2012 | 129 | 9690 S. Dixie Hwy., Miami, Florida |
| Florida | Seating Food Service | AC#5904676 | State of Florida | 10/1/2012 | 130 | 3515 NW 7th. Ave., Miami, Florida |
| Florida | Seating Food Service | AC#5809726 | State of Florida | 10/1/2012 | 131 | 1190 NW 62nd St., Miami, Florida |
| Florida | Seating Food Service | AC#5756586 | State of Florida | 10/1/2012 | 132 | 11585 SW 40th St., Miami, Florida |
| Florida | Seating Food Service | AC#5904017 | State of Florida | 12/1/2012 | 133 | 815 W Hallandale Beach Blvd., Hallandale, Florida |
| Florida | Seating Food Service | AC#5904014 | State of Florida | 12/1/2012 | 135 | 3100 W. Broward Blvd., Ft. Lauderdale, Florida |
| Florida | Seating Food Service | AC#5904015 | State of Florida | 12/1/2012 | 138 | 10395 W. Sample Rd., Coral Springs, Florida |
| Florida | Seating Food Service | AC#5897344 | State of Florida | 12/1/2012 | 140 | 506 S. Federal Hwy., Dania, Florida |
| NJ | Health | N/A | OFFICE OF VITAL STATS | 12/31/2012 | H730-031 | 576 New Brunswick Avenue, Perth Amboy, NJ |
| NJ | Health | N/A | TWP OF HAZLET HEALTH | 6/30/2012 | H730-033 | Route 36 Airport Plaza, Hazlet, New Jersey |
| NJ | Health | N/A | ABERDEEN TWP HEALTH | 12/31/2012 | H730-034 | 1109 State Highway 34, Aberdeen, NJ |
| NJ | Health | N/A | RANDOLPH TWP HEALTH | 12/31/2012 | H730-035 | 190 Route 46, Rockaway, NJ |
| NJ | Health | N/A | ROXBURY HEALTH DEPT | 12/31/2012 | H730-036 | 1110 Route 46, Ledgewood, NJ |
| NJ | Health | N/A | BOARD OF HEALTH | 12/31/2012 | H730-037 | 230 East Mountain Avenue, Hackettstown, NJ |
| NJ | Health | N/A | HEALTH DEPT | 12/31/2012 | H730-039 | 185 Ridgedale Avenue, Florham Park, NJ |
| NJ | Health | N/A | DIVISION OF HEALTH | 6/30/2012 | H730-059 | 1452 Route 46, Parsippany, New Jersey |
| NJ | Health | N/A | DEPT OF HEALTH | 12/31/2012 | H730-145 | 2170 Fletcher Ave., Fort Lee, New Jersey |
| NJ | Health | N/A | TEANECK HEALTH DEPT | 12/31/2012 | H730-146 | 587 Cedar Lane, Teaneck, NJ |
| NJ | Health | N/A | DEPT OF HEALTH | 12/31/2012 | H730-147 | 600 Peterson Plank Rd, Union City, NJ |
| NJ | Health | N/A | NYC DEPT OF HEALTH | 9/30/2012 | H730-148 | 1453 Forest Ave., Staten Island, NY |
| NJ | Health | N/A | NYC DEPT OF HEALTH | 9/30/2012 | H730-150 | 1959 Bruckner Blvd., Bronx, NY |
| NJ | Health | N/A | CITY OF ELIZABETH | 6/30/2012 | H730-154 | 114-116 Rathway Ave., Elizabeth, NJ |
| NJ | Health | N/A | CITY OF ELIZABETH | 6/30/2012 | H730-155 | 955 E. Jersey St., Elizabeth, NJ |
| NJ | Health | N/A | CITY OF NEWARK | 12/31/2012 | H730-156 | 249 Park Ave., Newark, NJ |
| NJ | Health | N/A | JERSEY CITY | 12/31/2012 | H730-157 | 591 Communipaw Ave, Jersey City, NJ |
| NJ | Health | N/A | TOWNSHIP OF IRVINGTON | 12/31/2012 | H730-158 | 688-692 Lyons Avenue, Irvington, NJ |
| NJ | Health | N/A | CITY OF EAST ORANGE | 7/31/2012 | H730-161 | 434 Central Ave., Newark, NJ |
| NJ | Health | N/A | BAYONNE HEALTH DEPT | 12/31/2012 | H730-162 | 516 Broadway, Bayonne, NJ |
| NJ | Health | N/A | TOWNSHIP OF IRVINGTON | 12/31/2012 | H730-166 | Springfield Ave., Irvington, NJ |
| NJ | Health | N/A | CITY OF NEWARK | 12/31/2012 | H730-167 | 125 Bergen St., Newark, NJ |
| NJ | Health | N/A | TWNSP OF WOODBRIDGE | 12/31/2012 | H730-168 | 419 U.S. Route 1, Iselin, NJ |
| NJ | Health | N/A | CITY OF RAHWAY | 6/30/2012 | H730-169 | 92 St. Georges Ave., Rathway, NJ |

