# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| KAZI FOODS OF MICHIGAN, INC., et al.,[1] | ) | Case No. 11-43971 |
|  | ) | (jointly administered) |
| Debtors | ) |  |
|  | ) | Judge Thomas J. Tucker |

## ORDER (A) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN OF THE DEBTORS' EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (C) GRANTING RELATED RELIEF

This matter coming before the Court on the motion of the above-captioned debtors and debtors in possession (the "**Debtors**"), pursuant to sections 105, 363 and 365 of Title 11 of the United States Code (the "**Bankruptcy Code**") for an order (a)(i) approving procedures in connection with the sale of substantially all of the property and assets of the Debtors; (ii) scheduling the related auction and hearing to consider approval of sale; (iii) approving procedures related to the assumption of certain of the Debtors' executory contracts and unexpired leases; (iv) approving the form and manner of notice thereof; and (b)(i) authorizing the sale of such assets of the Debtors free and clear of liens, claims, encumbrances, and other interests; (ii) approving the assumption and assignment of certain of the Debtors' executory contracts and unexpired leases related thereto; and (iii) granting related relief (the "**Motion**"). Based on the law and facts alleged in the Motion, the evidence and arguments of counsel presented at the hearing, and the entire record in these bankruptcy cases, the Court finds after

---

[1] The Debtors in these cases include Kazi Foods of Michigan, Inc., Case No. 11-43971; Kazi Foods of Florida, Inc., Case No 11-43986; Kazi Foods of New York, Inc., Case No. 11-47551; and Kazi Foods of Annapolis, Inc., Case No. 11-47556.

due deliberation that (i) it has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, (ii) venue is proper in this district under 28 U.S.C. §§ 1408 and 1409, (iii) this is a core proceeding under 28 U.S.C. § 157(b), and (iv) the relief requested in the Motion is in the best interests of the Debtors, their bankruptcy estates and their creditors, and therefore should be granted.

ACCORDINGLY, IT IS FURTHER FOUND AND DETERMINED:[2]

## Notice

A.      As evidenced by the certificates of service filed with the Court, and based on the representations of counsel at the hearing, proper and timely notice of the Bid Procedures (defined below), the Motion, the Transaction Documents (defined below), and the transactions contemplated therein, including the sale of the Debtors' property and assets and the assumption and assignment of the Debtors' executory contracts and unexpired leases, has been provided to all parties entitled to notice thereof, in compliance with the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the local rules and orders of the Court.  Such notice constitutes good and sufficient notice under the particular circumstances.  No other notice need be given for the granting of the relief requested in the Motion or entry of this order (the "**Order**").

B.      A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities, including (i) all parties on the operative official service list maintained in the bankruptcy cases; (ii) the Office of the United States Trustee; (iii) counsel for General Electric Capital Corporation; (iv)

---

[2]      The findings of fact and the conclusions of law stated herein shall constitute the Court's findings of fact and conclusions of law under Bankruptcy Rule 7052, made applicable to this proceeding under Bankruptcy Rule 9014.  To the extent any finding of fact shall later be determined to be a conclusion of law, it shall be so deemed, and to the extent that any conclusion of law shall later be determined to be a finding of fact, it shall be so deemed.

counsel for KFC; (v) counsel for KFC National Council and Advertising Cooperative, Inc. ("NCAC"); (vi) all parties requesting notice in these bankruptcy cases pursuant to Local Bankruptcy Rule 2002-1; (vii) all known creditors or their counsel who have asserted a lien, security interest, claim, right, interest, or encumbrances against all or any portion of the Debtors' assets; (viii) all parties (or their counsel) who have expressed an interest in purchasing the Debtors' assets; (ix) all non-debtor parties to the Debtors' executory contracts and unexpired leases; (x) all applicable federal, state, and local regulatory or taxing authorities, recording offices, or any governmental entity that have a reasonably known interest in the relief requested in the Motion; and (xi) the Internal Revenue Service.

