UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:                                                                       Case No. 11-43971

KAZI FOODS OF MICHIGAN, INC.,                  Chapter 11
                                                                      (Jointly Administered)[1]
             Debtor.
                                                                      Judge Thomas J. Tucker
_____/

**OPINION REGARDING KFC NATIONAL COUNCIL AND ADVERTISING
COOPERATIVE, INC.'S MOTION FOR ALLOWANCE AND PAYMENT OF
ADMINISTRATIVE EXPENSE CLAIM**

These jointly-administered Chapter 11 cases came before the Court for an expedited hearing on February 28, 2012, on a motion filed on February 23, 2012 by the creditor, KFC National Council and Advertising Cooperative, Inc. ("NACA"), entitled "Motion for Allowance and Payment of Administrative Expense Claim by KFC National Council and Advertising Cooperative, Inc." (Docket # 663, the "Motion"). The Debtors filed an objection to the Motion on February 27, 2012 (Docket # 664), and at Debtors' request, the Court held an expedited hearing the next day.

**I. Background**

The Debtor Kazi Foods of Michigan, Inc. ("Kazi Michigan") operates numerous KFC (Kentucky Fried Chicken) brand fast-food restaurants in Michigan. The February 28 hearing on NACA's Motion focused on the Debtors' objection to one particular part of the relief that NACA seeks. The disputed relief in question is NACA's request for allowance and prompt payment of an administrative expense in the amount of $394,672.88. This sum is the amount that NACA

---

[1] The Debtors are Kazi Foods of Michigan, Inc., Case No. 11-43971; Kazi Foods of Florida, Inc., Case No. 11-43986; Kazi Foods of New York, Inc., Case No. 11-47551; and Kazi Foods of Annapolis, Inc., Case No. 11-47556.

alleges it is owed by the Debtor Kazi Foods of Michigan, Inc. ("Kazi Michigan"), for national advertising that NACA provided, which NACA says benefitted Kazi Michigan.[2] The advertising in question is for the months of August 2011 through January 2012.

NACA had a contract with Kazi Michigan, called the "Advertising Agreement," that was entered before Kazi Michigan filed its Chapter 11 case on February 17, 2011. Under this agreement, and ones like it with numerous other KFC franchisees, NACA was to provide national advertising services for KFC franchises across the United States.[3] NACA says that this pre-petition contract has remained effective post-petition, and obligates Kazi Michigan to pay NACA a percentage of its sales each month — 2.5% of sales for each of the months in 2011, and 4.5% of sales beginning in January 2012. The parties agree that Kazi Michigan paid NACA the sums that NACA claimed were due under the contract for the post-petition months through July 2011, with the last payment having been made in September 2011. The parties also agree that Kazi Michigan has not paid NACA any sums allegedly due for the months August 2011 through the present.

Kazi Michigan objects to this aspect of NACA's Motion, and argues that it does not owe NACA any of the $394,672.88 amount claimed, as an administrative claim or otherwise, on several grounds. The Court scheduled NACA's Motion for an expedited hearing on very short notice because it was filed at a very critical time in these Chapter 11 cases. Over the last several months, the Debtors, including Kazi Michigan, and their major creditors have been pursuing a

---

[2] Other relief requested by the Motion may not be in dispute, but it is not addressed in this opinion, because a ruling on the other relief does not have any of the urgency that requires an expedited ruling on the relief addressed in this opinion.

[3] Advertising Agreement (Creditor's Exhibit 1).

complex and time-consuming process of attempting to sell all or substantially all of their assets, on a going-concern basis, under 11 U.S.C. § 363. That process included an extensive marketing effort, and solicitation of bids in a competitive bidding process. The process is just now culminating in the Court's approval of a sale of substantially all of the Debtors' assets to a prospective purchaser, in exchange for consideration of approximately $56 million. The Court held a hearing on February 22, 2012, and approved the sale, subject to some revisions to be made to the purchase agreement and the proposed sale order. These documents have now been finalized and filed,[4] and late in the afternoon of February 28, the Court has entered an order approving the sale.[5]

For reasons discussed in detail at the February 22 hearing, which NACA attended through its counsel, and further discussed during the February 28 hearing on NACA's Motion, the proposed sale must close no later than February 29, 2012, or there is a risk that the sale may fall apart. This likely would be severely detrimental to the creditors of the Debtor's estates in these cases.

Against this backdrop, which NACA has been fully aware of at all times, NACA waited until the morning after the February 22 sale hearing to file its Motion, even though NACA had not been paid anything by Kazi Michigan for many months. The dispute over the administrative claim that NACA now asserts against Kazi Michigan has a significant impact on the prospects for the sale. For one thing, the purchase agreement gives the Debtors the right to refuse to close

---

[4] Docket ## 671, 672.