## Schedule 1.1 (g) - Permits

| State | Type of Permit | Number | Jurisdiction | Expiration Date | Store # | Store Address |
|---|---|---|---|---|---|---|
| NY | Health | N/A | NYC DEPT OF HEALTH | 9/30/2012 | H730-171 | 44 Victory Blvd., Staten Island, NY |
| NY | Health | N/A | NYC DEPT OF HEALTH | 9/30/2012 | H730-173 | 2471 Hylan Blvd., Staten Island, NY |
| NY | Health | N/A | NYC DEPT OF HEALTH | 9/30/2012 | H730-174 | 1 W Burnside Ave., Bronx, NY |
| NY | Health | N/A | NYC DEPT OF HEALTH | 9/30/2012 | H730-175 | C501 West Fordham Rd. Bronx, NY |
| NY | Health | N/A | NYC DEPT OF HEALTH | 9/30/2012 | H730-176 | 375 East 149th St., Bronx, NY |
| NY | Health | N/A | NYC DEPT OF HEALTH | 9/30/2012 | H730-177 | 1731 Webster Ave. , Bronx, NY |
| NY | Health | N/A | ONONDAGA CTY HEALTH | 1/31/2013 | H730-179 | 1524 S. Salina St., Syracuse, NY |
| NY | Health | N/A | ONODANGA CTY HEALTH | 1/31/2012 | H730-180 | 7900 Brewerton Rd., Cicero, NY |
| NY | Health | N/A | CAYUGA CTY HEALTH | 3/31/2012 | H730-181 | 276 Grant Ave. , Auburn, NY |
| NY | Health | N/A | ONODANGA CTY HEALTH | 1/31/2012 | H730-183 | 825-829 butternut, Syracuse, NY |
| NY | Health | N/A | ONODANGA CTY HEALTH | 1/31/2012 | H730-184 | 3821 Route 31, Liverpool, NY |
| NY | Health | N/A | ONODANGA CTY HEALTH | 1/31/2012 | H730-185 | 1055 7th North Street, Liverpool, NY |
| NY | Health | N/A | ONODANGA CTY HEALTH | 1/31/2012 | H730-186 | 3520 W Genessee, Camillus, NY |
| NY | Health | N/A | SENECA CTY HEALTH | 9/30/2012 | H730-187 | 2430 Route 414, Waterloo, NY |
| NY | Health | N/A | MADISON CTY HEALTH | 2/28/2012 | H730-188 | 127 Genesse St., Oneida, NY |
| NY | Health | N/A | ONODANGA CTY HEALTH | 1/31/2012 | H730-189 | 3406 Erie Blvd., Syracuse, NY |
| NY | Health | N/A | ONEIDA CTY HEALTH | 12/31/2012 | H730-191 | 8512 Seneca Turnpike, New Hartford, NY |
| NY | Health | N/A | STATE OF NY | 8/31/2012 | H730-192 | 200 S. Caroline St., Herkimer, NY |
| NY | Health | N/A | STATE OF NY | 2/28/2012 | H730-193 | 1004 Arsenal St., Watertown, NY |
| NY | Health | N/A | STATE OF NY | 2/28/2012 | H730-194 | 26720 Us Route 11, Evans Mills, NY |
| NY | Health | N/A | ONEIDA CTY HEALTH | 12/31/2012 | H730-198 | 235 Erie Blvd W., Rome, NY |
| NJ | Fire | N/A | FIRE SAFETY | 3/30/2012 | H730-031 | 576 New Brunswick Avenue, Perth Amboy, NJ |
| NJ | Fire | N/A | BUR OF FIRE PREV | 12/31/2012 | H730-033 | Route 36 Airport Plaza, Hazlet, New Jersey |
| NJ | Fire | N/A | FIRE SAFETY | 3/30/2012 | H730-034 | 1109 State Highway 34, Aberdeen, NJ |
| NJ | Fire | N/A | FIRE SAFETY | 3/30/2012 | H730-035 | 190 Route 46, Rockaway, NJ |
| NJ | Fire | N/A | FIRE SAFETY | 3/30/2012 | H730-036 | 1110 Route 46, Ledgewood, NJ |
| NJ | Fire | N/A | FIRE SAFETY | 3/30/2012 | H730-037 | 230 East Mountain Avenue, Hackettstown, NJ |
| NJ | Fire | N/A | FIRE SAFETY | 3/30/2012 | H730-039 | 185 Ridgedale Avenue, Florham Park, NJ |
| NJ | Fire | N/A | FIRE PREVENTION BUREAU | | H730-059 | 1452 Route 46, Parsippany, New Jersey |
| NJ | Fire | N/A | FIRE SAFETY | 8/31/2012 | H730-145 | 2170 Fletcher Ave., Fort Lee, New Jersey |
| NJ | Fire | N/A | FIRE SAFETY | 8/31/2012 | H730-146 | 587 Cedar Lane, Teaneck, NJ |
| NJ | Fire | N/A | FIRE SAFETY | 8/31/2012 | H730-147 | 600 Peterson Plank Rd, Union City, NJ |
| NY | Liquid Gas | N/A | CITY OF NY FIRE DEPT | 4/30/2012 | H730-148 | 1453 Forest Ave., Staten Island, NY |
| NY | Rangehood | N/A | CITY OF NY FIRE DEPT | 4/30/2012 | H730-148 | 1453 Forest Ave., Staten Island, NY |
| NY | Refrig/AC | N/A | CITY OF NY FIRE DEPT | 4/30/2012 | H730-148 | 1453 Forest Ave., Staten Island, NY |
| NY | Liquid Gas | N/A | CITY OF NY FIRE DEPT | 4/30/2012 | H730-150 | 1959 Bruckner Blvd., Bronx, NY |
| NY | Rangehood | N/A | CITY OF NY FIRE DEPT | 4/30/2012 | H730-150 | 1959 Bruckner Blvd., Bronx, NY |
| NY | Refrig/AC | N/A | CITY OF NY FIRE DEPT | 4/30/2012 | H730-150 | 1959 Bruckner Blvd., Bronx, NY |
| NJ | Fire | N/A | FIRE SAFETY | 8/31/2012 | H730-154 | 114-116 Rathway Ave., Elizabeth, NJ |
| NJ | Fire | N/A | FIRE SAFETY | 8/31/2012 | H730-156 | 249 Park Ave., Newark, NJ |
| NJ | Fire | N/A | FIRE SAFETY | 3/31/2012 | H730-157 | 591 Communipaw Ave, Jersey City, NJ |
| NJ | Fire | N/A | IRVINGTON FIRE DEPT | 2/28/2012 | H730-158 | 688-692 Lyons Avenue, Irvington, NJ |

| | | | | Schedule 1.1 (g) - Permits | | |
|---|---|---|---|---|---|---|
| State | Type of Permit | Number | Jurisdiction | Expiration Date | Store # | Store Address |
| NJ | Fire | N/A | FIRE SAFETY | 8/31/2012 | H730-161 | 434 Central Ave., Newark, NJ |
| NJ | Fire | N/A | FIRE SAFETY | 8/31/2012 | H730-162 | 516 Broadway, Bayonne, NJ |
| NJ | Fire | N/A | FIRE SAFETY | 8/31/2012 | H730-164 | Block 140, Lot 62 Rt. 1, North Brunswick, NJ |
| NJ | Fire | N/A | TOWNSHIP OF IRVINGTON | | H730-166 | Springfield Ave., Irvington, NJ |
| NJ | Fire | N/A | BUREAU OF FIRE | | H730-168 | 419 U.S. Route 1, Iselin, NJ |
| NJ | Fire | N/A | FIRE SAFETY | 8/31/2012 | H730-169 | 92 St. Georges Ave., Rathway, NJ |
| NY | Liquid Gas | N/A | CITY OF NY FIRE DEPT | 10/31/2012 | H730-171 | 44 Victory Blvd., Staten Island, NY |
| NY | Rangehood | N/A | CITY OF NY FIRE DEPT | 10/31/2012 | H730-171 | 44 Victory Blvd., Staten Island, NY |
| NY | Refrig/AC | N/A | CITY OF NY FIRE DEPT | 10/31/2012 | H730-171 | 44 Victory Blvd., Staten Island, NY |
| NY | Liquid Gas | N/A | CITY OF NY FIRE DEPT | 3/31/2012 | H730-173 | 2471 Hylan Blvd., Staten Island, NY |
| NY | Rangehood | N/A | CITY OF NY FIRE DEPT | 12/31/2012 | H730-173 | 2471 Hylan Blvd., Staten Island, NY |
| NY | Refrig/AC | N/A | CITY OF NY FIRE DEPT | 12/31/2012 | H730-173 | 2471 Hylan Blvd., Staten Island, NY |
| NY | Rangehood | N/A | CITY OF NY FIRE DEPT | 8/31/2012 | H730-174 | 1 W Burnside Ave., Bronx, NY |
| NY | Refrig/AC | N/A | CITY OF NY FIRE DEPT | 8/31/2012 | H730-174 | 1 W Burnside Ave., Bronx, NY |
| NY | Liquid Gas | N/A | CITY OF NY FIRE DEPT | | H730-175 | C501 West Fordham Rd. Bronx, NY |
| NY | Rangehood | N/A | CITY OF NY FIRE DEPT | | H730-175 | C501 West Fordham Rd. Bronx, NY |
| NY | Refrig/AC | N/A | CITY OF NY FIRE DEPT | | H730-175 | C501 West Fordham Rd. Bronx, NY |
| NY | Rangehood | N/A | CITY OF NY FIRE DEPT | 1/31/2012 | H730-176 | 375 East 149th St., Bronx, NY |
| NY | Refrig/AC | N/A | CITY OF NY FIRE DEPT | 1/31/2012 | H730-176 | 375 East 149th St., Bronx, NY |
| NY | Liquid Gas | N/A | CITY OF NY FIRE DEPT | 6/30/2012 | H730-177 | 1731 Webster Ave. , Bronx, NY |
| NY | Rangehood | N/A | CITY OF NY FIRE DEPT | 6/30/2012 | H730-177 | 1731 Webster Ave. , Bronx, NY |
| NY | Refrig/AC | N/A | CITY OF NY FIRE DEPT | 6/30/2012 | H730-177 | 1731 Webster Ave. , Bronx, NY |
| NY | Fire | N/A | ONEIDA FIRE DEPT | 12/31/2012 | H730-188 | 127 Genesse St., Oneida, NY |
| | | | | | | |
| MD | Traders | 2417855 | State of Maryland | 4/30/2012 | 18 | 1972 West Street, Annapolis, Maryland |
| MD | Chain Store | 2379695 | State of Maryland | 4/30/2012 | 18 | 1972 West Street, Annapolis, Maryland |
| MD | Restaurant | 7176793 | State of Maryland | 4/30/2012 | 18 | 1972 West Street, Annapolis, Maryland |
| MD | Traders | 8440280 | State of Maryland | 4/30/2012 | 19 | 6665 Crain Hwy., La Plata, Maryland |
| MD | Chain Store | 8597385 | State of Maryland | 4/30/2012 | 19 | 6665 Crain Hwy., La Plata, Maryland |
| MD | Restaurant | 7176687 | State of Maryland | 4/30/2012 | 19 | 6665 Crain Hwy., La Plata, Maryland |
| MD | Traders | 2417862 | State of Maryland | 4/30/2012 | 20 | 1043 MD RT 3 NORTH, GAMBRILLS, Maryland |
| MD | Chain Store | 2723430 | State of Maryland | 4/30/2012 | 20 | 1043 MD RT 3 NORTH, GAMBRILLS, Maryland |
| MD | Restaurant | 7176762 | State of Maryland | 4/30/2012 | 20 | 1043 MD RT 3 NORTH, GAMBRILLS, Maryland |
| MD | Traders | 2417860 | State of Maryland | 4/30/2012 | 21 | 8073 Veterans Hwy., Millersville, Maryland |
| MD | Chain Store | 2609730 | State of Maryland | 4/30/2012 | 21 | 8073 Veterans Hwy., Millersville, Maryland |
| MD | Restaurant | 7176731 | State of Maryland | 4/30/2012 | 21 | 8073 Veterans Hwy., Millersville, Maryland |
| MD | Traders | 8440279 | State of Maryland | 4/30/2012 | 22 | 2180 Crain Hwy., Waldorf, Maryland |
| MD | Chain Store | 8384056 | State of Maryland | 4/30/2012 | 22 | 2180 Crain Hwy., Waldorf, Maryland |
| MD | Restaurant | 7176922 | State of Maryland | 4/30/2012 | 22 | 2180 Crain Hwy., Waldorf, Maryland |
| MD | Traders | 2417857 | State of Maryland | 4/30/2012 | 23 | 4107 Mountain Rd., Pasadena, Maryland |
| MD | Chain Store | 2496311 | State of Maryland | 4/30/2012 | 23 | 4107 Mountain Rd., Pasadena, Maryland |
| MD | Restaurant | 7176854 | State of Maryland | 4/30/2012 | 23 | 4107 Mountain Rd., Pasadena, Maryland |
| MD | Traders | 16470817 | State of Maryland | 4/30/2012 | 24 | 10 Watkins Park Dr., Upper Marlboro, Maryland |
| MD | Chain Store | 16705945 | State of Maryland | 4/30/2012 | 24 | 10 Watkins Park Dr., Upper Marlboro, Maryland |