### The Sale Process and Bid Procedures

C.      On December 23, 2011, the Court entered its order (Docket No. 577)(as amended, the "**Bid Procedures Order**") (i) establishing acquisition rules and procedures governing the sale of substantially all of the Debtors' property and assets; (ii) approving procedures related to the assumption and assignment of the Debtors' executory contracts and unexpired leases, including rules governing cure claims related thereto; (iii) scheduling an auction and hearing to consider approval of a sale transaction; and (iv) granting certain related relief (collectively, the "Bid Procedures"). The findings and conclusions embodied in the Bid Procedures Order are adopted and incorporated herein.

D.      Pursuant to the Bid Procedures Order, Star KFC Realco Two, LLC ("**Realco**") and Star Partner Enterprises Two, LLC ("**Partner**," and collectively with Realco, the "**Purchasers**") submitted a joint bid proposal for the acquisition of substantially all of the Debtors' property and assets. The Debtors, after consultation with the other Notice Parties (as defined in the Bid Procedures Order), determined that the bid proposal submitted by the Purchasers was a Qualified Bid (as defined in the Bid Procedures Order).

E.      One other party submitted a bid proposal for the acquisition of the Debtors'

assets, which bid was submitted after the Bid Deadline (as defined in the Bid Procedures

Order).  Because this bid proposal was untimely, and for other reasons, the Debtors, after

consultation with the other Notice Parties, determined that such bid proposal was not a

Qualified Bid.

F.      The Debtors marketed their property and assets and conducted the sale thereof

in a commercially reasonable manner and in compliance with the Bid Procedures Order.  The

bid proposal submitted by the Purchasers was the only Qualified Bid received by the Debtors,

and it constitutes the highest and best offer for the acquisition of substantially all the Debtors'

assets.

**The Sale Transaction**

G.      The Debtors, as sellers, and the Purchasers, as purchasers, have entered into the

Asset Purchase Agreement dated February 20, 2012 (the "**Purchase Agreement**"), which

contemplates the sale of the Acquired Assets[3] to the Purchasers, including the assumption and

assignment of the Acquired Contracts, both pursuant to the terms and conditions of the

Purchase Agreement.  A copy of the Purchase Agreement was filed with the stipulation

approving this Order (Docket # 671, the "**Stipulation**") as Exhibit B (Docket # 672).  The

Acquired Assets constitute substantially all of the Debtors' property and assets.  The Purchase

Agreement requires the sale of the Acquired Assets to be free and clear of all Liens, Claims,

Interests, and other encumbrances of any kind whatsoever (collectively, "**Interests**"), except

only for the Assumed Liabilities.

H.      The Base Purchase Price for the Acquired Assets is estimated to be

approximately $56,220,000, which is subject to certain adjustments specified in the Purchase

---

[3]      Capitalized terms not defined in this Order have the meanings prescribed in the Purchase Agreement.

Agreement.  The purchase price and the adjustments thereto are described in Article II of the Purchase Agreement.

I.        The Purchase Agreement was (and the transaction documents and related instruments contemplated therein will be) negotiated, proposed, and entered into by and between the Debtors and the Purchasers without collusion, in good faith, and from arm's length bargaining positions.  Neither the Debtors nor the Purchasers have engaged in any conduct that would cause or permit the application of 11 U.S.C. § 363(n) to the sale, including voiding the Purchase Agreement or the transaction documents and related instruments contemplated thereunder (collectively, the "**Transaction Documents**").

J.        The Purchasers are each a good faith purchaser in accordance with 11 U.S.C. § 363(m), and are entitled to all of the protections afforded thereunder.  Absent a stay pending appeal, the Purchasers will be acting in good faith within the meaning of § 363(m) in closing the transactions under the Transaction Documents.