[5] Docket # 673.

the sale if they conclude that to do so would leave their cases administratively insolvent.[6] And Debtors contend that the allowance of NACA's $394,672.88 administrative claim against Kazi Michigan would push Debtors into administrative insolvency, and if that happens, they would refuse to close the sale. NACA, for its part, says that it wants the sale to go forward, and to close on February 29, but it also wants its administrative claim allowed and paid. Each side — Debtors and NACA — seem to be engaging in brinkmanship here. But the Court concludes that, for the best interest of all the parties in these Chapter 11 cases, the Court must decide this dispute immediately, before February 29.

After hearing oral argument from counsel on February 28, the Court decided that an evidentiary hearing was necessary, and the Court held the evidentiary hearing the same day. NACA's counsel objected to the Court holding an evidentiary hearing the same day, on such short notice, and cited Fed.R.Bankr.P. 9014(e). The Court decided to hold the evidentiary hearing, but reserve decision until after the conclusion of today's evidentiary hearing session, on whether to allow a continuation of the evidentiary hearing at a later date, for the benefit of NACA.

After concluding the hearing, the Court took these matters under advisement, and stated that it would issue a written decision very quickly. This is that decision. This opinion states the Court's findings of fact and conclusions of law.

## II. Jurisdiction

This Court has subject matter jurisdiction over these bankruptcy cases under 28 U.S.C.

---

[6] Debtors' counsel stated this, without contradiction, in the February 28 hearing. And this is confirmed by Section 6.1(e) of the Asset Purchase Agreement (Docket # 672, Exhibit B, at p. 20).

§§ 1334(b), 157(a) and 157 (b)(1), and Local Rule 83.50(a) (E.D. Mich.). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

### III. Discussion

**A. NACA's objection to the Court holding and concluding an evidentiary hearing on February 28.**

The Court concludes that it has committed no abuse of discretion in holding the evidentiary hearing today, and that exigent circumstances require the Court to deem the evidentiary hearing to be completed.

Under normal circumstances, of course, the Court would not have held an evidentiary hearing on such short notice as occurred today. And Fed.R.Bankr.P. 9014(e) states:

> (**e) Attendance of Witnesses.** The court shall provide procedures that enable parties to ascertain at a reasonable time before any scheduled hearing whether the hearing will be an evidentiary hearing at which witnesses may testify.

And NACA's counsel argued that he had been unable to obtain the presence of one or more of his witnesses, who are located out of town, on such short notice. He did not identify who the witnesses were.

When the Court began the evidentiary hearing later in the day, however, NACA's counsel was able to present a witness, Alan Forsythe, who testified by telephone. Mr. Forsythe is NACA's Executive Director. NACA's counsel did not argue that there were any other specific witnesses that he would want to call, but could not call, due to the timing of the evidentiary hearing.

The Court concludes that it was appropriate to conduct the evidentiary hearing when it did, and to now deem the evidentiary hearing to be concluded. Rule 9014(e) requires only

5

"reasonable" prior notice that a hearing will be an evidentiary hearing. Before the Court began the evidentiary hearing today, it gave prior notice that it would hold an evidentiary hearing today. It gave such notice in court, earlier in the day, after the parties presented oral argument on the Motion, and after NACA argued why an evidentiary hearing should not be held that day.

Such prior notice was "reasonable" under the exigent circumstances presented here. And the Court has discretion to shorten the notice that was given to NACA of the evidentiary hearing — here to the same day — if that is "appropriate in the particular circumstances." *See* 11 U.S.C. § 102(1)(A); *see also* 11 U.S.C. § 105(a); Fed.R.Bankr.P. 9006(c)(1).

What happened here was reasonable and appropriate in the particular circumstances, for the following reasons. First, as described earlier in this opinion, it was necessary under the circumstances to hold and conclude an evidentiary hearing on the disputed part of NACA's Motion on February 28.

Second, the timing that NACA chose for filing its Motion is what created the emergency conditions in the first place, which required an extremely prompt ruling by the Court.

Third, NACA had every reason to know, and did know, that filing its Motion on February 23, the day after the sale hearing, would create the very kind of crisis that it did. NACA knew from attending the February 22 sale hearing (and perhaps sooner than that) that the sale in question most likely had to close no later than February 29. The timing of the Motion was obviously designed, at least in part, to create maximum negotiating leverage for NACA with respect to the allowance and payment of its administrative claim.

Fourth, NACA could have filed its Motion at least as early as September 2011, which is when (1) the Debtor Kazi Michigan made its last payment to NACA; and (2) Kazi Michigan

informed NACA that it would make no further payments to NACA. Instead, NACA chose not to file the Motion at any time during the five months from September 2011 until February 23, 2012. If NACA had filed the Motion earlier, of course, expedited proceedings would not have been necessary.