| State | Type of Permit | Number | Jurisdiction | Expiration Date | Store # | Store Address |
|-------|----------------|--------|--------------|-----------------|---------|---------------|
| MD | Restaurant | 7176755 | State of Maryland | 4/30/2012 | 24 | 10 Watkins Park Dr., Upper Marlboro, Maryland |
| MD | Traders | 17474926 | State of Maryland | 4/30/2012 | 56 | 373 Thompson Creek Mall, Stevensville, Maryland |
| MD | Chain Store | 17794237 | State of Maryland | 4/30/2012 | 56 | 373 Thompson Creek Mall, Stevensville, Maryland |
| MD | Restaurant | 8218270 | State of Maryland | 4/30/2012 | 56 | 373 Thompson Creek Mall, Stevensville, Maryland |
| MD | Traders | 16470815 | State of Maryland | 4/30/2012 | 65 | 5785 Crains Hwy. SW, Upper Marlboro, Maryland |
| MD | Chain Store | 16647988 | State of Maryland | 4/30/2012 | 65 | 5785 Crains Hwy. SW, Upper Marlboro, Maryland |
| MD | Restaurant | 10545289 | State of Maryland | 4/30/2012 | 65 | 5785 Crains Hwy. SW, Upper Marlboro, Maryland |
| MD | Traders | 4433211 | State of Maryland | 4/30/2012 | 77 | 65 Dares Beach Rd. W., Prince Frederick, Maryland |
| MD | Chain Store | 4633904 | State of Maryland | 4/30/2012 | 77 | 65 Dares Beach Rd. W., Prince Frederick, Maryland |
| MD | Restaurant | 10445655 | State of Maryland | 4/30/2012 | 77 | 65 Dares Beach Rd. W., Prince Frederick, Maryland |
| MD | Traders | 2417859 | State of Maryland | 4/30/2012 | 81 | 5734 Ritchie Hwy., Baltimore, Maryland |
| MD | Chain Store | 2609649 | State of Maryland | 4/30/2012 | 81 | 5734 Ritchie Hwy., Baltimore, Maryland |
| MD | Restaurant | 9878514 | State of Maryland | 4/30/2012 | 81 | 5734 Ritchie Hwy., Baltimore, Maryland |
| MD | Traders | 2417856 | State of Maryland | 4/30/2012 | 82 | 1682 Annapolis Rd., Odenton, Maryland |
| MD | Chain Store | 2394010 | State of Maryland | 4/30/2012 | 82 | 1682 Annapolis Rd., Odenton, Maryland |
| MD | Restaurant | 9878521 | State of Maryland | 4/30/2012 | 82 | 1682 Annapolis Rd., Odenton, Maryland |
| MD | Traders | 2417858 | State of Maryland | 4/30/2012 | 83 | 6734 Ritchie Hwy., Glen Burnie, Maryland |
| MD | Chain Store | 2609648 | State of Maryland | 4/30/2012 | 83 | 6734 Ritchie Hwy., Glen Burnie, Maryland |
| MD | Restaurant | 9878538 | State of Maryland | 4/30/2012 | 83 | 6734 Ritchie Hwy., Glen Burnie, Maryland |
| MD | Traders | 2417861 | State of Maryland | 4/30/2012 | 84 | 7395 Balto Annap Blvd., Glen Burnie, Maryland |
| MD | Chain Store | 2695771 | State of Maryland | 4/30/2012 | 84 | 7395 Balto Annap Blvd., Glen Burnie, Maryland |
| MD | Restaurant | 9878545 | State of Maryland | 4/30/2012 | 84 | 7395 Balto Annap Blvd., Glen Burnie, Maryland |
| MD | Traders | 2417863 | State of Maryland | 4/30/2012 | 85 | 798 Nursery Rd., Linthicum Heights, Maryland |
| MD | Chain Store | 2797909 | State of Maryland | 4/30/2012 | 85 | 798 Nursery Rd., Linthicum Heights, Maryland |
| MD | Restaurant | 9878552 | State of Maryland | 4/30/2012 | 95 | 798 Nursery Rd., Linthicum Heights, Maryland |
| | | | | | | |
| MI | Food Service | SFE4982055749 | State of Michigan | 4/30/2012 | 199 | 17505 E Warren Ave, Detroit, Michigan |
| MI | Food Service | SFE4882057933 | State of Michigan | 4/30/2012 | 200 | 10120 W Warren Ave., Dearborn, Michigan |
| MI | Food Service | SFE4982055756 | State of Michigan | 4/30/2012 | 202 | 9848 Livernois, Detroit, MI |
| MI | Food Service | SFE3963055437 | State of Michigan | 4/30/2012 | 204 | 383 South Broadway, Lake Orion, MI |
| MI | Food Service | SFE4982055758 | State of Michigan | 4/30/2012 | 206 | 8939 W. 7 Mile Rd., Detroit, MI |
| MI | Food Service | SFE4982055752 | State of Michigan | 4/30/2012 | 207 | 15700 E. Eight Mile, Detroit, MI |
| MI | Food Service | SFE4982055751 | State of Michigan | 4/30/2012 | 208 | 2600 E. Eight Mile, Detroit, MI |
| MI | Food Service | SFE4982057471 | State of Michigan | 4/30/2012 | 209 | 6320 W. Fort St., Detroit, MI |
| MI | Food Service | SFE3963055436 | State of Michigan | 4/30/2012 | 210 | 4790 Dixie Hwy., Waterford Township, MI |
| MI | Food Service | SFE4982055748 | State of Michigan | 4/30/2012 | 213 | 13320 E, Jefferson, Detroit, MI |
| MI | Food Service | SFE4982055754 | State of Michigan | 4/30/2012 | 215 | 2715 W. Grand Blvd., Detroit, MI |
| MI | Food Service | SFE4982055750 | State of Michigan | 4/30/2012 | 217 | 9654 Gratiot Ave., Detroit, MI |
| MI | Food Service | SFE4982056539 | State of Michigan | 4/30/2012 | 218 | 17750 Fenkell, Detroit, MI |
| MI | Food Service | SFE4982057390 | State of Michigan | 4/30/2012 | 219 | 3785 Gratiot Ave., Detroit, MI |
| MI | Food Service | SFE4982055753 | State of Michigan | 4/30/2012 | 220 | 9041 Chalmers, Detroit, MI |
| MI | Food Service | SFE4063055438 | State of Michigan | 4/30/2012 | 221 | 606 S. Rochester Rd., Rochester Hills, MI |
| MI | Food Service | SFE4982055761 | State of Michigan | 4/30/2012 | 222 | 13546 W. McNichols, Detroit, MI |
| MI | Food Service | SFE4882057539 | State of Michigan | 4/30/2012 | 223 | 20990 Harper Ave., Harper Woods, MI |
| MI | Food Service | SFE4882043835 | State of Michigan | 4/30/2012 | 224 | 13253 Woodward, Highland Park, MI |
| MI | Food Service | SFE4882060842 | State of Michigan | 4/30/2012 | 225 | 12721 Michigan Avenue, Dearborn, MI |
| MI | Food Service | SFE4982057603 | State of Michigan | 4/30/2012 | 228 | 2339 Wayne Rd., Westland, MI |
| MI | Food Service | SFE4382057590 | State of Michigan | 4/30/2012 | 229 | 41670 Ford Rd., Canton, MI |
| MI | Food Service | SFE2025058210 | State of Michigan | 4/30/2012 | 230 | G-6030 N. Saginaw St., Mt. Morris Township, MI |
| MI | Food Service | SFE2025058206 | State of Michigan | 4/30/2012 | 231 | 4427 Corunna Rd., Flint, MI |
| MI | Food Service | SFE4982056540 | State of Michigan | 4/30/2012 | 232 | 22345 Grand River, Detroit, MI |
| MI | Food Service | SFE4982055755 | State of Michigan | 4/30/2012 | 235 | 2601 W. Davison Ave., Detroit, MI |
| MI | Food Service | SFE2025058209 | State of Michigan | 4/30/2012 | 236 | 1445 W. Bristol Rd., Flint, MI |
| MI | Food Service | SFE2025058194 | State of Michigan | 4/30/2012 | 238 | 1914 N. Dort Hwy., Flint, MI |
| MI | Food Service | SFE4982055759 | State of Michigan | 4/30/2012 | 240 | 14201 W 7 Mile Rd ., Detroit, MI |
| MI | Food Service | SFE2025061364 | State of Michigan | 4/30/2012 | 252 | 1765 S. Dort Hwy., Flint, MI |