K.        The terms and conditions of the Transaction Documents and the purchase price to be paid to the Debtors (i) are fair and reasonable; (ii) valid, binding and enforceable; (iii) constitute the highest and best offer for the Acquired Assets; (iv) will provide a greater recovery for the Debtors' creditors than would be provided by any other practical available alternative; and (v) constitute reasonably equivalent value and fair consideration for the Acquired Assets.

L.        The Purchasers would not have entered into the Purchase Agreement and will not consummate the transactions described therein (thus adversely affecting the bankruptcy estates and their creditors) if the sale of the Acquired Assets was not free and clear of all Encumbrances, except only the Assumed Liabilities.

M.      The Debtors are authorized to consummate the transactions and transfer the Acquired Assets free and clear of all Encumbrances because one or more of the standards enumerated in 11 U.S.C. § 363(f) have been satisfied.  All parties with Encumbrances in the Acquired Assets (if any) who did not object to the Motion and the relief requested therein, or who withdrew their objections to the transactions, are deemed to have consented pursuant to § 363(f)(2).  All parties with Encumbrances in the Acquired Assets who did object to the Motion and the relief requested therein fall within one or more of the other subsections of § 363(f) and are adequately protected by having their Encumbrances attach to the net proceeds of the sale transaction with the same validity, enforceability, priority, force and effect that they now have as against the Acquired Assets, subject to the rights, claims, defenses, and objections, if any, of the Debtors and all parties in interest with respect to such Encumbrances.

N.      The closing of the transactions under the Transaction Documents (the "**Closing**") will not subject the Purchaser to any debts, liabilities, taxes, obligations, commitments, responsibilities, or claims of any kind or nature whatsoever, whether known or unknown, contingent or liquidated, or otherwise, existing as of the Closing, of or against the Debtors or any other person by reason of such transfer based on any legal or equitable theory, including liabilities based on any theory of antitrust or successor or transferee liability.

O.      The relief sought in the Motion, including approval of the Transaction Documents and consummation of the transactions contemplated thereunder, is in the best interests of the Debtors, their bankruptcy estates, creditors, and all parties in interest.  The Debtors have demonstrated good, sound, and sufficient business purpose and justification, and it is a prudent exercise of their business judgment, to sell the Acquired Assets on the terms and conditions contained in the Transaction Documents and consummate the transactions contemplated thereunder, including the assumption and assignment of the Acquired Contracts.

The Acquired Contracts and Assumed Liabilities are an integral part of the Debtors' business and assets, and therefore the assumption and assignment of such contracts and liabilities are reasonable, enhance the value of the bankruptcy estates, and do not constitute unfair discrimination.

P.     The Debtors and/or the Purchasers (as applicable) have (i) cured, or have provided adequate assurance of cure, of all defaults under the Acquired Contracts, if any, existing before the date of this Order, within the meaning of 11 U.S.C. § 365(b)(1)(A), and (ii) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default before the date of this Order under the Acquired Contracts, if any, within the meaning of 11 U.S.C. § 365(b)(1)(B).  In compliance with the Bid Procedures Order, the Purchasers have provided adequate assurance of their future performance of and under the Acquired Contracts, within the meaning of 11 U.S.C. §§ 365(b)(1)(C) and (b)(3).

ACCORDINGLY, IT IS ORDERED THAT:

**General Provisions**

1.     The Motion is GRANTED in its entirety.

2.     All parties in interest had a reasonable opportunity to object to the relief requested in the Motion.  All objections and responses to the relief requested in the Motion, and all reservations of rights included within such objections, that have not been withdrawn, waived or settled, are overruled and denied on the merits.  The parties who did not object or who withdrew their objections to the Motion are deemed to have consented to the sale transaction contemplated under the Transaction Documents.

**Approval of the Sale Transaction**

3.     The Transaction Documents, the related documents and instruments contemplated therein, and all of the terms and conditions thereof (including all amendments thereto) are approved in their entirety.

4.     The Debtors' entry into the Transaction Documents and consummation of the transactions contemplated thereunder are approved pursuant to 11 U.S.C. §§ 105(a), 363, and 365.