Fifth, NACA was informed by the Debtors months ago, early in the § 363 sale process, that the Debtors felt that they could not afford to pay, and did not intend to pay, NACA's fees for Kazi Michigan as part of a sale process.

Sixth, NACA is not prejudiced by the Court's holding and concluding the evidentiary hearing when it did. NACA's counsel was able to call its Executive Director to testify, and NACA's counsel did not identify any other witness that it wanted to call, or might have called, if the evidentiary hearing had been held on a later date. Nor did NACA's counsel identify any additional documentary evidence that it might have presented, if given more time to do so. And NACA's counsel had a full opportunity to cross-examine the Debtors' witness, Laura Marcero (the Debtors' Chief Restructuring Officer).

For these reasons, the Court is justified in holding and concluding the evidentiary hearing when it has, and in now making a decision on the merits.

## B. The merits of NACA's disputed administrative claim

NACA seeks allowance and prompt payment by Kazi Michigan of a $394,672.88 administrative expense. Section 503 of the Bankruptcy Code governs the allowance of administrative expenses and provides, in relevant part:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including--

> (1)(A) the actual, necessary costs and expenses of preserving the
> estate . . . .

11 U.S.C. § 503(b)(1)(A). As the United States Court of Appeals for the Sixth Circuit has held,

> The [B]ankruptcy [C]ode provides that administrative expenses, "the actual, necessary costs and expenses of preserving the estate," 11 U.S.C. § 503(b)(1)(A), "are, as a rule, entitled to priority over prepetition unsecured claims," *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 5, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) (citing 11 U.S.C. §§ 507(a)(1), 726(a)(1), 1129(a)(9)(A)). "The purpose of [this priority] is to facilitate the rehabilitation of insolvent businesses by encouraging third parties to provide those businesses with necessary goods and services." *In re United Trucking Service, Inc.*, 851 F.2d 159, 161 (6th Cir.1988) (citing *In re Mammoth Mart, Inc.*, 536 F.2d 950, 954 (1st Cir.1976)). However, **"[c]laims for administrative expenses under § 503(b) are strictly construed because priority claims reduce the funds available for creditors and other claimants."** *In re Federated Dept. Stores, Inc.*, 270 F.3d 994, 1000 (6th Cir.2001). **" '[A] debt qualifies as an 'actual, necessary' administrative expense only if (1) it arose from a transaction with the bankruptcy estate and (2) directly and substantially benefitted the estate.' "** *In re Eagle-Picher Industries, Inc.*, 447 F.3d 461, 464 (6th Cir.2006) (quoting *Pension Benefit Guar. Corp. v. Sunarhauserman, Inc.* (*In re Sunarhauserman, Inc.*), 126 F.3d 811, 816 (6th Cir.1997)). **The party seeking the priority "has the burden of proving that his claim constitutes an administrative expense."** *McMillan v. LTV Steel, Inc.*, 555 F.3d 218, 226 (6th Cir.2009) (citing *In re White Motor Corp.*, 831 F.2d 106, 110 (6th Cir.1987)).

*Nat'l Union Fire Ins. Co. v. VP Bldgs., Inc.*, 606 F.3d 835, 837-38 (6th Cir. 2010)(emphasis added).

The Court concludes, based on the following findings and conclusions, that NACA has not met its burden of proving, by a preponderance of the evidence, that it is entitled to an allowed administrative expense claim against Kazi Michigan, in any amount.

First, the pre-petition Advertising Agreement on which NACA relies, for both its

8

entitlement to payments by Kazi Michigan and the amount of such payments, was no longer in effect between NACA and Kazi Michigan during the relevant post-petition time period. The undisputed evidence is that KFC Corporation terminated its franchise agreement with Kazi Michigan on December 14, 2009, more than a year before Kazi Michigan filed its bankruptcy case.[7] This automatically made the Advertising Agreement no longer effective between NACA and Kazi Michigan. Paragraph 4 of that agreement means this, unambiguously, where it states that:

> The term of this Agreement shall commence upon the date hereof **and shall continue in effect for such period as the franchise agreement for any Controlled Outlet shall remain effective** and for all renewals and extensions thereof agreed to by Franchisor . . .[8]

As a result, NACA has had no right to any payments from Kazi Michigan during the post-petition period, based on any *express* contract between the parties.

Second, NACA has failed to prove that it has any right to payment from Kazi Michigan based on any contract that can be deemed *implied* based on the conduct of the parties. The undisputed evidence (Laura Marcero's testimony) was that for the relevant period, Kazi Michigan never requested NACA to provide any national advertising, or assistance with local advertising, or any other services. This fact, and the other facts described below, in the Court's discussion of unjust enrichment, shows that there was no implied contract between the parties.