## Schedule 1.1(n) - Telephones, Email

### FLORIDA

| NUMBER | TYPE | STREET | CITY | STATE | ZIP | PHONE | Email |
|---|---|---|---|---|---|---|---|
| HO-702 | KFC | 171-175 NE 166th St. | N. Miami Beach | FL | 33162 | 305-947-4095 | |
| H730-025 | KFC-L | 16215 N.E. 15th Ave. | N. Miami Beach | FL | 33162 | 305-947-7056 | |
| H730-027 | KFC | 17701 NW 27th Ave. | Miami (Carol City) | FL | 33056 | 305-620-1341 | |
| H730-030 | KFC-L | 13801 Biscayne Bl. | N. Miami Beach | FL | 33181 | 305-948-3810 | |
| H730-072 | KFC/TB-L | 232 S.E. First Ave. | Florida City | FL | 33034 | 305-248-1509 | |
| H730-073 | KFC/TB | 6501 Oversea Hwy. | Marathon | FL | 33050 | 305-743-6644 | |
| H730-128 | KFC | 966 S. W. 8th St. | Miami | FL | 33130 | 305- 858-5405 | |
| H730-129 | KFC | 9690 S. Dixie Hwy. | Miami | FL | 33156 | 305-670-5144 | |
| H730-130 | KFC | 3515 N. W. 7th Ave. | Miami | FL | 33127 | 305-633-0603 | |
| H730-131 | KFC/TB | 1190 N. W. 62nd St. | Miami | FL | 33150 | 305-751-5389 | |
| H730-132 | KFC | 11585 S. W. 40th St. | Miami | FL | 33165 | 305-221-5233 | |
| H730-133 | KFC | 815 W. Hallandale Beach | Hallandale | FL | 33009 | 954-454-5618 | |
| H730-135 | KFC | 3100 W. Broward Bl. | Fort Lauderdale | FL | 33312 | 954-583-1824 | |
| H730-138 | KFC-O | 10395 W. Sample Rd. | Coral Springs | FL | 33065 | 954-753-9053 | |
| H730-139 | KFC-L | 5450 University Dr. | Coral Springs | FL | 33067 | 954-341-0386 | |
| H730-140 | KFC | 506 S. Federal Hwy. | Dania | FL | 33004 | 954-921-4750 | |
| Juan Mujica | Market Director | | | | | 305-525-7237 | JMujica@kazifoods.com |
| Leonor Medina | Market Coach | | | | | 954-650-1019 | lmedina@kazifoods.com |