5.     The Debtors are authorized and directed under 11 U.S.C. §§ 105(a), 363, and 365 to perform all of their obligations under the Transaction Documents and to execute such other documents and take such other actions that are reasonably necessary to effectuate the transactions contemplated by the Transaction Documents.  Without limiting the generality of the foregoing, Laura Marcero, the court-authorized CRO of each of the Debtors pursuant to the *Final Order (I) Authorizing the Use of Cash Collateral Pursuant to 11 U.S.C. § 363 and (II) Granting Adequate Protection to the GE Affiliates Pursuant to 11 U.S.C. §§ 361, 362, 363, and 364* [Doc. 177], as amended and modified from time to time (the "**Cash Collateral Order**"), is authorized to execute any and all Transaction Documents on behalf of each of the Debtors, including deeds conveying real property, without obtaining resolutions authorizing such action from each respective Debtors' Board of Directors.

**Transfer of the Acquired Assets to Purchasers Free and Clear of Encumbrances**

6.     On the Closing, the Acquired Assets shall be transferred to the Purchasers, free and clear of all Interests, regardless of whether such Interests are paid in full by the Debtors, except only the Assumed Liabilities (such Interests, the "**Interests Not Assumed**").  The Interests related to the Acquired Assets, if any, shall attach to the sale proceeds with the same validity, enforceability, priority, and force and effect as they had against the Acquired Assets immediately prior to the Closing.

7.      All parties (including all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade and other creditors) (a) holding claims against the Debtors or the Acquired Assets, whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated, arising before the Closing or (b) with the Interests Not Assumed in the Acquired Assets existing before the closing are prohibited from asserting, prosecuting, or otherwise pursuing such claims or Interests against the Purchasers or the Acquired Assets.

8.      Any Interests relating to real or personal property taxes that constitute a lien under applicable state law against specific parcels of real property included in the Acquired Assets shall be paid by the Debtors from the sale proceeds under the Purchase Agreement.

9.      The sale of the Acquired Assets pursuant to this Order and the Transaction Documents will vest the Purchasers with valid and indefeasible title to the Acquired Assets, and will be a legal, valid, and effective transfer of the Acquired Assets, free and clear of all Encumbrances (except only the Assumed Liabilities).

**Assumption and Assignment of the Acquired Contracts and Assumed Liabilities**

10.     Pursuant to 11 U.S.C. §§ 105(a) and 365, and subject to and conditioned on the occurrence of the Closing, the Debtors' assumption and assignment to the Purchasers, and the Purchasers' assumption on the terms and conditions in the Purchase Agreement, of the Acquired Contracts and Assumed Liabilities are approved.  The requirements of  11 U.S.C. § 365(b) with respect to such assumption and assignment have been satisfied.

11.     The Debtors are authorized and directed under 11 U.S.C. §§ 105(a) and 365 to (a) assume and assign to the Purchasers, effective on the Closing, the Acquired Contracts and Assumed Liabilities free and clear of all Interests of any kind or nature whatsoever, other than only the Assumed Liabilities, and (b) execute and deliver to the Purchasers such documents or

other instruments as may be necessary to assign and transfer the Acquired Contracts and Assumed Liabilities to them.

12. The Acquired Contracts and Assumed Liabilities shall be transferred to, and remain in full force and effect for the benefit of, the Purchasers, and counterparties thereto, in accordance with their respective terms, notwithstanding any provision in any Acquired Contract or Assumed Liability (including those of the type described in 11 U.S.C. §§ 365(b)(2) and (f)) that prohibits, restricts, or conditions such assignment or transfer. Under 11 U.S.C. § 365(k), the Debtors shall be relieved from any further liability with respect to the Acquired Contracts and Assumed Liabilities arising after the assignment to and assumption by the Purchasers; provided, and for the elimination of doubt, that the claims, liens, priority and/or superpriority of GE shall not be modified, impaired or affected with respect to any amount(s) due and owing from the Debtors in excess of the amount of the Assumed Liabilities or due an owing from any of the other non-debtor obligors or guarantors thereof.