Third, NACA has failed to prove that it has any right to payment from Kazi Michigan based on a theory of unjust enrichment. As this Court recently explained in another case, under

---

[7] *See* KFC's termination letter to Kazi Michigan and others, which was admitted into evidence as Debtor's Exhibit A.

[8] Advertising Agreement (Creditor's Exhibit 1) at p. 2 (emphasis added).

9

11-43971-tjt    Doc 678    Filed 02/28/12    Entered 02/28/12 20:39:33    Page 9 of 12

Michigan law,

> "Unjust enrichment is defined as the unjust retention of money or benefits which in justice and equity belong to another. No person is unjustly enriched unless the retention of the benefit would be unjust." *Tkachik v. Mandeville*, 790 N.W.2d 260, 266 (Mich. 2010) (internal quotation marks and citations omitted).
>
> Even though no contract may exist between two parties, under the equitable doctrine of unjust enrichment, "[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other." The remedy is one by which the law sometimes indulges in the fiction of a quasi or constructive contract, with an implied obligation to pay for benefits received to ensure that exact justice is obtained.
>
> The essential elements of a quasi contractual obligation, upon which recovery may be had, are [1] the receipt of a benefit by a defendant from a plaintiff, [2] which benefit it is inequitable that the defendant retain.
>
> *Michigan Educ. Employees Mut. Ins. Co. v. Morris*, 596 N.W.2d 142, 151 (Mich.1999) (internal quotation marks and citations omitted). "The process of imposing a 'contract-in-law' or a quasi contract to prevent unjust enrichment . . . should be approached with some caution." *B & M Die Co. v. Ford Motor Co.*, 421 N.W.2d 620, 622 (Mich. Ct. App. 1988).

*Shapiro v. Harajli* (*In re Harajli*), 2012 WL 255326 at *6 (Bankr. E.D. Mich. 2012).

NACA has failed to prove either of the elements of an unjust enrichment claim. NACA has not proven that Kazi Michigan actually received a benefit from the national advertising services that NACA provided during the months of August 2011 through January 2012. Nor has NACA proven that it would be inequitable for Kazi Michigan to retain any such benefit, without payment, if it had received a benefit.

With respect to a benefit, NACA's only evidence of this, the testimony of its Executive Director Mr. Forsythe, was unpersuasive, and insufficient to meet the preponderance-of-the-evidence standard of proof. And NACA's evidence was likewise insufficient to prove by a preponderance of the evidence that any claimed benefit to Kazi Michigan was worth anything approaching the $394,672.88 claimed, or worth any particular amount.

The Court further finds that it would not be inequitable for Kazi Michigan to retain the alleged benefit of NACA's national advertising, without payment, even if NACA had proven a benefit. This is because (1) the Advertising Agreement was no longer in effect between NACA and Kazi Michigan, and NACA knew this or should have known it, so NACA knew or should have known long before the relevant period that it had no contractual obligation to provide any services to Kazi Michigan; (2) Kazi Michigan stopped paying NACA and informed NACA in September 2011 that it would not make any further payments; and (3) the reason NACA did not cut off all national advertising services to Kazi Michigan, for non-payment, during the relevant period was because of the fact, as NACA's Alan Forsythe testified, "it would be prohibitively expensive" to block the nationwide advertising for KFC restaurants in particular areas of the country, such as those served by Kazi Michigan's restaurants. Thus, Kazi Michigan *could* have elected to no longer provide national advertising services to Kazi Michigan, but did not do because that would be more expensive *for NACA*. NACA thereby saved *itself* money by continuing to provide the national advertising in Kazi Michigan's areas in Michigan, rather than cutting it off to those areas.

Based on the findings, conclusions, and reasons stated above, the Court finds and concludes that NACA has failed to meet its burden of proving that it provided services that

11

"directly and substantially" benefitted the Kazi Michigan bankruptcy estate, in order to qualify for an administrative expense claim under the Sixth Circuit case law quoted above. And NACA failed to meet its burden of proving what the value was of the benefit it allegedly provided to the Kazi Michigan bankruptcy estate, let alone that the value was anywhere near as high as the $394,672.88 amount claimed.

## IV. Conclusion

For the reasons stated in this opinion, the Court will enter an order denying NACA's Motion to the extent it seeks allowance or payment of an administrative expense against the Kazi Michigan bankruptcy estate. The Court will schedule a further hearing date regarding the balance of the relief sought by NACA's Motion, on a non-expedited basis.

**Signed on February 28, 2012**           **/s/ Thomas J. Tucker**
                                          **Thomas J. Tucker**
                                          **United States Bankruptcy Judge**