### MARYLAND

| NUMBER | TYPE | STREET | CITY | STATE | ZIP | PHONE |
|---|---|---|---|---|---|---|
| H730-018 | KFC | 1978 West St. | Annapolis | MD | 21401 | 410-224-4630 |
| H730-019 | KFC-L | 6665 Crain Hwy. | Laplata | MD | 20646 | 301-934-0374 |
| H730-020 | KFC-L | 1043 Md. Rt. 3 North | Gambrills (Crofton) | MD | 21054 | 410-721-5320 |
| H730-021 | KFC-L | 8073 Veterans Hwy. | Millersville | MD | 21108 | 410-969-1233 |
| H730-022 | KFC | 2180 Crain Hwy. | Waldorf | MD | 20601 | 301-645-7300 |
| H730-023 | KFC-L | 4107 Mountain Rd. | Pasadena (Lk Shore) | MD | 21122 | 410-255-4575 |
| H730-024 | KFC-L | 10 Watkins Park Dr. | Upper Marlboro | MD | 20772 | 301-249-9711 |
| H730-056 | KFC-L | 373 Thompson Creek Mall | Stevensville | MD | 21666 | 410-604-0620 |
| H730-065 | KFC/A&W | 5785 SW Crain Hwy. | Upper Marlboro | MD | 20772 | 301-780-3640 |
| H730-077 | KFC | Daves Beach Rd., Rte. 4 | Prince Frederick | MD | 20678 | 410-535-2288 |
| H730-081 | KFC-L | 5734 Ritchie Hwy. | Baltimore | MD | 21061 | 410-544-8616 |
| H730-082 | KFC-L | 1682 Annapolis Rd. | Glen Burnie | MD | 21060 | 410-636-2176 |
| H730-083 | KFC-L | 6734 Ritchie Hwy. | Glen Burnie | MD | 21061 | 410-760-5687 |
| H730-084 | KFC-L | 7395 Baltimore Annapolis Bl. | Glen Burnie | MD | 21061 | 410-551-7845 |
| H730-085 | KFC-L | 708 Nursery Rd. | Lithium | MD | 21090 | 410-760-5687 |
| H730-087 | KFC-L | 5400 Lynx Ln. | Columbia | MD | 21044 | 410-760-9339 |
| H730-142 | KFC/LJS-L | 302 Canberra Way | Bryans Road | MD | 20616 | |
| Ed Duffy | Market Director | | | | | 347-229-4377 | eduffy@kazigroup.com |
| Dianne Sechak | Market Coach | | | | | 410-598-7570 | dsechak@kazifoods.com |
| Regetta Polk | Market Coach | | | | | 410-920-1704 | rpolk@kazifoods.com |

## Schedule 1.1(n) - Telephones, Email

### Michigan

| NUMBER | TYPE | STREET | CITY | STATE | ZIP | PHONE |
|---|---|---|---|---|---|---|
| HO-707 | Office | 1715A Larchwood | Troy | MI | 48083 | 248-250-9357 |
| H730-199 | KFC-O | 17505 E. Warren Ave. | Detroit | MI | 48224 | 313-881-0923 |
| H730-200 | KFC-O | 10120 W. Warren Ave. | Dearborn | MI | 48126 | 313-846-0026 |
| H730-202 | KFC-O | 9848 Livernois Ave. | Detroit | MI | 48204 | 313-935-0422 |
| H730-204 | KFC/PH-L | 383 S. Broadway St. | Lake Orion | MI | 48362 | 248-693-9867 |
| H730-206 | KFC/PH-O | 8939 W. 7 Mile Rd. | Detroit | MI | 48221 | 313-864-4050 |
| H730-207 | KFC-O | 15700 E. 8 Mile Rd. | Detroit | MI | 48205 | 313-526-2838 |
| H730-208 | KFC/PH-O | 2600 E. 8 Mile Rd. | Detroit | MI | 48234 | 313-366-8821 |
| H730-209 | KFC/TB-O | 6320 W. Fort St. | Detroit | MI | 48209 | 313-843-2317 |
| H730-210 | KFC/A&W-O | 4790 Dixie Hwy. | Waterford | MI | 48329 | 248-673-2030 |
| H730-211 | KFC-O | 3510 Clio Rd. | Flint | MI | 48504 | 810-785-7895 |
| H730-213 | KFC/TB-O | 13320 E. Jefferson Ave. | Detroit | MI | 48215 | 313-824-6705 |
| H730-215 | KFC-O | 2716 W. Grand Blvd. | Detroit | MI | 48208 | 313-875-4366 |
| H730-217 | KFC-O | 9654 Gratiot Ave. | Detroit | MI | 48213 | 313-924-7029 |
| H730-218 | KFC-O | 17750 Fenkell St. | Detroit | MI | 48227 | 313-835-6712 |
| H730-219 | KFC-O | 3785 Gratiot St. | Detroit | MI | 48207 | 313-921-9233 |
| H730-220 | KFC-O | 9041 Chalmers | Detroit | MI | 48213 | 313-372-0142 |
| H730-221 | KFC/LJS-O | 606 S. Rochester Rd. | Rochester Hills | MI | 48307 | 248-652-1730 |
| H730-222 | KFC-O | 13546 W. McNichols Rd. | Detroit | MI | 48235 | 313-862-1333 |
| H730-223 | KFC-O | 20990 Harper Ave. | Harper Woods | MI | 48225 | 313-881-8144 |
| H730-224 | KFC-O | 13253 Woodward Ave. | Highland Park | MI | 48203 | 313-868-0050 |
| H730-225 | KFC-L | 12721 Michigan Ave. | Dearborn | MI | 48126 | 313-582-0610 |
| H730-227 | KFC-O | 6021 Dort Hwy. | Grand Blanc | MI | 48439 | 810-695-1457 |
| H730-228 | KFC-O | 2339 S. Wayne Rd. | Westland | MI | 48185 | 734-326-1750 |
| H730-229 | KFC-O | 41670 Ford Rd. | Canton | MI | 48187 | 734-981-4090 |
| H730-230 | KFC-O | G-6030 N. Saginaw | Mt. Morris | MI | 48458 | 810-785-0886 |
| H730-231 | KFC/A&W-L | 4427 Corunna Rd. | Flint | MI | 48532 | 810-733-2213 |
| H730-232 | KFC-O | 22345 Grand River | Detroit | MI | 48219 | 313-543-9250 |
| H730-234 | KFC/A&W-O | 1361 N. Opdyke Rd. | Auburn Hills | MI | 48326 | 248-475-0949 |
| H730-235 | KFC-O | 2601 W. Davison Ave. | Detroit | MI | 48238 | 313-867-7270 |
| H730-236 | KFC-O | 1445 W. Bristol Rd. | Flint | MI | 48507 | 810-239-4628 |
| H730-238 | KFC-O | 1914 N. Dort Hwy. | Flint | MI | 48506 | 810-232-1791 |
| H730-240 | KFC/LJS-L | 14201 W. 7 Mile Rd. | Detroit | MI | 48235 | 313-861-0645 |
| H730-247 | KFC-O | 1000 S. Opdyke Rd. | Pontiac | MI | 48341 | 248-456-0526 |
| H730-252 | Whse/Office | 325 W. Pearl St. | Plymouth | MI | 48170 | |

| | | | | |
|---|---|---|---|---|
| Patrick Blayney | Market Director | | 313-520-6631 | pblayney@kazigroup.com |
| Paul Jedro | Market Coach | | 313-529-5993 | pjedro@kazigroup.com |
| Sonia Simmons | Market Coach | | 810-908-1801 | ssimmons@kazigroup.com |
| Crystal Wilborn | Market Coach | | 313-520-8044 | cwilborn@kazigroup.com |
| Val Steward | Market Coach | | 313-778-0447 | vsteward@kazigroup.com |