13. All defaults or other obligations (if any) of the Debtors under the Acquired Contracts and Assumed Liabilities arising or accruing before the date of this Order (without giving effect to any acceleration clauses or any default provisions of the kind specified in 11 U.S.C. § 365(b)(2)) shall be cured with respect to the Acquired Contracts and restructured with respect to the Assumed Liabilities by the Purchasers at the Closing in accordance with the Purchase Agreement and such other agreements anticipated under the Purchase Agreement, and the Purchasers shall have no liability or obligation under the Acquired Contracts arising or accruing before the date of the Closing, except as otherwise expressly provided in the Purchase Agreement.

14.     The failure of the Debtors or the Purchasers to enforce at any time one or more terms or conditions of any Acquired Contract shall not be a waiver of such terms or conditions, or of such parties' rights to enforce every term and condition of the Acquired Contracts.

15.     A chart identifying each Acquired Contract and the corresponding cure amount due under 11 U.S.C. § 365(b) in conjunction with the assumption and assignment of such contract (collectively, the "**Cure Costs**") is filed with the Stipulation as Exhibit C (Docket # 672). At the Closing, the Purchasers shall pay all Cure Costs identified on Exhibit C that are not the subject of a dispute to the non-debtor counterparty(ies) to each Acquired Contract. Except as provided in paragraph 16 below, no cure shall be due and payable as a result of the assumption of any Acquired Contract except such cure identified in Exhibit C.

16.     Pursuant to the Bid Procedures Order, and in accordance with the provisions of the Purchase Agreement, to the extent a non-debtor party to an Acquired Contract filed an objection to the proposed Cure Cost associated with its Acquired Contract (each a "**Cure Objection**") and such objection remains unresolved as of the date of Closing, the Purchasers shall deposit at the Closing the full amount of each disputed Cure Cost associated with a Cure Objection in a segregated account maintained by counsel for the Debtors (the "**Cure Cost Dispute Escrow Account**"). The funds deposited in the Cure Cost Dispute Escrow Account shall be maintained and held in such account pending resolution of a Cure Objection by either (a) order of the Court or (b) a written agreement among the Debtors, GE , and the non-debtor party(ies) to such Acquired Contract. Any funds remaining in the Cure Cost Dispute Escrow Account after the payment of all Cure Costs associated with a resolved Cure Objection shall be released to the Debtors as consideration for the acquisition of the Acquired Assets under the Purchase Agreement.

17.     The funding of the Cure Cost Dispute Escrow Account shall satisfy the requirements of 11 U.S.C. § 365(b) regarding the cure of monetary defaults associated with the Acquired Contracts that are the subject of a Cure Objection.

18.     Each Acquired Contract is in full force and effect and, on the Closing, no monetary or non-monetary default will exist thereunder, or event or occurrence which would constitute a default with the passage of time, giving of notice, or both, with respect to any material term, condition, covenant, payment obligation or other obligations thereunder whether prepetition or postpetition in nature, other than any event of default existing as a result of the filing of these bankruptcy cases and monetary cure amounts, which shall be cured in accordance with this Order.

19.     KFC U.S. Properties, Inc., or any affiliated entity thereof (collectively, "**KFCUS**"), agrees to extend, pursuant to 11 U.S.C. § 365(d)(4), the period by which the Debtors have to assume and assign its real property leases with KFCUS until the Closing.  At Closing, KFCUS agrees to the assumption by the Debtors of the real property leases identified on Exhibit C to the Stipulation and the assignment of such real property leases to the Purchasers.