## Schedule 1.1(n) - Telephones, Email

### NEW JERSEY

| NUMBER | TYPE | STREET | CITY | STATE | ZIP | PHONE |
|---|---|---|---|---|---|---|
| H730-031 | KFC-O | 576 New Brunswick Ave. | Perth Amboy | NJ | 08861 | 732-442-1841 |
| H730-033 | KFC-L | Route 36 & Middle Road | Hazlet | NJ | 07730 | 732-739-9200 |
| H730-034 | KFC-O | Route 34 & Lloyd Road | Aberdeen | NJ | 07747 | 732-583-4529 |
| H730-035 | KFC-O | 190 Route 46 | Rockaway | NJ | 07866 | 973-625-1432 |
| H730-036 | KFC/LJS-O | 1110 Route 46 | Ledgewood | NJ | 07852 | 973-584-2850 |
| H730-037 | KFC-O | 230 E. Mountain Ave. | Hackettstown | NJ | 07840 | 908-852-9523 |
| H730-039 | K/Px-O | 185 Ridgedale Ave. | Florham Park | NJ | 07932 | 973-377-8012 |
| H730-059 | KFC-L | 1452 Route 46 West | Parsippany | NJ | 07054 | 973-394-9417 |
| H730-145 | K/T-L | 2170 Fletcher Ave. | Fort Lee | NJ | 07024 | 201-592-5245 |
| H730-146 | KFC | 587 Cedar Ln. | Teaneck | NJ | 07666 | 201-836-8178 |
| H730-147 | KFC-L | 600 Patterson Plank Rd. | Union City | NJ | 07087 | 201-863-6469 |
| H730-154 | KFC-L | 114-16 Rahway Ave. | Elizabeth | NJ | 07202 | 908-354-2551 |
| H730-155 | KFC-L | 955 E. Jersey St. | Elizabeth | NJ | 07201 | 908-289-6520 |
| H730-156 | KFC-L | 249 Park Ave. | Newark | NJ | 07107 | 973-481-2612 |
| H730-157 | K/Px-O | 591 Communipaw Rd. | Jersey City | NJ | 07304 | 201-433-1151 |
| H730-158 | KFC-L | 688 Lyons Ave., #692 | Irvington | NJ | 07111 | 973-371-8107 |
| H730-161 | KFC-L | 434 Central Ave. | East Orange | NJ | 07018 | 973-674-9300 |
| H730-162 | KFC-L | 516 Broadway | Bayonne | NJ | 07002 | 201-858-1573 |
| H730-164 | K/Px-L | 1055 U.S. Highway 1 South | North Brunswick | NJ | 08902 | 732-247-8786 |
| H730-166 | K/Px-L | 841 Springfield Ave. | Irvington | NJ | 07111 | 973-375-5761 |
| H730-167 | KFC-L | 125 Bergen St. | Newark | NJ | 07103 | 973-622-2437 |
| H730-168 | KFC-O | 419 U.S. Highway 1 South | Iselin | NJ | 08830 | 732-602-1630 |
| H730-169 | K/Px-L | 92 St. Georges Ave. | Rahway | NJ | 07065 | 732-680-9310 |

**Schedule 1.1(n) - Telephones, Email**

**New York**

| NUMBER | TYPE | STREET | CITY | STATE | ZIP | PHONE | | |
|--------|------|--------|------|-------|-----|-------|---|---|
| H730-148 | KFC-L | 1453 Forest Ave. | Staten Island | NY | 10302 | 718-447-2822 | | |
| H730-150 | KFC-L | 1959 Bruckner Bl. | Bronx | NY | 10472 | 718-409-4061 | | |
| H730-171 | K/T-L | 44 Victory Bl. | Staten Island | NY | 10301 | 718-442-5272 | | |
| H730-173 | KFC-L | 2471 Hylan Bl. | Staten Island | NY | 10306 | 718-667-4882 | | |
| H730-174 | KFC-L | 1 W. Burnside Ave. | Bronx | NY | 10453 | 718-329-2698 | | |
| H730-175 | KFC-L | 1 W. Fordham Rd. | Bronx | NY | 10468 | 718-563-2046 | | |
| H730-176 | KFC-L | 375 E. 149th St. | Bronx | NY | 10455 | 718-585-8333 | | |
| H730-177 | K/T-L | 1731 Webster Ave. | Bronx | NY | 10457 | 718-299-2227 | | |
| H730-179 | KFC-L | 1524 S. Salina St. | Syracuse | NY | 13205 | 315-472-4441 | | |
| H730-180 | KFC-L | 7900 Brewerton Rd. | Cicero | NY | 13039 | 315-699-4068 | | |
| H730-181 | K/A-L | 276 Grant Ave. | Auburn | NY | 13021 | 315-255-0410 | | |
| H730-183 | KFC-L | 825 Butternut St., #829 | Syracuse | NY | 13208 | 315-472-9766 | | |
| H730-184 | K/A-L | 3821 Route 31 | Liverpool | NY | 13088 | 315-652-1036 | | |
| H730-185 | K/T-L | 1055 7th North St. | Liverpool | NY | 13088 | 315-457-1500 | | |
| H730-186 | KFC-L | 3520 W. Genesee St. | Camillus | NY | 13219 | 315-487-8532 | | |
| H730-187 | K/T-O | 2430 State Route 414 | Waterloo | NY | 13165 | 315-539-0807 | | |
| H730-188 | K/A-L | 127 Genesee St. | Oneida | NY | 13421 | 315-366-0340 | | |
| H730-189 | KFC-L | 3406 Erie Bl. East | Dewitt | NY | 13214 | 315-446-9333 | | |
| H730-191 | KFC-L | 8512 Seneca Turnpike | New Hartford | NY | 13413 | 315-735-2144 | | |
| H730-192 | K/T-L | 200 S. Caroline St. | Herkimer | NY | 13350 | 315-866-3500 | | |
| H730-193 | KFC-L | 1004 Arsenal St. | Watertown | NY | 13601 | 315-782-7395 | | |
| H730-194 | KFC-O | 26720 US Route 11 | Evans Mills | NY | 13637 | 315-629-0521 | | |
| H730-198 | KFC-L | 205-211 Erie Bl. | Rome | NY | 13440 | 315-336-7290 | | |
| Roy Blake | Market Director | | | | | | rblake@kazifoods.com | |
| CARLOS QUINONES | Market Coach | | | | | 973-216-0816 | jbarnett@kazifoods.com | |
| JOAN BARNETT | Market Coach | | | | | 917-822-0175 | nsterling@kazifoods.com | |
| NADINE STERLING | Market Coach | | | | | 646-873-0101 | kwynter@kazifoods.com | |
| KARLENE WYNTER | Interim MC | | | | | 908-917-0271 | slamanna@kazifoods.com | |
| Shari Lamanna | Market Coach | | | | | 315-868-8620 | whurwitz@kazifoods.com | |
| Wesley Hurwitz | Market Coach | | | | | | | |
| | | | | | | | mmorris@kazifoods.com | FAX 443-782-1444 |
| Meloney Morris | Dir. Of Training | | | | | 410-218-8073 | | FAX 717-534-2239 |
| Hershey Office | | | | | | 717-534-2422 | | |
| St Croix Office | | | | | | 340-778-8000 | | |
| St Thomas Office | | | | | | 340-714-7310 | | |

## Schedule 1.2 - Real Property Schedule

| Store No. | Address | City |
|---|---|---|
| **Kazi Florida** | | |
| 27 | 17701 Northwest 27th Avenue | Miami |
| 73 | 6501 Overseas Highway | Marathon |
| 128 | 966 SW 8th St | Miami |
| 129 | 9690 S Dixie Hwy | Miami |
| 130 | 3515 N.W. Seventh Avenue | Miami |
| 131 | 1190 NW 62nd Street | Miami |
| 133 | 815 W Hallandale Beach Blvd | Hallandale |
| 135 | 3100 W Broward Blvd. | Fort Lauderdale |
| 138 | 10395 W. Sample Rd. | Coral Springs |
| | | |
| **Kazi Michigan** | | |
| 199 | 17505 E Warren Ave | Detroit |
| 200 | 10120 W Warren Ave | Dearborn |
| 202 | 9848 Livernois Ave | Detroit |
| 206 | 8939 W 7 Mile Rd | Detroit |
| 207 | 15700 E 8 Mile Rd | Detroit |
| 208 | 2600 E 8 Mile Rd | Detroit |
| 209 | 6320 W Fort St | Detroit |
| 210 | 4790 Dixie Hwy | Waterford |
| 211 | 3510 Clio Rd | Flint |
| 213 | 13320 E Jefferson Ave | Detroit |
| 215 | 2716 W. Grand Blvd. | Detroit |
| 217 | 9654 Gratiot Ave | Detroit |
| 218 | 17750 Fenkell St | Detroit |
| 219 | 3785 Gratiot St. | Detroit |
| 220 | 9041 Chalmers | Detroit |
| 221 | 606 S. Rochester Rd. | Rochester Hills |
| 222 | 13546 W McNichols Rd | Detroit |
| 223 | 20990 Harper Ave | Harper Woods |
| 224 | 13253 Woodward Ave | Highland Park |
| 227 | 6021 Dort Hwy | Grand Blanc |
| 228 | 2339 S Wayne Rd | Westland |
| 229 | 41670 Ford Rd | Canton |
| 230 | G-6030 N Saginaw | Mount Morris |
| 232 | 22345 Grand River | Detroit |
| 234 | 1361 N Opdyke Road | Auburn Hills |
| 235 | 2601 W Davison Avenue | Detroit |
| 236 | 1445 West Bristol Road | Flint |
| 238 | 1914 N Dort Hwy | Flint |
| 252 | 1765 South Dort Highway | Flint |