20.     At the Closing, the Debtors waive and release any and all potential avoidance claims under Chapter 5 of the Bankruptcy Code, or other applicable law, against KFC, NCAC, KFCUS, YUM! Brands, Inc., the respective local KFC advertising cooperatives, NFA Equipment Fund II, LLP, and any affiliate, successor, assignee, or related entity to each of the foregoing entities.

**Miscellaneous Provisions**

21.     The consideration to be paid by the Purchasers for the Acquired Assets under the Transaction Documents is fair and reasonable and may not be avoided under 11 U.S.C. § 363(n) or other applicable law.

22.     This Order (a) is and shall be effective as a determination that, on the Closing, all Interests and claims existing as to the Acquired Assets before the Closing (except only the Assumed Liabilities) have been unconditionally released, discharged, and terminated in each case as to the Acquired Assets and (b) is and shall be binding on and shall govern acts of all entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of fees, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities, who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments that reflect the Purchasers are the owners of the Acquired Assets free and clear of Interests Not Assumed.

23.     The Purchasers shall have no liability or responsibility for any liability or other obligation of the Debtors arising under or related to the Acquired Assets.  Without limiting the generality of the foregoing, the Purchasers shall not be liable for any claims against the Debtors or any of its predecessors or affiliates, and the Purchasers shall have no successor, transferee, or vicarious liabilities of any kind or character, whether known or unknown, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors arising before the Closing, including liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the assets or operation of the Debtors before the Closing.

24.     The transfer of the Acquired Assets pursuant to the Transaction Documents and this Order shall not subject the Purchasers to any claim, cause of action, indebtedness, or other

liability with respect to the business or operation of Debtors, or any other business or operations of the Debtors, before the Closing or by reason of such transfer under the Bankruptcy Code or applicable federal and state law, based, in whole or in part, directly or indirectly, on any theory of law or equity, including any theory of equitable subordination, successor or transferee liability, or vicarious liability.

25.     Absent a stay pending appeal, no person shall take any action to prevent, enjoin or otherwise interfere with consummation of the transactions contemplated in or by the Transaction Documents or this Order.

26.     Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Transaction Documents.

27.     If any person or entity that has filed financing statements, mortgages, *lis pendens,* or other documents or agreements evidencing interests in the Acquired Assets shall not have delivered to the Debtors before the Closing (in proper form for filing and executed by the appropriate parties) termination statements, instruments of satisfaction, releases of all interests that the party has concerning the Debtors or the Acquired Assets then (a) the Debtors are authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the party concerning the Acquired Assets and (b) the Purchasers are authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Encumbrances in the Acquired Assets.

28.     All entities who are currently, or on the date of the Closing may be, in possession of any portion of the Acquired Assets are directed to surrender possession of those interests to the Purchasers on the date of the Closing.

29.     The Transaction Documents and any related agreements, documents or other instruments may be modified, amended, or supplemented through a written document signed by the parties in accordance with the terms thereof without further order of the Court; provided, however, that any such modification, amendment or supplement is neither material nor changes the economic substance of the transactions contemplated under the Transaction Documents.

30.     The Debtors are authorized and directed under 11 U.S.C. § 363(b)(1) to perform all of their obligations in connection with the Transaction Documents in accordance with the terms thereof and this Order and to execute such documents and take such other actions necessary to effectuate the sale transaction.

31.     The terms of this Order and the Transaction Documents shall be binding on and inure to the benefit of the Purchasers, the Debtors, the Debtors' creditors and all other parties in interest, and any successors of such parties, including any trustee or examiner appointed in these cases or any subsequent or converted cases of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code.

32.     The Court retains jurisdiction to enforce and implement the terms and provisions of this Order and the Transaction Documents, all amendments thereto, any waivers and consents thereunder, and of each of the documents executed in connection therewith, in all respects, including retaining jurisdiction to (a) compel delivery of the Acquired Assets to the Purchasers, (b) resolve any disputes arising under or related to the relief granted in this Order or in the Purchase Agreement, except as otherwise provided in that document, and (c) resolve any Cure Objections.