| Store No. | Address | City |
|---|---|---|
| **Kazi New York** | | |
| 31 | 576 New Brunswick Avenue | Perth Amboy |
| 34 | 1109 State Highway 34 | Aberdeen |
| 35 | 190 Route 46 | Rockaway |
| 36 | 1110 Route 46 | Ledgewood |
| 37 | 230 East Mountain Avenue | Hackettstown |
| 39 | 185 Ridgedale Avenue | Florham Park |
| 157 | 591 Communipaw Ave | Jersey City |
| 158 | 688-692 Lyons Avenue | Irvington |
| 168 | 419 U.S. Route 1 | Iselin |
| 187 | 2430 Route 414 | Waterloo |
| 194 | 26720 Us Route 11 | Evans Mills |

## Schedule 1.2(a) - Escrowed Real Property Schedule

| Store No. | Address | City | State |
|-----------|---------|------|-------|
| 18 | 1978 West Street | Annapolis | MD |
| 22 | 2180 Crain Highway | Waldorf | MD |
| 65 | 5785 S.W. Crain Highway | Upper Marlboro | MD |
| 77 | 65 West Dares Beach Road | Prince Frederick | MD |
| 82 | 1682 Annapolis Rd | Odenton | MD |
| 140 | 506 S. Federal Hwy. | Dania | FL |
| 247 | 1000 S. Opdyke Road | Pontiac | MI |
| 87 | 5400 Lynx Ln | Columbia | MD |

### Schedule 1.3(i) Excluded Deposits

| Vendor | Market | Amount |
|--------|--------|-------:|
| UFPC, Louisville | FL | 2,000 |
| FLORIDA POWER & LIGHT | KFL | 48,540 |
| Leading Resturant Services | KFL | 10,000 |
| DBM WASTE SYSTEMS | KMD | 8,446 |
| DTE Energy | KMI | 126,279 |
| Suez Energy Resources | KNY | 47,926 |
| Potomac Electric Power Co | KNY | 2,500 |
| Deldemarva Pwer & Light | KNY | 6,288 |
| NATIONAL GRID | KNY | 1,083 |
| NATIONAL GRID | KNY | 4,040 |
| NATIONAL GRID | KNY | 3,891 |
| NATIONAL GRID | KNY | 3,727 |
| NATIONAL GRID | KNY | 3,893 |
| NATIONAL GRID | KNY | 5,245 |
| NATIONAL GRID | KNY | 4,384 |
| NATIONAL GRID | KNY | 3,838 |
| NATIONAL GRID | KNY | 4,622 |
| NATIONAL GRID | KNY | 3,915 |
| NATIONAL GRID | KNY | 3,327 |
| NATIONAL GRID | KNY | 3,891 |
| NATIONAL GRID | KNY | 5,198 |
| NATIONAL GRID | KNY | 4,237 |
| NATIONAL GRID | KNY | 841 |
| NATIONAL GRID | KNY | 2,617 |
| NATIONAL GRID | KNY | 4,216 |
| DBM WASTE SYSTEMS INC | KNY | 31,807 |
| UFPC, Louisville | MD | 3,000 |
| Georges | MD | 37,500 |
| UFPC, Louisville | NY | 7,500 |
| | | |
| Total Excluded Deposits | | 394,750 |

**Schedule 1.3**
**Excluded Assets**

| Schedule 1.3(l) - Excluded Assets Schedule | | |
|---|---|---|

| Store # | Asset | Address |
|---|---|---|
| 201 | Real Property and Contents | 12010 Greenfield Road, Detroit, MI 48227 |
| 212 | Real Property and Contents | 14401 Grand River Ave, Detroit, MI 48227 |
| 216 | Real Property and Contents | 1850 McNichols Rd, Detroit, MI |
| 151 | 321 E Fordham Rd | Bronx, NY |
| 163 | 2704 Route 22 E | Union, NJ |

**Schedule 2.2 Expired Leases**

| Market | Store No. | Address | NY | State |
|--------|-----------|---------|-----|-------|
| KNY | 148 | 1453 Forest Ave | Staten Island | NY |
| KNY | 163 | 2704 Route 22 E | Union | NJ |
| KNY | 167 | 125 Bergen St | Newark | NJ |
| KNY | 151 | 321 E Fordham Rd | Bronx | NY |

Schedule 2.8
Allocation of Purchase Price

[To be agreed to before Closing]

**Schedule 4.1(e)**
**Litigation**

None

## Schedule 4.1(g) Real Property Taxes

| Market | Buyer Responsibility | Seller Responsibility | Unsecured | Seller (locations for sale) | Total | Pre paid tax to be reimbursed by buyer to seller |
|---|---|---|---|---|---|---|
| **FL** | **514,026** | **322,684** | **84,346** | **-** | **921,056** | **-** |
| 25 | 32,751 | 16,322 | 0 | - | 49,072 | - |
| 27 | 38,668 | 20,291 | - | - | 58,959 | - |
| 30 | 52,450 | 27,590 | 0 | - | 80,040 | - |
| 71 | - | 5,680 | 30,379 | - | 36,059 | - |
| 72 | 50,201 | 24,332 | (0) | - | 74,533 | - |
| 73 | 8,365 | 7,869 | 0 | - | 16,235 | - |
| 128 | 59,944 | 25,875 | - | - | 85,818 | - |
| 129 | 73,250 | 33,741 | (0) | - | 106,991 | - |
| 130 | 38,737 | 24,059 | (0) | - | 62,796 | - |
| 131 | 20,640 | 6,123 | - | - | 26,764 | - |
| 132 | 60,134 | 28,880 | - | - | 89,014 | - |
| 133 | 30,177 | 28,881 | - | - | 59,058 | - |
| 134 | - | 3,943 | 11,830 | - | 15,773 | - |
| 135 | 10,763 | 9,908 | - | - | 20,671 | - |
| 136 | - | 277 | 1,630 | - | 1,907 | - |
| 137 | - | 14,007 | 13,761 | - | 27,769 | - |
| 138 | 19,907 | 18,846 | 0 | - | 38,753 | - |
| 139 | - | 8,915 | 26,746 | - | 35,662 | - |
| 140 | 18,038 | 17,145 | 0 | - | 35,183 | - |
| **MD** | **10,521** | **60,308** | **0** | **-** | **70,829** | **34,754** |
| 20 | - | 9,301 | - | - | 9,301 | - |
| 21 | - | (2,474) | - | - | (2,474) | 2,474 |
| 22 | - | (3,203) | - | - | (3,203) | 3,203 |
| 77 | - | (2,363) | - | - | (2,363) | 2,363 |
| 82 | - | (2,499) | - | - | (2,499) | 2,499 |
| 83 | - | (2,375) | - | - | (2,375) | 2,375 |
| 85 | - | (2,748) | - | - | (2,748) | 2,748 |
| 142 | 10,521 | 1,874 | - | - | 12,395 | - |
| 18 | - | (5,114) | - | - | (5,114) | 5,114 |
| 23 | - | 15,140 | - | - | 15,140 | - |
| 24 | - | (2,991) | - | - | (2,991) | 2,991 |
| 65 | - | (6,845) | - | - | (6,845) | 6,845 |
| 81 | - | 13,118 | - | - | 13,118 | - |
| 84 | - | (1,158) | - | - | (1,158) | 1,158 |
| 87 | - | (2,984) | - | - | (2,984) | 2,984 |
| MD_Adm | - | 55,629 | - | - | 55,629 | - |