33.     The provisions in the Purchase Agreement related to the Break-Up Fee and Buyers Expenses (specifically, Sections 7.2(c) - (f) thereof) are approved and incorporated

herein by reference. To the extent the Purchasers are entitled to Buyer Expenses under

Sections 7.2(c), (d) or (e) of the Purchase Agreement, such Buyer Expenses shall be paid as an

additional carve-out by GE of its collateral under the Cash Collateral Order.

34. The NCAC and KFC shall continue to maintain all rights against the Debtors

and any guarantors or other obligors with respect to the amounts owed to NCAC and/or KFC,

including, but not limited to, all amounts payable by the guaranties issued to NCAC and/or

KFC in connection with the promissory notes issued to NCAC and/or KFC by the Debtors.

35. The Debtors are a party to certain franchise and/or license agreements with

A&W Restaurants, Inc. ("A&W") and Long John Silver's, Inc. ("LJS"). No sale approved by

this Order for the assumption, assignment or other transfer to the Purchasers of a franchise or

license agreement with either A&W or LJS, shall be effective unless first approved by A&W

and/or LJS, as the case may be, in their sole and unfettered discretion, in accordance with the

existing franchise agreements and applicable law. If the Purchasers have not received approval

from A&W and/or LJS by the Closing, and the A&W and/or LJS locations continue to operate

post-Closing, Purchasers agree to close the A&W and/or LJS locations upon five (5) days'

written notice from A&W and/or LJS to close the locations. The Purchasers agree that it shall

be responsible for all fees and charges that accrue after the Closing and until their closing of

the stores, including but not limited to, royalties and advertising contributions. The Purchasers

further agree that, solely in the event the Purchasers waive the closing condition in Section 6.2

of the Purchase Agreement related to the assumption and assignment of any franchise and/or

license agreement with A&W and LJS and the sale transaction under the Purchase Agreement

closes, and the A&W and LJS store locations are closed as contemplated under this paragraph,

whether upon notice from A&W and/or LJS or otherwise, the Purchasers will de-image and

de-identify the A&W and/or LJS locations, at Purchaser's expense, in accordance with the existing franchise agreements and A&W and/or LJS standards, as applicable.

36.     Notwithstanding anything to the contrary in this Order, the Bid Procedures Order, or the Purchase Agreement, the rights of each non-Debtor counterparty to the nonresidential real property leases for Store No. 24 (10 Watkins Park Dr., Upper Marlboro, MD) and Store No. 198 (235 Erie Blvd. W, Rome, NY) are hereby preserved, and the Purchasers are expressly assuming liability for: (i) any amounts later determined to be due as year-end adjustment and/or reconciliation charges related to calendar year 2011, whether those amounts accrued before or after the assumption and assignment of such lease; provided, however, that all such year-end adjustments and/or reconciliations must be claimed on or before December 31, 2012; (ii) any amounts later determined to be due as year-end adjustment and/or reconciliation charges related to calendar year 2012, whether those amounts accrued before or after the assumption and assignment of such lease; and (iii) the Debtors' obligations, if any, to indemnify the non-Debtor counterparty to such leases for claims of third parties pursuant to the terms of the lease, whether or not those obligations accrued prior to or after the assumption and assignment of such lease; provided, however, that (a) the non-Debtor counterparties and the Purchasers reserve their respective rights and defenses under the leases, section 365 of the Bankruptcy Code, and other applicable law regarding such indemnification obligations and (b) nothing in this paragraph shall be construed as enlarging the indemnification obligations under the leases.

37.     For good cause shown, this Order shall be effective and enforceable immediately on its entry by the Court, notwithstanding Fed. R. Bankr. P. 6004(h), 6006(d), or other applicable law or procedural rules.

**Signed on February 28, 2012**

<u>**/s/ Thomas J. Tucker**</u>
**Thomas J. Tucker**
**United States Bankruptcy Judge**