| Market | | Buyer Responsibility | Seller Responsibility | Unsecured | Seller (locations for sale) | Total | Pre paid tax to be reimbursed by buyer to seller |
|---|---|---|---|---|---|---|---|
| MI | | 459,667 | 47,495 | 5,413 | 101,018 | 613,592 | 106,264 |
| | 199 | 23,874 | (6,205) | - | - | 17,669 | 6,205 |
| | 200 | 27,082 | 15,934 | - | - | 43,016 | - |
| | 201 | - | - | - | 15,495 | 15,495 | - |
| | 202 | 30,516 | (7,780) | - | - | 22,736 | 7,780 |
| | 205 | - | 2,179 | - | - | 2,179 | - |
| | 206 | 35,698 | (5,645) | - | - | 30,053 | 5,645 |
| | 207 | 30,879 | (8,127) | - | - | 22,752 | 8,127 |
| | 208 | 28,654 | (7,763) | - | - | 20,891 | 7,763 |
| | 209 | 20,615 | (3,124) | - | - | 17,491 | 3,124 |
| | 210 | - | 11,908 | - | - | 11,908 | - |
| | 211 | - | 8,858 | - | - | 8,858 | - |
| | 212 | - | - | - | 59,889 | 59,889 | - |
| | 213 | 17,142 | (4,829) | - | - | 12,313 | 4,829 |
| | 215 | 25,007 | (6,515) | - | - | 18,492 | 6,515 |
| | 216 | - | - | - | 25,633 | 25,633 | - |
| | 217 | 17,239 | (4,668) | - | - | 12,571 | 4,668 |
| | 218 | 29,066 | (7,783) | - | - | 21,283 | 7,783 |
| | 219 | 17,401 | (5,095) | - | - | 12,306 | 5,095 |
| | 220 | 22,531 | (6,311) | - | - | 16,219 | 6,311 |
| | 221 | - | 10,149 | - | - | 10,149 | - |
| | 222 | 21,707 | (6,095) | - | - | 15,612 | 6,095 |
| | 223 | 21,252 | 8,324 | - | - | 29,576 | - |
| | 224 | 4,663 | 12,958 | - | - | 17,621 | - |
| | 226 | - | - | 109 | - | 109 | - |
| | 227 | - | 16,992 | - | - | 16,992 | - |
| | 228 | 2,516 | (6,319) | - | - | (3,803) | 6,319 |
| | 229 | 21,090 | 8,426 | - | - | 29,516 | - |
| | 231 | - | 1,997 | - | - | 1,997 | - |
| | 232 | 36,535 | (8,988) | - | - | 27,548 | 8,988 |
| | 234 | - | 21,549 | - | - | 21,549 | - |
| | 235 | 25,431 | (4,127) | - | - | 21,304 | 4,127 |
| | 236 | - | 5,734 | - | - | 5,734 | - |
| | 238 | - | 12,061 | - | - | 12,061 | - |
| | 240 | - | 4,375 | - | - | 4,375 | - |
| | 252 | - | 1,600 | - | - | 1,600 | - |
| | 239 | - | 4,357 | 5,304 | - | 9,662 | - |
| | 248 | - | 2,811 | - | - | 2,811 | - |
| | 230 | - | 3,040 | - | - | 3,040 | - |
| | 247 | 770 | (6,891) | - | - | (6,121) | 6,891 |
| MI_Adm | | - | 507 | - | - | 507 | - |

| Market | | Buyer Responsibility | Seller Responsibility | Unsecured | Seller (locations for sale) | Total | Pre paid tax to be reimbursed by buyer to seller |
|---|---|---|---|---|---|---|---|
| **NY** | | **31,460** | **344,585** | **9,263** | **-** | **385,309** | **8,309** |
| | 31 | - | 12,218 | - | - | 12,218 | - |
| | 33 | 6,225 | 20,170 | - | - | 26,396 | - |
| | 34 | - | 8,094 | - | - | 8,094 | - |
| | 35 | - | 8,411 | - | - | 8,411 | - |
| | 36 | - | 9,712 | - | - | 9,712 | - |
| | 37 | - | 11,655 | - | - | 11,655 | - |
| | 39 | - | 5,606 | - | - | 5,606 | - |
| | 145 | - | 8,136 | - | - | 8,136 | - |
| | 147 | 8,580 | 13,786 | - | - | 22,366 | - |
| | 154 | - | 7,701 | - | - | 7,701 | - |
| | 155 | - | 6,635 | 3,493 | - | 10,129 | - |
| | 156 | - | (3,822) | - | - | (3,822) | 3,822 |
| | 158 | 360 | 11,584 | - | - | 11,944 | - |
| | 159 | - | 6,084 | 5,770 | - | 11,853 | - |
| | 161 | 8,871 | 11,244 | - | - | 20,115 | - |
| | 162 | - | 9,487 | - | - | 9,487 | - |
| | 168 | - | 11,123 | - | - | 11,123 | - |
| | 169 | - | 10,450 | - | - | 10,450 | - |
| | 174 | 7,423 | 10,105 | - | - | 17,529 | - |
| | 180 | - | 1,165 | - | - | 1,165 | - |
| | 146 | - | 5,397 | - | - | 5,397 | - |
| | 148 | - | 12,491 | - | - | 12,491 | - |
| | 150 | - | 15,662 | - | - | 15,662 | - |
| | 151 | - | 6,838 | - | - | 6,838 | - |
| | 157 | - | 4,903 | - | - | 4,903 | - |
| | 160 | - | - | - | - | - | - |
| | 164 | - | (4,487) | - | - | (4,487) | 4,487 |
| | 167 | - | 4,576 | - | - | 4,576 | - |
| | 171 | - | 14,059 | - | - | 14,059 | - |
| | 173 | - | 11,754 | - | - | 11,754 | - |
| | 175 | - | 16,826 | - | - | 16,826 | - |
| | 177 | - | 6,613 | - | - | 6,613 | - |
| | 179 | - | 3,418 | - | - | 3,418 | - |
| | 181 | - | 5,693 | - | - | 5,693 | - |
| | 183 | - | 2,656 | - | - | 2,656 | - |
| | 184 | - | 3,887 | - | - | 3,887 | - |
| | 185 | - | 5,117 | - | - | 5,117 | - |
| | 186 | - | 5,256 | - | - | 5,256 | - |
| | 187 | - | 3,457 | - | - | 3,457 | - |
| | 188 | - | 11,313 | - | - | 11,313 | - |
| | 189 | - | 7,303 | - | - | 7,303 | - |
| | 191 | - | 3,294 | - | - | 3,294 | - |
| | 192 | - | 3,203 | - | - | 3,203 | - |
| | 193 | - | 12,646 | - | - | 12,646 | - |
| | 194 | - | 3,165 | - | - | 3,165 | - |
| (blank) | | - | - | - | - | - | - |
| (blank) | | - | - | - | - | - | - |
| **Grand Total** | | **1,015,674** | **775,072** | **99,023** | **101,018** | **1,990,786** | **149,326** |
| | | - | - | - | (0) | - | - |

Note: Certain penalties and interest charges may not be reflected above